# EXHIBIT D

# THE CONSUMER CREDIT PROTECTION ACT AMENDMENTS OF 1977

## HEARINGS

BEFORE THE

## SUBCOMMITTEE ON CONSUMER AFFAIRS

OF THE

## COMMITTEE ON BANKING, FINANCE AND URBAN AFFAIRS HOUSE OF REPRESENTATIVES

NINETY-FIFTH CONGRESS

FIRST SESSION

ON

## H.R. 8753

A BILL TO AMEND THE CONSUMER CREDIT PROTECTION ACT TO SAFEGUARD CONSUMERS IN THE UTILIZATION OF ELECTRONIC FUNDS TRANSFER SERVICES; AND TO PROTECT CONSUMERS IN THE STABILIZATION OF CREDIT CARDS; AND FOR OTHER PURPOSES

---

### PART 1

SEPTEMBER 20, 22, 23, AND 26, 1977

---

Printed for the use of the
Committee on Banking, Finance and Urban Affairs



U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1977

97-907 O

## HOUSE COMMITTEE ON BANKING, FINANCE AND URBAN AFFAIRS

HENRY S. REUSS, Wisconsin, *Chairman*

| | |
|---|---|
| THOMAS L. ASHLEY, Ohio | J. WILLIAM STANTON, Ohio |
| WILLIAM S. MOORHEAD, Pennsylvania | GARRY BROWN, Michigan |
| FERNAND J. ST GERMAIN, Rhode Island | CHALMERS P. WYLIE, Ohio |
| HENRY B. GONZALEZ, Texas | JOHN H. ROUSSELOT, California |
| JOSEPH G. MINISH, New Jersey | STEWART B. McKINNEY, Connecticut |
| FRANK ANNUNZIO, Illinois | GEORGE HANSEN, Idaho |
| JAMES M. HANLEY, New York | HENRY J. HYDE, Illinois |
| PARREN J. MITCHELL, Maryland | RICHARD KELLY, Florida |
| WALTER E. FAUNTROY, | CHARLES E. GRASSLEY, Iowa |
| District of Columbia | MILLICENT FENWICK, New Jersey |
| STEPHEN L. NEAL, North Carolina | JIM LEACH, Iowa |
| JERRY M. PATTERSON, California | NEWTON I. STEERS, Jr., Maryland |
| JAMES J. BLANCHARD, Michigan | THOMAS B. EVANS, Jr., Delaware |
| CARROLL HUBBARD, Jr., Kentucky | BRUCE F. CAPUTO, New York |
| JOHN J. LaFALCE, New York | HAROLD C. HOLLENBECK, New Jersey |
| GLADYS NOON SPELLMAN, Maryland | |
| LES AuCOIN, Oregon | |
| PAUL E. TSONGAS, Massachusetts | |
| BUTLER DERRICK, South Carolina | |
| MARK W. HANNAFORD, California | |
| DAVID W. EVANS, Indiana | |
| CLIFFORD ALLEN, Tennessee | |
| NORMAN E. D'AMOURS, New Hampshire | |
| STANLEY N. LUNDINE, New York | |
| HERMAN BADILLO, New York | |
| EDWARD W. PATTISON, New York | |
| JOHN J. CAVANAUGH, Nebraska | |
| MARY ROSE OAKAR, Ohio | |
| JIM MATTOX, Texas | |
| BRUCE F. VENTO, Minnesota | |
| DOUG BARNARD, Georgia | |
| WES WATKINS, Oklahoma | |

PAUL NELSON, *Clerk and Staff Director*
WILLIAM P. DIXON, *General Counsel*
MICHAEL P. FLAHERTY, *Counsel*
GRASTY CREWS II, *Counsel*
MERCER L. JACKSON, *Minority Staff Director*
GRAHAM T. NORTHUP, *Deputy Minority Staff Director*

---

### SUBCOMMITTEE ON CONSUMER AFFAIRS

FRANK ANNUNZIO, Illinois, *Chairman*

| | |
|---|---|
| GLADYS NOON SPELLMAN, Maryland | CHALMERS P. WYLIE, Ohio |
| BRUCE F. VENTO, Minnesota | MILLICENT FENWICK, New Jersey |
| CLIFFORD ALLEN, Tennessee | THOMAS B. EVANS, Jr., Delaware |
| FERNAND J. ST GERMAIN, Rhode Island | |
| JOSEPH G. MINISH, New Jersey | |
| WALTER E. FAUNTROY, | |
| District of Columbia | |

CURTIS A. PRINS, *Staff Director*

(II)

# CONTENTS

(The same table of contents appears in parts 1 and 2)

|  | Page |
|---|---|
| Hearing held on— | |
| September 20, 1977 | 1 |
| September 22, 1977 | 171 |
| September 23, 1977 | 353 |
| September 26, 1977 | 517 |
| September 27, 1977 | 589 |
| September 28, 1977 | 719 |
| September 29, 1977 | 795 |
| September 30, 1977 | 925 |
| Text of H.R. 8753 | 2 |

## STATEMENTS

Boyle, James G., executive director, Texas Consumer Association, Austin, Tex — 796

Brandel, Roland E., attorney, San Francisco, Calif — 264

Broadman, Ellen, attorney, Consumers Union, Washington, D.C — 518

Brown, Jim, acting director, Center for Consumer Affairs, University of Wisconsin Extension, Milwaukee, Wis — 89

Butel, Jane, vice president, consumer affairs, American Express Co — 666

Devine, Robert J., national coordinator for credit legislation, J. C. Penney Co., Inc., New York, N.Y., on behalf of the American Retail Federation (ARF), as chairman of the federation's credit committee; accompanied by Milton Schober, counsel — 986

Fisher, John, senior vice president. First Banc Group, Ohio and City National Bank & Trust Co., Columbus, Ohio — 471

Gardner, Hon. Stephen S., Vice Chairman, Board of Governors of the Federal Reserve System — 185

Goldberg, James M., counsel, on behalf of the National Retail Hardware Association, the Photo Marketing Association International, and the Retail Jewelers of America — 1072

Goldfarb, Lewis H., Acting Assistant Director for Special Statutes, Bureau of Consumer Protection, Federal Trade Commission — 219

Hodges, Glenn, senior vice president, First Tennessee Bank, N.A., Memphis, Tenn., on behalf of the Consumer Bankers Association — 421

Housworth, Evan H., senior vice president, Citizens & Southern National Bank, Atlanta, Ga., on behalf of the American Bankers Association — 398

Hudak, Linda, legislative director, Consumer Federation of America — 542

Joy, Linda, executive director, Michigan Consumers Council, Lansing, Mich — 68

Krughoff, Robert M., president, Washington Center for the Study of Services — 778

Larkin, Kenneth V., vice president, Bank of America, San Francisco, Calif. — 436

Leary, Fairfax, Jr., visiting professor of law, the Delaware Law School of Widener College, Wilmington, Del — 245

(III)

|  | Page |
|---|---|
| Lively, H. Randy, director of public affairs, General Credit Office, Sears, Roebuck & Co., Chicago, Ill., accompanied by Randy Aires, Washington Governmental Affairs Office, Sears, Roebuck & Co | 1012 |
| Luttkus, Paul A., credit manager, Garfinckel's Department Store, Washington, D.C., on behalf of the National Retail Merchants Association (NRMA); accompanied by Sheldon Feldman, counsel to NRMA | 928 |
| Marston, Hon. Garth, member, Federal Home Loan Bank Board | 721 |
| Nilson, Spencer, publisher, The Nilson Report, Los Angeles, Calif | 43 |
| Penner, Irvin, president, Gracious Lady Service, Inc., Philadelphia, Pa | 1098 |
| Peterson, Hon. Ester, Special Assistant to the President for Consumer Affairs | 173 |
| Phillips, David M., senior vice president, Card Products Division, Citibank, New York, N.Y | 354 |
| Pierpont, Robert A., Jr., retail business manager, Exxon Co., USA, Houston, Tex. | 840 |
| Plummer, Robert S., vice president and general counsel, Diners Club, Inc | 632 |
| Portway, Patrick, president, Virginia Citizens Consumer Council, McLean, Va | 54 |
| Poté, Doris R., chairman, Commmonwealth of Massachusetts Consumers' Council, Boston, Mass | 844 |
| Quinn, John E., superintendent, Department of Business Regulation, Bureau of Consumer Protection, State of Maine, Augusta, Maine | 861 |
| Rice, James N., attorney, Boston, Mass | 300 |
| Russell, Charles T., executive vice president, VISA U.S.A. Inc | 590 |
| Saul, J. Donald, vice president, First National Bank of Cincinnati, member, board of directors, Interbank Card Association | 617 |
| Scantlebury, Donald L., Director, Financial and General Management Studies Division, General Accounting Office | 755 |
| Schultheis, Jeanne, director, Consumer Affairs Office, Syracuse, N.Y | 872 |
| Spohn, Richard B., director, California State Department of Consumer Affairs, Sacramento, Calif | 806 |
| Taylor, Thomas W., Associate Deputy Comptroller for Consumer Affairs and EFT, Office of the Comptroller of the Currency | 743 |
| Wood, Peter, president, A. J. Wood Marketing Services, Philadelphia, Pa | 1083 |
| Zocco, Thomas S., executive vice president and treasurer, Consumers Savings Bank, Worcester, Mass | 550 |

ADDITIONAL INFORMATION SUBMITTED FOR THE RECORD

| | |
|---|---|
| A. J. Wood Marketing Services, Philadelphia, Pa., prepared statement on behalf by Peter Wood, president | 1085 |
| American Bankers Association, prepared statement on behalf by Evan H. Housworth | 402 |
| American Express Co., prepared statement on behalf by Jane Butel, vice president, consumer affairs | 670 |
| American Retail Federation, prepared statement on behalf by Robert J. Devine, chairman, credit committee | 991 |
| Bank of America, San Francisco, Calif., prepared statement on behalf by Kenneth V. Larkin, vice president | 440 |
| Boyle, James G., prepared statement | 801 |
| Brandel, Roland E.: | |
| Prepared statement | 268 |
| Response to questions of Chairman Frank Annunzio | 328 |
| Broadman, Ellen: | |
| Prepared statement | 521 |
| Response to questions of Chairman Frank Annunzio | 584 |

| | Page |
|---|---|
| Brown, Jim : | |
|    Prepared statement | 93 |
|    Response to questions of Chairman Frank Annunzio | 167 |
| Butel, Jane : | |
|    Minority report of Commissioners James E. Faris, Verne S. Atwater, Freyda Koplow, William B. Lewis, and George W. Waters of the EFT National Commission on Electronic Fund Transfers | 694 |
|    Prepared statement | 670 |
|    Response to questions of : | |
|       Chairman Annunzio | 710 |
|       Hon. Thomas B. Evans, Jr | 714, 716 |
| California State Department of Consumer Affairs, Sacramento, Calif., statement presented on behalf by Richard Spohn, director | 806 |
| Center for Consumer Affairs, University of Wisconsin-Extension, Milwaukee, Wis., statement presented on behalf by Jim Brown, acting director | 89 |
| Citibank of New York, prepared statement on behalf by David M. Phillips, senior vice president, Card Products Division | 358 |
| Consumer Affairs Office, Syracuse, N.Y., statement presented on behalf by Jeanne Schultheis, director | 872 |
| Consumer Bankers Association, prepared statement on behalf by Glenn Hodges | 425 |
| Consumer Federation of America, statement presented on behalf by Linda Hudak, legislative director | 542 |
| Consumers Savings Bank, Worcester, Mass., statement presented on behalf by Thomas S. Zocco, executive vice president and treasurer | 550 |
| Consumers Union, Washington, D.C., statement presented on behalf by Ellen Broadman, attorney | 518 |
| Devine, Robert J. : | |
|    Prepared statement | 991 |
|    Response to question of Chairman Annunzio | 1109 |
| Diners Club, Inc., prepared statement on behalf by Robert S. Plummer, vice president and general counsel | 636 |
| Exxon Co., U.S.A., Houston, Tex., statement presented on behalf by Robert A. Pierpont, Jr., retail business manager | 840 |
| Federal Home Loan Bank Board, prepared statement on behalf by Hon. Garth Marston, member | 725 |
| Federal Reserve System, Board of Governors, prepared statement on behalf by Hon. Stephen S. Gardner, Vice Chairman | 190 |
| Fisher, John : | |
|    Prepared statement | 475 |
|    Response to questions of Chairman Annunzio | 496 |
| Gardner, Hon. Stephen S. : | |
|    "Memorandum of Technical Issues Arising Under H.R. 8753 (Consumer Credit Act Amendments of 1977) | 203 |
|    Prepared statement | 190 |
|    Response to questions of : | |
|       Chairman Frank Annunzio | 217, 324 |
|       Hon. Bruce F. Vento | 216, 332 |
|       Hon. Chalmers P. Wylie | 211 |
|       Members of the subcommittee | 339 |
| Goldberg, James M. : | |
|    Prepared statement | 1075 |
|    Response to questions of Chairman Annunzio | 1112 |
| Goldfarb, Lewis H. : | |
|    Prepared statement | 223 |

|  | Page |
|---|---|
| Response to questions of: | |
| Chairman Frank Annunzio | 327 |
| Hon. Bruce F. Vento | 333 |
| Gracious Lady Service, Inc., Philadelphia, Pa., prepared statement on behalf by Irvin Penner, president | 1101 |
| Hodges, Glenn: | |
| Prepared statement | 425 |
| Houseworth, Evan H.: | |
| Prepared statement | 402 |
| Response to questions of Chairman Annunzio | 495 |
| Hudak, Linda, prepared statement | 545 |
| Interbank Card Association, New York, N.Y., prepared statement on behalf of J. Donald Saul, member, board of directors | 621 |
| Joy, Linda: | |
| Letter dated September 28, 1977, containing supplemental information regarding section 817 of H.R. 8753 requested by Chairman Frank Annunzio | 120 |
| Prepared statement with an attached report of the Michigan Governors Commission on the Regulation of Financial Institutions regarding electronic funds transfer | 72 |
| Response to questions of: | |
| Chairman Frank Annunzio | 166 |
| Hon. Gladys Noon Spellman | 168 |
| Krughoff, Robert M., prepared statement | 781 |
| Larkin, Kenneth V.: | |
| Prepared statement | 440 |
| Response to questions of Chairman Annunzio | 497 |
| Leary, Fairfax, Jr.: | |
| Prepared statement | 249 |
| Lively, H. Randy: | |
| Prepared statement | 1016 |
| Response to questions of Chairman Annunzio | 1110 |
| Luttkus, Paul A.: | |
| Prepared statement | 935 |
| Response to questions of Chairman Annunzio | 1106 |
| Maine Bureau of Consumer Protection, Augusta, Maine, statement presented by John E. Quinn, superintendent, Department of Business Regulation | 861 |
| Marston, Hon. Garth: | |
| Prepared statement | 725 |
| Response to questions of Chairman Annunzio | 790 |
| Massachusetts Consumer Council, Boston, Mass., statement presented on behalf by Doris R. Poté, chairman | 844 |
| Michigan Consumers Council, Lansing, Mich., statement presented by Linda Joy, executive director | 68 |
| National Commission on Electronic Fund Transfers, letter from the Honorable William B. Widnall, chairman, dated September 16, 1977, commenting on H.R. 8753 and making available to the subcommittee consumer recommendations | 39 |
| National Retail Hardware Association, prepared statement on behalf by James M. Goldberg, counsel | 1075 |
| National Retail Merchants Association, prepared statement on behalf by Paul A. Luttkus | 935 |
| Nilson, Spencer, prepared statement entitled "Why I Support H.R. 8753" | 48 |
| Penner, Irvin: | |
| Prepared statement | 1101 |
| Response to question of Chairman Annunzio | 1121 |

VII

|  |  | Page |
|---|---|---|
| Peterson, Hon. Ester: |  |  |
| Prepared statement | | 177 |
| Responses to questions of: | | |
| Chairman Frank Annunzio | | 324 |
| Hon. Bruce F. Vento | | 331 |
| Phillips, David M.: | | |
| Prepared statement, with attached supplement | | 358 |
| Response to questions of Chairman Annunzio | | 488, 494 |
| Photo Marketing Association International, prepared statement on behalf by James M. Goldberg, counsel | | 1075 |
| Pierport, Robert A., Jr., response to questions of: | | |
| Chairman Frank Annunzio | | 919 |
| Hon. Bruce F. Vento | | 922 |
| Plummer, Robert S.: | | |
| Prepared statement | | 636 |
| Response to questions of Chairman Annunzio | | 715 |
| Portway, Patrick: | | |
| "Annals of Crime—Dead Souls in the Computer—I," article from New Yorker magazine entered in the Congressional Record, September 27, 1977 | | 133 |
| "EFT and Crime" article from Computer Decisions magazine of October 1975 | | 151 |
| Prepared statement with attached Federal Reserve notice regarding a $2 million bogus wire transfer of funds | | 58 |
| Response to questions of: | | |
| Chairman Frank Annunzio | | 114, 133, 165 |
| Hon. Gladys Noon Spellman | | 168 |
| Hon. Bruce F. Vento | | 169 |
| Poté, Doris R.: | | |
| Prepared statement | | 844 |
| Response to questions of: | | |
| Chairman Frank Annunzio | | 919 |
| Hon. Bruce F. Vento | | 923 |
| Quinn, John E.: | | |
| Prepared statement with attachments | | 861 |
| Response to questions of: | | |
| Chairman Frank Annunzio | | 919 |
| Hon. Bruce F. Vento | | 923 |
| Retailer Jewelers of America, prepared statement on behalf by James M. Goldberg, counsel | | 1057 |
| Rice, James N.: | | |
| Prepared statement | | 303 |
| Response to questions of: | | |
| Chairman Frank Annunzio | | 331 |
| Hon. Bruce F. Vento | | 333 |
| Russell, Charles T., prepared statement | | 595 |
| Saul, J. Donald: | | |
| Prepared statement | | 621 |
| Response to questions of: | | |
| Scantlebury, Donald L.: | | |
| Prepared statement | | 759 |
| Response to questions of Chairman Annunzio | | 792 |
| Schultheis, Jeanne: | | |
| Prepared statement | | 876 |
| Response to questions of: | | |
| Chairman Frank Annunzio | | 919 |
| Hon. Bruce F. Vento | | 923 |
| "Summary Card Report and Analysis" | | 890 |

|  | Page |
|---|---|
| Sears, Roebuck & Co., Chicago, Ill., prepared statement on behalf by H. Randy Lively, director of public affairs, General Credit Office | 1016 |
| Spohn, Richard B.: | |
| Prepared statement | 810 |
| Response to questions of: | |
| Chairman Frank Annunzio | 919 |
| Hon. Bruce F. Vento | 922 |
| Taylor, Thomas W.: | |
| Prepared statement | 747 |
| Response to questions of Chairman Annunzio | 791 |
| Texas Consumer Association, Austin, Tex., statement presented by James G. Boyle, executive director | 796 |
| Virginia Citizens Consumer Council, McLean, Va., statement presented on behalf of Patrick Portway, president | 54 |
| VISA U.S.A. Inc., prepared statement on behalf, by Charles T. Russell, executive vice president | 595 |
| Washington Center for the Study of Services, prepared statement on behalf, by Robert M. Krughoff, president | 781 |
| Wood, Peter: | |
| Prepared statement | 1085 |
| Response to questions of Chairman Annunzio | 1112 |
| Zocco, Thomas S.: | |
| Letter to Hon. Chalmers P. Wylie, dated October 3, 1977, giving viewpoints on suggestion of a reserve to cover problems resulting from necessity of immediate crediting of stop-payment transactions in an EFTS environment | 582 |
| Prepared statement | 553 |
| Response to questions of: | |
| Chairman Frank Annunzio | 586 |
| Hon. Chalmers P. Wylie | 582 |

## APPENDIX

### ADDITIONAL MATERIAL SUBMITTED FOR INCLUSION IN THE RECORD

|  | Page |
|---|---|
| Anonymous letter | 1286 |
| Associated Credit Bureaus, Inc., letter dated September 26, 1977, from John L Spafford, president | 1134 |
| Avco Corp., Washington, D.C., letter dated October 4, 1977, from John B. Kelley, vice president | 1262 |
| Baskin, Roberta, consumer unit, WMAQ–TV, Chicago, Ill., statement | 1277 |
| Carte Blanche Corp., Los Angeles, Calif., letter dated September 21, 1977, from Stephen B. Friedman, vice president and general counsel | 1269 |
| Charge Card Association, Detroit, Mich., statement of Leo A. Cooney, president | 1145 |
| General Electric Credit Corp., statement of Philip J. Ryan, associate general counsel | 1271 |
| Interbank Card Association, New York, N.Y., comments of the association re titles I and II of H.R. 8753 | 1184 |
| International Consumer Credit Association, St. Louis, Mo., letter dated September 19, 1977, from James A. Ambrose, secretary-treasurer | 1123 |
| J. C. Penney Co., Inc., statement | 1235 |
| Montgomery Ward & Co., Inc., statement | 1222 |
| Mutual Institutions National Transfer System. Inc., statement | 1170 |
| National Association of Mutual Savings Banks, statement | 1178 |
| National Automated Clearing House Association, Washington, D.C., letter dated September 29, 1977, from Virgil M. Dissmeyer, president | 1156 |
| National Home Furnishings Association, Washington, D.C., statement of William I. Levenson, chairman, Government affairs committee | 1136 |

IX

|  | Page |
|---|---|
| National Savings and Loan League, statement | 1130 |
| Security Pacific National Bank, statement | 1253 |
| Standard Oil Company of California, San Francisco, Calif., letter dated September 16, 1977 from A. J. Alexander general credit manager | 1264 |

Chairman ANNUNZIO. Thank you for your very constructive statement.

I want to remind the other three witnesses that we are under a time limitation. Your full statements will be inserted into the record. I would appreciate your summarizing. When we get through hearing all the witnesses, we will begin our questioning.

Mr. Portway is president of the Virginia Citizens Consumer Council of McLean, Va.

## STATEMENT OF PATRICK PORTWAY, PRESIDENT, VIRGINIA CITIZENS CONSUMER COUNCIL, McLEAN, VA.

Mr. PORTWAY. Thank you, Mr. Chairman.

Today I am speaking as president of the council and also its research foundation. VCCC is a volunteer organization that has existed in Virginia for some 10 years. We achieved some national prominence last year when we won a U.S. Supreme Court case overturning the laws of 34 States prohibiting the advertising of prescription drug prices.

Mr. Chairman, due to the fact that we are a volunteer group, we have the benefit of a number of very technically competent people volunteering their time to assist in studies of consumer issues.

In the area of electronic funds transfer, we have undertaken a year ago a study of the consumer implications of EFT and will be having a seminar, as a matter of fact, in November in cooperation with Virginia Polytechnic Institute on the same subject. From that study we have identified two major things that go throughout EFT and affect every aspect of electronic funds transfer. The first is consumer behavior.

Consumers develop a pattern of activity. They are used to particular things in the marketplace.

When new technology is introduced, it has quite an impact.

We worked with Esther Peterson, when she was at Giant Food stores, on the implementation of UPC, the automation in supermarket checkout stands.

In that case we found that one minor aspect of the automation, the elimination of price marking of individual items, had a very detrimental effect and a shock effect on consumers. They weren't able to follow their typical patterns.

We see this same problem in EFT as the new technology is introduced and the paper audit trail is eliminated. The consumer feels unsure. He doesn't have proof of payment. He no longer has a statement he understands. I can give you some very concrete examples of this as I complete the statement.

This second major thing that runs throughout is what we have called the concept of the "electronic signature." The fact that once the consumer joins the system he really sacrifices his signature authority and turns it over to a code, a coded number, a personal identification number, a PIN number. Once he does that all the authority of his signature is in that number. That number being a code can be written down on a slip of paper and lost. Unfortunately a number of consumers write it on their debit card directly and lose both. It can be inadvertently disclosed. All these aspects of the PIN number create

55

problems. Maybe I can combine an example of the need for the documentation and the aspects of the PIN number in a specific case of a consumer from Virginia whose son was at GW University.

He was careless with his debit card. He lived with other students in an apartment. He was also careless with his PIN number, identification number. At the end of the semester, he found that when he wrote his check for his tuition, he was $700 overdrawn. Now he went back over his own personal records of his transactions and he couldn't find any reason for being overdrawn $700. On the basis of the bank statements he had been provided, he was unable to track the transactions. They gave date and amount, but really didn't give him any bases on which to figure out what the transaction was. He was unable to identify where the transaction took place, to be sure that it was at a terminal that he normally used.

To sum it up, that student spent the summer working instead of going to class as he had planned to recover the $700 for his family.

The experiences that we have in Virginia I think may be similar to many other States. We currently have a banking operation in Virginia that is offering—like this advertisement, a free Big Mac for anyone who will come in and try their EFT terminal. I use this as an example of the kind of promotion that the banking community is using. Terminals shaped like cookie jars. You pick it. There are all sorts of marketing techniques being used. These high pressure techniques would be bad enough if the consumer understood what he was getting involved in.

Clearly consumers as many studies have documented, do not understand financial transactions let alone the electronic systems that now enable them to carry out those transactions from a remote terminal, a very unfamiliar technology.

To get to the point of the bill, I happen to believe that the bill answers a number of serious questions that we have brought up in our studies. No. 1, the requirement for an agreement between the bank and the consumer, a very clear agreement where the consumer realizes the differences between a credit card and a debit card. Very few consumers realize these differences today.

In fact, in most seminars that we have run, the consumer could not identify any difference. For example, he was not aware he did not have the protection of the $50 limitation on credit cards. So the agreement is important.

The reporting, the thorough monthly statements, in order to be able to track transactions is extremely important.

In the limitation of liability area, let me again, if I might, give you a short story to illustrate the importance of this.

In Virginia we worked with the State banking commissioner, the previous State banking commissioner, in writing the EFT regulations for our State about a year ago. Those regulations unfortunately include some things that we do not agree with. We see a definite need for Federal standards for State regulations. We are not as fortunate as the State of Wisconsin, where Jim Brown comes from, which has a very good set of regulations. Ours do not provide for reversibility. Our regulations in the area of limitational liability limit the consumers' liability to $50, but it includes a statement with regard to

negligence, and this is an area that pops up in many of the State EFT regulations. Although they limit liability to $50, it states if the consumer is negligent, then he is liable for the total amount or leaves a question of liability open.

I think we can assume that—or at least in my conversation with our banking commissioner, he felt that if a consumer had written his PIN number on his debit card, it would be a case of clear negligence.

In conversations I have had with staff members of the national commission, they have indicated they would also consider that negligence. I think we can be sure that as long as we are using codes as the identification, the consumer is going to write that code down somewhere. It is going to be on a slip of paper in his wallet. It is going to be on the debit card, one or the other.

Our banking commissioner felt—and in conversations with the Comptroller of the Currency's staff, we got the same response with regard to liability, that the banks would not hold the consumer liable because it would destroy the marketability of EFT if they did.

We tend to agree that that is probably true today for small amounts, but there is a serious question about what happens in very large computer thefts, and there have been a number of very large computer thefts.

MITRE Corp., Steve Lechner, in his study documented over 300 incidents of computer theft. Most of those thefts, which amounted to about $150 million, occurred because people had access to the computer directly. It was not by electronic means, but it is clearly possible for thefts to be carried out electronically, and in fact, I have attached to my testimony the text of a notice sent out by the Federal Reserve about a $2-million bogus wire transfer that was attempted recently between an east and west coast bank, a bogus electronic transmission of funds.

Mr. Chairman, it is possible, technically possible, to structure such bogus transfers to include the deduction from a large number of accounts thus resulting in a number of consumers maybe missing a very small amount of money out of each account and to accumulate one large theft.

It is estimated in the technical community that in order to penetrate any system that has communications attached to it takes anywhere from a half hour to 3 days of effort.

It is because of the risks that limitation of liability in the bill is extremely important. The burden of liability should rest with the banking community if it intends to offer the service.

With regard to a few other provisions, section 810 on unsolicited cards. This is what brought EFT to our attention in the beginning, consumers calling our complaint line saying that they had received "credit cards" unsolicited through the mail. Of course they were debit cards but they did not know the difference.

Also, the practice of extending credit to a card once it has been mailed, a debit card, can be mailed unsolicited under current regulations, but there is nothing to preclude the bank from extending a line of credit to make it useful after it is in the hands of the consumer, thus bypassing existing regulations.

To conclude, before my appearance today, my testimony was challenged by another consumer leader on why we were supporting this particular bill prior to the national commission submitting their re-

57

port. It is our feeling that many of the issues attacked in this particular bill are very clear consumer issues. They balance off the EFT card with the credit card and extend the same protection to the consumer for limitation of liability, et cetera.

It is for that reason that my organization felt it was important that problems with the current systems be treated while the technology is evolving. We can't leave the consumer exposed while the technology evolves to potentially improved systems. We need this level of protection now.

Mr. Chairman, we appreciate your introduction of the bill. Thank you.

[The prepared statement of Mr. Portway, on behalf of the Virginia Citizens Consumer Council, along with the referred-to Federal Reserve notice regarding a $2 million bogus wire transfer of funds, follow:]

TESTIMONY BEFORE UNITED STATES HOUSE COMMITTEE
ON BANKING, FINANCE AND URBAN AFFAIRS
SUBCOMMITTEE ON CONSUMER AFFAIRS

GOOD MORNING. MY NAME IS PATRICK PORTWAY AND I AM APPEARING AS PRESIDENT OF THE VIRGINIA CITIZENS CONSUMER COUNCIL (VCCC) AND ITS RESEARCH AND EDUCATION FOUNDATION, THE VIRGINIA CITIZENS CONSUMER FOUNDATION. THE VIRGINIA CITIZENS CONSUMER COUNCIL IS A GRASS ROOTS CONSUMER ORGANIZATION OPERATING STATEWIDE IN THE STATE OF VIRGINIA, WITH CHAPTERS IN ALL OF VIRGINIA'S MAJOR CITIES. THE ORGANIZATION IS TEN YEARS OLD. IT ACHIEVED NATIONAL PROMINENCE LAST YEAR WHEN IT WON A U.S. SUPREME COURT CASE OVERTURNING LAWS IN 34 STATES WHICH PROHIBITED THE ADVERTISING OF PRESCRIPTION DRUG PRICES.

VCCC HAS NO PAID STAFF. AS AN ALL VOLUNTEER GROUP, WE ENJOY THE BENEFIT OF A NUMBER OF VERY TECHNICALLY SKILLED PEOPLE WHO VOLUNTEER THEIR TIME ON SIGNIFI-CANT CONSUMER PROBLEMS. WE CONSIDER IT AN HONOR TO HAVE BEEN ASKED TO TESTIFY ON THE "ELECTRONIC FUNDS TRANSFER ACT."

IN THE FIELD OF ELECTRONIC FUNDS TRANSFER, WE ANNOUNCED IN THE AUGUST ISSUE OF THE CONSUMER FEDERATION OF AMERICA'S NEWSLETTER THAT VCCC WILL SERVE AS A NATIONWIDE CLEARING HOUSE FOR CONSUMER COMMENT AND PROBLEMS WITH ELECTRONIC FUNDS TRANSFER. IN NOVEMBER, IN COOPERATION WITH THE VIRGINIA POLYTECHNIC IN-STITUTE AND STATE UNIVERSITY, WE WILL HOST A TWO-DAY SEMINAR ON THE CONSUMER IMPLICATIONS OF ELECTRONIC FUNDS TRANSFER. THE SEMINAR IS INTENDED TO KICK-OFF A SIX-MONTH STUDY OF EFT FROM THE CONSUMER PERSPECTIVE. VCCC HAS BEEN INVOLVED IN WORK ON EFT AND EFT REGULATIONS WITHIN OUR OWN STATE FOR OVER A YEAR. IT'S ON THE BASIS OF THIS EXPERIENCE THAT WE ARE TESTIFYING TODAY.

BEFORE I GET INTO DETAILS OF THIS PARTICULAR BILL, I'D LIKE TO MAKE TWO POINTS THAT AFFECT ALL ASPECTS OF ELECTRONIC FUNDS TRANSFER. NO. 1: CONSUMER

BEHAVIOR. IT'S OFTEN OVERLOOKED WHEN NEW TECHNOLOGY IS INTRODUCED INTO THE MARKETPLACE THAT CONSUMERS HAVE, BY TRAINING AND EXPERIENCE, DEVELOPED A PATTERN OF ACTIVITIES WHICH ARE VERY DIFFICULT TO CHANGE OR RETRAIN. OUR SOCIETY IS VERY PAPER-ORIENTED, FOR EXAMPLE. A CONSUMER IS ACCUSTOMED TO HAVING A CAN-CELLED CHECK FROM THE CURRENT FINANCIAL SYSTEM AS A RECEIPT, AS A PROOF OF PAYMENT, AS A RECORD OF A TRANSACTION, AS A REMINDER, AS A CONVENIENT MEANS OF COMMUNICATION BETWEEN HIMSELF AND THE BANK. SOME OF THE CURRENT EFT SYSTEMS ELIM-INATE THIS FAMILIAR PAPER AUDIT TRAIL FOR THE CONSUMER IN HIS OR HER PERSONAL RECORD-KEEPING. IN THIS REGARD, NEITHER THE INDUSTRY NOR THE GOVERNMENT SHOULD UNDERESTIMATE THE IMPACT OF ATTEMPTS TO CHANGE CONSUMER BEHAVIORAL PATTERNS. TO CITE A RECENT EXAMPLE, MY ORGANIZATION WORKED VERY CLOSELY WITH ESTHER PETERSON, NOW CONSUMER ADVISOR TO PRESIDENT CARTER, WHEN SHE WAS WITH GIANT FOOD STORES WHEN THEY WERE IMPLEMENTING THE UNIVERSAL PRODUCT CODE (UPC), THE AUTOMATION OF THE SUPERMARKET CHECKOUT SYSTEMS. UPC WAS AN EXCELLENT EXAMPLE TO ILLUSTRATE THE POTENTIAL PROBLEMS IN INTRODUCING NEW TECHNOLOGY. IN THE UPC EXPERIENCE, WE VERY STRONGLY POINTED OUT THAT ELIMINATION OF INDIVIDUAL ITEM PRICING WHICH WAS PART OF THEIR EARLY INTRODUCTION OF THE UNIVERSAL PRODUCT CODE, WOULD NOT BE ACCEPTED BY THE CONSUMER DUE TO BEHAVIORAL PATTERNS BUILT UP OVER YEARS OF SUPERMARKET SHOPPING. IN FACT WE WERE SUSTAINED IN THAT VIEW AS MANY STATES IN RESPONSE TO CONSUMER COMPLAINTS, PASSED LEGISLATION REQUIRING INDIVIDUAL PRICING OF ITEMS. A NUMBER OF SIMILAR PROBLEMS WITH EFT ARE EVIDENT NOW.

THE SECOND GENERAL POINT IS WITH REGARD TO THE CONCEPT OF THE ELECTRONIC SIGNATURE. IT'S INTERESTING THAT THROUGHOUT THIS BILL IT IS REPEATEDLY STATED THAT AUTHORIZATIONS MUST BE SIGNED BY THE CONSUMER. SIGNATURE AUTHORIZATION IS AN INTEGRAL PART OF THE LEGAL, BUSINESS, AND COMMUNICATION SYSTEM OF OUR COUNTRY. IN THE CASE OF EFT A PIN NUMBER, A PERSONAL IDENTIFICATION NUMBER, IS SUBSTITUTED

60

FOR THE SIGNATURE AND BECOMES AN ELECTRONIC SIGNATURE, AN ELECTRONIC AUTHORIZA-
TION, A PERSONAL AUTHORIZATION WHICH SUBSTITUTES FOR THE SIGNATURE. WHEN THE
CONSUMER JOINS IN SUCH A SYSTEM HE SURRENDERS SIGNATURE AUTHORITY TO A CODE
AND A TEN-YEAR-OLD CAN TELL YOU THAT CODES CAN BE BROKEN, CODES CAN BE IN-
ADVERTENTLY DISCLOSED TO OTHERS, CODES CAN BE WRITTEN DOWN ON A PIECE OF PAPER
AND LOST. IN EFFECT, LOSING ONE'S SIGNATURE AND ALL THE AUTHORITY, ALL THE
CONTROL THAT HAS BEEN NORMALLY ASSOCIATED WITH ONE'S PERSONAL SIGNATURE.

WITH THOSE TWO POINTS IN MIND I'D LIKE TO DISCUSS SOME SPECIFIC POINTS IN
THE BILL. SECTION 803 WITH REGARD TO AGREEMENTS. THE IMPORTANCE OF AN UNDER-
STANDABLE AGREEMENT BETWEEN THE BANK AND THE CONSUMER IS EXTREMELY IMPORTANT.
FEW CONSUMERS REALIZE THE SIGNIFICANT DIFFERENCES CURRENTLY INVOLVED IN THE USE
OF A DEBIT CARD VERSUS THE USE OF A CREDIT CARD. AND RIGHTFULLY SO BECAUSE IN
MANY CASES THE CARDS ARE THE SAME; BUT IN SOME CASES THEY ARE SIMPLY A DEBIT
CARD AND DO NOT HAVE THE PROTECTIONS THE CONSUMER IS ACCUSTOMED TO HAVING WITH A
CREDIT CARD. THE AGGRESSIVE MARKETING EFFORTS OF THE BANKING COMMUNITY; TERMINALS
ENCLOSED IN GIANT COOKIE JARS, ADVERTISEMENTS LIKE THE ONE HERE FROM A VIRGINIA
BANK OFFERING A FREE "BIG MAC" IF YOU COME AND TRY THEIR EFT TERMINAL, ARE
ORIENTED AROUND MARKETING THE SERVICE NOT EDUCATING THE CONSUMER ABOUT THE SYSTEMS
HE IS BECOMING INVOLVED IN. THE BANKING COMMUNITY HAS EMPHASIZED THAT EFT IS NOT
NEW, IT'S SIMPLY THE AUTOMATION OF TRADITIONAL BANKING TRANSACTIONS, BUT I WOULD
SUPPORT STATEMENTS BY RICHARD J. FRANCIS, COMMISSIONER, MICHIGAN FINANCIAL
INSTITUTION, IN HIS STUDY OF CONSUMERS THAT "THE CONSUMER DOES NOT UNDERSTAND
FINANCIAL TRANSACTIONS," LET ALONE THE NEW TECHNOLOGY THAT ALLOWS HIM TO CARRY
OUT THOSE TRANSACTIONS FROM A REMOTE TERMINAL.

THIS BILL WOULD GO A LONG WAY TOWARDS ELIMINATING SOME OF THE DIFFERENCES
BETWEEN CREDIT CARDS AND DEBIT CARDS IN TERMS OF THE PROTECTION AFFORDED THE

# Next week:

Cash Flow 〰 tellers offer 🖼 free demonstrations, and a coupon for McDonald's. two all beef 🍔 patties, special sauce, lettuce, 🧀 cheese, pickles and onions on a sesame 🍞 seed bun. If you've wanted to learn how easy electronic banking is, come spend a minute with us and leave with a coupon good for a free Big Mac at a participating McDonald's in Northern Virginia. If you have a Cash Flow card, it's also a great time to learn how it works, or to replace a misplaced card or identification number. Drop by. Demonstrators will be waiting. And in no time you'll get the knack. And the Big Mac. On us.

※ VIRGINIA NATIONAL BANK

Demonstration hours: 11-7 Mon.-Fri., 9-12 Sat. at 3101 Columbia Pike and 2201 Wilson Blvd., Arlington • 4305 Washington, Yorktowne Center, and Seven Corners, Falls Church • 6216 Rolling Road, Springfield • 11956 Jefferson Davis Highway, Woodbridge. • 8 Mon.-Sun. at Springfield Mall • Washington National Airport • Linkwood Apartments, 1995 Van Dorn, Alexandria • Days Drive at Fair City Mall, Fairfax, and 7654 Richmond Highway, Alexandria. • 8-5 Mon.-Fri. at Reynolds Building, 1201 First Mere Road, Rosslyn • Pentagon, South Concourse. Regular Commissary hours at U.S. Marine Corps Commissary, Quantico. • Limit one per adult.

Figure 1.   Ad in Northern Virginia newspaper, May 12, 1977.

CONSUMER AND THAT IS A VERY POSITIVE STEP FORWARD. BUT IT IS STILL IMPORTANT THAT ADEQUATE CONSUMER EDUCATION BE INCLUDED WITH THE PROVISION OF A CARD TO ACCESS THE CONSUMER'S ACCOUNT. THE TERMS UNDER SECTION 803 PROVIDE FOR A CLEAR DEFINITION OF THE RELATIONSHIP BETWEEN A BANK AND A CONSUMER IN THE EFT SYSTEM.

UNAUTHORIZED TRANSFER OF FUNDS AND LIABILITY WITH REGARD TO THOSE UNAUTHORIZED TRANSFERS. FIRST OF ALL, LET'S MAKE IT CLEAR THAT A LARGE NUMBER OF COMPUTER THEFTS HAVE ALREADY OCCURRED. THE MITRE CORPORATION, IN A STUDY BY STEVE LIPNER, HAS DOCUMENTED OVER 300 INCIDENTS OF COMPUTER THEFT AMOUNTING TO OVER $150,000,000. MOST OF THESE THEFTS INVOLVED PEOPLE WHO HAD ACCESS TO THE COM-PUTER ITSELF IN THE CENTRAL BANK. BUT ELECTRONIC THEFTS HAVE OCCURRED ALSO. ONE SPECIFIC CASE, WAS THE ATTEMPT TO STEAL $2 MILLION DOLLARS VIA A BOGUS WIRE TRANSFER (SEE ATTACHMENT) JUST RECENTLY. AN IMPORTANT THING TO REALIZE IS THAT SUCH TRANSFERS CARRIED OUT BY SOPHISTICATED THIEVES CAN INCLUDE NOT ONLY THE DIVERTING OF FUNDS FROM ONE BANK TO ANOTHER BUT CAN ALSO INCLUDE A FALSE AUDIT TRAIL TO SHOW THAT THE FUNDS WERE TRANSFERRED TO OTHER ACCOUNTS FROM THE ONE IT REALLY WENT TO. SUCH A DECEPTION COULD CONCEIVABLY INVOLVE SMALL AMOUNTS FROM LARGE NUMBER OF CONSUMER ACCOUNTS. THE POTENTIAL CREATES A NEED TO LIMIT THE LIABILITY OF THE CONSUMER FOR SUCH SOPHISTICATED THEFTS AS WELL AS LOST OR STOLEN CARDS. THE $50 LIMITATION OF LIABILITY HAS BEEN ACCEPTED FOR THE CREDIT CARD AND HAS BECOME PART OF WHAT A CONSUMER ASSUMES ABOUT ANY PLASTIC HE USES. IT'S IMPORTANT THAT WE MAINTAIN THAT SAME LIMITATION OF LIABILITY WITH REGARD TO EFT CARDS.

IN THE CASE OF MY OWN STATE AND MANY OTHER STATES, REGULATIONS HAVE LIMITED LIABILITY TO $50, BUT THEY CONTAIN A NEGLIGENCE CLAUSE WHICH LEAVES THE CONSUMER LIABLE FOR GREATER AMOUNTS SHOULD HE BE NEGLIGENT IN THE USE OF HIS EFT CARD. I ASKED MY STATE BANKING COMMISSIONER TO DEFINE NEGLIGENCE FOR ME. HE WAS REALLY

UNABLE TO DO IT. AND I THINK IT WOULD BE DIFFICULT UNLESS SPECIFICALLY SPELLED OUT, WHAT CONSTITUTED NEGLIGENCE. FOR EXAMPLE, WOULD IT CONSTITUTE NEGLIGENCE TO WRITE YOUR PIN NUMBER ON YOUR DEBIT CARD? CERTAINLY MOST BANKS WOULD THINK SO. THE BANKING COMMISSIONER IN VIRGINIA THEN STATED IN OUR CONVERSATION THAT A BANK WOULD NEVER HOLD A CONSUMER LIABLE BECAUSE IT WOULD DAMAGE THE MARKETABILITY OF THE SERVICE IF THE PRESS PUBLICIZED THE FACT THAT THE CONSUMER WAS HELD LIABLE. WE CONSIDER THAT A VERY WEAK ARGUMENT BECAUSE IT MIGHT CERTAINLY BE THE CASE IN TERMS OF A TRIVIAL AMOUNT SUCH AS $50, BUT WHAT ABOUT $5,000 OR $50,000? WOULD THE BANK WEIGH THE COST OF HOLDING THE CONSUMER LIABLE VERSUS THE MARKETING COSTS? WE THINK THEY WOULD.

THE OTHER POINT THAT OUR BANKING COMMISSIONER MADE WAS THAT THE CONSUMER COULD DENY THAT HE WROTE HIS NUMBER ON HIS DEBIT CARD AND THE BANK COULD NOT PROVE IT, ILLUSTRATING THE LACK OF TECHNICAL KNOWLEDGE BY MANY OF OUR STATE REGULATORY AGENCIES WITH REGARDS TO EFT TECHNOLOGY BECAUSE IN MOST CASES ONCE A CARD HAD BEEN IDENTIFIED AS LOST, THE CARD WOULD BE CAPTURED BY THE AUTOMATED TELLER MACHINE, THE ATM, IN THE NEXT TRANSACTION, THUS CAPTURING THE CARD AND THE PIN NUMBER TOGETHER, CONSTITUTING PROOF OF NEGLIGENCE ON THE PART OF THE CONSUMER. I GIVE THIS ILLUSTRATION BECAUSE VIRGINIA'S BANKING COMMISSIONER IS A VERY QUALIFIED BANKING REGULATOR BUT HE IS NOT A TECHNICIAN; NOR DOES HE UNDER-STAND EFT AND I FEAR THAT MANY STATE BANKING REGULATORS ARE IN THE SAME POSITION.

FEDERAL GUIDELINES ARE NEEDED TO ESTABLISH A MINIMUM FOR STATE REGULATION OF EFT.

THE LIMITATION OF LIABILITY AT $50 OF COURSE IS NOT ENOUGH EITHER. IT IS ALSO NECESSARY TO HAVE THE RECORD OF THE TRANSACTIONS WHICH IS ADDRESSED ON PAGE 7 OF THE BILL ALONG WITH THE MONTHLY STATEMENTS. THIS WHOLE PAPER AUDIT TRAIL IS

VITAL TO THE CONSUMER. LET ME GIVE YOU A CASE IN ORDER TO ILLUSTRATE THE IMPOR-
TANCE. WE HAD A SITUATION WHERE A STUDENT AT GEORGE WASHINGTON UNIVERSITY WAS
LIVING IN AN APARTMENT WITH OTHER STUDENTS, HAD A DEBIT CARD, WROTE HIS PIN
NUMBER ON A SLIP OF PAPER, LEFT THE SLIP OF PAPER LYING ABOUT THE APARTMENT,
ALONG WITH HIS DEBIT CARD. SO HE WAS CARELESS WITH HIS DEBIT CARD AND HIS
ELECTRONIC SIGNATURE, HIS PIN NUMBER. AS A RESULT AT THE END OF THE SEMESTER,
WHEN HE WROTE A CHECK FOR HIS TUITION, HE WAS NOTIFIED HE HAD OVERDRAWN HIS
ACCOUNT BY $700. ACCORDING TO HIS RECORDS, HE SHOULD HAVE HAD SUFFICIENT FUNDS
TO COVER THE CHECK. HIS TRANSACTION RECORDS FROM THE BANK PROVIDED HIM THE
INFORMATION OF DATE AND AMOUNT, NOT LOCATION, NOR THE TYPE OF TRANSFER INVOLVED,
AND HE WAS UNABLE TO CLEARLY PROVE THAT THESE WERE NOT HIS TRANSACTIONS. SO HE
ASSUMED THE RESPONSIBILITY FOR $700 AND PAID IT OFF. HE WORKED THAT SUMMER INSTEAD
OF GOING TO SCHOOL AS HE HAD PLANNED. THE POINT IS, ONCE YOU SURRENDER YOUR SIG-
NATURE TO AN ELECTRONIC NUMBER, IT'S VERY DIFFICULT FOR SOMEONE WHO DOESN'T KEEP
VERY CAREFUL RECORDS TO PROVE THAT A TRANSACTION WAS CARRIED OUT BY HIM OR BY
SOMEONE ELSE. TECHNOLOGY MAY COME ALONG THAT WILL SOLVE THIS PROBLEM IN THE
FUTURE TO GIVE US MORE SPECIFIC IDENTIFICATION SYSTEMS; FINGERPRINT IDENTIFICATION,
VOICE PRINT IDENTIFICATIONS, OTHER APPROACHES. BUT YOUR BILL IS TIMELY IN THAT IT
CLEARLY STATES FOR THE TIME BEING, FOR THE CURRENT STATE OF THE ART, THAT
LIABILITY WILL BE THE BURDEN OF THE BANK.

THE NEXT POINT I WANT TO TREAT IS REVERSIBILITY. ALTHOUGH STOP PAYMENT IS
USED VERY SELDOM BY CONSUMERS, IT IS A VITAL TOOL IN THE HANDLING OF DISPUTES.
UNDER POINT OF SALE EFT SYSTEMS, THE TRANSFER OF FUNDS IS INSTANTANEOUS AND THE
CONSUMER LOSES THE ABILITY THAT HE HAD IN THE CHECKING SYSTEM OF STOPPING PAYMENT
WHEN A DISPUTE DEVELOPS OVER THE QUALITY OF A PRODUCT OR SERVICE HE RECEIVED.
IT'S BEEN RECOGNIZED IN THE DIRECT SALES FIELD THAT ONCE THE THREE-DAY COOLING

65

OFF PERIOD WAS ESTABLISHED FOR DOOR-TO-DOOR SALES THAT THE NUMBER OF CONSUMER COMPLAINTS ABOUT DIRECT SALES DECLINED THROUGHOUT THE COUNTRY. CONSUMER SATIS-FACTION DIDN'T CHANGE. IT SIMPLY PROVIDED THE CONSUMER A MEANS OF RESOLVING AN ISSUE WHICH TURNED OUT TO BE A BENEFIT TO THE DIRECT SELLING INDUSTRY AS WELL AS TO THE GENERAL PUBLIC. (ALTHOUGH IT CLEARLY WASN'T PERCEIVED THAT WAY BY THE INDUSTRY AT THAT TIME.) WE BELIEVE THE SAME WILL BE TRUE IN EFT. THE PROVISION OF REVERSIBILITY IN AN EFT SYSTEM WILL TURN OUT IN THE LONG RUN TO BE A MINOR PROBLEM TO THE INSTITUTIONS BUT A SIGNIFICANT RELIEF FOR THE CONSUMER AND THE INDUSTRY IN THOSE CASES WHERE A DISPUTE DEVELOPS.

WITH REGARDS TO SECTION 810 ON PAGE 17 OF THE BILL, UNSOLICITED CREDIT CARDS, ONE OF THE FIRST THINGS THAT BROUGHT EFT TO THE ATTENTION OF MY ORGANI-ZATION WERE COMPLAINTS FROM CONSUMERS THAT THEY HAD RECEIVED UNSOLICITED CREDIT CARDS IN THE MAIL. UPON INVESTIGATION, WE FOUND THAT WHAT THEY ACTUALLY HAD RECEIVED WAS DEBIT CARDS FROM THE BANK WITH WHICH THEY CURRENTLY HAD AN ACCOUNT, (WHICH INCIDENTALLY IS IN ACCORDANCE WITH THE EFT GUIDELINES OF THE COMPTROLLER OF THE CURRENCY), ILLUSTRATING AGAIN THE CONFUSION THAT CONSUMERS HAVE BETWEEN DEBIT CARDS AND CREDIT CARDS AND THE NECESSITY TO MAKE PROTECTION FOR BOTH EQUIVALENT.

THE FEDERAL RESERVE IS CURRENTLY CONSIDERING REMOVAL OF THE RESTRICTION ON UNSOLICITED MAILING OF CREDIT CARDS, BASED ON A BELIEF THAT THE LIMITATION OF LIABILITY IS SUFFICIENT. WE REMIND THE FEDERAL RESERVE AND MEMBERS OF THIS COMMITTEE THAT $50 LIMITATION OF LIABILITY MAY BE SUFFICIENT FOR SOME, BUT $50 IS A SIGNIFICANT AMOUNT IN MANY A HOUSEHOLD BUDGET. THE POINT MADE ON PAGE 18 OF THE BILL ADDRESSES A POTENTIAL ABUSE, WHICH HAS CONCERNED US ABOUT THE CURRENTLY PERMISSABLE PRACTICE OF MAILING UNSOLICITED DEBIT CARDS. IT'S QUITE

66

EASY FOR THE BANK, AFTER MAILING AN UNSOLICITED DEBIT CARD, TO GRANT A LINE OF CREDIT FOR USE WITH THAT DEBIT CARD, THUS EVADING CURRENT RESTRICTIONS ON THE MAILING OF UNSOLICITED CREDIT CARDS.

LET ME CONCLUDE BY MAKING ONE FINAL STATEMENT. I WAS CHALLENGED BY A LEADER IN THE CONSUMER FIELD AS TO THE APPROPRIATENESS OF THIS BILL BEING INTRO-DUCED AT THIS PARTICULAR TIME, QUESTIONING WHETHER OR NOT IT WAS PREMATURE SINCE THE NATIONAL COMMISSION ON ELECTRONIC FUNDS TRANSFER HAS NOT YET SUBMITTED THEIR FINAL REPORT. MR. CHAIRMAN, MEMBERS OF THE COMMITTEE, SOME OF THE ISSUES RESOLVED BY THIS BILL DON'T REALLY REQUIRE A GREAT DEAL OF STUDY. IT'S CLEAR THAT THE TECHNOLOGY WILL CONTINUE TO EVOLVE AND THAT NEW IMPROVED SYSTEMS MAY ELIMINATE SOME OF THE PROBLEMS BUT IT IS IMPORTANT THAT WE TREAT THE CURRENT PROBLEMS PROMPTLY TO PROTECT THE CONSUMER DURING THIS PERIOD OF EVOLUTION. IT'S FOR THAT REASON THAT I STRONGLY SUPPORT, AND MY ORGANIZATION STRONGLY SUPPORTS, THIS LEGISLATION.

## CRIMES—OFFENSES

**[¶ 95,572] Deposits of Fraudulent Checks—Bogus Wire Transfers. Board of Governors** of the Federal Reserve System. Letter in full text.

**Fraudulent Checks—Bogus Wire Transfers—Careful Review.—**Banks are being victimized by persons depositing fraudulent checks or by bogus wire transfers of funds. A careful review of large deposits made to recently opened accounts, particularly when cash withdrawals or certified checks are requested, may be advisable. The validity of large wire transfers should be reviewed carefully. Back references: ¶ 11,463.

### TO PRESIDENTS OF ALL STATE MEMBER BANKS

Information recently received reveals that banks are being victimized by persons depositing fraudulent checks or by bogus wire transfers of funds. These checks, normally drawn in large amounts upon reputable large corporations, are deposited to the account of the payee and no attempt is made to withdraw funds until 10 days or more after deposit. The quality of the forgeries is so good that perpetrators of this fraud are apparently confident the forgeries will not be detected.

A careful review of large deposits made to recently opened accounts, particularly when cash withdrawals or certified checks are requested, may be advisable.

A recent situation involves an instance where a $2 million wire transfer (with valid code) was sent from a bank on the West Coast to a bank on the East Coast. The transfer was for a company account recently opened in a branch of another East Coast bank. An apparently normal cash withdrawal transaction was made and a wire transfer to a different East Coast bank was requested. It was intended that a cash withdrawal be made from the last bank, but that was stopped by law enforcement agencies. The validity of large wire transfers should be reviewed carefully.

Chairman ANNUNZIO. Thank you, Mr. Portway, for an excellent statement. I want to really commend your group, because I noticed in the statement that the Virginia Citizens Consumer Council has no paid staff.

Mr. PORTWAY. That is correct, Mr. Chairman.

Chairman ANNUNZIO. You are all volunteers. I commend you for the great effort that you are making on behalf of the consumer.

The next witness is Linda Joy, executive director, Michigan Consumer Council.

Ms. Joy, you can proceed in your own way. You may summarize your statement.

### STATEMENT OF LINDA JOY, EXECUTIVE DIRECTOR, MICHIGAN CONSUMERS COUNCIL, LANSING, MICH.

Ms. JOY. Thank you, and good morning. I am Linda Joy, executive director of the Michigan Consumer Council.

Mr. Chairman, we are very pleased to be here this morning and have this opportunity to speak with you and the members of your subcommittee.

The consumers council includes three members appointed by the Governor, three members appointed by our legislature, and the other three include the secretary of state, the attorney general, and the director of the Department of Commerce.

Some of the problems with regard to electronic banking have been outlined already this morning and I know many of you are familiar with them, so I want to go directly to my comments on this particular bill.

I offer these comments for your consideration first with regard to written agreements. Section 803 of the bill would require financial institutions to give consumers certain information before entering into an electronic funds transfer agreement.

For most consumers, gaining access to their accounts with the use of an electronic impulse is a new and frequently confusing experience. Unlike checks, which are readily recognized substitutes for cash and are treated uniformly under the UCC, consumer electronic purchase and transfer transactions are still being refined in many parts of the country.

Each financial institution may have its own terms and conditions for its electronic funds transfer system. This could lead to numerous misunderstandings between the provider of the service and the user. Requiring a written statement which clearly outlines both parties' rights and responsibilities would help alleviate some problems.

I would like to recommend, however, that the subcommittee add the name and address of the regulatory authority to the list of disclosures. Consumers would then know where to go for assistance in dealing with their financial institutions.

It is important consumers know their rights, but a right without a remedy is meaningless. Far too often, consumers know something is wrong, but they don't know what to do about it. If the proper regulatory authority were clearly identified on the written agreement, given to every consumer, two worthwhile purposes could be served.