# EXHIBIT E

*NJ Law Revision Commn. Annual Report, 1990*

*Appendix C*

# REPORT AND RECOMMENDATIONS

# CONCERNING UNIFORM COMMERCIAL CODE ARTICLE 4A

# "FUNDS TRANSFERS"

NEW JERSEY LAW REVISION COMMISSION
15 Washington Street
Newark, New Jersey 07102
(201)648-4575
October, 1990

## INTRODUCTION

The National Conference of Commissioners on Uniform State Laws and The American Law Institute have approved a new Article to the Uniform Commercial Code entitled Article 4A "Funds Transfers." The New Jersey Law Revision Commission, pursuant to its authority to review uniform state laws, undertook an examination of Article 4A to determine whether it should be adopted in the State of New Jersey. The Commission recommends that the legislature adopt Uniform Commercial Code Article 4A Official Text 1989. Concurrently, the Commission recommends that the Permanent Editorial Board of the Uniform Commercial Code consider an amendment requiring banks to inform customers who make funds transfers of the risk of loss applicable to those transactions.

Article 4A governs "funds transfers" made through the banking system and allocates the risk of loss between the parties. The Article primarily governs wholesale funds transfers which are transfers of large amounts of money normally made by commercial enterprises. The average size of a payment made through FedWire, a wire service operated by the Federal Reserve Board, was 3.1 million dollars in 1989.[1] The average size of a payment made through the Clearing House Interbank Payments System (CHIPS), a privately operated wire service, was 5.2 million in 1989. The total amount of money transferred through FedWire and CHIPS that year was 373 trillion dollars. Commercial parties obviously are the primary users of funds transfer systems and Article 4A is tailored to reflect banking and commercial practices.

While most funds transfers subject to Article 4A involve large commercial enterprises and large dollar amounts, 25% of all funds transfers are less than $10,000 dollars. It is not clear what percentage of this 25% consists of consumer transactions.[2] But consumer funds transfers involving more than one bank are likely to be made through a wire service system. Since Article 4A applies to all transactions, whether commercial or consumer, that are processed through a wire service system, Article 4A may govern some consumer transactions. In addition, Article 4A applies to some consumer transactions processed through an automated clearing house.[3]

New Jersey lacks a comprehensive statute or body of case law to establish rules for funds transfers. The Electronic Fund Transfer Privacy Act, the only relevant New Jersey law, protects the privacy of consumer electronic funds transfers.[4] Adoption of Article 4A thus would not displace existing law and would provide the commercial community with a system of rules to govern a new, and popular, method of payment. However, certain aspects of Article 4A are new to New Jersey law. Under Article 4A, the customer in a funds transfer bears a slightly greater risk of loss for an unauthorized payment order than a drawer of a check bears for an

---

[1] For a discussion of the major wire systems see Scott, Corporate Wire Transfers and the Uniform New Payments Code, 83 Colum. L.Rev. 1664, 1669-1674 (1983). The statistics cited for FedWire and CHIPS are available from the Federal Reserve Board.

[2] Research indicates that statistics for consumer transactions processed through wire service systems are not available.

[3] 12 C.F.R. 205.3(g).

[4] N.J.S. 17:16K-1 et seq.

unauthorized signature.[5] Nor does Article 4A allow the recovery of consequential damages for miscarried funds transfers whereas Article 4 allows the recovery of consequential damages proximately caused by the wrongful dishonor of checks by a payor bank.[6]

Commercial parties can protect themselves from the consequences of these new rules because they have the bargaining power to negotiate agreements with their banks. However, consumers who lack equivalent bargaining power may be adversely affected by the Article 4A rules because these rules are new and Article 4A does not require a customer to be notified of them. A consumer might be led to believe incorrectly that the rules of negotiable instruments govern the funds transfer transaction. While the slightly increased risk of loss the customer bears in funds transfers is justified by the nature of the transaction, it might be preferable if Article 4A contained a requirement that banks notify customers of the risk of loss rules, especially the no-consequential damage rule for miscarried funds transfers.

This Final Report summarizes the Commission's analysis of Article 4A. The Commission examined how adoption of Article 4A would affect banking law in New Jersey, identified the impact Article 4A would have upon consumer transactions in this state, and compared the rules of Articles 3 and 4 governing payment made by check with the rules of Article 4A governing payment made by funds transfer. The latter analysis ascertained the differences in the way the Code treats the two forms of payment. This report contains five sections: (1) History and Overview of Article 4A, (2) Comparison of Checks and Payment Orders, (3) Effect of Article 4A upon Consumer Transactions, (4) Impact of Article 4A upon New Jersey law, and (5) Recommendation.

## I. HISTORY AND OVERVIEW OF ARTICLE 4A

### A. History

Technological advances, especially in the areas of electronics and computers, have revolutionized the banking industry.[7] These improvements in technology have permitted banks to automate operations and reduce the volume of paper necessary for transactions. One system affected by the technological revolution is the payment system. Traditionally checks have been used to make payments. Today, however, electronic transfers of funds satisfy a substantial volume of commercial obligation without the issuance of a check. The development of legal principles has not kept pace with technological change in the banking industry. Consequently, the law of payments does not reflect actual commercial practices.[8]

---

[5] Compare U.C.C. 4A-202 with U.C.C. 4-401.
[6] Compare U.C.C. 4A-305 with U.C.C. 4-402.
[7] Comment, Regulation of Wire Transfers and the Recoverability of Consequential Damages, 36 Buffalo L. Rev. 745 (1987).
[8] Alces, A Jurisprudential Perspective for the True Codification of Payments Law, 53 Fordham L. Rev. 83 (1984).

Prior to the promulgation of Article 4A, commercial wire transfers were virtually unregulated.[9] Uniform Commercial Code Articles 3 and 4 do not apply to wire transfers, although courts have cited analogous provisions in discussing electronic wire transfer systems.[10] Federal Reserve Board regulations presently contain some provisions governing funds transfers but apply only to FedWire and the banks using the Federal Reserve System.[11] Non-statutory laws, such as automated clearing house rules and wire transfers system rules, apply to member banks. Private contracts between banks and their customers often do not exist, and if they do, fail to allocate significant risks among the parties.[12]

Most consumer wire transfers are regulated. The federal Electronic Funds Transfer Act of 1978 (EFTA) and its implementing Regulation E regulate electronic fund transfers made by consumers that are not sent through wire service systems such as FedWire and CHIPS.[13] Consumers who wire money generally use Western Union or American Express.[14] These corporations employ agents, not banks, to transfer the funds and therefore are not subject to Article 4A. However, to the extent that a consumer sends money through the banking system and uses a wire service system, the transaction is covered by Article 4A. Nine states have enacted electronic fund transfer laws which deal with consumer issues: Colorado, Iowa, Kansas, Michigan, Minnesota, Montana, New Mexico, Virginia and Wisconsin.[15] An additional thirteen states, including New Jersey, have enacted statutes that bear upon the consumer aspects of electronic fund transfers, but do not regulate the substance of the transaction. Id.

In response to the lack of uniform and comprehensive law regulating commercial funds transfers, the National Conference of Commissioners on Uniform State Laws and the American Law Institute promulgated Article 4A. To date, elevenm states have adopted Article 4A and it has been introduced in the legislatures of a number of other states.[16] The Federal Reserve Board has adopted a proposed revision of subpart B to Regulation J to make it consistent with Article 4A. Revised Regulation J is expected to become effective January 1991 and would apply to transactions involving Federal Reserve Banks even if the state in which the Federal Bank is located had not yet adopted Article 4A. The Clearing House International Payments System, a private funds transfer system, also is expected to adopt Article 4A. It appears that in the next few years Article 4A will be adopted in most, if not all, the states.

---

[9] Comment, supra n. 7 at 750.
[10] Jetton, Evra Corp. v. Swiss Bank Corp.; Consequential Damages for Bank Negligence in Wire Transfers, 9 Rutgers Computer & Tech. L.J. 369. 398 (1983).
[11] 12 C.F.R. 210.
[12] Comment, supra at 758.
[13] 15 U.S.C. 1693 et seq.
[14] Ramirez, 2 Giants Battle in Money-Wiring, N.Y. Times, Aug. 14, 1990, at D1, col. 3.
[15] N. Penny & D. Baker, The Law of Electronic Fund Transfer Systems, 10-2, 10-7 (1980).
[16] Information on enactment of Article 4A is current to August 15, 1990. The eleven states are named in the Section V of this report.

## B. Overview[17]

"Article 4A creates a series of rules to govern the resolution of legal issues that may arise out of funds transfers."[18] The rules generally may be varied by agreement of the parties or by the operating rules of funds transfer systems but some rules which protect fundamental policy choices are not variable by agreement.[19] The ability to vary the effect of the rules allows for the development of commercial practices not anticipated by Article 4A and provides a "safety net" for parties that do not negotiate all issues in their contracts. The flexibility of Article 4A combined with its gap-filling function makes it like most other articles of the Code.

Under Article 4A, a "funds transfer" is a series of payment orders by which an originator makes a payment to a beneficiary.[20] A payment order is an instruction to pay that is sent by the originator to a bank, or sent by a bank to cause another bank to pay a fixed amount of money to a beneficiary.[21] The funds transfer begins when the customer of a bank issues a payment order to the bank which instructs the bank to pay a named beneficiary.[22] The term "funds transfer" includes any payment order the bank may issue, or any payment order an intermediary bank may issue, to carry out the original payment order.[23] A funds transfer is completed when the beneficiary's bank accepts the payment order for the benefit of the beneficiary.[24]

Many things can and do go wrong in funds transfers. There are two principal problems: (1) unauthorized funds transfers, and (2) erroneously executed payment orders. A serious but less common problem is a bank's failure to settle accounts. Unauthorized payment orders occur when the bank debits money from the customer's account without the customer's authorization. Erroneously executed payment orders occur for a variety of reasons and include, for example, misdescription of the beneficiary, duplication of payment orders, payment of the wrong amount to the beneficiary and failure to complete the transfer according to the customer's instruction. A bank that becomes insolvent and is unable to settle its accounts jeopardizes the finality of payments to beneficiaries. Article 4A provides comprehensive rules defining the rights and responsibilities of parties to funds transfers to solve these and other problems..

If a loss results from an unauthorized payment order, the customer suffers the loss if the bank accepted the order in good faith, and complied with a commercially reasonable security procedure to verify the authenticity

---

[17] This section is inherently superficial since Article 4A is difficult, technical and complex. The 1989 Official Text of Article 4A contains comments to each provision which explain its function and meaning. It is not necessary to duplicate the commentary in this report. For a general explanation of Article 4A, see B. Clark, The Law of Bank Deposits, Collections and Credit Cards (1990).

[18] Miller, Uniform Commercial Code Article 4A: A Framework for Transmitting Large Amounts of Funds, 44 Consumer L. Q. Rep. 150, 152 (1990)

[19] U.C.C. 4A-501 and 4A-107.

[20] U.C.C. 4A-104(a).

[21] U.C.C. 4A-103(a)(1).

[22] U.C.C. 4A-104(a).

[23] U.C.C. 4A-104(a).

[24] Id.

of the order.[25] The customer can shift the loss to the bank if the customer shows that its shop did not cause the loss.[26] If the loss falls upon the bank, the bank refunds any payment received from the customer and, if applicable, interest on the refundable amount.[27]

Significantly, Article 4A does not allow the customer making a payment by funds transfer to recover consequential damages from the bank if the transaction is miscarried, unless the customer and bank have entered into a written agreement allowing for this remedy.[28] The prohibition against the recovery of damages for aborted funds transfers is based upon policy grounds. Article 4A takes the position that to hold the bank liable for millions of dollars in damages for a transaction that costs a few dollars is unreasonable. Placing liability on the bank for consequential damages would increase the cost and decrease the speed of the transaction. Additionally, the Code presumes that the customer is in the best position to avoid the loss.

If a bank in the funds transfer system fails before it settles its accounts, the customer does not suffer the loss unless the customer specifically designated that the transaction be routed through the failed bank. Article 4A also authorizes "bilateral and unilateral netting of payment obligations which reduces the risk in the event of bank insolvency."[29]

## II. COMPARISON OF CHECKS AND PAYMENT ORDERS

Payment orders are not exactly like checks. "Payment orders, unlike checks, do not embody independent rights and liabilities for the payment of money."[30] Rather, the rights and liabilities of the parties to a payment order arise out of the contract formed when the bank executes the payment order of the customer. Also, a payment order is sent to a bank while a check is sent to a payee. These practical and conceptual differences between checks and funds transfers ostensibly justify the difference in the way the Code prohibits consequential damages for miscarried funds transfers and permits them for wrongfully dishonored checks.

In the checking system, a payor bank that wrongfully dishonors a check is liable for damages, including consequential damages, that are proximately caused by the wrongful dishonor.[31] However, a non-payor bank that fails to exercise ordinary care in the handling of a check is liable only for the value of the check absent bad faith.[32] In a funds transfer, the payor/non-payor bank distinction does not hold because the payment order is sent to the bank not the payee. No matter which bank in the funds transfer blunders the transaction its liability is limited to the amount of the payment order, interest

---

[25] U.C.C. 4A-202.
[26] U.C.C. 4A-203.
[27] U.C.C. 4A-204
[28] U.C.C. §4A-305
[29] Miller, supra n.17 at 152.
[30] Miller, supra n.17 at 153.
[31] U.C.C. 4-402.
[32] U.C.C. 4-103(5).

losses and incidental expenses.[33] Because banks in funds transfers are more analogous to non-payor banks than to payor banks in the check payment system, the no-consequential damage rule of Article 4A appears consistent with Article 4.

While practical and conceptual differences exist between checks and funds transfers, these differences do not logically justify the distinction in treatment of damages. The Code could have placed liability upon the banks for consequential damages for miscarried funds transfers on the policy ground of encouraging greater accuracy of banking practices. The fact that the drafters did not choose this policy reflects the participation of the banking industry in the drafting of Article 4A. The rule of Article 4A prohibiting the recovery of damages in the absence of an agreement with the bank departs from the principles of liability contained in the law of negotiable instruments which allows recovery of consequential damages from a payor bank for the wrongful dishonor of a check.

## III. EFFECT OF ARTICLE 4A UPON CONSUMER TRANSACTIONS

Article 4A does not apply to any consumer transaction covered by the Electronic Funds Transfer Act (EFTA) and its implementing Regulation E. But EFTA does not apply to any consumer transaction sent through a wire service system such as FedWire, Clearing House Interbank Payment or Society for Worldwide International Financial Communication.[34] Since, for practical purposes, any funds transfer that involves more than one bank is executed through a wire transfer system, any consumer transaction that is not executed within one bank is likely to be governed by Article 4A. EFTA also does not apply to "preauthorized automated clearing house transfers received by a financial institution with assets of $25 million or less, if the institution does not provide any other electronic payment services to its consumer customers."[35] As already noted, the application of Article 4A to consumer transactions has the effect of producing slightly different rules for payment by check and payment by funds transfer. A consumer may be wholly unaware of these differences because Article 4A does not contain a notification requirement.

A comparison of two rules, damages and unauthorized payments, illustrates the differences in treatment between the two forms of payment. A bank in a funds transfer is not responsible for an unauthorized payment order if the bank follows a commercially reasonable security procedure to verify the authenticity of the payment order unless the customer shows it was not responsible for the unauthorized order.[36] A bank that pays a check bearing an unauthorized signature of the drawer bears the loss unless the bank proves the customer's negligence caused the unauthorized signature.[37] Because Article 4A requires a customer to bear the loss of an unauthorized payment where the bank has followed security procedures, the customer in a

---

[33] A beneficiary's bank may be liable for consequential damages for intentional refusal to pay coupled with notice of special circumstances giving rise to such damages.
[34] 15 U.S.C. 1693; 12 C.F.R. 205.3(b).
[35] 12. C.F.R. 205.3(g).
[36] U.C.C. 4A-202(b) and U.C.C. 4A-203.
[37] U.C.C. 4-401; U.C.C. 4-406 and U.C.C. 3-406.

funds transfer bears a slightly greater risk of loss for an unauthorized instruction to pay than a drawer of a check bears for an unauthorized signature. Additionally, the Code treats the measure of damages for wrongful dishonor of checks differently from the measure of damages for miscarried funds transfers.

### IV. IMPACT OF ARTICLE 4A ON NEW JERSEY LAW

New Jersey does not have a statute to regulate the substantive aspects of funds transfers. The Electronic Fund Transfer Privacy Act is a consumer statute concerned with protecting the privacy of financial transactions.[38] The Act prohibits a financial institution from disclosing information concerning an electronic funds transfer to third parties unless the Act specifically permits the disclosure.[39] Violations of the Act entitle the consumer to obtain actual damages, and if the violation is willful or reckless, the Act entitles the consumer to collect punitive damages.[40]

References to electronic funds transfers are also made in three other statutes unrelated to the regulation of funds transfers. N.J.S. 17:11B-14(1), a provision within an act providing for the regulation and licensing of mortgage bankers and brokers, permits payment of mortgage proceeds by electronic funds transfer. N.J.S. 17:12B-48(17), a provision within the 1963 Savings and Loan Act, allows an association to make payments in the form of electronic transfers. N.J.S. 52:14-15(b) allows the state treasurer to deposit by an electronic funds transfer the pay of a state employee in a banking institution by means of an electronic transfer). In addition, a credit union may maintain automated terminals to transact business with financial institutions.[41]

New Jersey case law does not address the issue of electronic funds transfers. However, a New Jersey federal district court, applying Pennsylvania law, establishes some precedent in New Jersey for funds transfers. Mellon Bank N.A. v. Securities Settlement Corp.[42] The court in Mellon held that a bank which executed a payment order in a funds transfer and made payment to the beneficiary's bank could not recover the payment from its customer because the bank failed to exercise ordinary care to cancel the payment order when instructed to do so by the customer.

Article 4A would apply to all commercial funds transfers and consumer transactions not governed by the Electronic Fund Transfer Act of 1978. Article 4A would not displace the New Jersey Electronic Fund Transfer Privacy Act. Whether the result in Mellon Bank N.A. v. Securities Settlement Corp., would obtain under Article 4A is difficult to ascertain because the Mellon decision does not report enough facts to make this determination. To the extent that Article 4A provides that an order to cancel is ineffective if the receiving bank has accepted the order, a different result probably would obtain under Mellon because the bank accepted the order before it received notice of the cancellation. In any event, the Mellon

---

[38] N.J.S. 17:16K-1 et seq.
[39] N.J.S. 17:16K-3.
[40] N.J.S. 17:16K-6.
[41] N.J.S. 17:13-89(m).
[42] 710 F.Supp. 991 (D.N.J. 1989).

decision would no longer constitute a precedent for the law of funds transfers if Article 4A were adopted in New Jersey since Article 4A rejects negligence concepts.

## V. RECOMMENDATION

The Commission recommends that the New Jersey Legislature adopt Uniform Commercial Code Article 4A "Funds Transfers" 1989 Official Text. Adoption of this Article fills a void with respect to payments made by funds transfers and would not disrupt the law of this State. Article 4A has been adopted in eleven states: California, Colorado, Connecticut, Kansas, Louisiana, Minnesota, New York, Oklahoma, Utah, Virginia, and West Virginia. Major wire service systems such as FedWire and CHIPS also are expected to adopt Article 4A. Concurrently, the Commission recommends that the Permanent Editorial Board of the Uniform Commercial Code consider an amendment requiring banks to inform customers who make funds transfers of the risk of loss provisions applicable to those transfers.