# EXHIBIT A

Ernest T. Patrikis
Thomas C. Baxter, Jr.
Raj K. Bhala

# WIRE TRANSFERS

## A Guide to U.S. and International Laws Governing Funds Transfers

BANKERS PUBLISHING COMPANY
PROBUS PUBLISHING COMPANY
Chicago, Illinois
Cambridge, England

© 1993, Federal Reserve Bank of New York

ALL RIGHTS RESERVED. No part of this publication may be reproduced, stored in a retrieval system, or transmitted by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of the publisher and the copyright holder.

This publication is designed to provide accurate and authoritative information in regard to the subject matter covered. It is sold with the understanding that the publisher is not engaged in rendering legal, accounting or other professional service.

The views set forth in this book are those of the authors and not necessarily those of the Federal Reserve Bank of New York or any other part of the Federal Reserve System.

Authorization to photocopy items for internal or personal use, or the internal or personal use of specific clients, is granted by PROBUS PUBLISHING COMPANY, provided that the US$7.00 per page fee is paid directly to Copyright Clearance Center, 27 Congress Street, Salem MA 01970, USA; Phone: 1-(508) 744-3350. For those organizations that have been granted a photocopy license by CCC, a separate system of payment has been arranged. The fee code for users of the Transactional Reporting Service is: 1-55738-354-5/93/$0.00 + $7.00

ISBN 1-55738-354-5

Printed in the United States of America

BB

1   2   3   4   5   6   7   8   9   0

ıent order issued by
nk to the Ruritania
; no notice of the use
with the Singapore
.egulation J. Accord-
'efore, Article 4A —
Law applies because
ia and the Singapore
ıent order to a bank

is the payment made
ınk to the beneficiary
does not purport to
n a beneficiary's bank
'elationship is a matter
the law of Ruritania

ıres of this scenario is
ıle law. The first four
: same rule — Article
on J or by virtue of the
:nt is governed by the
ways similar to Article
nents are governed by
: rules. Only the last
separate jurisdiction is
/ different.

# CHAPTER 2
# A REVIEW OF THE BUSINESS TERRAIN

The business of America is business. . . .

— President Calvin Coolidge, Address (1925).

## (A) Making funds transfers: four basic ingredients

There are many recipes to bake bread, some more complicated than others. The selection of a recipe depends on factors such as time, expense, and, yes, taste. The same is true for a funds transfer. There is no one formula according to which all funds transfers are conducted. Indeed, four different forms which appear frequently are discussed below, and the form often will depend on factors like time, expense, and taste (some banks will not deal with some others, meaning that a correspondent is needed).

However, many funds transfers bear some resemblance to one another. In particular, many (though not all) consist of four basic ingredients, or segments. Much of the information in this guide can be thought of in terms of these four segments. The four basic segments of a funds transfer are presented below. A diagram of these segments is provided in Figure 2.1.[1] They may be explained as follows:

**First segment** — A customer, known as the "originator," owes money to the "beneficiary." The customer seeks to send money to the beneficiary to satisfy this underlying obligation. The customer's bank is the "originator's bank" and the beneficiary's bank is the "beneficiary's bank." Thus, the originator issues a payment order to its bank. The order may or may not contain specific instructions pertaining to the use of a correspondent bank, funds transfer system, or method of transmitting subsequent payment orders.

**Second segment** — The originator's bank accepts and executes the payment order. A payment order is sent by the originator's bank to a correspondent bank, known as the intermediary bank.

**Third segment** — The intermediary bank receives and accepts the payment order and issues a payment order to the beneficiary's bank, ordering it to pay the account of the beneficiary.

**Fourth segment** — The beneficiary's bank receives and accepts the payment order. The beneficiary's account is credited.

1. *See also* the discussion of a Fedwire transfer below.

**Figure 2.1** **The Four Segments**

**(B) Making funds transfers: four common recipes**

While the four key segments are likely ingredients in any funds transfer, there is no one recipe for making a funds transfer. The ingredients may be mixed and matched in different ways. Whatever the way, Article 4A is designed to cover the funds transfer. That is, before discussing the substantive rules in Article 4A, it is important to remember that these are rules to cover *all* funds transfers, no matter what form. It is like creating rules to govern the baking of bread, regardless of the recipe. This makes the rule-creation process more tedious than it would be if the draftsmen were simply trying to set out rules for a plain white loaf.

Accordingly, it is useful to consider at the outset the basic types of transactions that were contemplated by the drafters. The use of statutory terminology is more meaningful if the forms that a funds

transfer may take are understood. Four widely used recipes for making a funds transfer may be considered: a book transfer, a two-bank transfer, a transfer involving an intermediary bank, and a transfer through a net settlement system.

### (1) A book transfer

Without flour, water, and yeast there is no bread. Similarly, without three parties, there is no funds transfer. That is, in its simplest form, a funds transfer will involve three parties: an "originator," a bank, and a "beneficiary." The originator is the person who initiates the funds transfer, and does so by issuing an instruction to its bank to pay a third party. Where there are only three parties, the bank ordinarily will effect the originator's instruction by debiting the originator's bank account and crediting the beneficiary's bank account. This type of funds transfer is known in the industry as a "book transfer." A simple book transfer is represented in Figure 2.2.[2]

### (2) A two-bank transfer

Although the book transfer is a common form of funds transfer and can reduce certain forms of settlement risk, it is more common for the originator and the beneficiary to have different banks. Consequently, the industry has adopted terminology reflecting this, and it is common to hear references to the "originator's bank" and the "beneficiary's bank." This type of funds transfer is more complex than the preceding form, because there exists an additional party to the funds transfer — the beneficiary's bank. Typically, in this form of transfer the originator's bank and the beneficiary's bank will have accounts with each other or with a common correspondent. Thus, the originator's bank will effect the originator's instruction by debiting the originator's account and crediting the account of the beneficiary's bank. It will also communicate the originator's instruction to the beneficiary's bank so that the beneficiary's bank can credit the beneficiary's account. An offsetting entry will be made to the account of the originator's bank with the beneficiary's bank. A funds transfer in which the originator's bank and the beneficiary's bank have accounts with each other is diagrammed in Figure 2.3.

### (3) Funds transfers through Fedwire

A third commonly experienced form of funds transfer will involve an intermediary bank. Since most believe that a simpler transaction is a better transaction, why select an intermediary bank? Why use three banks when two are sufficient? The answer lies in the concept of "settlement." In the preceding two illustrations, value was exchanged by means of book

**Figure 2.2 A Book Transfer**

2. It should be noted that the facts may not always be as simple as represented in Figure 2.2. *See, e.g., Momm v. Barclays Bank International Ltd.*, 3 All E.R. 588 (Q.B. 1977) (involving a foreign-exchange transaction between the plaintiffs and Bankhaus ID Herstatt KGaA ("Herstatt"), where Herstatt failed and the plaintiffs were entitled to delivery of pounds at their account at Barclays Bank at which Herstatt also maintained an account).

**Figure 2.3 A Two-Bank Transfer**

entries posted to common bank accounts. In Figure 2.2, the bank effected the originator's direction by debiting one account and crediting another. In Figure 2.3, each bank made accounting entries to the other's account on its books. If the originator's bank and the beneficiary's bank maintain accounts with each other, an intermediary would serve no purpose, and use of it would be inefficient. But if this "cross accounts" scenario does not exist,[3] then an intermediary bank is helpful and efficient. The intermediary selected will be an institution that maintains accounts for both the originator's bank and the beneficiary's bank — a "common accounts" scenario.

It is important to distinguish between a common accounts scenario and a funds transfer through a common correspondent. A correspondent bank can serve two purposes: it can just settle, and a payment message can go through the correspondent. Consider an entity to which a payment order is sent by an originator's bank. The payment order is sent through the entity and onward to the beneficiary's bank. This is a correspondent scenario in which the payment order is merely sent through the correspondent. Alternatively, suppose the originator's bank and the beneficiary's bank each maintain an account with the entity. The payment order issued by the originator is sent through the entity, and, in addition, the entity debits the account of the originator's bank and credits the account of the beneficiary's bank. This is the common accounts scenario.

**(a) An intra-district funds transfer**

Almost all funds transfers through Fedwire take this form. The Fedwire system developed because the twelve Reserve Banks were the perfect intermediaries. Banks kept their reserves at the Reserve Banks (the "common accounts" scenario), which reflected those reserves in credit entries to what are essentially demand deposit accounts. Consequently, the use of Reserve Banks for funds transfers was a natural development, which was undoubtedly helped along by the fact that the central bank presented little (if any) credit or settlement risk. And, it is historically accurate that the Fedwire system evolved in almost a "natural" manner; no one at the Board or at a Reserve Bank ever sat down and said "let there be a wire transfer system." Thus, Fedwire can be regarded as

3. It might be asked why all banks do not have interlocking accounts. This question might be answered by asking why everyone does not like white bread. However, taste is only part of the answer. A more thorough answer would address the economics of such an arrangement. In a nation with more than 14,000 depository institutions, it would be ludicrous to think that all could have interlocking accounts.

y's

3eneficiary's Account Credited

naintain an account with the er issued by the originator is and, in addition, the entity originator's bank and credits eficiary's bank. This is the ırio.

ıtrict funds transfer

rs through Fedwire take this tem developed because the ;ere the perfect intermediar- serves at the Reserve Banks ;" scenario), which reflected entries to what are essentially ts. Consequently, the use of transfers was a natural devel- oubtedly helped along by the ank presented little (if any) :. And, it is historically accu- system evolved in almost a ıe at the Board or at a Reserve ıd said "let there be a wire , Fedwire can be regarded as

ıswered by asking why everyone :r would address the economics of ludicrous to think that all could

an example of a market tendency to evolve, over time, in an efficient manner.

A typical funds transfer through Fedwire is presented in Figure 2.4. The depiction is of a funds transfer which involves only one Reserve Bank. This is because it is assumed that the originator's bank and the beneficiary's bank are served by the same Reserve Bank. That is, each bank maintains an account at the same Reserve Bank. This sort of funds transfer is referred to in Regulation J as an "intra-district transfer."[4]

### (b) An inter-district funds transfer

The nation is not served by one Reserve Bank but by twelve, each of which serves a discrete territory called a Federal Reserve "district." If the originator's bank and the beneficiary's bank are situated in different Federal Reserve districts, they will maintain their reserve accounts with different Reserve Banks. To effect a funds transfer through Fedwire in that situation, two Reserve Banks (i.e., two intermediary banks) will be needed. That form of transfer will involve a total of six parties: the originator, its bank, the two Reserve Banks, the beneficiary, and its bank. This is referred to in Regulation J as an "inter-district transfer."[5] Such a transfer is depicted in Figure 2.5. Additional intermediary banks could be added, producing quite a complicated funds transfer.

### (4) Funds transfers through CHIPS

The most complex of the four forms which the drafters of Article 4A had in mind is the so-called net settlement funds transfer. In this form, there are neither "cross" nor "common" accounts — the originator's bank and the beneficiary's bank do not each maintain an account for the other, nor is there a third bank which maintains an account for the originator's bank or the beneficiary's bank. Consequently, value must be transferred separately from the transmission of the originator's instructions. CHIPS transfers fall within this category. In Figure 2.6, this form is presented. Other forms of transfers which involve additional so-called "cover payments," are not "net settlement" transactions per se, but also can be considered in this general category. In the United States, "cover payments" are relatively uncommon, largely because of the existence of two sophisticated value transfer systems — Fedwire and CHIPS. However, the "cover payment" transfer is common for multinational funds transfers, and SWIFT is a prime example.

**Figure 2.4 An Intra-District Funds Transfer**




4. 12 C.F.R. § 210 (1992).
5. 12 C.F.R. § 210.26(f) (1992).

**Figure 2.5 An Inter-District Funds Transfer**

This type of transfer is practical because of the fact that the originator's bank and beneficiary's bank make use of the same settlement mechanism — a "common settlement mechanism" scenario. However, even this is not crucial. If they do not share the same settlement mechanism, then they can arrange for any other transfer of value to effect a settlement, but risk considerations may stand in the way, as explained in the later chapter concerning settlement.

A REVIEW OF THE BUSINESS TERRAIN

ficiary's
ank

eficiary's
ccount
edited

n, then they can arrange ne to effect a settlement, y stand in the way, as r concerning settlement.

**Figure 2.6 A Net Settlement Transfer**

Originator's Bank
Originator's Account Debited
Clearing Mechanism
Settlement Mechanism (exchange of value between banks)
Beneficiary's Bank
Beneficiary's Account Credited
Account Relationship
Instruction to Pay
Passage of Value

21

e Treasury,
urt, 100
ourt, 69
ies, 10
264, 303,

# ABOUT THE AUTHORS

**Ernest T. Patrikis** is Executive Vice President and General Counsel of the Federal Reserve Bank of New York. He is responsible for the Bank's Legal Department and is Chairman of the Bank's Financial Policy Council. He is Deputy General Counsel of the Federal Open Market Committee. He serves on banking and futures committees of the American Bar Association, New York State Bar Association and Association of the Bar of the City of New York. He served as a U.S. delegate to UNCITRAL and also as an advisor to the NCCUSL, which prepared Article 4A. Mr. Patrikis received a J.D. from Cornell Law School and a B.A. with honors in Economics from the University of Massachusetts. He has lectured and written on the supervision and regulation of United States and foreign banks, reserve requirements, payments laws and sovereign immunity.

**Thomas C. Baxter, Jr.** is an officer of the Federal Reserve Bank of New York. As a Counsel in the Bank's Legal Department, he is responsible for civil litigation, enforcement matters and matters concerning the payment system. He has served as a legal advisor to the Current Payment Methods project of the National Conference of Commissioners on Uniform State Laws (NCCUSL), which developed Article 4A of the Uniform Commercial Code and amendments to Articles 3 and 4. He is Chairman of the Subcommittee on Payments of the Business Law Section of the American Bar Association. Mr. Baxter also has served as a member of the U.S. delegation to the Working Group on International Payments of the United Nations Commission on International Trade Law (UNCITRAL). He received a J.D. from Georgetown University Law Center and a B.A. from the University of Rochester (N.Y.). Mr. Baxter has lectured on and published articles concerning legal aspects of check collection, securities transfers and electronic transfers of funds.

**Raj K. Bhala** is an Attorney with the Legal Department of the Federal Reserve Bank of New York where he is responsible for commercial law, banking law and international law. He has been significantly involved in major enforcement matters, including the Bank of Credit and Commerce International case, and served as a U.S. delegate to UNCITRAL. He graduated *cum laude* with a J.D. from Harvard Law School. Mr. Bhala held a Marshall Scholarship in England and earned a Masters degree in Management from Oxford University and a Masters degree in Economics from the London School of Economics. He obtained a B.A. in Economics from Duke University where he was an Angier B. Duke Scholar and graduated *summa cum laude.* He is the author of *Perspectives on Risk-based Capital* (Bank Administration Institute, 1989) as well as numerous articles.