# EXHIBIT E

# Interagency Consumer
# Laws and Regulations                                    EFTA

## Electronic Fund Transfer Act

The Electronic Fund Transfer Act (EFTA) (15 U.S.C. 1693 *et seq.*) of 1978 is intended to protect individual consumers engaging in electronic fund transfers (EFTs) and remittance transfers. These services include:

- Transfers through automated teller machines (ATMs);
- Point-of-sale (POS) terminals;
- Automated clearinghouse (ACH) systems;
- Telephone bill-payment plans in which periodic or recurring transfers are contemplated;
- Remote banking programs; and
- Remittance transfers.

The EFTA is implemented through Regulation E, which includes official interpretations.

In 2009, the Board of Governors of the Federal Reserve System (Board) amended Regulation E to prohibit institutions from charging overdraft fees for ATM and one-time debit card transactions, unless the consumer opts in or affirmatively consents to the institution's overdraft services (74 Fed. Reg. 59033 (Nov. 17, 2009) and 75 Fed. Reg. 31665 (June 4, 2010)). The Board also amended Regulation E to implement provisions in the Credit Card Accountability Responsibility and Disclosure Act of 2009 that restricted fees and expiration dates on gift cards, and to require that gift card terms be stated clearly (75 Fed. Reg. 16580 (April 1, 2010)).[1]

The Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (Dodd-Frank Act) generally transferred rule-making authority under the EFTA from the Board to the Consumer Financial Protection Bureau (CFPB or Bureau).[2][3] The Dodd-Frank Act also amended the EFTA and created a new system of consumer protections for remittance transfers sent by consumers in the United States to individuals and businesses in foreign countries. In December 2011, the CFPB restated the Board's implementing Regulation E at 12 CFR Part 1005 (76 Fed. Reg. 81020) (Dec. 27, 2011). In February 2012, the CFPB added Subpart B (Requirements for Remittance Transfers) to Regulation E to implement the new remittance protections set forth in

---

[1] The Board also implemented a legislative extension of time for complying with the gift card disclosure requirements until January 31, 2011. 75 Fed. Reg. 50683 (August 17, 2010).

[2] Dodd-Frank Act §§ 1002(12)(C), 1024(b)-(c), and 1025(b)-(c); 12 U.S.C. 5481(12)(C), 5514(b)-(c), and 5515(b)-(c). Section 1029 of the Dodd-Frank Act generally excludes from this transfer of authority, subject to certain exceptions, any rule making authority over a motor vehicle dealer that is predominantly engaged in the sale and servicing of motor vehicles, the leasing and servicing of motor vehicles, or both. The transfer of authority also did not include Section 920 of EFTA, which concerns debit card interchange fees charged to merchants. Section 920 of EFTA is implemented by Board regulations at 12 CFR Part 235. Section 920 is not addressed here or in the accompanying examination procedures and checklist.

[3] The agency responsible for supervising and enforcing compliance with Regulation E will depend on the person subject to the EFTA (e.g., for depository institutions, jurisdiction will depend on the size and charter of the institution).

the Dodd-Frank Act (77 Fed. Reg. 6194) (Feb. 7, 2012).[4] Regulation E has since been amended several times to address both substantive and technical issues. See 77 Fed. Reg. 40459 (July 10, 2012); 77 Fed. Reg. 50244 (Aug. 20, 2012); 78 Fed. Reg. 6025 (Jan. 29, 2013); (78 Fed. Reg. 30661) (May 22, 2013); 78 Fed. Reg. 49365 (Aug. 14, 2013); 79 Fed. Reg. 55970 (Sept. 18, 2014); 81 Fed. Reg. 70319 (Oct. 12, 2016); 81 Fed. Reg. 83934 (Nov. 22, 2016); 82 Fed. Reg. 18975 (Apr. 25, 2017); 83 Fed. Reg. 6364 (Feb. 13, 2018).

In March 2013, the CFPB issued a final rule implementing Public Law 112-216, which amended EFTA to remove the requirement, where applicable, for a disclosure "on or at" an ATM where an ATM fee is imposed (78 Fed. Reg. 18221) (March 26, 2013).

In November 2016, the CFPB issued a final rule amending Regulation E as well as Regulation Z, the regulation implementing the Truth in Lending Act (TILA), to extend protections to prepaid accounts. In Regulation E, tailored provisions governing disclosures, limited liability and error resolution, and periodic statements were adopted for prepaid accounts, along with new requirements regarding the posting and submission of prepaid account agreements. In addition, this rulemaking addressed regulation of credit features that may be offered under certain circumstances in conjunction with prepaid accounts. (See TILA discussion for Regulation Z provisions regarding the regulation of credit features offered in conjunction with prepaid accounts.) Together these amendments are known as the Prepaid Accounts Rule (81 Fed. Reg. 83934) (Nov. 22, 2016). Regulation E, along with Regulation Z, was subsequently amended to modify several aspects of the Prepaid Accounts Rule, including error resolution and limited liability protections on unverified prepaid accounts and to establish a new overall effective date of April 1, 2019[5] (83 Fed. Reg. 6364) (Feb. 13, 2018).

Information in this narrative is provided for Subpart A and Subpart B in the order listed below. Note that the order, particularly as it relates to Subpart A, does not strictly follow the order of the regulatory text. For ease of use by the examiner, however, the examination procedures and checklist follow the order of the regulation.

## Subpart A - General

I.      Scope and Key Definitions (12 CFR 1005.2, 1005.3, 1005.17, 1005.20)

II.     Disclosures (12 CFR 1005.4, 1005.7, 1005.8, 1005.15, 1005.16, 1005.17, 1005.18, 1005.20)

III.    Electronic Transaction Overdraft Service Opt In (12 CFR 1005.17)

IV.     Issuance of Access Devices (12 CFR 1005.5, 1005.18)

V.      Consumer Liability and Error Resolution (12 CFR 1005.6, 1005.11, 1005.18)

---

[4] The amendment designated 12 CFR 1005.1 through 1005.20 as Subpart A.

[5] This was the second effective date delay for the Prepaid Accounts Rule. The first had extended the general effective date of the rule to April 1, 2018. 82 Fed. Reg. 18975 (Apr. 25, 2017).

# Interagency Consumer
# Laws and Regulations                                    EFTA

VI.    Receipts and Periodic Statements (12 CFR 1005.9, 1005.15, 1005.18)

VII.   Gift Cards (12 CFR 1005.20)

VIII.  Requirements for Financial Institutions Offering Prepaid Accounts (12 CFR 1005.18)

IX.    Internet Posting of Prepaid Account Agreements (12 CFR 1005.19)

X.     Other Requirements (12 CFR 1005.10, 1005.14, 1005.15)

XI.    Relation to Other Laws (12 CFR 1005.12)

## Subpart B - Requirements for Remittance Transfers

XII.    Remittance Transfer Definitions (12 CFR 1005.30)

XIII.   Disclosures (12 CFR 1005.31)

XIV.    Estimates (12 CFR 1005.32)

XV.     Procedures for Resolving Errors (12 CFR 1005.33)

XVI.    Procedures for Cancellation and Refund of Remittance transfers (12 CFR 1005.34)

XVII.   Acts of Agents (12 CFR 1005.35)

XVIII.  Transfers Scheduled Before the Date of Transfer (12 CFR 1005.36)

## Sections Applicable to Both Subpart A and Subpart B

XIX.    Preemption

XX.     Administrative Enforcement and Record Retention (12 CFR 1005.13)

XXI.    Miscellaneous (EFTA Provisions Not Reflected in Regulation E)

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

## Subpart A

## I.      Scope

## Key Definitions – 12 CFR 1005.2

*Access device* is a card, code, or other means of access to a consumer's account or a combination of these used by the consumer to initiate EFTs. Access devices include debit cards, personal identification numbers (PINs), telephone transfer and telephone bill payment codes, and other means to initiate an EFT to or from a consumer account (12 CFR 1005.2(a)(1) and 12 CFR Part 1005, Supp. I, Comment 2(a)-1).

Access devices do not include either of the following:

- Magnetic tape or other devices used internally by a financial institution to initiate electronic transfers.

- A check or draft used to capture the MICR (Magnetic Ink Character Recognition) encoding or routing, account, and serial numbers to initiate a one-time ACH debit (Comments 2(a)-1 and 2(a)-2).

*Accepted access device* is an access device that a consumer:

- Requests and receives, signs, or uses (or authorizes another to use) to transfer money between accounts or to obtain money, property, or services.

- Requests to be validated even if it was issued on an unsolicited basis.

- Receives as a renewal or substitute for an accepted access device from either the financial institution that initially issued the device or a successor (12 CFR 1005.2(a)(2)).

*Account* includes the following:

- Checking, savings, or other consumer asset account held by a financial institution (directly or indirectly), including certain club accounts, established primarily for personal, family, or household purposes (12 CFR 1005.2(b)(1));

- A prepaid account (12 CFR 1005.2(b)(2)), including:
  - A payroll card account, which is an account established directly or indirectly through an employer, to which EFTs of the consumer's wages, salary, or other employee compensation (such as commissions), are made on a recurring basis[6];

---

[6] The payroll card account can be operated or managed by the employer, a third-party payroll processor, a depository institution, or any other person.

# Interagency Consumer
# Laws and Regulations                                    EFTA

  o   A government benefit account, which is an account established by a government
      agency for distributing government benefits to a consumer electronically[7] (12 CFR
      1005.15(a)(2));

  o   An account that is marketed or labeled as "prepaid" and that is redeemable upon
      presentation at multiple, unaffiliated merchants for goods or services or usable at
      ATMs; or

  o   An account (1) that is issued on a prepaid basis in a specified amount or not issued on
      a prepaid basis but capable of being loaded with funds thereafter, (2) whose primary
      function is to conduct transactions with multiple, unaffiliated merchants for goods or
      services or at ATMs, or to conduct person-to-person transfers, and (3) that is not a
      checking account, share draft account, or negotiable order of withdrawal account.

An *account* does not include, for example:

- An account held by a financial institution under a bona fide trust agreement.

- An occasional or incidental credit balance in a credit plan.

- Profit-sharing and pension accounts established under a bona fide trust agreement.

- Escrow accounts such as for payments of real estate taxes, insurance premiums, or
  completion of repairs or improvements.

- Accounts for purchasing U.S. savings bonds (12 CFR 1005.2(b)(2) and Comment 2(b)-
  2).

A *prepaid account* does not include, for purposes of 12 CFR 1005.2(b)(3)(i)(C) and (D):

- An account that is loaded only with funds from a health savings account, flexible
  spending arrangement, medical savings account, health reimbursement arrangement,
  dependent care assistance program, or transit or parking reimbursement arrangement;

- An account that is directly or indirectly established through a third party and loaded only
  with qualified disaster relief payments;

- The person-to-person functionality of an account established by or through the United
  States government whose primary function is to conduct closed-loop transactions on U.S.
  military installations or vessels, or similar government facilities;

- A gift certificate as defined in 12 CFR 1005.20(a)(1) and (b); a store gift card as defined
  in 12 CFR 1005.20(a)(2) and (b); a loyalty, award, or promotional gift card as defined in
  12 CFR 1005.20(a)(4), or that satisfies the criteria in 12 CFR 1005.20(a)(4)(i) and (ii)
  and is excluded from 12 CFR 1005.20 pursuant to 12 CFR 1005.20(b)(4); or a general-

---

[7] Electronic delivery can include through ATMs or POS terminals, but does not include an account for distributing needs-tested
benefits in a program established under state or local law or administered by a state or local agency.

# Interagency Consumer
# Laws and Regulations                                    EFTA

use prepaid card as defined in 12 CFR 1005.20(a)(3) and (b) that is both marketed and labeled as a gift card or gift certificate; or

- An account established for distributing needs-tested benefits in a program established under state or local law or administered by a state or local agency (12 CFR 1005.2(b)(3)(ii)).

A *payroll account* does not include a card used:

- Solely to disburse incentive-based payments (other than commissions when they represent the primary means through which a consumer is paid) that are unlikely to be a consumer's primary source of salary or other compensation;

- Solely to make disbursements unrelated to compensation, such as petty cash reimbursements or travel per diem payments; or

- In isolated instances to which an employer typically does not make recurring payments (Comment 2(b)-2).

*Activity* means any action that results in an increase or decrease of the funds underlying a certificate or card, other than the imposition of a fee, or an adjustment due to an error or a reversal of a prior transaction (12 CFR 1005.20(a)(7)).

*ATM operator* is any person that operates an ATM at which a consumer initiates an EFT or a balance inquiry and that does not hold the account to or from which the transfer is made or about which the inquiry is made (12 CFR 1005.16(a)).

*Dormancy fee and inactivity fee* mean a fee for non-use of or inactivity on a gift certificate, store gift card, or general-use prepaid card (12 CFR 1005.20(a)(5)).

*Electronic check conversion (ECK) transactions* are transactions where a check, draft, or similar paper instrument is used as a source of information to initiate a one-time electronic fund transfer from a consumer's account. The consumer must authorize the transfer (12 CFR 1005.3(b)(2)).

*Electronic fund transfer (EFT)* is a transfer of funds initiated through an electronic terminal, telephone, computer (including on-line banking) or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account. EFTs include, but are not limited to, POS transfers; ATM transfers; direct deposits or withdrawals of funds; transfers initiated by telephone; and transfers resulting from debit card transactions, whether or not initiated through an electronic terminal (12 CFR 1005.3(b)).

*Electronic terminal* is an electronic device, other than a telephone call by a consumer, through which a consumer may initiate an EFT. The term includes, but is not limited to, POS terminals, ATMs, and cash-dispensing machines (12 CFR 1005.2(h)).

# Interagency Consumer
# Laws and Regulations                                        **EFTA**

***Exclusions from gift card definition.*** The following cards, codes, or other devices are excluded and not subject to the substantive restrictions on imposing dormancy, inactivity, or service fees, or on expiration dates if they are: (12 CFR 1005.20(b))

- Useable solely for telephone services;

- Reloadable and not marketed or labeled as a gift card or gift certificate. For purposes of this exception, the term "reloadable" includes a temporary non-reloadable card issued solely in connection with a reloadable card, code, or other device;

- A loyalty, award, or promotional gift card (except that these must disclose on the card or device itself, information such as the date the funds expire, fee information and a toll-free number) (12 CFR 1005.20(a)(4) and (c)(4));

- Not marketed to the general public;

- Issued in paper form only; or

- Redeemable solely for admission to events or venues at a particular location or group of affiliated locations, or to obtain goods or services in conjunction with admission to such events or venues, at the event or venue or at specific locations affiliated with and in geographic proximity to the event or venue.

***General-use prepaid card*** is a card, code, or other device:

- Issued on a prepaid basis primarily for personal, family, or household purposes to a consumer in a specified amount, whether or not that amount may be increased or reloaded, in exchange for payment; and

- That is redeemable upon presentation at multiple, unaffiliated merchants for goods or services, or that may be usable at ATMs (12 CFR 1005.20(a)(3)). See *"Exclusions from gift card definition."*

***Gift certificate*** is a card, code, or other device issued on a prepaid basis primarily for personal, family, or household purposes to a consumer in a specified amount that may not be increased or reloaded in exchange for payment and redeemable upon presentation at a single merchant or an affiliated group of merchants for goods or services (12 CFR 1005.20(a)(1)). See "*Exclusions from gift card definition*."

***Loyalty, award, or promotional gift card*** is a card, code, or other device (1) issued on a prepaid basis primarily for personal, family, or household purposes to a consumer in connection with a loyalty, award, or promotional program; (2) that is redeemable upon presentation at one or more merchants for goods or services, or usable at automated teller machines; and (3) that sets forth certain disclosures, including a statement indicating that the card, code, or other device is issued for loyalty, award, or promotional purposes (12 CFR 1005.20(a)(4)). See *Exclusions from gift card definition*."

# Interagency Consumer
# Laws and Regulations                                        EFTA

***Overdraft services.*** A financial institution provides an overdraft service if it assesses a fee or charge for paying a transaction (including a check or other item) when the consumer has insufficient or unavailable funds in the account to pay the transaction. However, an overdraft service does not include payments made from the following (12 CFR 1005.17(a)):

- A line of credit subject to Regulation Z, such as a credit card account, a home equity line of credit, or an overdraft line of credit;

- A service that transfers funds from another account held individually or jointly by the consumer, such as a savings account;

- A line of credit or other transaction in securities or commodities accounts in which credit is extended by a broker-dealer registered with the Securities and Exchange Commission (SEC) or the Commodity Futures Trading Commission (CFTC), as provided in 12 CFR 1026.3(d); or

- A covered separate credit feature accessible by a hybrid prepaid-credit card as defined in Regulation Z, 12 CFR 1026.61, or credit extended through a negative balance on the asset feature of the prepaid account that meets the conditions of 12 CFR 1026.61(a)(4).

***Preauthorized electronic fund transfer*** is an EFT authorized in advance to recur at substantially regular intervals (12 CFR 1005.2(k)).

***Service fee*** means a periodic fee for holding or use of a gift certificate, store gift card, or general-use prepaid card. A periodic fee includes any fee that may be imposed on a gift certificate, store gift card, or general-use prepaid card from time to time for holding or using the certificate or card (12 CFR 1005.20(a)(6)). For example, a service fee may include a monthly maintenance fee, a transaction fee, an ATM fee, a reload fee, a foreign currency transaction fee, or a balance inquiry fee, whether or not the fee is waived for a certain period of time or is only imposed after a certain period of time. However, a service fee does not include a one-time fee or a fee that is unlikely to be imposed more than once while the underlying funds are still valid, such as an initial issuance fee, a cash-out fee, a supplemental card fee, or a lost or stolen certificate or card replacement fee (Comment 20(a)(6)-1).

***State*** means any state, territory, or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico; or any of their political subdivisions (12 CFR 1005.2(l)).

***Store gift card*** is a card, code, or other device issued on a prepaid basis primarily for personal, family, or household purposes to a consumer in a specified amount, whether or not that amount may be increased or reloaded, in exchange for payment, and redeemable upon presentation at a single merchant or an affiliated group of merchants for goods or services (12 CFR 1005.20(a)(2)). See *"Exclusions from gift card definition."*

***Unauthorized electronic fund transfer*** is an EFT from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit. This does not include an EFT initiated in any of the following ways:

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

- By a person who was furnished the access device to the consumer's account by the consumer, unless the consumer has notified the financial institution that transfers by that person are no longer authorized;

- With fraudulent intent by the consumer or any person acting in concert with the consumer; or

- By the financial institution or its employee (12 CFR 1005.2(m)).

## Coverage – 12 CFR 1005.3

Subpart A of Regulation E applies to any electronic fund transfer (EFT) that authorizes a financial institution to debit or credit a consumer's account. The requirements of Subpart A of Regulation E apply only to accounts for which there is an agreement for EFT services to or from the account between (i) the consumer and the financial institution or (ii) the consumer and a third party, when the account-holding financial institution has received notice of the agreement and the fund transfers have begun (Comment 3(a)-1).

Regulation E applies to all persons, including offices of foreign financial institutions in the United States, that offer EFT services to residents of any state and it covers any account located in the United States through which EFTs are offered to a resident of a state, no matter where a particular transfer occurs or where the financial institution is chartered (Comment 3(a)-3). Regulation E does not apply to a foreign branch of a U.S. financial institution unless the EFT services are offered in connection with an account in a state, as defined in 12 CFR 1005.2(*l*) (Comment 3(a)-3).

**Exclusions from Coverage.** 12 CFR 1005.3(c) describes transfers that are not EFTs and are therefore not covered by the EFTA and Regulation E:

- Transfers of funds originated by check, draft, or similar paper instrument;

- Check guarantee or authorization services that do not directly result in a debit or credit to a consumer's account;

- Any transfer of funds for a consumer within a system that is used primarily to transfer funds between financial institutions or businesses, e.g., Fedwire or other similar network;

- Any transfer of funds which has as its primary purpose the purchase or sale of securities or commodities regulated by the SEC or the CFTC, purchased or sold through a broker-dealer regulated by the SEC or through a futures commission merchant regulated by the CFTC, or held in book-entry form by a Federal Reserve Bank or federal agency;

- Intra-institutional automatic transfers under an agreement between a consumer and a financial institution;

- Transfers initiated by telephone between a consumer and a financial institution provided the transfer is not a function of a written plan contemplating periodic or recurring

# Interagency Consumer
# Laws and Regulations                                        **EFTA**

transfers. A written statement available to the public, such as a brochure, that describes a service allowing a consumer to initiate transfers by telephone constitutes a written plan; or

- Preauthorized transfers to or from accounts at financial institutions with assets of less than $100 million on the preceding December 31. Such preauthorized transfers, however, remain subject to the compulsory use prohibition under Section 913 of the EFTA and 12 CFR 1005.10(e), as well as the civil and criminal liability provisions of Sections 915 and 916 of the EFTA. A small financial institution that provides EFT services besides preauthorized transfers must comply with the requirements of Subpart A for those *other* services (Comment 3(c)(7)-1). For example, a small financial institution that offers ATM services must comply with Subpart A concerning the issuance of debit cards, terminal receipts, periodic statements, and other requirements.

## Electronic Check Conversion (ECK) and Collection of Returned-Item Fees

Subpart A covers electronic check conversion (ECK) transactions. In an ECK transaction, a consumer provides a check to a payee and information from the check is used to initiate a one-time EFT from the consumer's account. Although transfers originated by checks are not covered by Subpart A, an ECK is treated as an EFT and not a payment originated by check. Payees must obtain the consumer's authorization for each ECK transaction. A consumer authorizes a one-time EFT for an ECK transaction when the consumer receives notice that the transaction will or may be processed as an EFT and goes forward with the underlying transaction[8] (12 CFR 1005.3(b)(2)(i) and (ii) and Comment 3(b)(2)-3).

If a payee re-presents electronically a check that has been returned unpaid, the transaction is not an EFT, and Subpart A does not apply because the transaction originated by check (Comment 3(c)(1)-1).

However, Subpart A applies to a fee collected electronically from a consumer's account for a check or EFT returned unpaid. A consumer authorizes a one-time EFT from the consumer's account to pay the fee for the returned item or transfer if the person collecting the fee provides notice to the consumer stating the amount of the fee and that the person may electronically collect the fee, and the consumer goes forward with the underlying transaction[9] (12 CFR 1005.3(b)(3)). These authorization requirements do not apply to fees imposed by the account-holding financial institution for returning the check or EFT or paying the amount of an overdraft (Comment 3(b)(3)-1).

---

[8] For POS transactions, the notice must be posted in a prominent and conspicuous location and a copy of the notice must be provided to the consumer at the time of the transaction (12 CFR 1005.3(b)(2)(i) and (ii) and Comment 3(b)(2)-3).

[9] For POS transactions, the notice must be posted in a prominent and conspicuous location and a copy of the notice must either be provided to the consumer at the time of the transaction or mailed to the consumer's address as soon as reasonably practicable after the person initiates the EFT to collect the fee (12 CFR 1005.3(b)(3)).

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

## II.  Disclosures

## Disclosures Generally - 12 CFR 1005.4

Required disclosures must be clear and readily understandable, in writing, and in a form the consumer may keep. The required disclosures may be provided to the consumer in electronic form, if the consumer affirmatively consents after receiving a notice that complies with the E-Sign Act (12 CFR 1005.4(a)(1)).

Disclosures may be made in a language other than English, if the disclosures are made available in English upon the consumer's request (12 CFR 1005.4(a)(2)).

A financial institution has the option of disclosing additional information and combining disclosures required by other laws (for example, TILA disclosures) with Regulation E disclosures (12 CFR 1005.4(b)).

A financial institution may combine required disclosures into a single statement if a consumer holds two or more accounts at the financial institution. Thus, a single periodic statement or error resolution notice is sufficient for multiple accounts. In addition, it is only necessary for a financial institution to provide one set of disclosures for a joint account (12 CFR 1005.4(c)(l) and (2)).

Two or more financial institutions that jointly provide EFT services may contract among themselves to meet the requirements that the regulation imposes on any or all of them. When making initial disclosures (see 12 CFR 1005.7) and disclosures of a change in terms or an error resolution notice (see 12 CFR 1005.8), a financial institution in a shared system only needs to make disclosures that are within its knowledge and apply to its relationship with the consumer for whom it holds an account (12 CFR 1005.4(d)).

## Initial Disclosure of Terms and Conditions - 12 CFR 1005.7

Financial institutions must provide initial disclosures of the terms and conditions of EFT services before the first EFT is made or at the time the consumer contracts for an EFT service. The disclosures must include a summary of various consumer rights under the regulation, including the consumer's liability for unauthorized EFTs, the types of EFTs the consumer may make, limits on the frequency or dollar amount, fees charged by the financial institution, and the error-resolution procedures. Appendix A to Part 1005 provides model clauses that financial institutions may use to provide the disclosures (12 CFR 1005.7(a) and (b)).

**Timing of Disclosures.** Financial institutions must make the required disclosures at the time a consumer contracts for an electronic fund transfer service or before the first electronic fund transfer is made involving the consumer's account (12 CFR 1005.7(a)).

Disclosures given by a financial institution earlier than the regulation requires (for example, when the consumer opens a checking account) need not be repeated when the consumer later authorizes an electronic check conversion or agrees with a third party to initiate preauthorized transfers to or from the consumer's account, unless the terms and conditions differ from the

# Interagency Consumer
# Laws and Regulations                                    EFTA

previously disclosed term. This interpretation also applies to any notice provided about one-time EFTs from a consumer's account initiated using information from the consumer's check. On the other hand, if an agreement for EFT services to be provided by an account-holding financial institution is directly between the consumer and the account-holding financial institution, disclosures must be given in close proximity to the event requiring disclosure, for example, when the consumer contracts for a new service (Comment 7(a)-1).

Where a consumer authorizes a third party to debit or credit the consumer's account, an account-holding financial institution that has not received advance notice of the transfer or transfers must provide the required disclosures as soon as reasonably possible after the first debit or credit is made, unless the financial institution has previously given the disclosures (Comment 7(a)-2).

If a consumer opens a new account permitting EFTs at a financial institution, and the consumer has already received Subpart A disclosures for another account at that financial institution, the financial institution need only disclose terms and conditions that differ from those previously given (Comment 7(a)-3).

If a financial institution joins an interchange or shared network system (which provides access to terminals operated by other financial institutions), disclosures are required for additional EFT services not previously available to consumers if the terms and conditions differ from those previously disclosed (Comment 7(a)-4).

A financial institution may provide disclosures covering all EFT services that it offers, even if some consumers have not arranged to use all services (Comment 7(a)-5).

**Addition of EFT Services.** A financial institution must make disclosures for any new EFT service added to a consumer's account if the terms and conditions are different from those described in the initial disclosures. ECK transactions may be a new type of transfer requiring new disclosures (Appendix A-2 and Comment 7(c)-1).

**Content of Disclosures.** 12 CFR 1005.7(b) requires a financial institution to provide the following disclosures as they apply:

- **Liability of Consumers for Unauthorized Electronic Fund Transfers.** The financial institution must include a summary of the consumer's liability (under 12 CFR 1005.6, state law, or other applicable law or agreement) for unauthorized transfers (12 CFR 1005.7(b)(1)). A financial institution does not need to provide the liability disclosures if it imposes no liability. If it later decides to impose liability, it must first provide the disclosures (Comment 7(b)(1)-1). The financial institution can choose to include advice on promptly reporting unauthorized transfers or the loss or theft of the access device (Comment 7(b)(1)-3).

- **Telephone Number and Address.** A financial institution must provide a specific telephone number and address, on or with the disclosure statement, for reporting a lost or stolen access device or a possible unauthorized transfer (Comment 7(b)(2)-2. Except for the telephone number and address for reporting a lost or stolen access device or a possible unauthorized transfer, the disclosure may insert a reference to a telephone number that is readily available

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

to the consumer, such as "Call your branch office. The number is shown on your periodic statement" (Comment 7(b)(2)-2).

- **Business Days.** The financial institution's business days (12 CFR 1005.7(b)(3)).

  NOTE: The term "day" as used in Regulation E refers to calendar days unless specified as a "business day" (12 CFR 1005.2(d)).

- **Types of Transfers; Limitations on Frequency or Dollar Amount.** Limitations on the frequency and dollar amount of transfers generally must be disclosed in detail (12 CFR 1005.7(b)(4)). If the confidentiality of certain details is essential to the security of an account or system, these details may be withheld (but the fact that limitations exist must still be disclosed).[10] A limitation on account activity that restricts the consumer's ability to make EFTs must be disclosed even if the restriction also applies to transfers made by non-electronic means.[11] Financial institutions are not required to list preauthorized transfers among the types of transfers that a consumer can make (Comment 7(b)(4)-3). Financial institutions must disclose the fact that one-time EFTs initiated using information from a consumer's check are among the types of transfers that a consumer can make (See Appendix A-2 and Comment 7(b)(4)-4).

- **Fees.** A financial institution must disclose all fees for EFTs or for the right to make EFTs (12 CFR 1005.7(b)(5)). Other fees, for example, minimum-balance fees, stop-payment fees, account overdrafts, or ATM inquiry fees, may, but need not, be disclosed under Regulation E (see Regulation DD, 12 CFR Part 1030) and (Comment 7(b)(5)-1). A per-item fee for EFTs must be disclosed even if the same fee is imposed on non-electronic transfers. If a per-item fee is imposed only under certain conditions, such as when the transactions in the cycle exceed a certain number, those conditions must be disclosed. Itemization of the various fees may be on the disclosure statement or on an accompanying document referenced in the statement (Comment 7(b)(5)-2).

  A financial institution must disclose that networks used to complete the EFT as well as an ATM operator may charge a fee for an EFT or for balance inquiries (12 CFR 1005.7(b)(11)).

- **Documentation.** A summary of the consumer's right to receipts and periodic statements, as provided in 12 CFR 1005.9, and notices regarding preauthorized transfers as provided in 12 CFR 1005.10(a) and 1005.10(d) (12 CFR 1005.7(b)(6)).

---

[10] For example, if a financial institution limits cash ATM withdrawals to $100 per day, the financial institution may disclose that daily withdrawal limitations apply and need not disclose that the limitations may not always be in force (such as during periods when its ATMs are off-line) (Comment 7(b)(4)-1).

[11] For example, Regulation D (12 CFR 1004) restricts the number of payments to third parties that may be made from a money market deposit account; a financial institution that does not execute fund transfers in excess of those limits must disclose the restriction as a limitation on the frequency of EFTs (Comment 7(b)(4)-2).

# Interagency Consumer
# Laws and Regulations                                              **EFTA**

- **Stop Payment.** A summary of the consumer's right to stop payment of a preauthorized electronic fund transfer and the procedure for placing a stop-payment order, as provided in 12 CFR 1005.10(c) and 12 CFR 1005.7(b)(7).

- **Liability of Institution.** A summary of the financial institution's liability to the consumer under Section 910 of the EFTA for failure to make or to stop certain transfers (12 CFR 1005.7(b)(8)).

- **Confidentiality.** The circumstances under which, in the ordinary course of business, the financial institution may provide information concerning the consumer's account to third parties (12 CFR 1005.7(b)(9)). A financial institution must describe the circumstances under which any information relating to an account to or from which EFTs are permitted will be made available to third parties, not just information concerning those EFTs. Third parties include other subsidiaries of the same holding company (Comment 7(b)(9)-1).

- **Error Resolution.** The error-resolution notice must be substantially similar to Model Form A-3 in Appendix A of Part 1005. A financial institution may use different wording so long as the substance of the notice remains the same, may delete inapplicable provisions (for example, the requirement for written confirmation of an oral notification), and may substitute substantive state law requirements affording greater consumer protection than Regulation E (Comment 7(b)(10)-1). To take advantage of the longer time periods for resolving errors under 12 CFR 1005.11(c)(3) (for new accounts as defined in Regulation CC, transfers initiated outside the United States, or transfers resulting from POS debit card transactions), a financial institution must have disclosed these longer time periods. Similarly, a financial institution relying on the exception from provisional crediting in 12 CFR 1005.11(c)(2) for accounts relating to extensions of credit by securities brokers and dealers (Regulation T, 12 CFR Part 220) must disclose accordingly (Comment 7(b)(10)-2).

- **ATM Fees.** A notice that a fee may be imposed by an automated teller machine operator as defined in 12 CFR 1005.16(a), when the consumer initiates an electronic fund transfer or makes a balance inquiry, and by any network used to complete the transaction (12 CFR 1005.7(b)(11)).

## Change in Terms; Error Resolution Notice – 12 CFR 1005.8

If a financial institution contemplates a change in terms, it must mail or deliver a written or electronic notice to the consumer at least 21 days before the effective date of any change in a term or condition required to be disclosed under 12 CFR 1005.7(b) if the change would result in any of the following:

- Increased fees or charges,

- Increased liability for the consumer,

- Fewer types of available EFTs, or

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

- Stricter limitations on the frequency or dollar amounts of transfers (12 CFR 1005.8(a)(1)).

If an immediate change in terms or conditions is necessary to maintain or restore the security of an EFT system or account, the financial institution does not need to give prior notice. However, if the change is to be permanent, the financial institution must provide notice in writing of the change to the consumer on or with the next regularly scheduled periodic statement or within 30 days, unless disclosures would jeopardize the security of the system or account (12 CFR 1005.8(a)(2)).

For accounts to or from which EFTs can be made, the financial institution must mail, deliver, or provide electronically to the consumer at least once each calendar year the error resolution notice in 12 CFR 1005 Appendix A–Model Form A-3, or one substantially similar. Alternatively, the financial institution may include an abbreviated error resolution notice substantially similar to the notice set out in Appendix A–Model Form A-3 with each periodic statement (12 CFR 1005.8(b)).

## Disclosures at Automated Teller Machines - 12 CFR 1005.16

An ATM operator that charges a fee is required to provide notice that a fee will be imposed and disclose the amount of the fee. The notice must be provided either by showing it on the screen of the automated teller machine or on paper before the consumer is committed to paying a fee (12 CFR 1005.16(b) and (c)).

The "clear and readily understandable standard" under 12 CFR 1005.4(a) applies to the content of the notice. The requirement that the notice be in a retainable format only applies to printed notices (not those on the ATM screen) (12 CFR 1005.16(c)).

The fee may be imposed by the ATM operator only if: (1) the consumer is provided the required notice, and (2) the consumer elects to continue the transaction or inquiry after receiving such notice (12 CFR 1005.16(d)).

These fee disclosures are not required where a network owner is not charging a fee directly to the consumer (i.e., some network owners charge an interchange fee to financial institutions whose customers use the network) (Comment 7(b)(5)-3). If the network practices change such that the network charges the consumer directly, these fee disclosure requirements would apply to the network (12 CFR 1005.7(c)).

## Overdraft Service Disclosures - 12 CFR 1005.17

Disclosure requirements for overdraft services are addressed in Section III of this document.

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

## Prepaid Account Disclosures – 12 CFR 1005.15 and 12 CFR 1005.18

Disclosure requirements specific to prepaid accounts are addressed in Section VIII of this document.

## Gift Card Disclosures – 12 CFR 1005.20(c)

Disclosures must be clear and conspicuous and generally in a written or electronic form (except for certain pre-purchase disclosures, which may be given orally) that the consumer may retain. The fees and terms and conditions of expiration that are required to be disclosed prior to purchase may not be changed after purchase.

A number of disclosures must be made on the actual card. Making such disclosures in an accompanying terms and conditions document, on packaging surrounding a certificate or card, or on a sticker or other label affixed to the certificate or card does not constitute a disclosure on the certificate or card (12 CFR 1005.20(c)(4)). Those disclosures include the following:

- The existence, amount, and frequency of any dormancy, inactivity, or service fee;

- The expiration date for the underlying funds (or the fact that the funds do not expire);

- A toll-free telephone number and (if any) a website that the consumer may use to obtain a replacement certificate or card if the certificate or card expires while underlying funds are still available;

- A statement that the certificate or card expires, but the underlying funds do not expire or expire later than the certificate or card, as well as a statement that the consumer may contact the issuer for a replacement card;[12] and

- A toll-free telephone number and (if any) a website that the consumer may use to obtain information about fees (12 CFR 1005.20(e)(3)).

**Additional Disclosure Requirements Regarding Fees.** In addition to the disclosure requirements related to dormancy, inactivity, or service fees, all other fees must be disclosed as well. These disclosures must be provided on or with the certificate or card and disclosed prior to purchase. The certificate or card must also disclose a toll-free telephone number and website, if one is maintained, that a consumer may use to obtain fee information or replacement certificates or cards (12 CFR 1005.20(f)).

---

[12] This requirement does not apply to non-reloadable certificates or cards that expire seven years or more after the date of manufacture.

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

**Disclosure Requirements for Loyalty, Award, or Promotional Gift Cards (12 CFR 1005.20(a)(4)).** To qualify for the exclusion for loyalty, award, or promotional gift cards, the following must be disclosed:

- A statement indicating that the card, code, or other device is issued for loyalty, award, or promotional purposes, which must be included on the front of the card, code, or other device;

- The expiration date for the underlying funds, which must be included on the front of the card, code, or other device;

- The amount of any fees that may be imposed in connection with the card, code, or other device, and the conditions under which they may be imposed, which must be provided on or with the card, code, or other device; and

- A toll-free telephone number and, if one is maintained, a website, that a consumer may use to obtain fee information, which must be included on the card, code, or other device.

Amendments to Regulation E were issued on August 11, 2010. The amendments implemented legislation that modified the effective date of certain disclosure and card expiration requirements in the gift card provisions of the Credit Card Accountability Responsibility and Disclosure Act of 2009 for cards produced prior to April 1, 2010.

The disclosures and card expiration requirements are:

1) Disclosures required to be made prior to purchase (see 12 CFR 1005.20(c)(3));

2) Disclosures that must be stated on the certificate or card regarding the fees and expiration dates (see 12 CFR 1005.20(d)(2), (e)(1) & (e)(3)); and

3) Disclosures that may be provided on or with the certificate or card (see 12 CFR 1005.20(f)).

Gift cards must comply with all other provisions of the gift card rule.

Issuers must make the following disclosures on in-store signs, messages during customer service calls, websites, and general advertising:

- The funds underlying the gift card do not expire;

- Consumers have the right to receive a free replacement card, along with the packaging and materials that typically accompany the gift card; and

- The issuer will charge dormancy, inactivity, or service fees only if the fee is permitted by the gift card rule.

The issuer was required to make the disclosures via customer service call center and website until January 31, 2013. See 12 CFR 1005.20(h).

# Interagency Consumer
# Laws and Regulations                                    EFTA

## III.    Electronic Transaction Overdraft Services Opt In - 12 CFR 1005.17

In recent years overdraft protection services have been extended to cover overdrafts resulting from non-check transactions, including ATM withdrawals, debit card transactions at point of sale, on-line transactions, preauthorized transfers, and ACH transactions. Generally, institutions charge a flat fee each time an overdraft is paid, although some institutions have a tiered fee structure and charge higher fees based on the amount of the negative balance at the end of the day or as the number of overdrafts increases. Institutions commonly charge the same amount for paying check and ACH overdrafts as they would if they returned the item unpaid. Some institutions also impose a fee for each day the account remains overdrawn. For debit card overdrafts, the dollar amount of the fee and multiple assessments can exceed the dollar amount of the overdrafts.

In 2005, the agencies[13] issued guidance concerning the marketing, disclosure, and implementation of overdraft programs. The guidance also covers safety and soundness considerations, and establishes a number of best practices financial institutions should incorporate into their overdraft programs. The 2009 revisions to Regulation E supersede portions of the guidance related to ATM and one-time debit card overdraft transactions. However, in addition to the revised Regulation E requirements, institutions should incorporate their agency's overdraft guidance into their overdraft protection programs.

12 CFR 1005.17 was added in the 2009 revision to Regulation E.[14] It provides consumers with a choice to opt into their institution's overdraft protection program and be charged a fee for overdrafts for ATM and one-time debit card transactions. It also requires disclosure of the fees and terms associated with the institution's overdraft service. Before an institution may assess overdraft fees, the consumer must opt in, or affirmatively consent, to the overdraft service for ATM and one-time debit card transactions, and the consumer has an ongoing right to revoke consent. Institutions may not require an opt in for ATM and one-time debit transactions as a condition to the payment of overdrafts for checks and other transactions. The account terms, conditions and features must be the same for consumers who opt in and for those who do not.

---

[13] The Office of the Comptroller of the Currency, Board of Governors of the Federal Reserve System, Federal Deposit Insurance Corporation, and National Credit Union Administration, collectively issued joint guidance concerning a service offered by insured depository institutions commonly referred to as "bounced-check protection" or "overdraft protection." This credit service is sometimes offered on both consumer and small business transaction accounts as an alternative to traditional means of covering overdrafts. Joint Guidance on Overdraft Protection Programs (February 18, 2005).

[14] 74 Fed. Reg. 59033, Nov. 17, 2009; 75 Fed. Reg. 31665, June 4, 2010.

# Interagency Consumer
# Laws and Regulations                                         EFTA

**Opt-In Requirement for Overdraft Services.** The financial institution may assess a fee for paying an ATM or one-time debit card transaction pursuant to an overdraft service only if it has met the following requirements:

- The financial institution has provided the consumer with a written (or, if the consumer agrees, electronic) notice, segregated from all other information, describing the overdraft service;

- The financial institution has provided a reasonable opportunity for the consumer to affirmatively consent (opt in) to the overdraft service for ATM and one-time debit card transactions;

- The financial institution has obtained the consumer's affirmative consent (opt in) for ATM and one-time debit card transactions; and

- The financial institution has mailed or delivered written (or, if the consumer agrees, electronic) confirmation of the consent, including a statement informing the consumer of the right to revoke consent. An institution complies if it adopts reasonable procedures to ensure that it assesses overdraft fees only for transactions paid after mailing or delivering the confirmation to the consumer (12 CFR 1005.17(b)(1); Comment 17(b)-7).

**Fee Prohibitions.** Generally, an institution may not charge overdraft fees for paying an ATM or one-time debit card transaction unless the consumer has opted in. The fee prohibition also applies to an institution that has a policy and practice of not paying an ATM or one-time debit card overdraft when it reasonably believes at the time of the authorization request that the consumer does not have sufficient funds available to pay the transaction, although the institution does not have to comply with the notice and opt-in requirements (Comment17 (b)-1(iv)).

Lack of consent does not prohibit the financial institution from paying ATM or one-time debit card overdrafts. However, the financial institution may charge a fee only if the consumer has consented to the institution's overdraft service for ATM and one-time debit card transactions (Comment 17(b)-2). Conversely, the financial institution is not required to pay an ATM or one-time debit card overdraft even if the consumer has consented to pay a fee (Comment 17(b)-3).

For a consumer who has not opted in, if a fee or charge is based on the amount of the outstanding negative balance, an institution may not charge a fee for a negative balance that is solely attributable to an ATM or one-time debit card transaction. However, an institution may assess a fee if the negative balance is attributable in whole or in part to a check, ACH transaction or other type of transaction not subject to the prohibition on assessing overdraft fees (Comment 17(b)-8).

For a consumer who has not opted in, the institution may not assess daily or sustained negative balance, overdraft, or similar fees for a negative balance, based solely on ATM or one-time debit card transactions. However, if the negative balance is attributable in part to a check, ACH transaction, or other type of transaction not subject to the prohibition on assessing overdraft fees, the institution may charge a daily or sustained overdraft or similar fee, even if the consumer has not opted in. The date the fee may be charged is based on the date on which the check, ACH, or other type of transaction is paid into overdraft (Comment 17(b)-9).

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

**Content and Format of Notice.** The notice describing the overdraft service must be substantially similar to Model Form A-9. The notice must include all of the following items, and may not contain any other information not expressly specified or otherwise permitted:

- A brief description of the overdraft service and the types of transactions for which the financial institution may charge a fee;

- The dollar amount of any fee that may be charged for an ATM or one-time debit card transaction, including any daily or other overdraft fees;[15]

- The maximum number of fees that may be charged per day, or, if applicable, that there is no limit;

- An explanation of the right to affirmatively consent to the overdraft service, including the methods by which the consumer may consent;[16] and

- The availability of a line of credit or a service that transfers funds from another account to cover overdrafts, if the financial institution offers those alternatives[17] (12 CFR 1005.17(d)(1) through (d)(5)).

The financial institution also may (but is not required to) include the following information, to the extent applicable:

- Disclosure of the right to opt into, or out of, the payment of overdrafts for other types of transactions (e.g., checks, ACH transactions, or automatic bill payments) and a means for the consumer to exercise such choices;

- Disclosure of the financial institution's returned item fee, as well as the fact that merchants may charge additional fees; and

- Disclosure of the right to revoke consent (12 CFR 1005.17(d)(6)).

**Reasonable Opportunity to Consent.** The financial institution must provide a reasonable opportunity to consent. Reasonable methods of consent include mail - if the financial institution provides a form for the consumer to fill out and mail, telephone - if the financial institution

---

[15] If the amount of the fee may vary based on the number of times the consumer has overdrawn the account, the amount of the overdraft, or other factors, the financial institution must disclose the maximum fee.

[16] Institutions may tailor the response portion of Model Form A-9 to the methods offered. For example, a tear-off portion of Model Form A-9 is not necessary if consumers may only opt-in by telephone or electronically (Comment 17(d)-3).

[17] If the institution offers both a line of credit subject to Regulation Z (12 CFR 1026) and a service that transfers funds from another account of the consumer held at the institution to cover overdrafts, the institution must state in its opt-in notice that both alternative plans are offered. If the institution offers one, but not the other, it must state in its opt-in notice the alternative plan that it offers. If the institution does not offer either plan, it should omit the reference to the alternative plans (Comment 17(d)-5). If the financial institution offers additional alternatives for paying overdrafts, it may (but is not required to) disclose those alternatives 12 CFR 1005.17(d)(5).

# Interagency Consumer
# Laws and Regulations                                    EFTA

provides a readily-available telephone line that the consumer may call, electronic means - if the financial institution provides a form that can be accessed and processed at its website, where the consumer may click on a box to consent and click on a button to affirm consent, or in person - if the financial institution provides a form for the consumer to complete and present at a branch or office (Comment 17(b)-4). The financial institution may provide the opportunity to consent and require the consumer to make a choice as a step to opening an account (Comment 17(b)-5).

**Affirmative Consent is Necessary.** An important component of the opt-in feature is that the consumer's affirmative consent is necessary before the institution may charge overdraft fees for paying an ATM or one-time debit card transaction (12 CFR 1005.17(b)(1)(iii)). The consent must be separate from other consents or acknowledgments (including a consent to receive disclosures electronically). Check boxes are allowed, but the check box and the consumer's signature may only apply to the consumer's consent to opt in. Preprinted disclosures about the overdraft service provided with a signature card or contract do not constitute affirmative consent (Comment 17(b)-6).

**Confirmation and Consumer's Right to Revoke.** Not only must the consumer affirmatively consent, but the institution must mail or deliver to the consumer a written confirmation (or electronic, if the consumer agrees) that the consumer has consented, along with a statement informing the consumer of the right to revoke the consent at any time (12 CFR 1005.17(b)(1)(iv) and Comment. 17(b)-7). An institution complies with the confirmation requirement if it has adopted reasonable procedures to ensure that overdraft fees are assessed only on transactions paid after the confirmation is mailed or delivered to the consumer (Comment 17(b)-7).

**Assessing Fees.** For consumers who have not opted in, institutions are prohibited from charging overdraft fees for paying those transactions. This prohibition applies to daily or sustained overdraft, negative balance, or similar fees. However, the rule does not prohibit an institution from assessing these fees if the negative balance is attributable, in whole or part, to a check, ACH or other transaction not subject to the fee prohibition. However, if the negative balance is attributable in part to an ATM transaction, for example, and in part to a check, a fee may be assessed based on the date when the check is paid into overdraft, not the date of the ATM or one-time debit transaction (Comment 17(b)-9).

**Conditioning Payment of Other Overdrafts.** The financial institution may not condition the payment of other types of overdraft transactions on the consumer's affirmative consent, and the financial institution may not decline to pay other types of overdraft transactions because the consumer has not affirmatively consented to the payment of ATM and one-time debit card overdrafts (12 CFR 1005.17(b)(2)). In other words, the financial institution may not use different criteria for paying other types of overdraft transactions for consumers who have consented and for consumers who have not consented (Comment 17(b)(2)-1).

**Same Account Terms, Conditions, and Features.** In addition, the financial institution must provide to consumers who do not affirmatively consent the same account terms, conditions, and features (except the payment of ATM and one-time debit overdrafts) that are available to consumers who do affirmatively consent (12 CFR 1005.17(b)(3)). That requirement includes, but is not limited to:

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

- Interest rates paid,

- Fees assessed,

- The type of ATM or debit card provided to the depositor,[18]

- Minimum balance requirements, and

- On-line bill payment services (Comment 17(b)(3)-1).

**Joint Accounts.** Any one account holder may consent, or revoke consent, for payment of ATM or one-time debit card transactions from a joint account (12 CFR 1005.17(e)).

**Continuing Right to Consent or Revoke.** A consumer may consent to the payment of ATM and one-time debit card overdrafts at any time. A consumer may also revoke consent at any time. The financial institution must implement a revocation as soon as reasonably practicable (12 CFR 1005.17(f)). The financial institution need not waive overdraft fees assessed before it implements the consumer's revocation (Comment 17(f)-1).

**Duration of Consent.** Consent remains effective until the consumer revokes it, unless the financial institution terminates the overdraft service (12 CFR 1005.17(g)). The financial institution may terminate the overdraft service, for example, if the consumer makes excessive use of the service (Comment 17(g)-1).

**Effective Date.** The overdraft services rule became effective on January 19, 2010, and compliance became mandatory on July 1, 2010. For accounts opened on or after July 1, 2010, the financial institution must obtain consent before charging a fee for payment of any ATM or one-time debit overdraft. However, for accounts opened before July 1, 2010, the financial institution may not charge a fee for paying any ATM or one-time debit overdraft on or after August 15, 2010, unless it has obtained consent (See 12 CFR 1005.17(c)).

---

[18] For example, the financial institution may not provide a PIN-only debit card to consumers who do not opt in, and a debit card with both PIN and signature-debit features to consumers who do opt in.

# Interagency Consumer
# Laws and Regulations                                              EFTA

## IV.    Issuance of Access Devices - 12 CFR 1005.5 and 1005.18

In general, a financial institution may issue an access device to a consumer only in the following cases:

- The consumer requested it in writing or orally.[19]

- It is a renewal of, or a substitute for, an accepted access device (as defined in 12 CFR 1005.2(a)). See 12 CFR 1005.5(a).

Only one renewal or substitute device may replace a previously issued device. A financial institution may provide additional devices at the time it issues the renewal or substitute access device provided the institution complies with the requirements for issuing unsolicited access devices for the additional devices (Comments 5(a)(2)-1 and 5(b)-5).

A financial institution may issue an unsolicited access device only if the access device meets all of the following criteria. The access device is:

- Not validated – that is, it cannot be used to initiate an EFT.

- Accompanied by the explanation that it is not validated and instructions on how the consumer may dispose of it if the consumer does not wish to validate it.

- Accompanied by a complete disclosure, in accordance with 12 CFR 1005.7, of the consumer's rights and liabilities that will apply if the access device is validated.

- Validated only upon oral or written request from the consumer and after a verification of the consumer's identity by some reasonable means (12 CFR 1005.5(b)).

The financial institution may use any reasonable means of verifying the consumer's identity, but the consumer is not liable for any unauthorized transfers if an imposter succeeds in validating the access device (Comment 5(b)-4).

**Prepaid Account Access Devices.** Consistent with 12 CFR 1005.5(a), and except as provided, as applicable, in 12 CFR 1005.5(b), a financial institution may issue an access device only in response to an oral or written request for the device or as a renewal or substitute for an accepted access device. A consumer is deemed to request an access device for a payroll card account when the consumer chooses to receive salary or other compensation through a payroll card account, or for a government benefit account when the consumer applies for government benefits that an agency disburses or will disburse by means of an EFT. A consumer is deemed to request an access device for a prepaid account when, for example, the consumer acquires a

---

[19] For a joint account, a financial institution may issue an access device to each account holder for whom the requesting holder specifically requests an access device (Comment 5(a)(1)-1).

# Interagency Consumer
# Laws and Regulations                                      EFTA

prepaid account offered for sale at a retail location or applies for a prepaid account by telephone or online. If an access device for a prepaid account is provided on an unsolicited basis where the prepaid account is used for disbursing funds to a consumer, and the financial institution or third party making the disbursement does not offer any alternative means for the consumer to receive those funds in lieu of accepting the prepaid account, in order to satisfy 12 CFR 1005.5(b)(2), the financial institution must inform the consumer that the consumer has no other means by which to initially receive the funds in the prepaid account other than by accepting the access device, as well as the consequences of disposing of the access device (12 CFR 1005.15(b) and Comment 18(a)-1).

**EFT Added to Credit Card.** The EFTA and Regulation E apply when the capability to initiate EFTs is added to an accepted credit card (as defined under Regulation Z). The EFTA and Regulation E also apply to the issuance of an access device (other than an access device for a prepaid account) that permits credit extensions under a preexisting agreement between the consumer and a financial institution to extend credit only to cover overdrafts (or to maintain a specified minimum balance). The TILA and Regulation Z govern the addition of a credit feature to an accepted access device, and except as discussed above, the issuance of a credit card that is also an access device. For information on the relationship of Regulation E to other laws, including TILA, see Section XI of this document, and 12 CFR 1005.12.

# V.    Consumer Liability and Error Resolution

## Liability of Consumers for Unauthorized Transfers – 12 CFR 1005.6

A consumer may be liable for an unauthorized EFT (defined in 12 CFR 1005.2(m)) depending on when the consumer notifies the financial institution and whether an access device was used to conduct the transaction. Under the EFTA, there is no bright-line time limit within which consumers must report unauthorized EFTs (71 Fed. Reg. 1638, 1653 (Jan. 10, 2006)).

The extent of the consumer's liability is determined solely by the consumer's promptness in notifying the financial institution (Comment 6(b)-3). Other factors **may not** be used as a basis to hold consumers liable. 12 CFR 1005.6 expressly prohibits the following factors as the basis for imposing greater liability than is permissible: the consumer was negligent (e.g., wrote a PIN on an ATM card); an agreement between the consumer and the financial institution provides for greater liability; or the consumer is liable for a greater amount under state law (Comment 6(b)-2 and 6(b)-3).

A consumer may only be held liable for an unauthorized transaction, within the limitations set forth in 12 CFR 1005.6(b), if:

- The financial institution has provided all of the following written disclosures to the consumer:

  o A summary of the consumer's liability for unauthorized EFTs.

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

- o   The telephone number and address for reporting that an unauthorized EFT has been or may be made.

- o   The financial institution's business days.

- Any access device used to initiate the EFT was an accepted access device (as defined in 12 CFR 1005.2(a)).

- The financial institution has provided a means to identify the consumer to whom the access device was issued (12 CFR 1005.6(a)).

For prepaid accounts that are not payroll card accounts or government benefit accounts, a financial institution is not required to comply with the liability limits and error resolution requirements in 12 CFR 1005.6 and 1005.11 for any prepaid account for which it has not successfully completed its consumer identification and verification process, provided certain disclosures are given (12 CFR 1005.18(e)(3)).

12 CFR 1005.6 allows, but does not require, the financial institution to provide a separate means to identify each consumer of a multiple-user account (Comment 6(a)-2).

The limitations on the amount of consumer liability for unauthorized EFTs, the time limits within which consumers must report unauthorized EFTs, and the liability for failing to adhere to those time limits, are listed in the chart below (12 CFR 1005.6(b)). The financial institution may impose <u>less</u> consumer liability than is provided by 12 CFR 1005.6 based on state law or the deposit agreement (12 CFR 1005.6(b)(6)).

## Consumer Liability for Unauthorized Transfers

| Event | Timing of Consumer Notice to Financial Institution | Maximum liability |
|---|---|---|
| Loss or theft of access device.[20] | Within two business days after learning of loss or theft. | Lesser of $50, OR total amount of unauthorized transfers that occur before notice to the financial institution. |
| Loss or theft of access device. | More than two business days after learning of loss or theft up to 60 days after transmittal of statement showing first unauthorized transfer made with access device. | Lesser of $500, OR the sum of: <br>(a) $50 or the total amount of unauthorized transfers occurring in the first two business days, whichever is less; AND <br>(b) The amount of unauthorized transfers occurring after two business days and before notice to the financial institution.[21] |

---

[20] Includes a PIN if used without a card in a telephone transaction, for example.

[21] Provided the financial institution demonstrates that these transfers would not have occurred had notice been given within the two-business-day period.

# Interagency Consumer
# Laws and Regulations                                    EFTA

| Loss or theft of access device. | More than 60 days after transmittal of statement showing first unauthorized transfer made with access device. | For transfers occurring within the 60-day period, the lesser of $500, OR the sum of<br>(a) Lesser of $50 or the amount of unauthorized transfers in first two business days; AND<br>(b) The amount of unauthorized transfers occurring after two business days.<br>For transfers occurring after the 60-day period, unlimited liability (until the financial institution is notified).[22] |
|---|---|---|
| Unauthorized transfer(s) not involving loss or theft of an access device. | Within 60 days after transmittal of the periodic statement on which the unauthorized transfer first appears. | No liability. |
| Unauthorized transfer(s) not involving loss or theft of an access device. | More than 60 days after transmittal of the periodic statement on which the unauthorized transfer first appears. | Unlimited liability for unauthorized transfers occurring 60 days after the periodic statement and before notice to the financial institution. |

**Knowledge of Loss or Theft.** The fact that a consumer has received a periodic statement reflecting an unauthorized transaction is a factor, but not conclusive evidence, in determining whether the consumer had knowledge of a loss or theft of the access device (Comment 6(b)(1)-2).

**Timing of Notice.** If a consumer's delay in notifying a financial institution was due to extenuating circumstances, such as extended travel or hospitalization, the time periods for notification specified above must be extended to a reasonable time (12 CFR 1005.6(b)(4); Comment 6(b)(4)-1).

**Notice to the Financial Institution.** A consumer gives notice to a financial institution about unauthorized use when the consumer takes reasonable steps to provide the financial institution with the pertinent information, whether or not a particular employee actually receives the information (12 CFR 1005.6(b)(5)(i)). Even if the consumer is unable to provide the account number or the card number, the notice effectively limits the consumer's liability if the consumer sufficiently identifies the account in question, for example, by giving the name on the account and the type of account (Comment 6(b)(5)-3). At the consumer's option, notice may be given in person, by telephone, or in writing (12 CFR 1005.6(b)(5)(ii)). Notice in writing is considered given at the time the consumer mails the notice or delivers the notice for transmission by any other usual means to the financial institution. Notice may also be considered given when the financial institution becomes aware of circumstances leading to the reasonable belief that an unauthorized transfer has been or may be made (12 CFR 1005.6(b)(5)(iii)).

---

[22] Provided the financial institution demonstrates that these transfers would not have occurred had notice been given within the 60-day period.

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

## Procedures for Resolving Errors – 12 CFR 1005.11

This section defines the term *error* and describes the steps the consumer must take when asserting an error in order to receive the protection of the EFTA and 12 CFR 1005.11, and the procedures that a financial institution must follow to resolve an alleged error under this section.

An *error* includes any of the following:

- An unauthorized EFT.

- An incorrect EFT to or from the consumer's account.

- The omission from a periodic statement of an EFT to or from the consumer's account that should have been included.

- A computational or bookkeeping error made by the financial institution relating to an EFT.

- The consumer's receipt of an incorrect amount of money from an electronic terminal.

- An EFT not identified in accordance with the requirements of 12 CFR 1005.9 or 1005.10(a).

- A consumer's request for any documentation required by 12 CFR 1005.9 or 1005.10(a) or for additional information or clarification concerning an EFT (12 CFR 1005.11(a)(1)).

The term *error* does not include:

- A routine inquiry about the balance in the consumer's account or a request for duplicate copies of documentation or other information that is made only for tax or other record-keeping purposes (12 CFR 1005.11(a)(2)(i), (ii), and (iii)).

- The fact that a financial institution does not make a terminal receipt available for a transfer of $15 or less in accordance with 12 CFR 1005.9(e) (Comment 11(a)-6).

A financial institution must comply with the error resolution procedures in 12 CFR 1005.11 with respect to any oral or written notice of error from the consumer that:

- The financial institution receives not later than 60 days after sending a periodic statement or other documentation first reflecting the alleged error (see 12 CFR 1005.14 and 1005.18).

- Enables the financial institution to identify the consumer's name and account number.

- Indicates why the consumer believes the error exists and, to the extent possible, the type, date, and amount of the error (12 CFR 1005.11(b)(1)).

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

A financial institution may require a consumer to give written confirmation of an error within 10 business days of giving oral notice. The financial institution must provide the address where confirmation must be sent (12 CFR 1005.11(b)(2)).

**Error Resolution Procedures.** After receiving a notice of error, the financial institution must do all of the following:

- Promptly investigate the oral or written allegation of error.

- Complete its investigation within 10 business days.

- Report the results of its investigation within three business days after completing its investigation.

- Correct the error within one business day after determining that an error has occurred (12 CFR 1005.11(c)(1)).

The financial institution may take up to 45 days (12 CFR 1005.11(c)(2)) to complete its investigation provided it:

- Provisionally credits the funds (including interest, where applicable) to the consumer's account within the 10 business-day period.

- Advises the consumer within two business days of the provisional crediting.

- Gives the consumer full use of the funds during the investigation.

A financial institution need not provisionally credit the account to take up to 45 days to complete its investigation if the consumer fails to provide the required written confirmation of an oral notice of error within 10 business days, or if the notice of error involves an account subject to the margin requirements or other aspects of Regulation T (Securities Credit by Brokers and Dealers, 12 CFR Part 220), (12 CFR 1005.11(c)(2)(i)).

However, where an error involves an unauthorized EFT, the financial institution must comply with the requirements of the provisions relating to unauthorized EFTs before holding the consumer liable, even if the consumer does not provide a notice of error within the time limits in 12 CFR 1005.11(b) (Comment 11(b)(1)-7).

When investigating a claim of error, the financial institution need only review its own records if the alleged error concerns a transfer to or from a third party, and there is no agreement between the financial institution and the third party for the type of EFT involved (12 CFR 1005.11(c)(4)). However, the financial institution may not limit its investigation solely to the payment instructions where other information within the financial institution's records pertaining to a particular account may help to resolve a consumer's claim (Comment 11(c)(4)-5).

If, after investigating the alleged error, the financial institution determines that an error has occurred, it must promptly (within one business day after such determination) correct the error,

# Interagency Consumer
# Laws and Regulations                    **EFTA**

including the crediting of interest if applicable. The financial institution must provide within three business days of the completed investigation an oral or written report of the correction to the consumer and, as applicable, notify the consumer that the provisional credit has been made final (12 CFR 1005.11(c)(1) & (2)(iii) and (iv)).

If the financial institution determines that no error occurred or that an error occurred in a different manner or amount from that described by the consumer, the financial institution must mail or deliver a written explanation of its findings within three business days after concluding its investigation. The explanation must include a notice of the consumer's rights to request the documents upon which the financial institution relied in making its determination (12 CFR 1005.11(d)).

Upon debiting a provisionally credited amount, the financial institution must notify the consumer of the date and amount of the debit and of the fact that the financial institution will honor (without charge) checks, drafts, or similar paper instruments payable to third parties and preauthorized debits for five business days after transmittal of the notice. The financial institution need honor only items that it would have paid if the provisionally credited funds had not been debited (12 CFR 1005.11(d)(2)). Upon request from the consumer, the financial institution must promptly mail or deliver to the consumer copies of documents upon which it relied in making its determination (12 CFR 1005.11(d)(1)).

If a notice involves an error that occurred within 30 days after the first deposit to the account was made, the time periods are extended from 10 and 45 days, to 20 and 90 days, respectively. If the notice of error involves a transaction that was not initiated in a state or resulted from a point-of-sale debit card transaction, the 45-day period is extended to 90 days (12 CFR 1005.11(c)(3)).

If a financial institution has fully complied with the investigation requirements, it generally does not need to reinvestigate if a consumer later reasserts the same error. However, it must investigate a claim of error asserted by a consumer following receipt of information provided pursuant to 12 CFR 1005.11(a)(1)(vii) and 12 CFR 1005.11(e).

# VI.    Receipts and Periodic Statements

## Documentation of Transfers - 12 CFR 1005.9

**Electronic Terminal Receipts.** Receipts must be made available at the time a consumer initiates an EFT at an electronic terminal (12 CFR 1005.9(a)). Financial institutions may provide receipts only to consumers who request one (Comment 9(a)-1). The receipt must include, as applicable:

- *Amount of the transfer* — a charge for making the transfer may be included in the amount, provided the charge is disclosed on the receipt and on a sign posted on or at the terminal.

- *Date* — the date the consumer initiates the transfer.

# Interagency Consumer
# Laws and Regulations                                    EFTA

- *Type of transfer and type of account* — descriptions such as "withdrawal from checking" or "transfer from savings to checking" are appropriate. This is true even if the accounts are only similar in function to a checking account (such as a share draft or NOW account) or a savings account (such as a share account). If the access device used can only access one account, the type of account may be omitted (Comments 9(a)(3)-1; 9(3)-2; 9(3)-4; and 9(3)-5).

- *Number or code identifying the consumer's account(s) or the access device used to initiate the transfer* — the number and code need not exceed four digits or letters.

- *Location of the terminal* — the location of the terminal where the transfer is initiated or an identification, such as a code or terminal number. If the location is disclosed, except in limited circumstances where all terminals are located in the same city or state, the receipt must include the city and state or foreign country and one of the following:

  - Street address of the terminal;

  - Generally accepted name for the location of the terminal (such as an airport, shopping center, or branch of a financial institution); or

  - Name of the entity (if other than the financial institution providing the statement) at whose place of business the terminal is located, such as a store, and the city, state, or foreign country (12 CFR 1005.9(a)(5)).

*Third party* — name of any third party to or from whom funds are transferred — a code may be used to identify the party if the code is explained on the receipt. This requirement does not apply if the name of the party is provided by the consumer in a manner the terminal cannot duplicate on the receipt, such as on a payment stub (12 CFR 1005.9(a)(6) and Comment 9(a)(6)-1).

Receipts are not required for EFTs of $15 or less (12 CFR 1005.9(e)).

**Periodic Statements.** Periodic statements must be sent for each monthly cycle in which an EFT has occurred, and at least quarterly if no EFT has occurred (12 CFR 1005.9(b)). For each EFT made during the cycle, the statement must include, as applicable:

- Amount of the transfer — if a charge was imposed at an electronic terminal by the owner or operator of the terminal, that charge may be included in the amount.

- Date the transfer was posted to the account.

- Type of transfer(s) and type of account(s) to or from which funds were transferred.

- For each transfer (except deposits of cash, or a check, draft or similar paper instrument to the consumer's account) initiated at an electronic terminal, the terminal location as required for the receipt under 12 CFR 1005.9(a)(5).

- Name of any third party payee or payor.

# Interagency Consumer
# Laws and Regulations                                    EFTA

- Account number(s).

- Total amount of any fees and charges, other than a finance charge as defined by Regulation Z, assessed during the period for making EFTs, the right to make EFTs, or for account maintenance (Comment 9(b)(3)).

- Balance in the account at the beginning and close of the statement period.

- Address and telephone number to be used by the consumer for inquiries or notice of errors. If the financial institution has elected to send the abbreviated error notice with every periodic statement, the address and telephone number may appear on that document.

- If the financial institution has provided a telephone number which the consumer can use to find out whether or not a preauthorized transfer has taken place, that telephone number.

## Exceptions to the Periodic Statement Requirement for Certain Accounts

- **Passbook Accounts.** Where a consumer's passbook may not be accessed by an EFT other than preauthorized transfers to the account, a periodic statement need not be sent, provided that the financial institution updates the consumer's passbook or provides the required information on a separate document at the consumer's request. To update the passbook, the amount and date of each EFT made since the passbook was last presented must be listed (12 CFR 1005.9(c)(1)(i)). For other accounts that may be accessed only by preauthorized transfers to the account, the financial institution must send a periodic statement at least quarterly (12 CFR 1005.9(c)(1)(ii)).

- **Transfers between Accounts.** If a transfer occurs between two accounts of the consumer at the same financial institution, the transfer need only be documented for one of the two accounts (12 CFR 1005.9(c)(2)). A preauthorized transfer between two accounts of the consumer at the same financial institution is subject to the 12 CFR 1005.9(c)(1) rule on preauthorized transfers and not the 12 CFR 1005.9(c)(2) rule on intra-institutional transfers (12 CFR 1005.9(c)(3)).

- **Documentation for Foreign-Initiated Transfers.** If an EFT is initiated outside the United States, the financial institution need not provide a receipt or a periodic statement reflecting the transfer if it treats an inquiry for clarification or documentation as a notice of error (12 CFR 1005.9(d)).

## Alternatives to Periodic Statements for Financial Institutions Offering Prepaid Accounts – 12 CFR 1005.15 and 1005.18

12 CFR 1005.18 provides an alternative to providing periodic statements for prepaid accounts if financial institutions make account information available to consumers by specific means. In

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

addition, 12 CFR 1005.18 clarifies how financial institutions that do not provide periodic statements for prepaid accounts can comply with the Subpart A requirements relating to initial disclosures, the annual error resolution notice, liability limits, and error resolution procedures.

Typically, employers and third-party service providers do not meet the definition of a "financial institution" subject to the regulation because they neither (i) hold prepaid accounts (including payroll card accounts) nor (ii) issue prepaid cards and agree with consumers to provide EFT services in connection with prepaid accounts. However, to the extent an employer or a service provider undertakes either of these functions, it would be deemed a "financial institution" under the regulation (Comment 18(a)-2).

12 CFR 1005.15 contains similar provisions for government benefit accounts, as defined in 12 CFR 1005.15(a)(2). A government agency is deemed to be a "financial institution" subject to the regulation if it directly or indirectly issues an access device to a consumer for use in initiating an EFT of government benefits from an account, other than needs-tested benefits in a program established under state or local law or administered by a state or local agency (12 CFR 1005.15(a)(1)).

**Alternative to Periodic Statements.** A financial institution (which may include government agencies as defined by 12 CFR 1005.15(a)(1)) need not furnish periodic statements required by 12 CFR 1005.9(b) if the financial institution makes available to the consumer the following[23]:

- The account balance, through a readily available telephone line, and for government benefit accounts only, also at a terminal.

- An electronic history of account transactions, such as through a website, covering at least 12 months preceding the date the consumer electronically accesses the account; and

- A written history of account transactions provided promptly in response to an oral or written request and covering at least 24 months preceding the date the financial institution receives the consumer's request (12 CFR 1005.15(d)(1) and 1005.18(c)(1)).

For prepaid accounts that are not payroll card accounts or government benefit accounts, a financial institution is not required to provide a written history of the consumer's account transactions pursuant to 12 CFR 1005.18(c)(1)(iii) for any such account for which the financial institution has not completed its consumer identification and verification process (12 CFR 1005.18(c)(2)).

---

[23] If, on April 1, 2019, a financial institution does not have readily accessible the data necessary to make available 12 months of electronic account transaction history or to provide 24 months of written account transaction history upon request, the financial institution may make available or provide such histories using the data for the time period it has until the financial institution has accumulated the data necessary to comply in full with those requirements (12 CFR 1005.18(h)(3)(i)).

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

The electronic and written histories of account transactions must include the same information required on periodic statements under 12 CFR 1005.9(b) (12 CFR 1005.15(d)(2) and 1005.18(c)(3)).

**Modifications to Other Regulation E Requirements.** If a financial institution provides an alternative to periodic statements under 12 CFR 1005.18(c)(1) (or government agency provides an alternative to periodic statements under 12 CFR 1005.15(d)(1)), it must comply with the following pursuant to 12 CFR 1005.18(d) and 1005.15(e):

- Modify the initial disclosures under 12 CFR 1005.7(b) by disclosing:

  - A telephone number that the consumer may call to obtain the account balance; the means by which the consumer can obtain an electronic account history, such as the address of a website; and a summary of the consumer's right to receive a written account transaction history upon request (in place of the summary of the right to receive a periodic statement required by 12 CFR 1005.7(b)(6)), including a telephone number to call to request a history. This disclosure may be made by providing a notice substantially similar to the notice contained in paragraph A-7(a) in Appendix A. For government benefit accounts, the disclosure required by 12 CFR 1005.15(e)(1)(i) may be made by providing a notice substantially similar to the notice contained in paragraph A-5(a) in Appendix A.

  - A notice concerning error resolution that is substantially similar to the notice contained in paragraph A-7(b) in Appendix A, or paragraph A-5(b) in Appendix A for government benefit accounts, in place of the notice required by 12 CFR 1005.7(b)(10). Alternatively, for prepaid account programs for which the financial institution does not have a consumer identification and verification process, a description of the financial institution's error resolution process and limitations on consumers' liability for unauthorized transfers or, if none, a statement that there are no such protections (12 CFR 1005.18(d)(1)(ii)).

- Provide an annual error resolution notice that is substantially similar to the notice contained in paragraph A-7(b) in Appendix A, in place of the notice required by 12 CFR 1005.8(b). Alternatively, a financial institution (which may include government agencies as defined by 12 CFR 1005.15(a)(1)) may include on or with each electronic and written account transaction history provided in accordance with 12 CFR 1005.18(c)(1), or 12 CFR 1005.15(d)(1) for government benefit accounts, a notice substantially similar to the abbreviated notice for periodic statements contained in paragraph A-3(b) in Appendix A, modified as necessary to reflect the error resolution provisions set forth in 12 CFR 1005.18(e) or 1005.15(e)(3).

- Comply with modified timing provisions for limited liability requirements as follows:

  - For purposes of 12 CFR 1005.6(b)(3), the 60-day period for reporting any unauthorized transfer begins on the earlier of (12 CFR 1005.18(e)(1)(i) and 1005.15(e)(3)(i)):

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

- ▪ The date the consumer electronically accesses the consumer's account under 12 CFR 1005.18(c)(1)(ii), or under 12 CFR 1005.15(d)(1)(ii) for a government benefit account, provided that the electronic account transaction history made available to the consumer reflects the unauthorized transfer; or

- ▪ The date the financial institution (including an agency) sends a written history of the consumer's account transactions requested by the consumer under 12 CFR 1005.18(c)(1)(iii), or under 12 CFR 1005.15(d)(1)(iii) for a government benefit account, in which the unauthorized transfer is first reflected.

- o Alternatively, a financial institution (including an agency)may limit the consumer's liability for an unauthorized transfer as provided under 12 CFR 1005.6(b)(3) for transfers reported by the consumer within 120 days after the transfer was credited or debited to the consumer's account (12 CFR 1005.15(e)(3)(ii) and 1005.18(e)(1)(ii)).

- • Comply with modified timing provisions for error resolution requirements as follows:

- o A written or oral error notice is considered timely, and the financial institution (including an agency) must comply with the requirements of 12 CFR 1005.11, if the financial institution receives notice from the consumer by the earlier of (12 CFR 1005.18(e)(2)(i) and 1005.15(e)(4)(i)):

- ▪ 60 days after the date the consumer electronically accesses the consumer's account under 12 CFR 1005.18(c)(1)(ii), or 12 CFR 1005.15(d)(1)(ii) for a government benefit account, provided that the electronic history made available to the consumer reflects the alleged error; or

- ▪ 60 days after the date the financial institution (including an agency) sends a written history of the consumer's account transactions requested by the consumer under 12 CFR 1005.18(c)(1)(iii), or under 12 CFR 1005.15(d)(1)(iii) for a government benefit account, in which the alleged error is first reflected.

Alternatively, a financial institution (including an agency) complies with the error resolution requirements in 12 CFR 1005.11 if it investigates any oral or written notice of an error from the consumer that is received by the financial institution within 120 days after the transfer allegedly in error was credited or debited to the consumer's account (12 CFR 1005.15(e)(4)(ii) and 1005.18(e)(2)(ii)).

- • Regardless of whether periodic statements are provided or the alternative followed: once a financial institution successfully completes its consumer identification and verification process with respect to a prepaid account (other than payroll card accounts or government benefit accounts), the financial institution must limit the consumer's liability for unauthorized transfers and resolve errors that occur following verification in accordance with 12 CFR 1005.6 or 1005.11, or the modified timing requirements in 12 CFR 1005.18(e), as applicable (12 CFR 1005.18(e)(3)(iii)).

# Interagency Consumer
# Laws and Regulations                                        **EFTA**

## Summary Totals of Fees – 12 CFR 1005.15 and 1005.18

A financial institution (including an agency) must disclose the amount of any fees assessed against the account, whether for EFTs or otherwise, on any periodic statement provided pursuant to 12 CFR 1005.9(b) and on any history of account transactions provided or made available by the financial institution (12 CFR 1005.15(d)(2) and 1005.18(c)(4)).

A financial institution (including an agency) must display a summary total of the amount of all fees assessed by the financial institution against the consumer's prepaid account for the prior calendar month and for the calendar year to date on any periodic statement provided pursuant to 12 CFR 1005.9(b) and on any history of account transactions provided or made available by the financial institution (12 CFR 1005.15(d)(2) and 1005.18(c)(5)).[24]

# VII. Gift Cards – 12 CFR 1005.20

**Scope of the Gift Card Rule.** The rule is generally limited to gift certificates, store gift cards, or general-use prepaid cards sold or issued to consumers primarily for personal, family, or household purposes. It generally does not apply to cards, codes, or other devices that are reloadable and not marketed or labeled as a gift card or gift certificate and loyalty, award, and promotional gift cards. See also the exclusions from the gift card definitions, described above.

**Restrictions on Dormancy, Inactivity, or Service Fees – 12 CFR 1005.20(d).** No person may impose a dormancy, inactivity, or service fee with respect to a gift certificate, store gift card, or general-use prepaid card, unless three conditions are satisfied:

- There has been no activity with respect to the certificate or card within the one-year period prior to the imposition of the fee;

- Only one such fee is assessed in a given calendar month; and

- Disclosures regarding dormancy, inactivity, or service fees are clearly and conspicuously stated on the certificate or card, and the person issuing or selling the certificate or card has provided these disclosures to the purchaser before the certificate or card is purchased. See the disclosure section, above, for additional information.

**Expiration Date Restrictions – 12 CFR 1005.20(e).** A gift certificate, store gift card, or general-use prepaid card may not be sold or issued unless the expiration date of the funds underlying the certificate or card is no less than five years after the date of issuance (in the case of a gift certificate) or five years after the date of last load of funds (in the case of a store gift card or general-use prepaid card). In addition, information regarding whether funds underlying a

---

[24] If the financial institution on April 1, 2019, does not have readily accessible the data necessary to calculate the summary totals of the amount of all fees assessed by the financial institution on the consumer's prepaid account for the prior calendar month and for the calendar year pursuant to 12 CFR 1005.18(c)(5), the financial institution may display the summary totals using the data it has until the financial institution has accumulated the data necessary to display the summary totals as required by 12 CFR 1005.18(c)(5). See 12 CFR 1005.18(h)(3)(ii).

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

certificate or card may expire must be clearly and conspicuously stated on the certificate or card and disclosed prior to purchase.

No person may sell or issue a certificate or card with an expiration date unless the person has established policies and procedures to provide consumers with a reasonable opportunity to purchase a certificate or card that has an expiration date that is at least five years from the date of purchase. A person who has established policies and procedures to prevent the sale of a certificate or card with less than five years from the date of purchase satisfies this requirement (Comment 20(e)-1).

A certificate or card generally must include a disclosure alerting consumers to the difference between the certificate or card expiration date and the funds expiration date, if any, and that the consumer may contact the issuer for a replacement card. This disclosure must be stated with equal prominence and in close proximity to the certificate or card expiration date. Non-reloadable certificates or cards that bear an expiration date on the certificate or card that is at least seven years from the date of manufacture need not include this disclosure. See the disclosure section, above, for additional information.

To ensure that consumers are able to access the underlying funds for the full five-year period, fees may not be imposed for replacing an expired certificate or card if the underlying funds remain valid (unless the card has been lost or stolen). In lieu of sending a replacement certificate or card, issuers may remit, without charge, the remaining balance of funds to the consumer.

# VIII. Requirements for Financial Institutions Offering Prepaid Accounts - 12 CFR 1005.18

Prepaid accounts (as defined in 12 CFR 1005.2(b)(3)(i)) include several types of products: payroll card accounts and government benefit accounts that were subject to Regulation E prior to the Prepaid Accounts Rule; accounts that are marketed or labeled as "prepaid" that are redeemable upon presentation at multiple, unaffiliated merchants for goods or services, or that are usable at ATMs; and other accounts (other than checking accounts, share draft accounts, and negotiable order of withdrawal accounts) that are issued on a prepaid basis in a specified amount or not issued on a prepaid basis but capable of being loaded with funds thereafter, and whose primary function is to conduct transactions with multiple, unaffiliated merchants for goods or services, or at ATMs, or to conduct person-to-person transfers. For exclusions from the term "prepaid account," see 12 CFR 1005.2(b)(3)(ii).

Financial institutions must comply with all applicable requirements of the EFTA and Regulation E with respect to prepaid accounts, except as modified by 12 CFR 1005.18 (12 CFR 1005.18(a)). This section of the manual discusses certain provisions specifically applicable to prepaid accounts; other provisions are addressed elsewhere in this manual.

**Scope.** 12 CFR 1005.18 applies to prepaid accounts other than government benefit accounts. Although government benefit cards are defined as prepaid accounts, slightly different rules apply in certain circumstances, which can be found in 12 CFR 1005.15. For many aspects of

# Interagency Consumer
# Laws and Regulations                              **EFTA**

government benefit cards, however, the same rules apply, and 12 CFR 1005.15 refers to the relevant section in 1005.18.

Pre-Acquisition Disclosure Requirements - 12 CFR 1005.18(b)

**Timing of Disclosures.** Generally, a financial institution must provide the required short and long form disclosures before a consumer acquires a prepaid account.

However, a financial institution need not provide the long form disclosures prior to acquisition at a retail location or orally by telephone, if certain conditions are met. See 12 CFR 1005.18(b)(1)(ii) and (b)(1)(iii). Further, when a prepaid account is used for disbursing funds to a consumer and the financial institution or third party making the disbursement does not offer any alternative means for the consumer to receive those funds in lieu of accepting the prepaid account, those disclosures may be provided at the time the consumer receives the prepaid account (12 CFR 1005.18(b)(1)(i)).

**Content of Short Form Disclosures.** 12 CFR 1005.18(b)(2) requires a financial institution to disclose the following fees and information on its short form disclosure:

- **Periodic fee:** The periodic fee charged for holding the prepaid account, assessed on a monthly or other periodic basis, using the term "Monthly fee," "Annual fee," or a substantially similar term.

- **Per purchase fee:** The fee for making a purchase using the prepaid account, using the term "Per purchase" or a substantially similar term.

- **ATM withdrawal fees:** Two fees for using an ATM to initiate a withdrawal of cash in the United States from the prepaid account, both within and outside of the financial institution's network or a network affiliated with the financial institution, using the term "ATM withdrawal" or a substantially similar term, and "in-network" or "out-of-network," respectively, or substantially similar terms.

- **Cash reload fee:** The fee for reloading cash into the prepaid account using the term "Cash reload" or a substantially similar term. The fee disclosed must be the total of all charges from the financial institution and any third parties for a cash reload.

- **ATM balance inquiry fees:** Two fees for using an ATM to check the balance of the prepaid account in the United States, both within and outside of the financial institution's network or a network affiliated with the financial institution, using the term "ATM balance inquiry" or a substantially similar term, and "in-network" or "out-of-network," respectively, or substantially similar terms.

- **Customer service fees:** Two fees for calling the financial institution about the prepaid account, both for calling an interactive voice response system and a live customer service agent, using the term "Customer service" or a substantially similar term, and "automated" or "live agent," or substantially similar terms, respectively, and "per call" or a substantially similar term. When providing a short form disclosure for multiple service plans pursuant

# Interagency Consumer
# Laws and Regulations                                   EFTA

to 12 CFR 1005.18(b)(6)(iii)(B)(*2*), the financial institution must disclose only the fee for calling the live agent customer service about the prepaid account, using the term "Live customer service" or a substantially similar term and "per call" or a substantially similar term.

- **Inactivity fee:** The fee for non-use, dormancy, or inactivity of the prepaid account, using the term "Inactivity" or a substantially similar term, as well as the conditions that trigger the financial institution to impose that fee.

- **Additional fee types:** A statement disclosing the number of additional fee types (AFTs) the financial institution may charge consumers with respect to the prepaid account, a statement directing consumers to the disclosure of the AFTs, and, if applicable, disclosure of up to two AFTs. A financial institution must use the language provided in the rule or substantially similar language in making these statements, and must follow specific guidelines in determining which AFTs to disclose, including (with certain exceptions) the disclosure of the two fee types that generate the highest revenue from consumers, over a specified time period, for the prepaid account program or across prepaid account programs that share the same fee schedule. See 12 CFR 1005.18(b)(2)(viii) and (ix).

NOTE: A financial institution must reassess its AFTs disclosure periodically, and, under certain circumstances, when the institution changes its fee schedule. See 12 CFR 1005.18(b)(2)(ix)(E)(*2*) and (*3*) for specific requirements.

- **Overdraft credit features:** A statement that no overdraft credit feature is offered, or, if such a feature may be offered at any point, language about the feature and applicable fees. A financial institution must use the language provided in the rule or substantially similar language in making this statement. See 12 CFR 1005.18(b)(2)(x).

- **Registration and insurance:** A statement regarding the prepaid account program's eligibility for FDIC deposit insurance or NCUA share insurance, as appropriate, and directing the consumer to register the prepaid account for insurance and other account protections, where applicable. A financial institution must use the language provided in the rule or substantially similar language in making this statement. See 12 CFR 1005.18(b)(2)(xi).

- **Bureau website:** A statement directing the consumer to the Bureau's website for general information about prepaid accounts. A financial institution must use the language provided in the rule or substantially similar language in making this statement. See 12 CFR 1005.18(b)(2)(xii).

- **Information on all fees and services:** A statement directing the consumer to the location of the long form disclosure to find details and conditions for all fees and services. In certain circumstances, this statement must include a telephone number and a website URL that the consumer may use to directly access the long form disclosure. A financial institution must use the language provided in the rule or substantially similar language in making this statement. See 12 CFR 1005.18(b)(2)(xiii).

# Interagency Consumer
# Laws and Regulations                                              EFTA

**Additional content for payroll card accounts.** The short form disclosure must contain a statement that the consumer does not have to accept the payroll card account, and directing the consumer to ask about other ways to receive wages or salary. Alternatively, a financial institution may provide a statement that the consumer has several options to receive wages or salary, followed by a list of the options available to the consumer, and directing the consumer to tell the employer which option the consumer chooses. A financial institution must use the language provided in the rule or substantially similar language in making this statement. See 12 CFR 1005.18(b)(2)(xiv).

For government benefit accounts, a financial institution (which may include an agency) may, but is not required to, include a statement in one additional line of text in the short form disclosure for information on ways the consumer may access government benefit account funds and balance information for free or for a reduced fee. 12 CFR 1005.15(c)(2)(ii).

**Variable fees, including periodic fees.** Additional disclosure requirements apply when a disclosed fee can vary; there are two alternatives if the periodic fee can vary. See 12 CFR 1005.18(b)(3)(i) and (b)(3)(ii).

**Single disclosure for like fees.** Where the rule requires disclosure of two fees (12 CFR 1005.18(b)(2)(iii), (v), (vi), and (ix)), a financial institution may disclose a single fee amount when the amount is the same for both fees. See 12 CFR 1005.18(b)(3)(iii).

**Third-party fees.** A financial institution may not include any third-party fees in the required short form disclosure, except for the cash reload fee, which must be the total of all charges from the financial institution and any third parties. See 12 CFR 1005.18(b)(3)(iv) and (v) and (b)(2)(iv).

**Prohibition on disclosure of finance charges.** A financial institution may not include any finance charges imposed in connection with a covered separate credit feature accessible by a hybrid prepaid-credit card (*i.e.*, an overdraft credit feature) in its disclosures pursuant to 12 CFR 1005.18(b)(2)(i) through (xi). See 12 CFR 1005.18(b)(3)(vi).

**Additional information outside the short form.** At the time a financial institution provides the short form disclosure, it must also disclose the following information outside of the short form disclosure: the name of the financial institution; the name of the prepaid account program; the purchase price for the prepaid account, if any; and the fee for activating the prepaid account, if any. In a setting other than a retail location, this information must be disclosed in close proximity to the short form. In a retail location, this information, other than the purchase price, must be disclosed on the exterior of the access device's packaging material. In a retail location, the purchase price must be disclosed either on the exterior of or in close proximity to the prepaid account access device's packaging material. See 12 CFR 1005.18(b)(5).

**Content of Long Form Disclosures.** 12 CFR 1005.18(b)(4) requires that a financial institution disclose the following fees and information on its long form disclosure:

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

- **Title.** A heading stating the name of the prepaid account program and that the long form disclosure contains a list of all fees for that particular prepaid account program.

- **Fees.** All fees that may be imposed in connection with a prepaid account. For each fee, the financial institution must disclose the amount of the fee and the conditions, if any, under which the fee may be imposed, waived, or reduced. See 12 CFR 1005.18(b)(4)(ii) for specific requirements.

- **Statement regarding registration and FDIC or NCUA insurance.** The statement regarding the prepaid account program's eligibility for deposit or share insurance and directing the consumer to register the prepaid account for insurance and other protections that is required on the short-form disclosure, together with an explanation of FDIC or NCUA insurance coverage and the benefit of such coverage or the consequence of the lack of such coverage, as applicable. See 12 CFR 1005.18(b)(2)(xi) and 12 CFR 1005.18(b)(4)(iii).

- **Statement regarding overdraft credit features.** The statement required on the short-form disclosures by 12 CFR 1005.18(b)(2)(x).

- **Statement regarding financial institution contact information.** See 12 CFR 1005.18(b)(4)(v).

- **Statement regarding Bureau website and telephone number.** See 12 CFR 1005.18(b)(4)(vi).

- **Regulation Z disclosures for overdraft credit features.** See 12 CFR 1005.18(b)(4)(vii).

**Disclosures for Prepaid Accounts Acquired in Retail Location**: A financial institution is not required to provide the long form disclosure required by 12 CFR 1005.18(b)(4) before a consumer acquires a prepaid account in person at a retail location or orally by telephone, if certain conditions are met. See 12 CFR 1005.18(b)(1)(ii) and (iii) for the specific conditions.

**Form of Pre-Acquisition Disclosures.** Disclosures generally must be in writing (12 CFR 1005.18(b)(6)(i)(A)). For exceptions regarding where disclosures may be made electronically or orally, see 12 CFR 1005.18(b)(6)(i)(B) and (C).

**Retainable form.** Disclosures must generally be made in a form that a consumer may keep, except as provided in 12 CFR 1005.18(b)(6)(ii).

**Tabular format.** When provided in writing or electronically, fee and certain other information required in the short form disclosures and fee information required in long form disclosures must be provided in the form of a table. See 12 CFR 1005.18(b)(6)(iii) and Model Forms A-10(A) through (F).

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

**Other requirements for pre-acquisition disclosures.**

<u>Specific formatting requirements.</u> Requirements regarding the grouping and ordering of information, prominence and size of the text, and segregation of the disclosures from other information. See 12 CFR 1005.18(b)(7).

<u>Terminology.</u> Fee names and other terms must be used consistently within and across disclosures. See 12 CFR 1005.18(b)(8).

<u>Prepaid accounts acquired in foreign languages.</u> Generally, a financial institution must provide the required pre-acquisition disclosures in a foreign language if the financial institution uses that same foreign language in connection with the acquisition of a prepaid account in certain circumstances. For exceptions, See 12 CFR 1005.18 (b)(9).

## Other Disclosure Requirements - 12 CFR 1005.18(f)

<u>Initial disclosure of fees and other information.</u> A financial institution must include, as part of the initial disclosures given pursuant to 12 CFR 1005.7, all of the information required to be disclosed in its pre-acquisition long form disclosure. See 12 CFR 1005.18(f)(1).

<u>Change-in-terms notice.</u> The change-in-terms notice provisions in 12 CFR 1005.8(a) apply to changes in terms and conditions that are required to be disclosed pursuant to 12 CFR 1005.7 or 12 CFR 1005.18(f)(1) in most circumstances, with some exceptions. See 12 CFR 1005.18(f)(2).

<u>Disclosures on prepaid account access devices.</u> The name of the financial institution and the website URL and a telephone number a consumer can use to contact the financial institution about the prepaid account must be disclosed on the prepaid account access device (with specific rules when physical access devices are not provided in connection with prepaid accounts). See 12 CFR 1005.18(f)(3).

## Prepaid Accounts Accessible by Hybrid Prepaid-Credit Cards - 12 CFR 1005.18(g)

The following rules apply to a prepaid account program where consumers may be offered a covered separate credit feature accessible by a hybrid prepaid-credit card as defined by Regulation Z, 12 CFR 1026.61:

- A financial institution must provide to any prepaid account without a covered separate credit feature the same account terms, conditions, and features that it provides on prepaid accounts in the same prepaid account program that have such a credit feature (12 CFR 1005.18(g)(1)).

- A financial institution is not prohibited from imposing a higher fee or charge on the asset feature of a prepaid account with a covered separate credit feature accessible by a hybrid prepaid-credit card than the amount of a comparable fee or charge that it imposes on any prepaid account in the same prepaid account program that does not have such a credit feature (12 CFR 1005.18(g)(2)).

# Interagency Consumer
# Laws and Regulations                                                    EFTA

## IX. Internet Posting of Prepaid Account
##        Agreements - 12 CFR 1005.19

**Definitions.** 12 CFR 1005.19(a) provides the following supplemental definitions for purposes of 12 CFR 1005.19:

*Agreement* means the written document or documents evidencing the terms of the legal obligation, or the prospective legal obligation, between a prepaid account issuer and a consumer for a prepaid account. It also includes "fee information" as defined below.

*Amends* An issuer "amends" an agreement if it makes a substantive change ("amendment") to the agreement. A change is substantive if it alters the rights or obligations of the issuer or the consumer under the agreement. Any change in the fee information, as defined below, is substantive.

*Fee information* means the short form disclosure for the prepaid account (see 12 CFR 1005.18(b)(2)) and the fee information and statements required to be disclosed in the pre-acquisition long form disclosure for the prepaid account pursuant to 12 CFR 1005.18(b)(4).

*Issuer* means the entity to which a consumer is legally obligated, or would be legally obligated, under the terms of a prepaid account agreement.

*Offers* An issuer "offers" an agreement if the issuer markets, solicits applications for, or otherwise makes available a prepaid account that would be subject to that agreement, regardless of whether the issuer offers the prepaid account to the general public.

*Offers to the general public* means an agreement if the issuer markets, solicits applications for, or otherwise makes available to the general public a prepaid account that would be subject to that agreement.

*Open account* A prepaid account is an "open account" or "open prepaid account" if: (i) there is an outstanding balance in the account; (ii) the consumer can load funds to the account even if the account does not currently hold a balance; or (iii) the consumer can access credit from a covered separate credit feature accessible by a hybrid prepaid-credit card as defined in Regulation Z, 12 CFR 1026.61, in connection with the account. A prepaid account that has been suspended temporarily (for example, due to a report by the consumer of unauthorized use of the card) is considered an "open account" or "open prepaid account."

*Prepaid account* means a prepaid account as defined in 12 CFR 1005.2(b)(3).

**Submission of Agreements to the Bureau.** An issuer must make submissions of prepaid account agreements to the CFPB on a rolling basis, in the form and manner specified by the CFPB, no later than 30 days after the issuer offers, amends, or ceases to offer any prepaid account agreement. See 12 CFR 1005.19(b)(1) regarding the content of each submission.

<u>Amended agreements.</u> If a prepaid account agreement previously submitted to the CFPB is amended, the issuer must submit the entire amended agreement to the CFPB, in the form and

# Interagency Consumer
# Laws and Regulations                                        **EFTA**

manner specified by the CFPB, no later than 30 days after the change becomes effective. Additionally, if other previously submitted identifying information about the issuer and its agreements changes, the issuer must submit an update no later than 30 days after the change becomes effective. However, the issuer can delay submitting changes to the list of names of other relevant parties to a particular agreement until the earlier of (i) when it submits an amended agreement or changes to other identifying information about the issuer and its submitted agreements, or (ii) May 1 of each year. See 12 CFR 1005.19(b)(2)(ii) for more specific requirements.

**Withdrawal of agreements no longer offered.** If an issuer no longer offers a prepaid account agreement that was previously submitted to the CFPB, the issuer must notify the Bureau, in the form and manner specified by the CFPB, no later than 30 days after the issuer ceases to offer the agreement, that it is withdrawing the agreement (12 CFR 1005.19(b)(3)).

**De minimis exception.** An issuer need not make submissions of prepaid account agreements to the CFPB if the issuer has fewer than 3,000 open prepaid accounts as of the last day of the calendar quarter (12 CFR 1005.19(b)(4)).

**Product testing exception.** An issuer need not submit a particular prepaid account agreement if the issuer offers the agreement as part of a product test to a limited group of consumers for a limited period of time, the agreement is used for fewer than 3,000 open prepaid accounts, and the agreement is not offered other than in connection with the product test (12 CFR 1005.19(b)(5)).

**Form and content of agreements submitted to the Bureau.** Agreements must contain the provisions of the agreement and the fee information currently in effect. Agreements must not contain any personally identifiable information relating to any consumer and must be presented in a clear and legible font. See 12 CFR 1005.19(b)(6)(i), (ii), and (iii) for more specific requirements.

**Posting of Agreements Offered to the General Public.** An issuer must post and maintain on its publicly available website any prepaid account agreements offered to the general public that the issuer is required to submit to the CFPB. Posted agreements must conform to the form and content requirements for agreements submitted to the CFPB. Agreements must be updated as frequently as the issuer is required to submit new or amended agreements to the Bureau. Agreements must be placed in a location that is prominent and readily accessible to the public, and must also be accessible without submission of personally identifiable information. See 12 CFR 1005.19(c) for more specific requirements.

**Agreements for all open accounts.** With respect to any open prepaid account, an issuer must either:

- Post and maintain the consumer's agreement on its website; or

- Promptly provide a copy of the consumer's agreement to the consumer upon the consumer's request. If the issuer makes an agreement available upon request, the issuer must provide the consumer with the ability to request a copy of the agreement by

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

telephone. The issuer must send to the consumer a copy of the consumer's prepaid account agreement no later than five business days after the issuer receives the consumer's request (12 CFR 1005.19(d)(1)).

Except as otherwise provided, agreements for open accounts that are posted on the issuer's website or sent to the consumer upon the consumer's request must conform to the form and content requirements for agreements submitted to the CFPB (12 CFR 1005.19(d)(2)).

Except as otherwise provided, issuers may provide prepaid account agreements for this purpose electronically without regard to the consumer notice and consent requirements of section 101(c) of the E-Sign Act. See 12 CFR 1005.19(e).

# X.    Other Requirements

## Preauthorized Transfers – 12 CFR 1005.10

A preauthorized transfer may be either a credit to, or a debit from, an account.

**Preauthorized Transfers to a Consumer's Account.** When an account is scheduled to be credited by a preauthorized EFT from the same payor at least once every 60 days, the financial institution must provide some form of notice to the consumer so that the consumer can find out whether or not the transfer occurred (12 CFR 1005.10(a)). The notice requirement will be satisfied if the payor provides notice to the consumer that the transfer has been initiated. If the payor does not provide notice, the financial institution must adopt one of three alternative procedures for giving notice.

- The financial institution may give the consumer oral or written notice within two business days after a preauthorized transfer occurs.

- The financial institution may give the consumer oral or written notice, within two business days after the preauthorized transfer was scheduled to occur, that the transfer did not occur.

- The financial institution may establish a readily available telephone line[25] that the consumer may call to find out whether a preauthorized transfer has occurred. If the financial institution selects this option, the telephone number must be disclosed on the initial disclosures and on each periodic statement (12 CFR 1005.10(a)(1)).

The financial institution need not use any specific language to give notice but may not simply provide the current account balance (Comment 10(a)(1)-1). The financial institution may use

---

[25] The telephone line must be "readily available" so that consumers calling to inquire about transfers are able to have their calls answered reasonably promptly during normal business hours. During the initial call in most cases and within two business days after the initial call in all cases, the financial institution should be able to verify whether the transfer was received (Comment 10(a)(1)-5). Within its primary service area, a financial institution must provide a local or toll-free telephone number (Comment 10(a)(1)-7).

# Interagency Consumer
# Laws and Regulations                                    EFTA

different methods of notice for different types of preauthorized transfers and need not offer consumers a choice of notice methods (Comment 10(a)(1)-2).

The financial institution that receives a preauthorized transfer must credit the consumer's account as of the day the funds are received (12 CFR 1005.10(a)(3)).

**Preauthorized Transfers from a Customer's Account.** Preauthorized transfers from a consumer's account may only be authorized by the consumer in writing and signed or similarly authenticated by the consumer (12 CFR 1005.10(b)). Signed, written authorizations may be provided electronically, subject to the E-Sign Act (Comment 10(b)-5). In all cases, the party that obtains the authorization from the consumer must provide a copy to the consumer. If a third party payee fails to obtain an authorization in writing or fails to provide a copy to the consumer, the third party payee and not the financial institution has violated Subpart A (Comment 10(b)-2).

**Stop Payments.** Consumers have the right to stop payment of preauthorized transfers from accounts. The consumer must notify the financial institution orally or in writing at any time up to three business days before the scheduled date of the transfer (12 CFR 1005.10(c)(1)). If the debit item is resubmitted, the institution must continue to honor the stop-payment order (Comment 10(c)-1). The financial institution may require written confirmation of an oral stop payment order to be made within 14 days of the consumer's oral notification. If the financial institution requires a written confirmation, it must inform the consumer at the time of the oral stop payment order that written confirmation is required and provide the address to which the confirmation should be sent. If the consumer fails to provide written confirmation, the oral stop payment order ceases to be binding after 14 days (12 CFR 1005.10(c)(2)).

**Notice of Transfers Varying in Amount.** If a preauthorized transfer from a consumer's account varies in amount from the previous transfer under the same authorization or the preauthorized amount, either the financial institution or the designated payee must send to the consumer a written notice, at least 10 days before the scheduled transfer date, of the amount and scheduled date of the transfer (12 CFR 1005.10(d)(1)). The consumer may elect to receive notice only when the amount varies by more than an agreed amount or falls outside a specified range (12 CFR 1005.10(d)(2)). The range must be an acceptable range that the consumer could reasonably anticipate (Comment 10(d)(2)-1). The financial institution does not violate Regulation E if the payee fails to provide sufficient notice (Comment 10(d)-1).

**Compulsory Use.** The financial institution may not make it a condition for an extension of credit that repayment will be by means of preauthorized EFT, except for credit extended under an overdraft credit plan or extended to maintain a specified minimum balance in the consumer's account (however, this exception does not apply to a covered separate credit feature accessible by a hybrid prepaid-credit card, as defined in Regulation Z, 12 CFR 1026.61) (12 CFR 1005.10(e)(1)). The financial institution may offer a reduced APR or other cost-related incentive

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

for an automatic payment feature as long as the creditor offers other loan programs for the type of credit involved (Comment 10(e)(1)-1).[26]

## Services Offered by Provider Not Holding Consumer's Account – 12 CFR 1005.14

A person who provides EFT services to a consumer but does not hold the consumer's account is a service provider subject to 12 CFR 1005.14 if the person issues an access device that the consumer can use to access the account and no agreement exists between the person and the account-holding financial institution. Transfers initiated by a service provider are often cleared through an automated clearinghouse (ACH).

The responsibilities of the service provider are set forth in 12 CFR 1005.14(b)(l) and (2). The duties of the account-holding financial institution with respect to the service provider are found in 12 CFR 1005.14(c)(l) and (2).

## Electronic Fund Transfer of Government Benefits – 12 CFR 1005.15

12 CFR 1005.15 contains the rules that apply to accounts established by government agencies for distributing government benefits to consumers electronically. It provides that government agencies must comply with modified rules on the issuance of access devices, periodic statements, initial disclosures, liability for unauthorized use, and error resolution notices. Government agencies must comply with pre-acquisition disclosure requirements as applicable to other prepaid accounts. They must also provide one of two statements: either a statement that the consumer does not have to accept the government benefit account and directing the consumer to ask about other ways to receive their payment, or a statement that the consumer has several options to receive benefit payments, followed by a list of the available options, and directing the consumer to indicate which option the consumer chooses. Government agencies must also comply with other disclosure and change-in-terms requirements applicable to prepaid accounts as set forth in 12 CFR 1005.18(f). For government benefit accounts accessible by hybrid prepaid-credit cards (defined by Section 1026.61 of Regulation Z), a government agency must comply with prohibitions and requirements related to hybrid-prepaid credit cards.

A government agency is deemed to be a "financial institution" subject to the regulation if directly or indirectly it issues an access device to a consumer for use in initiating an EFT of government benefits from an account, other than needs-tested benefits in a program established under state or local law or administered by a state or local agency (12 CFR 1005.15(a)(1)).

---

[26] This section also prohibits anyone from requiring the establishment of an account for receipt of EFTs with a particular financial institution either as a condition of employment or the receipt of a government benefit (12 CFR 1005.10(e)(2)). However, the employer may require direct deposit of salary, as long as the employee may choose the financial institution that will accept the direct deposit, or limit direct deposits to one financial institution as long as the employee may choose to receive salary by other means (e.g., check or cash) (Comment 10(e)(2)-1).

# Interagency Consumer
# Laws and Regulations                    **EFTA**

## XI.  Relation to Other Laws - 12 CFR 1005.12

This section describes the relationship between the EFTA and the TILA for purposes of Subpart A of Regulation E.

### Issuance of Access Devices, and Addition of Certain EFT Services

The EFTA and Regulation E govern the following (12 CFR 1005.12(a)(1)):

- The addition of the capability to initiate EFTs to accepted credit cards, as defined in 12 CFR 1026.12, comment 12-2.

- The issuance of access devices (other than an access device for a prepaid account) that permits credit extensions (under a preexisting agreement between a consumer and financial institution) only when the consumer's account is overdrawn or to maintain a specified minimum balance in the consumer's account, or under an overdraft service, as defined in 12 CFR 1005.17(a).

- The addition of an overdraft service, as defined in 12 CFR 1005.17(a), to an accepted access device.

- Generally, a consumer's liability for an unauthorized EFT and investigation of errors. For specifics see 12 CFR 1005.12(a)(1)(iv).

The TILA and Regulation Z govern all of the following (12 CFR 1005.12(a)(2)):

- The issuance of credit cards as defined in Regulation Z that is also an access device.

- The addition of a credit feature to a debit card or other access device, including an access device for a prepaid account that would make the access device a credit card.

- With respect to transactions involving a prepaid account and a non-covered separate credit feature as defined in Regulation Z, 12 CFR 1026.61, a consumer's liability for unauthorized use and the investigation of errors involving transactions that access the non-covered separate credit feature, as applicable.

### Liability and Error Resolution Provisions

The liability and error resolution provisions in Regulation E (12 CFR 1005.6 and 1005.11) apply to:

- an extension of credit that occurs under an agreement between the consumer and a financial institution to extend credit when the consumer's account is overdrawn, to maintain a specified minimum balance in the consumer's account, or under an overdraft service, except with respect to a prepaid account (12 CFR 1005.12(a)(1)(iv)(A));

# Interagency Consumer
# Laws and Regulations                                    EFTA

- with respect to a transaction that involves a covered separate credit feature and an asset feature on a prepaid account that are both accessible by a hybrid prepaid-credit card, as defined in 12 CFR 1026.61, an extension of credit that is incident to an EFT that occurs when the hybrid prepaid-credit card accesses both funds in the asset feature and a credit extension from the credit feature with respect to a particular transaction (12 CFR 1005.12(a)(1)(iv)(B));

- transactions that involve credit extended through a negative balance to the asset feature of a prepaid account that meets the conditions set forth in 12 CFR 1026.61(a)(4) (12 CFR 1005.12(a)(1)(iv)(C)); and

- with respect to transactions involving a prepaid account and a non-covered separate credit feature, as defined in 12 CFR 1026.61, Regulation E applies to transactions that access the prepaid account, as applicable (12 CFR 1005.12(a)(1)(iv)(D)).

As provided in 12 CFR 1005.12 and related commentary, for transactions involving access devices that also function as credit cards, the liability and error resolution provisions in Regulation E (12 CFR 1005.6 and 1005.11) or Regulation Z will apply depending on the nature of the transaction. See Comment 12(a)-5:

- Assume a combined access device-credit card can access a credit feature that is not an overdraft credit feature (i.e., when the card is used as a credit card, the card does not first access any funds in the asset account but draws only on a separate credit feature subject to Regulation Z). If the card is stolen and used as a credit card, for example, when the card is used to draw cash advances directly from the credit line, only the liability limits and error resolution provisions of Regulation Z will apply. If, however, the card is stolen and is used as an access device for example, for debit card purchases or cash withdrawals at an ATM from a checking account, only the liability limits and error resolution provisions of 12 CFR 1005.6 and 1005.11 will apply.

- Assume a combined access device-credit card that can access an overdraft credit feature (i.e., the credit feature is accessed only when the consumer uses the card to make purchases or other transactions for which there are insufficient or unavailable funds in the asset account). If the card is stolen and unauthorized transactions are made, 12 CFR 1005.6 and 1005.11 will apply to the unauthorized transactions funded entirely from the asset account. If the use of the card results in an extension of credit that is incident to an EFT that is partially funded by funds in the consumer's asset account and partially by credit extended under the overdraft credit feature, the error resolution provisions of Regulation Z, 12 CFR 1026.13(d) and (g) apply in addition to the Regulation E provisions, but the other liability limitations and error resolution provisions of Regulation Z do not. If an unauthorized transaction using the card is funded entirely by credit extended under the overdraft credit feature, the transaction is governed solely by the liability limitations and error resolution requirements of Regulation Z.

# Interagency Consumer
# Laws and Regulations                                   EFTA

## Subpart B - Requirements for Remittance Transfers

Generally, consumers in the United States who send money electronically to consumers or business recipients in foreign countries are sending remittance transfers. Under Regulation E Subpart B, remittance transfer providers generally must give consumers disclosures at certain stages of the remittance transfer process, and consumers have certain error resolution, cancellation, and refund rights. The requirements of Subpart B apply to remittance transfer providers (12 CFR 1005.3(a)).

# XII.  Remittance Transfer Definitions - 12 CFR 1005.30

The definitions in Subpart A (12 CFR 1005.2) also apply to Subpart B unless specifically modified or limited by Subpart B. The definitions in Subpart B (12 CFR 1005.30) are applicable only to Subpart B.

*Agent* is an agent, authorized delegate, or person affiliated with a remittance transfer provider, as defined under state or other applicable law, when that person acts for a remittance transfer provider. A person is not deemed a remittance transfer provider when performing activities as an agent on behalf of a remittance transfer provider (Comment 30(f)-1).

*Business day* is any day that the offices of a remittance transfer provider are open to the public for carrying on "substantially all business functions."

*Preauthorized remittance transfer* is a remittance transfer authorized in advance to recur at substantially regular intervals.

*Remittance transfer* is an electronic transfer of funds, requested by a consumer in a state, to a designated recipient that is sent by a remittance transfer provider. The term applies whether or not the consumer holds an account and whether or not the transfer is an electronic fund transfer.

An electronic transfer of funds occurs when:

a.  A provider makes an electronic book entry between different settlement accounts to make the remittance transfer.
b.  A payment is made under a bill-payment service available to a consumer via computer or other electronic means, except in certain circumstances where a check, draft or similar paper instrument drawn on a consumer's account under the bill-payment service is mailed abroad.

An electronic transfer of funds does not occur where a sender mails funds directly to a recipient, or funds are provided to a courier for delivery to a foreign country (Comment 30(e)-1).

# Interagency Consumer
# Laws and Regulations                              EFTA

Transactions of $15 or less and certain transactions in connection with securities and commodities transfers that are excluded from the definition of an EFT are not remittance transfers (12 CFR 1005.30(e)(2) and 12 CFR 1005.3(c)(4)).

Remittance transfers include:

a. Transfers in cash or by another method conducted through a money transmitter or a financial institution.
b. Consumer wire transfers conducted by a financial institution upon a sender's request to wire money from the sender's account to a designated recipient.
c. An addition of funds to a prepaid card by a participant in a prepaid card program, such as a prepaid card issuer or its agent, that is directly engaged with the sender to add these funds, where the prepaid card is sent or was previously sent by a participant in the prepaid card program to a person in a foreign country, even if a sender retains the ability to withdraw such funds.
d. International ACH transactions sent by the sender's financial institution at the sender's request.
e. Online bill payments and other electronic transfers that a sender schedules in advance, including preauthorized remittance transfers, made by the sender's financial institution at the sender's request to a designated recipient (Comment 30(e)-3).

**Sender** is a consumer in a state, who requests a remittance transfer primarily for personal, family, or household purposes. For account-based transfers, the location of the consumer's account will determine whether the consumer is located in a state. For transfers not made from an account that are requested by telephone or electronically, the remittance transfer provider may make the determination of whether a consumer is located in a state based on information provided by the consumer and any records associated with the consumer (Comment 30(g)-1). The commentary provides further guidance on the location of senders with respect to transfers from prepaid accounts; transfers from U.S. military installations abroad; when a transfer is for personal, family, or household purposes; and regarding transfers requested from non-consumer accounts (Comments 30(g)-1 through -3).

**Designated recipient** is any person identified by the name provided by a sender to receive a remittance transfer at a location in a foreign country. A designated recipient can be either a natural person or an organization such as a corporation (Comment 30(c)-1). Similar to the definition of "sender," transfers to a designated recipient's account where funds are to be received depends on where the recipient's account is located. The commentary provides further guidance on transfers to prepaid accounts (other than a prepaid account that is a payroll card account or government benefit account) and transfers to U.S. military installations abroad (Comment 30(c)-2).

**"Remittance transfer provider"** or **"provider"** is any person that provides remittance transfers for a consumer in the normal course of business, regardless of whether the consumer holds an account with such person (12 CFR 1005.30(f)(1)).

# Interagency Consumer
# Laws and Regulations                                   EFTA

Whether a person provides remittance transfers in the "normal course of business" depends on the facts and circumstances, including the total number and frequency of remittance transfers sent by the provider. The rule also provides a safe harbor for a person that provided 100 or fewer remittance transfers in the previous calendar year and provides 100 or fewer remittance transfers in the current calendar year (a total via all channels). Such a person is deemed not to be providing remittance transfers in the normal course of business and is therefore not subject to the rule's requirements. In determining whether a person qualifies for the safe harbor, any transfers that are excluded from the definition of "remittance transfer," such as small value transactions or certain securities and commodities transfers, are excluded. If a person exceeds the safe harbor criteria and is providing remittance transfers for consumers in the normal course of business, that person has a reasonable period of time, not to exceed six months, to begin complying with Subpart B (12 CFR 1005.30(f)(2) and Comment 30(f)-2).

*"Covered third-party fees"* means any fees that are imposed on the remittance transfer by a person other than the remittance transfer provider that are not non-covered third-party fees. Fees imposed on the remittance transfer include only those fees that are charged to the designated recipient and are specifically related to the remittance transfer (Comment 30(h)-1). Examples include fees imposed on a remittance transfer by intermediary institutions in connection with a wire transfer (sometimes referred to as "lifting fees") and fees imposed on a remittance transfer by an agent of the provider at pick-up for receiving the transfer (Comment 30(h)-2).

*"Non-covered third-party fees"* means any fees imposed by the designated recipient's institution for receiving a remittance transfer into an account except if the institution acts as an agent of the remittance transfer provider. For example, a fee imposed by the designated recipient's institution for receiving an incoming transfer into an account is a non-covered third-party fee, if the institution is not acting as the agent of the remittance transfer provider. A designated recipient's account does not include a credit card, prepaid card, or a virtual account held by an Internet-based or mobile telephone company that is not a bank, savings association, credit union or equivalent institution (Comment 30(h)-3).

# XIII.  Disclosures - 12 CFR 1005.31

Providers must give senders disclosures at certain stages of the remittance transfer process. The rule requires providers to give senders a pre-payment disclosure when a transfer request is made, but prior to payment for the transfer. Providers must also provide a receipt when payment is made for the transfer. Model disclosure forms are provided in Appendix A.

## General Form of Disclosures - 12 CFR 1005.31(a)

Required disclosures or optional disclosures permitted by 12 CFR 1005.31(b)(1)(viii) or 12 CFR 1005.33(h)(3) must be clear and conspicuous and generally be provided to the sender in writing. Disclosures may contain commonly accepted or readily understandable abbreviations or symbols. Disclosures are clear and conspicuous if they are readily understandable and, in the case of written and electronic disclosures, the location and type size are readily noticeable to senders. Oral disclosures are clear and conspicuous when they are given at a volume and speed

# Interagency Consumer
# Laws and Regulations                                    EFTA

sufficient for a sender to hear and comprehend them. The commentary provides additional guidance on disclosures to a mobile telephone, by fax, and for transactions conducted partially by telephone (12 CFR 1005.31(a); Comments 31(a)(1)-1 and -2 and 31(a)(2)-1 through -5, and Comment 31(e)-1). In addition, different foreign language requirements apply to transactions conducted by telephone, which are described in 12 CFR 1005.31(g)(2).

Pre-payment disclosures may be provided electronically without E-Sign consent, if the sender electronically requests the provider to send the transfer. However, the receipt for the transaction may be provided electronically only with E-Sign consent (12 CFR 1005.31(a)(2); Comment 31(a)(2)-1).

Disclosures also generally must be made in writing and in retainable form. For purposes of the disclosures required by 12 CFR 1005.31 and 1005.36 (e.g., pre-payment and receipt disclosures) the rule allows the remittance transfer provided to satisfy the requirement to provide disclosures in writing by providing those disclosures via fax, although it is not permissible to fax disclosures to a sender when that sender is present in the providers' branch or office. The rule permits disclosures to be provided on any size of paper, as long as the disclosures are clear and conspicuous. For example, a disclosure may be provided on a register receipt or on an 8.5" x 11" piece of paper. The rule sets out specific form and retainability requirements with respect to remittance transfer requests received electronically, as well as remittance transfers conducted over the phone, by mobile application, or by text. See 12 CFR 1005.31(a) and related commentary for more details. For example, the rule explains that in certain circumstances prepayment disclosures provided via mobile application or text message (when permitted by the rule) need not be retainable (12 CFR 1005.31(a)(2) and (a)(5)).

Additional requirements apply for certain transfers scheduled at least three days before the date of transfer that are conducted orally over the telephone or by mobile application or text messaging (12 CFR 1005.31(a)(3)(iv) and (a)(5)(iv)).

## Disclosure Requirements - 12 CFR 1005.31(b)

**Disclosures Provided as Applicable.** The required disclosures need to be provided only to the extent applicable. A remittance transfer provider may choose to omit an item of information if it is inapplicable to a particular transaction. Alternatively, a provider may disclose a term and state that an amount or item is "not applicable," "N/A," or "None" (Comment 31(b)-1).

**Substantially Similar Terms, Language, and Notices.** Certain disclosures must be described using the terms set forth in 12 CFR 1005.31(b) or substantially similar terms. Terms may be more specific than those provided. For example, a remittance transfer provider sending funds may describe fees imposed by an agent at pick-up as "Pick-up Fees" in lieu of describing them as "Other Fees." Foreign language disclosures must contain accurate translations of the required terms, language, and notices as well as the disclosures permitted by 1005.31(b)(1)(viii) and 1005.33(h)(3) (Comment 31(b)-2).

# Interagency Consumer
# Laws and Regulations                                     EFTA

## Prepayment Disclosures – 12 CFR 1005.31(b)(1)

A remittance transfer provider must provide the prepayment disclosure when the sender requests the remittance transfer, but prior to payment for the transfer. Unless an exception applies, the provider must disclose:

a.  The amount to be transferred (transfer amount);
b.  Front-end fees imposed by the provider and any taxes collected on the remittance transfer by the provider (transfer fees and transfer taxes);
c.  Total amount of the transaction (the sum of the transfer amount and front-end fees and taxes);
d.  The exchange rate;
e.  Any covered third-party fees (disclosed as "other fees");
f.  The total amount to be received by the designated recipient (total amount of the transaction minus covered third-party fees); and
g.  If applicable, a statement that non-covered third-party fees or taxes collected on the remittance transfer by a third person may apply to the remittance transfer and result in the designated recipient receiving less than the amount disclosed. In this statement, a provider also may, but is not required, to disclose in the currency in which the funds will be received, any applicable non-covered third-party fees or taxes collected by a person other than the provider.

**Transfer Amount.** Two transfer amount disclosures are required in the prepayment disclosures.

1.  The transfer amount in the currency in which the sender funds the remittance transfer to show the calculation of the total amount of the transaction.
2.  The transfer amount in the currency in which the funds will be made available to the designated recipient. This second transfer amount need not be disclosed if covered third-party fees are not imposed on the remittance transfer. The terms used to describe each transfer amount should be the same (Comment 31(b)(1)-2).

**Fees and Taxes.** Fees imposed and taxes collected on the remittance transfer by a provider must be disclosed in the currency in which the transaction is funded, as applicable. Taxes collected on the remittance transfer by the provider include taxes imposed on the remittance transfer by a state or other governmental body (Comment 31(b)(1)-1(i)).

The fees and taxes required to be disclosed by 12 CFR 1005.31(b)(1)(ii) include all fees imposed and all taxes collected on the remittance transfer by the provider, and include only those that are specifically related to the remittance transfer. For example, a provider must disclose any service fees imposed by an agent at the time of the transfer, and any state taxes collected on the remittance transfer (Comment 31(b)(1)-1(ii)).

**Applicable Exchange Rate.** If the designated recipient will receive funds in a currency other than the currency in which the remittance transfer is funded, a remittance transfer provider

# Interagency Consumer
# Laws and Regulations                                    EFTA

must disclose the exchange rate to be used by the provider for the remittance transfer (Comment 31(b)(1)(iv)-1).

**Rounding.** The exchange rate disclosed for the remittance transfer is required to be rounded on the disclosure. The provider may round to two, three, or four decimal places, at its option, but this must be done consistently for each currency (Comment 31(b)(1)(iv)-2). However, the exchange rate used to calculate: (a) the transfer amount, (b) the fees and taxes imposed on the remittance transfer by a person other than the provider, and (c) the amount received by the designated recipient, is prior to any rounding. If an exchange rate need not be rounded, a provider must use that exchange rate to calculate these disclosures (Comment 31(b)(1)-3).

**Exchange Rate Used.** The exchange rate used by the provider for the remittance transfer need not have been set by the provider. For example, an exchange rate set by an intermediary institution and applied to the remittance transfer would be the exchange rate used for the remittance transfer and must be disclosed by the provider (Comment 31(b)(1)(iv)-3).

**Disclosure of Covered Third-Party Fees.** Covered third-party fees must be disclosed in the currency in which the funds will be received by the designated recipient, using the applicable exchange rate, or an estimated exchange rate to the extent permitted, prior to any rounding of the exchange rate. If a provider does not have specific knowledge regarding the currency in which the funds will be received, the provider may rely on a sender's representation as to the currency in which funds will be received. If a sender does not know the currency in which funds will be received, the provider may assume that the currency in which funds will be received is the currency in which the remittance transfer is funded (Comment 31(b)(1)(vi)-1).

**Amount Received.** The remittance transfer provider is required to disclose the amount that will be received by the designated recipient in the currency in which the funds will be received. The amount received must reflect the exchange rate, all fees imposed and all taxes collected on the remittance transfer by the remittance transfer provider, as well as any covered third-party fees required to be disclosed. The disclosed amount received must be reduced by the amount of any fees or taxes (except non-covered third-party fees or taxes collected on the remittance transfer by a person other than the provider) imposed on the remittance transfer that affect the amount received even if that amount is imposed or itemized separately from the transaction amount (Comment 31(b)(1)(vii)-1).

**Required Disclaimer When Non-Covered Third-Party Fees and Taxes Collected by a Person Other Than the Provider May Apply.** The provider is required to include a disclaimer that non-covered third-party fees or taxes may apply to the remittance transfer if such taxes and fees apply to a particular transfer or the provider does not know whether they apply. This disclosure may only be provided to the extent applicable. For example, if the designated recipient's institution is an agent of the provider and thus, non-covered third-party fees cannot apply to the transfer, the provider must disclose all fees imposed on the remittance transfer and may not provide the disclaimer regarding non-covered third-party fees (Comment 31(b)(1)(viii)-1).

# Interagency Consumer
# Laws and Regulations                                         EFTA

**Optional Disclosure of Non-Covered Third-Party Fees and Taxes Collected by a Person Other Than the Provider.** The provider is permitted to disclose any non-covered third-party fees or taxes collected on the remittance transfer by a person other than the provider that will apply to a particular transaction if it knows the amount of such fees and taxes. Additionally, the provider is permitted to disclose an estimate of such fees and taxes, provided any estimates are based on reasonable source of information (Comment 31(b)(1)(viii)-2; 12 CFR 1005.32(b)(3); and Comment 32(b)(3)-1).

## Receipt – 12 CFR 1005.31(b)(2)

When payment is made, a remittance transfer provider must provide a receipt to a sender disclosing all applicable information required in the pre-payment disclosure. The receipt must also disclose, as applicable:

a. The date of availability of the funds (date available);
b. The name and, if provided by the sender, the telephone number and/or address of the designated recipient (recipient);
c. A statement about the sender's error resolution and cancellation;
d. Specified contact information for the remittance transfer provider; and
e. The transfer date for remittance transfers scheduled at least three business days in advance, or the first transfer in a series of preauthorized transfers.

The provider must also provide a statement that the sender can contact the state agency that licenses or charters the remittance transfer provider with respect to the particular transfer (if there is such a state agency), and the Bureau for questions or complaints about the remittance transfer provider. The statement must include the name of the agency(ies), telephone number(s), and website address(es).

**Date Funds Will Be Available.** The provider must disclose the date in the foreign country on which the funds will be available to the designated recipient, using the term "Date Available" or a substantially similar term. If a provider does not know the exact date on which funds will be available, the provider may disclose the latest date on which the funds will be available. The provider may also disclose that funds "may be available sooner" or use a substantially similar term to inform senders that funds may be available to the designated recipient on a date earlier than the date disclosed (Comment 31(b)(2)-1).

**Agencies Required to Be Disclosed.** The provider must disclose information about a state agency that licenses or charters the provider with respect to the particular remittance transfer. If a financial institution is solely regulated by a federal agency, the institution does not need to disclose information about a state agency. However, information about the Bureau must be provided whether or not the Bureau is the provider's primary federal regulator (Comment 31(b)(2)-2). If a provider is licensed in multiple states, and the state agency that licenses the provider with respect to the remittance transfer is determined by the sender's location, a provider may make the determination of the sender's state based on information provided by the sender and on any records associated with the sender. A state-chartered bank must disclose information

# Interagency Consumer
# Laws and Regulations                          EFTA

about the state agency that granted its charter, regardless of the location of the sender (Comment 31(b)(2)-3).

**Date of Transfer on Receipt.** For remittance transfers scheduled at least three business days in advance, or the first transfer in a series of preauthorized transfers, the date of transfer for the remittance transfer must be disclosed on the receipt. Additional disclosures apply to subsequent preauthorized remittance transfers, as described below regarding 12 CFR 1005.36(d) (Comments 31(b)(2)-5).

**Cancellation Disclosure.** The provider may provide the three-business-day right to cancel notice (for transfers scheduled three or more business days before the transfer date) and the 30-minute right to cancel notice (for transfers scheduled fewer than three business days in advance), on the same disclosure, with a checkbox or other method to clearly designate the applicable cancellation period. For transfers scheduled three or more business days before the transfer date, the cancellation disclosure should be phrased and formatted in such a way that it is clear to the sender which cancellation period is applicable to the date of transfer disclosed on the receipt (Comment 31(b)(2)-7).

## Combined Disclosure – 12 CFR 1005.31(b)(3)

As an alternative to providing separate pre-payment and receipt disclosures, a remittance transfer provider may provide the information in the receipt in a single disclosure when the sender requests the remittance transfer, but prior to payment for the transfer. If this combined disclosure is provided and the sender completes the transfer, the remittance transfer provider must provide the sender with proof of payment when payment is made for the remittance transfer. For one-time transfers scheduled at least five business days in advance, or for the first in a series of preauthorized transfers, the provider may provide confirmation that the transaction has been scheduled in lieu of the proof of payment if payment is not processed at the time the remittance transfer is scheduled. No further proof of payment is required when payment is later processed (Comment 31(b)(3)-2)).

**Proof of Payment/Confirmation of Scheduling.** The proof of payment or confirmation of scheduling must be clear and conspicuous, provided in writing or electronically, and provided in a retainable form. The proof of payment for the transaction may be provided on the same piece of paper as the combined disclosure or on a separate piece of paper. A provider may also provide this additional information to a sender on a separate piece of paper when payment is made (12 CFR 1005.31(b)(3)(ii) and Comment 31(b)(3)-1).

## Long Form Error Resolution and Cancellation Notice – 12 CFR 1005.31(b)(4)

At the sender's request, a remittance transfer provider is required promptly to provide a notice describing the sender's error resolution and cancellation rights, using language set forth in Model Form A-36 of Appendix A or substantially similar language. For any remittance transfer scheduled by the sender at least three business days before the date of the transfer, the

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

description of the rights of the sender regarding cancellation must instead reflect the requirements of 12 CFR 1005.36(c).

## Specific Format of Disclosures - 12 CFR 1005.31(c)

**Grouping of Disclosed Information.** Disclosures related to transfer amount, transfer fees and taxes imposed by the provider, and the total amount of the transaction generally must be grouped together. Similarly, disclosures related to the transfer amount in the currency to be made available to the designated recipient, covered third-party fees, taxes collected on the remittance by the provider, the total amount to be received by the designated recipient, and the disclaimer statement generally must be grouped together. Information is grouped together if multiple disclosures are in close proximity to one another and a sender can reasonably calculate the total amount of the transaction and the amount that will be received by the designated recipient (12 CFR 1005.31(c)(1) and Comment 31(c)(1)-1).

**Proximity of Disclosed Information.** The exchange rate used for the remittance transfer generally must be disclosed in close proximity to the other information required in the pre-payment disclosure. Disclosures on error resolution and cancellation rights must generally be disclosed in close proximity to the other disclosures required on the receipt (12 CFR 1005.31(c)(2)).

**Prominence and Size of Disclosures.** Disclosures required by Subpart B or permitted by 12 CFR 1005.31(b)(1)(viii) that are provided in writing or electronically, other than disclosures permitted to be provided via mobile application or text message, must be in a minimum of eight-point font and in equal prominence to each other. They must be provided on the front of the page on which the disclosures are printed (12 CFR 1005.31(c)(3)).

**Segregation of Disclosures from Other Information.** Disclosures that are provided in writing or electronically, other than disclosures permitted to be provided via mobile application or text message, must be segregated from everything else and must contain only information that is "directly related" to the disclosures (12 CFR 1005.31(c)(4)).

The following is "directly related" information:

   a. The date and time of the transaction;
   b. The sender's name and contact information;
   c. The location at which the designated recipient may pick up the funds;
   d. The confirmation or other identification code;
   e. A company name and logo;
   f. An indication that a disclosure is or is not a receipt or other indicia of proof of payment;
   g. A designated area for signatures or initials;
   h. A statement that funds may be available sooner;
   i. Instructions regarding the retrieval of funds, such as the number of days the funds will be available to the recipient before they are returned to the sender;
   j. A statement that the provider makes money from foreign currency exchange; and

# Interagency Consumer
# Laws and Regulations

**EFTA**

    k.  Disclosure of any non-covered third-party fees and any taxes collected by a person other than the provider (Comment 31(c)(4)-2).

**Terms Used in the Case of Estimated Disclosures.** A remittance transfer provider may provide estimates of the amounts required to be disclosed in the pre-payment disclosure, receipt, and combined disclosure to the extent permitted by 12 CFR 1005.32. An estimate must be described using the term "Estimated" or a substantially similar term in close proximity to the estimated term or terms. For example, a remittance transfer provider could describe an estimated disclosure as "Estimated Transfer Amount," "Other Estimated Fees and Taxes," or "Total to Recipient (Est.)" (12 CFR 1005.31(d) and Comment 31(d)-1).

**Request to Send a Remittance Transfer.** Determining whether a consumer has requested a remittance transfer depends on the facts and circumstances. A sender that asks a provider to send a remittance transfer, and provides transaction-specific information to the provider in order to send funds to a designated recipient, has requested a remittance transfer. On the other hand, a consumer who solely inquires about that day's rates and fees to send to a particular country has not requested the provider to send a remittance transfer (Comment 31(e)-1).

**When Payment Is Made.** Payment is made when a sender provides cash to the remittance transfer provider or when payment is authorized (Comment 31(e)-2).

**Disclosures Related to Mobile Application and Text Message Transactions.** If a transaction is conducted entirely by telephone via mobile application or text message, a receipt may be mailed or delivered to the sender pursuant to the timing requirements for transfers conducted entirely by telephone (Comment 31(e)-4).

**Accuracy of Disclosures - When Payment Is Made.** Disclosures required by Subpart B or permitted by 12 CFR 1005.31(b)(1)(viii) must be accurate when a sender makes payment for the remittance transfer, except to the extent estimates are permitted. A remittance transfer provider is not required to guarantee the terms of the remittance transfer in the pre-payment disclosures for any specific period of time. However, if any of these disclosures are not accurate when a sender makes payment for the remittance transfer, the provider must give new disclosures before accepting payment (12 CFR 1005.31(f) and Comment 31(f)-1).

## Foreign Language Disclosures - 12 CFR 1005.31(g)

Written and electronic disclosures required by Subpart B or permitted by 12 CFR 1005.31(b)(1)(viii) generally must be provided in English and in each foreign language principally used to advertise, solicit, or market remittance transfer services at the office in which a sender conducts a transaction or asserts an error. Alternatively, written and electronic disclosures can be provided in English and in the foreign language primarily used by the sender with the remittance transfer provider, provided such foreign language is principally used to advertise, solicit, or market remittance transfers at the office in which a sender conducts a transaction or asserts an error. For transfers requested orally, by text message, or mobile application, the disclosures must be in the language primarily used by the sender to communicate with the transfer provider (12 CFR 1005.31(g)).

# Interagency Consumer
# Laws and Regulations                                    EFTA

**Number of Foreign Languages Used in Written Disclosure.** There is no limit to the number of languages that may be used on a single document, but such disclosures must be clear and conspicuous. If the remittance transfer provider chooses to provide written and electronic disclosures in English and in the foreign language primarily used by the sender with the remittance transfer provider, it may provide disclosures in a single document with both languages or in two separate documents with one document in English and the other document in the applicable foreign language (Comment 31(g)-1).

**Language Primarily Used.** The language primarily used by the sender with the remittance transfer provider to conduct the transaction is the primary language used by the sender with the remittance transfer provider to convey the information necessary to complete the transaction. Similarly, the language primarily used by the sender with the remittance transfer provider to assert the error is the primary language used by the sender with the remittance transfer provider to provide the information required to assert an error (Comment 31(g)-2).

**Language Principally Used.** Whether a foreign language is principally used by the remittance transfer provider to advertise, solicit, or market is determined from all relevant facts and circumstances, including:

a. The frequency with which the foreign language is used in advertising, soliciting, or marketing of remittance transfer services at that office;
b. The prominence of the advertising, soliciting, or marketing of remittance transfer services in that foreign language at that office; and
c. The specific foreign language terms used in the advertising soliciting, or marketing of remittance transfer services at that office (Comment 31(g)(1)-1(i)).

**Language Used to Advertise, Solicit, or Market.** Any commercial message in a foreign language, appearing in any medium, that promotes directly or indirectly the availability of remittance transfer services constitutes advertising, soliciting, or marketing in such foreign language (Comment 31(g)(1)-2).

**Office.** An office includes any physical location, telephone number, or website of a remittance transfer provider where a sender may conduct a remittance transfer or assert an error for a remittance transfer (Comment 31(g)(1)-3).

**At the Office.** Any advertisement, solicitation, or marketing is considered to be made at the office in which a sender conducts a transaction or asserts an error if it is posted, provided, or made: at a physical office; on a website of a remittance transfer provider that may be used by senders to conduct remittance transfers or assert errors; during a telephone call with a remittance transfer provider that may be used by senders to conduct remittance transfers or assert errors; or via mobile application or text message if the mobile application or text message may be used by senders to conduct remittance transfers or assert errors (Comment 31(g)(1)-4).

# Interagency Consumer
# Laws and Regulations                    EFTA

## XIV.   Estimates - 12 CFR 1005.32

**Disclosures for which estimates may be used.** Estimates may be used in certain circumstances for certain information required in pre-payment disclosures, receipts and combined disclosures.

## Temporary Exception for Insured Institutions - 12 CFR 1005.32(a)

NOTE: The temporary exception is available for insured institutions until July 21, 2020.

Estimates may be provided for certain amounts required to be disclosed in the pre-payment disclosures, receipts, and combined disclosures if:

a. The remittance transfer provider cannot determine the exact amounts for reasons beyond its control;
b. The remittance transfer provider is an insured institution; and
c. The remittance transfer is sent from the sender's account with the institution (not including a prepaid account, unless the prepaid account is a payroll card account or government benefit account).

An insured institution means an insured depository institution (including an uninsured U.S. branch and agency of a foreign depository institution) and an insured credit union (12 CFR 1005.32(a)(3)).

**Control.** An insured institution cannot determine exact amounts "for reasons beyond its control" when a person other than the insured institution or with which the insured institution has no correspondent relationship sets the exchange rate or imposes a covered third-party fee that is required to be disclosed. For example, if an insured institution has a correspondent relationship with an intermediary financial institution in another country and that intermediary institution sets the exchange rate or imposes a fee for remittance transfers sent from the insured institution to the intermediary institution, then this exception is not applicable and the insured institution must determine exact amounts for the disclosures because the determination of those amounts are not beyond the insured institution's control (Comment 32(a)(1)-1).

**Covered Third-Party Fees.** An insured institution cannot determine the exact covered third-party fees to disclose if, for example, an intermediary institution with which the insured institution does not have a correspondent relationship, imposes a transfer or conversion fee. On the other hand, an insured institution can determine the exact covered third-party fees required to be disclosed if it has agreed upon the specific fees with an intermediary correspondent institution, and this correspondent institution is the only institution in the transmittal route to the designated recipient's institution (Comments 32(a)(1)-2(ii) and -3(ii)).

The temporary exception is available for insured institutions until July 21, 2020.

# Interagency Consumer
# Laws and Regulations                                    EFTA

## Permanent Exception for Transfers to Certain Countries – 12 CFR 1005.32(b)(1)

Estimates may be provided in pre-payment disclosures, receipts or combined disclosures for transfers to certain countries if a remittance transfer provider cannot determine the exact amounts at the time the disclosure is required either because:

a. The laws of the recipient country do not permit such a determination, or
b. The method by which transactions are made in the recipient country does not permit such determination.

**Laws of the Recipient Country.** The laws of the recipient country do not permit a remittance transfer provider to determine exact amounts required to be disclosed when a law or regulation of the recipient country (e.g., currency exchange or certain privacy laws) do not allow the person making funds directly available to the designated recipient to determine the exact amounts at the time the disclosure is required. A typical example is where the law requires an exchange rate to be either:

a. Set by the government of the recipient country after the remittance transfer provider sends the remittance transfer; or
b. Set when the designated recipient receives the funds (Comment 32(b)(1)-1).

**Method by Which Transactions Are Made in the Recipient Country.** The method by which transactions are made in the recipient country does not permit a remittance transfer provider to determine exact amounts required to be disclosed when transactions are sent via international ACH on terms negotiated between the United States government and the recipient country's government, under which the exchange rate is a rate set by the recipient country's central bank or other governmental authority after the provider sends the remittance transfer (Comment 32(b)(1)-3).

**Safe Harbor List.** The CFPB published a list of countries whereby a remittance transfer provider may provide estimates for the exchange rate, the transfer amount, covered third-party fees and total amount to the recipient, unless the provider has information that a country on the list legally permits the provider to determine exact disclosure amounts. If a country does not appear on the CFPB's list, the provider may provide estimates if it determines that the recipient country does not legally permit or the method by which transactions are conducted in that country does not permit the provider to determine exact disclosure amounts (Comments 32(b)(1)-5 and 32(b)(1)-6). The list of countries that became effective February 7, 2013 and remains current as of June 2018 is Aruba, Brazil, China, Ethiopia, and Libya.

**Change in Laws of Recipient Country.** If the laws of a recipient country change such that a remittance transfer provider can determine exact amounts, the remittance transfer provider must begin providing exact amounts for the required disclosures as soon as reasonably practicable. If the laws of a recipient country change such that the provider cannot determine

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

exact disclosure amounts, the provider may provide estimates even if that country does not appear on the list published by the CFPB (Comment 32(b)(1)-7).

## Permanent Exception for Transfers Scheduled Before the Date of Transfer - 12 CFR 1005.32(b)(2)

For remittance transfers scheduled five or more business days before the date of the transfer, estimates may be provided for the exchange rate, transfer amount, covered third-party fees (where the exchange rate is also estimated and affects such fees) and the total amount to recipient, if at the time the sender schedules such a transfer, the provider agrees to a sender's request to fix the amount to be transferred in the currency in which the remittance transfer will be received and not the currency in which it is funded. For example, if a sender schedules a wire transfer to be sent from the sender's bank account denominated in U.S. dollars but to be paid to the recipient in Euro, the provider is allowed to estimate the transfer amount, front-end fees or taxes collected by the provider (if based on the amount transferred), and the total amount of the transaction. The provider is also allowed to estimate any covered third-party fees if the exchange rate is also estimated and the estimated exchange rate affects the amount of fees (12 CFR 1005.32(b)(2) and Comment 32(b)(2)-1).

## Permanent Exception for Optional Disclosure of Non-Covered Third-Party Fees and Taxes Collected on the Remittance Transfer by a Person Other Than the Provider - 12 CFR 1005.32(b)(3)

The remittance transfer provider may provide estimates (as part of the required disclaimer statement) for applicable non-covered third-party fees and taxes collected on the remittance transfer by a person other than the provider, if such estimates are based on reasonable sources of information. Reasonable sources of information may include, for example, information obtained from recent transfers to the same institution or the same country or region; fee schedules from the recipient institution; fee schedules from the recipient institution's competitors; surveys of recipient institution fees in the same country or region as the recipient institution; information provided or surveys of recipient institutions' regulators or taxing authorities; commercially or publicly available databases, services or sources; and information or resources developed by international nongovernmental organizations or intergovernmental organizations (Comment 32(b)(3)-1).

# Bases for Estimates - 12 CFR 1005.32(c) and (d)

If a remittance transfer provider qualifies for either the temporary or permanent exception, the rule allows two bases for estimating information in the disclosures:

1. The estimates must generally be based on any of the approaches listed in the rule (12 CFR 1005.32 (c)(1)).
2. Alternatively, the estimates may be based on an approach that is not listed, provided that the designated recipient receives the same, or greater, amount of funds than the remittance transfer provider disclosed.

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

For remittance transfers scheduled five or more business days before the date of the transfer, estimates must be based on the exchange rate or, where applicable, the estimated exchange rate that the provider would have used or did use that day to provide disclosures to a sender requesting such a remittance transfer to be made on the same day.

## Approaches Listed in the Rule

**Estimates of the Exchange Rate.** For remittance transfers sent via international ACH, the estimate must be based on the most recent exchange rate set by the recipient country's central bank or other governmental authority and reported by a Federal Reserve Bank. For any remittance transfers for which estimates are permitted, the exchange rate may be estimated based on the most recent publicly available wholesale exchange rate and any applicable spread that the remittance transfer provider or its correspondent typically applies for remittance transfers for that currency or the most recent exchange rate offered or used by the person making funds available directly to the designated recipient or by the person setting the exchange rate (12 CFR 1005.32(c)(1)).

Where the exchange rate for a remittance transfer sent via international ACH that qualifies for the permanent exception is set the following business day, the most recent exchange rate available for a transfer is the exchange rate set for the day that the disclosure is provided, i.e., the current business day's exchange rate (Comment 32(c)(1)-1).

**Publicly Available.** Examples of publicly available sources of information containing the most recent wholesale exchange rate for a currency include U.S. news services, such as Bloomberg, the Wall Street Journal, and the New York Times; a recipient country's national news services, and a recipient country's central bank or other government agency (Comment 32(c)(1)-2).

**Spread Applied to the Wholesale Exchange Rate**. An estimate for disclosing the exchange rate based on the most recent publicly available wholesale exchange rate must also reflect any spread the remittance transfer provider typically applies to the wholesale exchange rate for remittance transfers for a particular currency (Comment 32(c)(1)-3).

**Most Recent Exchange Rate.** If the exchange rate with respect to a particular currency is published or provided multiple times throughout the day because the exchange rate fluctuates throughout the day, a remittance transfer provider may use any exchange rate available on that day to determine the most recent exchange rate (Comment 32(c)(1)-4).

**Estimates of the Transfer Amount and Covered Third-Party Fees in the Currency in Which Funds Will Be Received by the Designated Recipient.**
Estimates of the transfer amount in the currency in which the funds will be received by the designated recipient as well as covered third-party fees imposed as a percentage of the amount transferred must be based on the estimated exchange rate, prior to any rounding (12 CFR 1005.32(c)(2) and (3)(i)).

**Estimates of the Fees Imposed by Intermediary or Final Institution.**
Estimates for covered third-party fees imposed by intermediary or final institutions that act as

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

intermediaries or by the designated recipient's institution must be based on the remittance transfer provider's most recent remittance transfer to the designated recipient's institution, or a representative transmittal route identified by the remittance transfer provider (12 CFR 1005.32(c)(3)(ii)).

**Estimates of the Amount of Currency That Will Be Received by the Designated Recipient.** Estimates for the amount of currency that will be received by the designated recipient must be based on the estimates provided in accordance with 12 CFR 1005.31(c)(1) through (3) as applicable for the transaction (12 CFR 1005.32(c)(4)).

# XV.  Procedures for Resolving Errors - 12 CFR 1005.33)

## Definition of Error - 12 CFR 1005.33(a)

In connection with an error asserted under 12 CFR 1005.33, the term <u>error</u> means:

a. Generally, an incorrect amount paid by a sender in connection with a remittance transfer;
b. A computational or bookkeeping error made by the remittance transfer provider relating to the remittance transfer;
c. The failure, generally, to make available to a designated recipient the amount of currency required to be disclosed under 12 CFR 1005.31(b)(vii) and stated in the disclosure provided to the sender unless the disclosure stated an estimate of the amount paid and the difference results from application of the actual exchange rate, fees, and taxes, rather than any estimated amount;
d. The failure, generally, to make funds available to a designated recipient by the date of availability stated in the disclosure provided to the sender; or
e. The sender's request for documentation required by 12 CFR 1005.31 or for additional information or clarification concerning a remittance transfer, including a request a sender makes to determine whether an error exists. (See more detailed discussion of errors and exceptions below.)

**Error Due to Incorrect Amount of Currency Paid by Sender.** This type of error covers circumstances in which a sender pays an amount that differs from the total amount of the transaction, including fees imposed in connection with the transfer, stated in the receipt or combined disclosure provided. However, there is no error if the disclosure appropriately stated an estimate of the amount paid by the sender and the difference results from application of the actual exchange rate, fees, and taxes, rather than any estimated amounts (12 CFR 1005.33(a)(1)(i) and Comment 33(a)-1).

**Error Due to Incorrect Amount of Currency Received.** This type of error covers circumstances in which the designated recipient receives an amount of currency that differs from the amount of currency identified on the disclosures provided to the sender. It also covers circumstances in which the remittance transfer provider transmits an amount that differs from the

# Interagency Consumer
# Laws and Regulations                    EFTA

amount requested by the sender (Comment 33(a)-2). There are three general exceptions to this. There is no error if:

    a.  The disclosure appropriately, under one of the two exceptions under 12 CFR 1005.32, stated an estimate of the amount of currency to be received and the difference results from application of the actual exchange rate, fees, and taxes, rather than any estimated amounts; or

    b.  The failure was caused by extraordinary circumstances outside the remittance transfer provider's control; or

    c.  The difference results from the application of non-covered third-party fees or taxes collected on the remittance transfer by a person other than the provider and the provider provided the required disclaimer (12 CFR 1005.33(a)(1)(iii)).

A designated recipient may receive an amount of currency that differs from the amount of currency disclosed and an error has occurred if, for example:

    1.  An exchange rate other than the disclosed rate is applied to the remittance transfer (Comment 33(a)-2), or

    2.  The provider provides the sender a receipt stating an amount of currency that will be received by the designated recipient, which does not reflect additional covered third-party fees that are imposed by the receiving agent in the destination country (Comment 33(a)-3(iii)). However, if the designated recipient will receive less than the amount of currency disclosed on the receipt due solely to the additional foreign taxes that the provider was not required to disclose, no error has occurred (Comment 33(a)-3(ii)).

**Exception for Extraordinary Circumstances Outside the Remittance Transfer Provider's Control.** If the provider fails to make the amount of currency disclosed available to the designated recipient, such an occurrence is not an error if such failure was caused by extraordinary circumstances outside the remittance transfer provider's control that could not have been reasonably anticipated (12 CFR 1005.33(a)(1)(iii)(B)). Examples include war or civil unrest, natural disaster, garnishment or attachment of some of the funds after the transfer is sent, and government actions or restrictions that could not have been reasonably anticipated by the remittance transfer provider, such as the imposition of foreign currency controls or foreign taxes unknown at the time the receipt or combined disclosure is provided (Comment 33(a)-4). Note that foreign taxes are not required to be disclosed. However, if a provider, believing that there is no applicable foreign tax, elects not to provide a disclaimer pursuant to 12 CFR 1005.31(b)(1)(viii), no error has occurred if a new tax is imposed that could not have been reasonably anticipated at the time the receipt or combined disclosure was required to be given.

**Error Due to Failure to Make Funds Available by Disclosed Date of Availability.** This error generally covers disputes about the failure to make remittance transfer funds available to a designated recipient by the disclosed date of availability. Examples include, late or non-delivery of a remittance transfer, delivery of funds to the wrong account, the fraudulent pick-up of a remittance transfer in a foreign country by a person other than the

# Interagency Consumer
# Laws and Regulations                                    EFTA

designated recipient, and the recipient agent or institution's retention of the remittance transfer, instead of making the funds available to the designated recipient (Comment 33(a)-5).

There is no error if funds were not made available by the disclosed date due to:

a. Extraordinary circumstances outside the remittance transfer provider's control that could not have been reasonably anticipated;

b. Delays related to a necessary investigation or other special action by the remittance transfer provider or a third party as required by the provider's fraud screening procedures or in accordance with the Bank Secrecy Act, Office of Foreign Assets Control requirements, or similar laws or requirements; or

c. The remittance transfer was made with fraudulent intent by the sender or any person acting in concert with the sender (i.e., friendly fraud); or

d. The sender provided the remittance transfer provider an incorrect account number or recipient institution identifier for the designated recipient's account or institution, (12 CFR 1005.33(a)(1)(iv)) and:

   i. the remittance provider can demonstrate that the sender provided an incorrect account number or recipient institution identifier to the provider in connection with the remittance transfer;

   ii. the provider used reasonably available means prior to or when sending the transfer to verify (for recipient institution identifier errors only) that the recipient institution identifier provided by the sender corresponded to the recipient institution name provided by the sender;

   iii. the provider provided notice to the sender (prior to payment for the remittance transfer) that, in the event the sender provided an incorrect account number or recipient institution identifier, the sender could lose the transfer amount;

   iv. the incorrect account number or recipient institution identifier resulted in the deposit of the remittance transfer into a customer's account that is not the designated recipient's account; and

   v. the provider promptly used reasonable efforts to recover the amount that was to be received by the designated recipient (12 CFR 1005.33(h)).

**Account Number or Recipient Institution Identifier.** Account number and recipient institution identifier refer to alphanumerical account or institution identifiers other than names or addresses, such as account numbers, routing numbers, Canadian transit numbers, International Bank Account Numbers, Business Identifier Codes, and other similar account or institution identifiers used to route a transaction. Designated recipient's account refers to an asset account but does not include a credit card, prepaid card, or a virtual account held by an Internet-based or mobile telephone company that is not a bank, savings association, credit union or equivalent institution (Comment 33(a)-8).

**Reasonable Methods of Verification.** Reasonably available means may include accessing a directory of Business Identifier Codes and verifying that the code provided by the sender matches the provided institution name, and if possible, the specific branch or location provided by the sender. A provider may also rely on other commercially available databases or

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

directories to check other recipient institution identifiers. The requirement to verify would be met if no reasonably available means exist to verify the accuracy of the recipient institution identifier if the other conditions are satisfied (Comment 33(h)-1).

**Reasonable Efforts.** Whether a provider has used reasonable efforts does not depend on whether the provider is ultimately successful in recovering the amount that was to be received by the designated recipient. If the remittance transfer provider is requested to provide documentation or other supporting information in order for the pertinent institution or authority to obtain the proper authorization for the return of the incorrectly credited amount, reasonable efforts to recover the amount include timely provision of any such documentation to the extent that it is available and permissible under law (Comment 33(h)-2).

**Promptness of Reasonable Efforts.** Whether a provider acts promptly to use reasonable efforts depends on the facts and circumstances. For example, if before the disclosed date of availability the sender informs the provider that the sender provided a wrong account number, the provider will have acted promptly if it attempts to contact the recipient's institution before the date of availability (Comment 33(h)-3).

**Failure to Make Funds Available by Disclosed Date of Availability Due to Circumstances Outside the Remittance Transfer Provider's Control.** A remittance transfer provider's failure to deliver or transmit a remittance transfer by the disclosed date of availability is not an error if such failure was caused by extraordinary circumstances outside the remittance transfer provider's control that could not have been reasonably anticipated. Examples of such circumstances include war or civil unrest, natural disaster, garnishment or attachment of funds after the transfer is sent, and government actions or restrictions that could not have been reasonably anticipated by the remittance transfer provider, such as the imposition of foreign currency controls (Comment 33(a)-6).

## Issues That Are Not Considered Errors Under Subpart B

The following are <u>not</u> errors:

a.  An inquiry about the status of a remittance transfer except where the funds from the transfer were not made available to a designated recipient by the disclosed date of availability;
b.  A request for information for tax or other recordkeeping purposes;
c.  A change requested by the designated recipient that the remittance transfer provider or others involved in the remittance transfer decide to accommodate; or
d.  A change in the amount or type of currency received by the designated recipient from the amount or type of currency stated in the disclosure provided to the sender if the remittance transfer provider relied on information provided by the sender

(12 CFR 1005.33(a)(2) and Comment 33(a)-10)).

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

## Notice of Error From Sender – 12 CFR 1005.33(b)

**Person Asserting or Discovering Error.** The error resolution procedures apply only when a notice of error is received from the sender (Comment 33(b)-1).

**Timing of Error Notice.** The notice of error must be received by the remittance transfer provider within 180 days of the disclosed date of availability of the remittance transfer (12 CFR 1005.33(b)(1)). However, if the notice of error is based on documentation, additional information, or clarification provided by the remittance transfer provider, then notice is timely if it is received by the remittance transfer provider the later of:

a. 180 days after the disclosed date of availability of the remittance transfer; or
b. 60 days after the provider sent the documentation, information, or clarification that had been requested (12 CFR 1005.33(b)(2)).

**Content of Error Notice.** Errors may be reported orally or in writing. The notice of error is effective so long as the remittance transfer provider is able to identify:

a. The sender's name and telephone number or address (or email address)
b. The recipient's name and, if known, telephone number and address;
c. The remittance transfer to which the notice of error applies; and
d. Why the sender believes an error exists and if possible, the type, date, and amount of the error, except for errors involving requests for documentation, additional information, or clarification.

For example, the sender could provide the confirmation number or code that would be used by the designated recipient to pick up the transfer, or other identification number or code supplied by the remittance transfer provider in connection with the transfer, if the number or code is sufficient for the remittance transfer provider to identify the sender (and contact information), designated recipient, and the transfer in question (Comment 33(b)-2 and 3).

**Effect of Late Notice.** A remittance transfer provider is not required to comply with the error resolution requirements for any notice of error from a sender that is received more than 180 days from the disclosed date of availability of the remittance transfer or, if applicable, more than 60 days after a provider sent documentation, additional information, or clarification requested by the sender (Comment 33(b)-4).

**Notice of Error Provided to Agent.** A notice of error provided by a sender to an agent of the remittance transfer provider is deemed to be received by the provider when the agent receives it (Comment 33(b)-5).

**Consumer Notice of Error Resolution Rights.** In addition to the requirement to provide an abbreviated notice of the consumer's error resolution rights on the receipt or combined notice, the remittance transfer provider must make available to a sender, upon request, a notice providing a full description of the sender's error resolution rights, using language set forth in Appendix A (Model Form A-36) or substantially similar language (Comment 33(b)-6).

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

## Time Limits and Extent of Investigation – 12 CFR 1005.33(c)

A remittance transfer provider must investigate promptly and determine whether an error occurred within 90 days of receiving a notice of error. The remittance transfer provider must report the results to the sender within three business days after completing its investigation and include notice of any remedies available for correcting any error that the provider determines has occurred. If the remittance transfer provider determines during its investigation that an error occurred as described by the sender, the remittance provider may inform the sender of its findings either orally or in writing. However, if the provider determines that no error or a different error occurred, the provider must provide a written explanation of the findings, and note the sender's right to request the documents on which the provider relied in making its determination (12 CFR 1005.33(d)(1) Comment 33(c)-1).

### Remedies

If the remittance transfer provider determines an error (as defined in Subpart B) occurred and the error relates to:

a.  an incorrect amount paid by the sender,
b.  a computational or bookkeeping error made by the remittance transfer provider, or
c.  failure to make the amount of currency stated in the disclosures available to the designated recipient,

the provider must either:

a.  refund the amount of funds provided by the sender in connection with a remittance transfer which was not properly transmitted, or the amount appropriate to resolve the error; or
b.  make available to the designated recipient, the amount appropriate to resolve the error without additional cost to the sender or the designated recipient (12 CFR 1005.33(c)(2)(i)).

If the error relates to a sender's request for documentation or additional information or clarification to determine whether an error exists, the remittance transfer provider must provide the requested information (12 CFR 1005.33(c)(2)(iv)).

### Remedy in the Case of Failure to Make Funds Available by the Disclosed Date of Availability.

a.  <u>Where failure to make funds available by the disclosed date of availability occurred due to incorrect or insufficient information provided by the sender:</u>

The remittance transfer provider is required to refund to the sender the amount of funds that was not properly transmitted, or the amount appropriate to resolve the error, and any fees and taxes paid by the sender in connection with the remittance transfer, within three business

# Interagency Consumer
# Laws and Regulations                                    EFTA

days of providing the written explanation of findings. However, the provider may agree to the sender's request, upon receiving the results of the error investigation, to apply the funds towards a new remittance transfer, rather than be refunded, if the provider has not yet processed a refund.

The provider may deduct from the amount refunded or applied towards a new transfer any fees actually deducted by a person other than the provider (except those that will ultimately be refunded to the provider) on, or to the extent not prohibited by law, taxes actually collected on the remittance transfer as part of the first unsuccessful remittance transfer attempt and inform the sender of the deduction and reason. The provider may not deduct its own fee. The agreement to apply the funds towards a new transfer is treated as a new remittance transfer and the provider must provide new disclosures in accordance with 12 CFR 1005.31 and all other applicable provisions of Subpart B (12 CFR 1005.33(c)(2)(iii) and Comments 33(c)-11 and -12).

b. **All other instances of failure to make funds available by the disclosed date of availability**

As applicable, the remittance transfer provider must either:

i.   Refund to the sender, the amount of funds which was not properly transmitted or the amount appropriate to resolve the error; or

ii.  Make available to the designated recipient the amount appropriate to resolve the error without additional cost to the sender or to the designated recipient; ***and***

iii. Refund to the sender any fees imposed and to the extent not prohibited by law, taxes collected on the remittance transfer (12 CFR 1005.33(c)(2)(ii)).

**Designation of Requested Remedy.** The provider may request that the sender indicate the preferred remedy when providing the notice of the error. If the provider does so, it should indicate that a resend remedy may be unavailable if the error occurred because the sender provided incorrect or insufficient information. If the sender does not indicate the desired remedy at the time of providing notice of error, the remittance transfer provider must notify the sender of any available remedies in the written explanation of findings (Comment 33(c)-3).

**Default Remedy (except where the sender provided incorrect or insufficient information).** The provider may set a default remedy that the remittance transfer provider will use if the sender does not designate a remedy within a reasonable time after receiving the written explanation of findings. If a default remedy is provided, the remittance transfer provider must correct the error within one business day or as soon as reasonably practicable, after the reasonable time for the sender to designate the remedy has passed. For purposes of designating a remedy, ten days is deemed a reasonable time (Comment 33(c)-4).

**Amount Appropriate to Resolve the Error.** The amount appropriate to resolve the error is the specific amount of transferred funds that should have been received if the remittance transfer had taken place without error. It does not include consequential damages (Comment 33(c)-5).

# Interagency Consumer
# Laws and Regulations                                    EFTA

**Form of Refund.** Where a refund may be issued, a remittance transfer provider may generally, at its discretion, issue a refund either in cash or in the same form of payment that was initially provided by the sender for the remittance transfer (Comment 33(c)-6).

**Remedies for Incorrect Amount Paid.** If an error relates to the payment of an incorrect amount, the sender may request a refund of the amount necessary to resolve the error or request that the remittance transfer provider make the amount necessary to resolve the error available to the designated recipient at no additional cost (Comment 33(c)-7).

**Correction of an Error If Funds Were Not Available by Disclosed Date.** If the remittance transfer provider determines an error related to failure to make funds available by the disclosed date occurred, it must correct the error and refund any fees imposed by the provider or a third party involved in sending the transfer, such as an intermediary bank involved in sending a wire transfer or the institution from which the funds are picked up (unless the sender provided incorrect or insufficient information to the remittance transfer provider in connection with the remittance transfer) (Comment 33(c)-8).

**Charges for Error Resolution.** If an error occurred, whether as alleged or in a different amount or manner, the remittance transfer provider may not impose a charge related to any aspect of the error resolution process (including charges for documentation or investigation) (Comment 33(c)-9).

**Correction Without Investigation.** A remittance transfer provider may correct an error, without investigation, in the amount or manner alleged by the sender, or otherwise determined, to be in error, but must comply with all other applicable requirements (Comment 33(c)-10).

## Procedures If Remittance Transfer Provider Determines No Error or Different Error Occurred – 12 CFR 1005.33(d)

If the remittance transfer provider determines that no error occurred or that an error occurred in a manner or amount different from that described by the sender, its report of the results of the investigation must include a written explanation of the provider's findings and shall note the sender's right to request the documents on which it relied in making its determination.  The explanation should also address the specific complaint of the sender. Upon the sender's request, the remittance transfer provider must also promptly provide copies of the documents on which it relied to make its error determination (12 CFR 1005.33(d)).

**Error Different From That Alleged.** If a remittance transfer provider determines that an error occurred in a manner or amount different from that described by the sender, it must comply with the requirements of both 12 CFR 1005.33(c) (concerning the investigation) and (d) (procedures if remittance transfer provider determines no error or different error occurred), as applicable. The provider may give the notice of correction and the explanation separately or in a combined form (Comment 33(d)-1).

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

## Reassertion of Error - 12 CFR 1005.33(e)

A remittance transfer provider that has fully complied with the error resolution requirements of this section generally has no further responsibilities should the sender later reassert the same error, except in the case of an error asserted by the sender following receipt of additional information requested from the provider (12 CFR 1005.33(e)).

**Withdrawal of Error; Right to Reassert.** The remittance transfer provider has no further error resolution responsibilities if the sender voluntarily withdraws the notice alleging an error. A sender who has withdrawn an allegation of error has the right to reassert the allegation unless the remittance transfer provider had already complied with all of the error resolution requirements before the allegation was withdrawn. The sender must do so, however, within the original 180-day period from the disclosed date of availability or, if applicable, the 60-day period for a notice of error based on documentation or clarification that the sender previously requested (Comment 33(e)-1).

## Relation to Other Laws - 12 CFR 1005.33(f)

**Relation to Regulation E for Incorrect EFTs from a Sender's Account —12 CFR 1005.11.** If an alleged error involves an incorrect electronic fund transfer from a sender's account in connection with a remittance transfer, and the sender provides a notice of error to the account-holding institution, the requirements of 12 CFR 1005.11 governing error resolution apply if the account-holding institution is not also the remittance transfer provider. However, if the remittance transfer provider is also the account holding institution, then the error-resolution provisions of 12 CFR 1005.33 apply when the sender provides such notice of error (12 CFR 1005.33(f)(1)).

**Concurrent Error Obligations.** A remittance transfer provider that holds the sender's account may have error obligations under both 12 CFR 1005.11 and 1005.33, depending on the relationship with the sender and the nature of the error. For example, if a sender asserts an error under 12 CFR 1005.11 with a remittance transfer provider that holds the sender's account, and the error is not also an error under 12 CFR 1005.33 (such as the omission of an EFT on a periodic statement), then the error-resolution provisions of 12 CFR 1005.11 exclusively apply to the error. However, if a sender asserts an error under 12 CFR 1005.33 with a remittance transfer provider that holds the sender's account, and the error is also an error under 12 CFR 1005.11 (such as when the amount the sender requested to be deducted from the sender's account and sent for the remittance transfer differs from the amount that was actually deducted from the account and sent), then the error-resolution provisions of 12 CFR 1005.33 exclusively apply to the error (Comment 33(f)-1).

**Relation to TILA and Regulation Z.** If an alleged error involves an incorrect extension of credit in connection with a remittance transfer, an incorrect amount received by the designated recipient that is an extension of credit for property or services not delivered as agreed, or the failure to make funds available by the disclosed date of availability that is an extension of credit for property or services not delivered as agreed, and the sender provides a notice of error to the creditor extending the credit, the error resolution provisions of Regulation Z, 12 CFR 1026.13,

# Interagency Consumer
# Laws and Regulations                                    EFTA

apply to the creditor, rather than the requirements of 12 CFR 1005.33, even if the creditor is the remittance transfer provider. However, if the creditor is the remittance transfer provider, the error resolution requirements of 12 CFR 1005.33(b) will apply instead of 12 CFR 1026.13(b). If the sender instead provides a notice of error to the remittance transfer provider that is not also the creditor, then the error-resolution provisions of 12 CFR 1005.33 apply to the remittance transfer provider (12 CFR 1005.33(f)(2)).

**Unauthorized Remittance Transfers.** If an alleged error involves an unauthorized electronic fund transfer for payment in connection with a remittance transfer, 12 CFR 1005.6 and 1005.11 apply with respect to the account-holding institution. If an alleged error involves an unauthorized use of a credit account for payment in connection with a remittance transfer, the provisions of Regulation Z, 12 CFR 1026.12(b), if applicable, and 12 CFR 1026.13, apply with respect to the creditor (12 CFR 1005.33(f)(3)).

**Holder in Due Course.** The error resolution provisions in Subpart B do not affect a sender's rights to assert claims and defenses against a card issuer concerning property or services purchased with a credit card under Regulation Z, 12 CFR 1026.12(c)(1), as applicable (Comment 33(f)-2).

**Assertion of the Same Error With Multiple Parties.** If a sender receives credit to correct an error of an incorrect amount paid in connection with a remittance transfer from either the remittance transfer provider or account-holding institution (or creditor), and subsequently asserts the same error with another party, that party has no further responsibilities to investigate the error if the error has been corrected. In addition, nothing prevents an account-holding institution or creditor from reversing amounts it has previously credited to correct an error if a sender receives more than one credit to correct the same error (Comment 33(f)-3).

## Error Resolution Standards and Recordkeeping Requirements – 12 CFR 1005.33(g)

**Compliance Program.** A remittance transfer provider must develop and maintain written policies and procedures that are designed to ensure compliance with the error resolution requirements applicable to remittance transfers.

Policies and procedures must address the retention of records related to error investigations (12 CFR 1005.33(g)(1) and (2)).

**Record Retention Requirements.** Remittance transfer providers are subject to the record retention requirements under Subpart A (12 CFR 1005.13 and Comment 33(g)-1). See also, section XVIII.

# Interagency Consumer
# Laws and Regulations                                    EFTA

## XVI. Procedures for Cancellation and Refund of Remittance Transfers - 12 CFR 1005.34

### Sender's Right of Cancellation and Refund

Except for certain remittance transfers scheduled in advance subject to 12 CFR 1005.36(c), a remittance transfer provider generally must comply with any oral or written request to cancel a remittance transfer from the sender that is received by the provider no later than 30 minutes after the sender makes payment in connection with the remittance transfer if:

a. The request to cancel enables the provider to identify the sender's name and address or telephone number and the particular transfer to be cancelled; and
b. The transferred funds have not been picked up by the designated recipient or deposited into an account of the designated recipient (12 CFR 1005.34(a)).

**Content of Cancellation Request.** A request to cancel a remittance transfer is valid so long as the remittance transfer provider is able to identify the remittance transfer in question (Comment 34(a)-1).

**Notice of Cancellation Right.** A remittance transfer provider is required to include an abbreviated notice of the sender's right to cancel a remittance transfer on the receipt or combined disclosure provided to the sender. In addition, the remittance transfer provider must make available to a sender upon request, a notice providing a full description of the right to cancel a remittance transfer (Comment 34(a)-2). See also Model Form 36 in Appendix A.

**Thirty-Minute Cancellation Right.** Except for certain remittance transfers scheduled in advance subject to 12 CFR 1005.36(c), a remittance transfer provider must comply with the cancellation and refund requirements if the cancellation request is received no later than 30 minutes after the sender makes payment (Comment 34(a)-3).

**Cancellation Request Provided to Agent.** A cancellation request provided by a sender to an agent of the remittance transfer provider is deemed to be received by the provider when received by the agent (Comment 34(a)-4).

### Time Limits and Refund Requirements

If a sender provides a timely request to cancel a remittance transfer, a remittance transfer provider must, within three business days of receiving the request, refund all funds provided by the sender in connection with the remittance transfer, including any fees and, to the extent not prohibited by law, taxes that have been imposed for the transfer, whether the fee or tax was assessed by the provider or a third party, such as an intermediary institution, the agent or bank in the recipient country, or a state or other governmental body (12 CFR 1005.34(b) and Comment 34(b)-2).

# Interagency Consumer
# Laws and Regulations                                  **EFTA**

**Form of Refund.** A remittance transfer provider generally may issue a refund either in cash or in the same form of payment that was initially provided by the sender for the remittance transfer (Comment 34(b)-1).

# XVII. Acts of Agents - 12 CFR 1005.35

A remittance transfer provider is strictly liable for a violation by an agent, when such agent acts on its behalf. Remittance transfer providers must comply with the requirements of Subpart B, even if an agent or other person performs functions for the remittance transfer provider, and regardless of whether the provider has an agreement with a third party that transfers or otherwise makes funds available to a designated recipient (12 CFR 1005.35 and Comment 35-1).

Agencies responsible for enforcing the requirements of EFTA Section 919 and Subpart B of Regulation E may consider, in any action or other proceeding against a remittance transfer provider, the extent to which the provider had established and maintained policies or procedures for compliance, including policies, procedures, or other appropriate oversight measures designed to assure compliance by an agent or authorized delegate acting for such provider (EFTA section 919(f)(2)).

# XVIII. Transfers Scheduled Before the Date of Transfer - 12 CFR 1005.36

**Applicability of Subpart B.** The requirements set forth in Subpart B apply to remittance transfers scheduled before the transfer date, unless modified by 12 CFR 1005.36. For example, the foreign language disclosure requirements apply to disclosures provided in connection with transfers scheduled in advance (Comment 36-1).

## Timing - 12 CFR 1005.36(a)

For one-time transfers scheduled five or more business days in advance or for the first in a series of transfers authorized in advance to recur at substantially regular intervals (preauthorized remittance transfers), the remittance transfer provider must provide either a pre-payment disclosure and a receipt or a combined disclosure at the time the sender requests the transfer but prior to payment. If any of the disclosures provided contain estimates, the provider must mail or deliver an additional receipt no later than one business day after the date of the transfer. If the transfer involves the transfer of funds from the sender's account held by the provider, this additional receipt may be provided on or with the next periodic statement for that account, or within 30 days after the date of the transfer if a periodic statement is not provided (12 CFR 1005.36(a)(1)).

**Subsequent Preauthorized Remittance Transfers.** For each subsequent preauthorized remittance transfer, the provider must provide an updated receipt if any of the information (other than temporal disclosures) on the most recent receipt is no longer accurate for reasons other than as permitted in the estimates provision of 12 CFR 1005.32. The receipt must clearly and conspicuously indicate that it contains updated disclosures and must be mailed or

# Interagency Consumer
# Laws and Regulations                                   EFTA

delivered to the sender within a reasonable time prior to the scheduled date of the next subsequent preauthorized remittance transfer. If the disclosure is mailed no later than ten business days or delivered by hand or electronically no later than five business days before the scheduled date of the transfer, the provider is deemed to have provided the disclosure within a reasonable time (12 CFR 1005.36(a)(2)(i) and Comments 36(a)(2)-1, -2, and -3).

For each subsequent preauthorized transfer, the remittance transfer provider must mail or deliver to the sender a receipt no later than one business day after the date of the transfer. This is not required in situations where an updated receipt that contained no estimates was provided prior to the scheduled date of the next subsequent preauthorized remittance transfer. If the remittance transfer involves the transfer of funds from the sender's account held by the provider, the receipt may be provided on or with the next periodic statement for that account, or within 30 days after the date of the transfer if a periodic statement is not provided (12 CFR 1005.36(a)(2)(ii)).

## Accuracy - 12 CFR 1005.36(b)

For a one-time transfer scheduled five or more business days in advance or for the first in a series of preauthorized remittance transfers, disclosures provided must be accurate when a sender makes payment except to the extent estimates are permitted. Unless estimates are permitted, for each subsequent preauthorized remittance transfer, the most recent receipt provided must generally be accurate as of when such transfer is made except to the extent estimates are permitted. Temporal elements in the disclosures, like the date of availability and the transfer date must only be accurate if the transfer is the first transfer after the disclosure was provided (12 CFR 1005.36(b)).

## Cancellation - 12 CFR 1005.36(c)

**Cancellation of Transfers Scheduled at Least Three Days in Advance.** A remittance transfer provider must comply with any oral or written request to cancel any remittance transfer scheduled by the sender at least three business days before the date of the remittance transfer, if the request to cancel:

  a. Enables the provider to identify the sender's name and address or telephone number and the particular transfer to be cancelled; and
  b. Is received by the provider at least three business days before the scheduled date of the remittance transfer (12 CFR 1005.36(c)).

The right of cancellation applies when a remittance transfer is scheduled by the sender at least three business days before the date of the transfer, regardless of whether the sender schedules a preauthorized remittance transfer or a one-time transfer. For transfers scheduled less than three business days before the date of transfer, the 30-minute cancellation deadline in 12 CFR 1005.34 applies (Comment 36(c)-1).

**Cancelled Preauthorized Remittance Transfers.** For preauthorized remittance transfers, the provider must assume the request to cancel applies to all future preauthorized

# Interagency Consumer
# Laws and Regulations                                                      EFTA

remittance transfers, unless the sender specifically indicates that it should apply only to the next scheduled transfer (Comment 36(c)-2).

**Concurrent Cancellation Obligations.** A financial institution that is also a remittance transfer provider may have both stop payment obligations under 12 CFR 1005.10 and cancellation obligations under 12 CFR 1005.36. If a sender cancels a remittance transfer under 12 CFR 1005.36 with a remittance transfer provider that holds the sender's account, and the transfer is a preauthorized transfer, 12 CFR 1005.36 applies exclusively (Comment 36(c)-3).

## Additional Requirements for Subsequent Preauthorized Remittance Transfers – 12 CFR 1005.36(d)

**Disclosure Requirement.** For any subsequent transfer in a series of preauthorized remittance transfers, the remittance transfer provider must disclose:

   a. The date of the subsequent transfer using the term "Future Transfer Date" or a substantially similar term;
   b. A statement of the sender's cancellation rights; and
   c. The name, telephone number(s), and website of the remittance transfer provider (12 CFR 1005.36(d)(1)).

The disclosures must be provided no more than 12 months and no less than five business days prior to the date of the subsequent preauthorized remittance transfer. For any subsequent preauthorized remittance transfer for which the date of transfer is four or fewer business days after the date payment is made, the disclosure must generally be provided on or with the receipt for the initial transfer in that series (12 CFR 1005.36(d)(2)).

A remittance transfer provider has some flexibility in determining how and when the disclosures required by 12 CFR 1005.36(d)(1) may be provided to senders. They may be provided as a separate disclosure, or on or with any other disclosure required by Subpart B related to the same series of preauthorized remittance transfers, provided that the disclosure and timing requirements in 12 CFR 1005.36(d)(2) and other applicable provisions in Subpart B are satisfied (Comment 36(d)-1).

If any of the information provided in these disclosures change, the provider must provide an updated disclosure with the revised information that is accurate as of when the transfer is made (12 CFR 1005.36(d)(1) and (4) and Comments 36(d)-2, 3, and 4).

For any subsequent preauthorized remittance transfer, the future date of transfer must be provided on any receipt provided for the initial transfer in that series of preauthorized remittance transfers. If the provider discloses the dates of subsequent preauthorized remittance transfers and the applicable cancellation period on either the receipt provided when payment is made or on a second receipt, the disclosure must be phrased and formatted in such a way that it is clear to the sender which cancellation period is applicable to any date of transfer on the receipt (Comment 31(b)(2)-5).

# Interagency Consumer
# Laws and Regulations                                    EFTA

## The following sections are applicable to both Subpart A and Subpart B.

## XIX.   Preemption

The EFTA and Regulation E preempt inconsistent state laws, but only to the extent of the inconsistency. The CFPB is given the authority to determine whether or not a state law is inconsistent. An entity, state, or other interested party may request the Bureau to make such a determination. A state law will not be deemed inconsistent if it is more protective of the consumer than the EFTA or Regulation E. Upon application, the Bureau has the authority to exempt any state from the requirements of the EFTA or the regulation for any class of EFTs within a state, with the exception of the civil liability provision (EFTA section 922 and 12 CFR 1005.12(b) and (c)).

## XX.  Administrative Enforcement and Record Retention – 12 CFR 1005.13

Section 918 of the EFTA sets forth the federal agencies responsible for enforcing compliance with the provisions of the law and its implementing regulation.

**Record Retention.** Any person subject to the EFTA and Regulation E must maintain evidence of compliance with the EFTA and Regulation E for at least two years from the date the disclosures are required to be made or action is required to be taken. The agency supervising the person may extend this period. The period may also be extended if the person is subject to an action filed under Sections 910, 915 or 916(a) of the EFTA, which generally apply to the person's liability under the EFTA and Regulation E. Persons subject to the EFTA who have actual notice that they are being investigated or subject to an enforcement proceeding must retain records until disposition of the proceeding (12 CFR 1005.13 and 1005.33(g)).

Records may be stored on microfiche, microfilm, magnetic tape, or in any other manner capable of accurately retaining and reproducing the information.

## XXI.   Miscellaneous

The EFTA contains several additional provisions that are not directly reflected in the language of Regulation E. Most significantly, 15 U.S.C. 1693*l* provides that the consumer may not waive by agreement any right conferred, or cause of action created, by the EFTA. However, the consumer and another person may provide by agreement greater consumer protections or additional rights or remedies than those provided by the EFTA. In addition, the consumer may sign a waiver in settlement of a dispute.

If a third party payee has agreed to accept payment by EFT, the consumer's obligation to pay is suspended during any period in which a system malfunction prevents an EFT from occurring (15 U.S.C. 1693j). However, the payee may avoid that suspension by making a written request for payment by means other than EFT.

# Interagency Consumer
# Laws and Regulations                                    **EFTA**

Failure to comply with the requirements of the EFTA can result in civil and criminal liability, as outlined in 15 U.S.C. 1693m and 15 U.S.C. 1693n. Financial institutions may also be liable for damages under 15 U.S.C. 1693h due to failure to complete an EFT or failure to stop a preauthorized transfer when instructed to do so.

## Model Disclosure Clauses and Forms – 12 CFR 1005, Appendix A

Appendix A of Regulation E contains model clauses and forms that entities may use to comply with the requirement disclosure requirements of Regulation E. Use of the model forms is optional and an entity may make certain changes to the language or format of the model forms without losing the protection from civil and criminal liability under Sections 915 and 916 of the EFTA. The model forms are:

### For Subpart A:

A-1    Model Clauses for Unsolicited Issuance (12 CFR 1005.5(b)(2))

A-2    Model Clauses for Initial Disclosures (12 CFR 1005.7(b))

A-3    Model Forms for Error Resolution Notice (12 CFR 1005.7(b)(10) and 1005.8(b))

A-4    Model Form for Service-Providing Institutions (12 CFR 1005.14(b)(1)(ii))

A-5    Model Clauses for Government Agencies (12 CFR 1005.15(e)(1) and (2))

A-6    Model Clauses for Authorizing One-Time Electronic Fund Transfers Using Information from a Check (12 CFR 1005.3(b)(2))

A-7    Model Clauses for Financial Institutions Offering Prepaid Accounts (12 CFR 1005.18(d) and (e)(3))

A-8    Model Clause for Electronic Collection of Returned Item Fees (12 CFR 1005.3(b)(3))

A-9    Model Consent Form for Overdraft Services (12 CFR 1005.17)

A-10(a)    Model Form for Short Form Disclosures for Government Benefit Accounts (12 CFR 1005.15(c) and 1005.18(b)(2), (3), (6), and (7))

A-10(b)    Model Form for Short Form Disclosures for Payroll Card Accounts (12 CFR 1005.18(b)(2), (3), (6), and (7))

A-10(c)    Model Form for Short Form Disclosures for Prepaid Accounts, Example 1 (12 CFR 1005.18(b)(2), (3), (6), and (7))

A-10(d)    Model Form for Short Form Disclosures for Prepaid Accounts, Example 2 (12 CFR 1005.18(b)(2), (3), (6), and (7))

# Interagency Consumer
# Laws and Regulations                                    EFTA

A-10(e)    Model Form for Short Form Disclosures for Prepaid Accounts with Multiple Service Plans (12 CFR 1005.18(b)(2), (3), (6), and (7))

**For Subpart B:**

## A-10(f)    Sample Form for Long Form Disclosures for Prepaid Accounts (12 CFR 1005.18(b)(4), (6), and (7))

A-30(a)    Model Form for Pre-Payment Disclosures for Remittance Transfers Exchanged into Local Currency including a disclaimer where non-covered third-party fees and foreign taxes may apply (12 CFR 1005.31(b)(1))

A-30(b)    Model Form for Pre-Payment Disclosures for Remittance Transfers Exchanged into Local Currency including a disclaimer with estimate for non-covered third-party fees (12 CFR 1005.31(b)(1) and 12 CFR 1005.32(b)(3))

A-30(c)    Model Form for Pre-Payment Disclosures for Remittance Transfers Exchanged into Local Currency including a disclaimer with estimate for foreign taxes (12 CFR 1005.31(b)(1) and 12 CFR 1005.32(b)(3))

A-30(d)    Model Form for Pre-Payment Disclosures for Remittance Transfers Exchanged into Local Currency, including a disclaimer with estimates for non-covered third-party fees and foreign taxes (12 CFR 1005.31(b)(1) and 12 CFR 1005.32(b)(3))

A-31    Model Form for Receipts for Remittance Transfers Exchanged into Local Currency (12 CFR 1005.31(b)(2))

A-32    Model Form for Combined Disclosures for Remittance Transfers Exchanged into Local Currency (12 CFR 1005.31(b)(3))

A-33    Model Form for Pre-Payment Disclosures for Dollar-to-Dollar Remittance Transfers (12 CFR 1005.31(b)(1))

A-34    Model Form for Receipts for Dollar-to-Dollar Remittance Transfers (12 CFR 1005.31(b)(2))

A-35    Model Form for Combined Disclosures for Dollar-to-Dollar Remittance Transfers (12 CFR 1005.31(b)(3))

A-36    Model Form for Error Resolution and Cancellation Disclosures (Long) (12 CFR 1005.31(b)(4))

A-37    Model Form for Error Resolution and Cancellation Disclosures (Short) (12 CFR 1005.31(b)(2)(iv) and (b)(2)(vi))

A-38    Model Form for Pre-Payment Disclosures for Remittance Transfers Exchanged into Local Currency – Spanish (12 CFR 1005.31(b)(1))

# Interagency Consumer
# Laws and Regulations                                        **EFTA**

A-39    Model Form for Receipts for Remittance Transfers Exchanged into Local Currency –
Spanish (12 CFR 1005.31(b)(2))

A-40    Model Form for Combined Disclosures for Remittance Transfers Exchanged into
Local Currency – Spanish (12 CFR 1005.31(b)(3))

A-41    Model Form for Error Resolution and Cancellation Disclosures (Long) – Spanish (12
CFR 1005.31(b)(4))

# Interagency Consumer
# Laws and Regulations                    EFTA

## References

### Laws

| | |
|---|---|
| 15 U.S.C. 1693 et seq. | Electronic Fund Transfer Act |
| 15 U.S.C. 7001 et seq. | Electronic Signatures in Global and National Commerce |
| 15 U.S.C. 1601 et seq. | Truth in Lending Act |

## Regulations

**Consumer Financial Protection Bureau Regulations (12 CFR)**

| | |
|---|---|
| Part 1005 | Electronic Fund Transfers (Regulation E) |

# Interagency
# Examination Procedures                                    EFTA

## Electronic Fund Transfer Act

| | |
|---|---|
| Exam Date: | **[Click&type]** |
| Exam ID No.: | **[Click&type]** |
| Prepared By: | **[Click&type]** |
| Reviewer: | **[Click&type]** |
| Docket #: | **[Click&type]** |
| Entity Name: | **[Click&type]** |
| Event #: | **[Click&type]** |

These examination procedures are divided into three sections:

- Section I covers management- and policy-related procedures for both financial institutions and other entities that may be remittance transfer providers (referred to herein as "entity").

- Section II covers electronic fund transfers conducted by financial institutions.

- Section III applies to remittance transfer providers (including financial institutions).

Each examination should be risk based and may not require an examiner to complete all three sections. In addition, each agency may have its own supervisory strategy that will dictate which sections of these examination procedures are required to be completed.

## Examination Objectives

In general, a Regulation E examination is conducted to:

- Determine the entity's compliance with Regulation E.

- Assess the quality of the entity's compliance risk management systems and its policies and procedures for implementing Regulation E.

- Determine the level of reliance that can be placed on the entity's internal controls and procedures for monitoring the entity's compliance with Regulation E.

- As appropriate, direct corrective action when violations of law are identified or when the entity's policies or internal controls are deficient.

## Examination Procedures

### Section I – Management- and Policy-Related Examination Procedures

1. Through a review of all available information (e.g., board minutes, management reports, monitoring reports, etc.) and discussions with management, determine that the board and management have set clear expectations about compliance with Regulation E, not only within the entity but also concerning key business partners, including agents, correspondent banks, and software providers, to the extent relevant.

| |
|---|
| [Click&type] |

# Interagency
# Examination Procedures                     EFTA

2. Through a review of all available information (e.g. written policies and procedures, management's self-assessments, customer complaints, prior examination reports, and any compliance audit material, including work papers and reports), determine whether:

    a. There are any weaknesses or other risks in the business model.

    b. The scope of the audit addresses all provisions of Regulation E as applicable.

    c. The scope of the audit addresses all key business processes and functions, including those carried out by third-party service providers or key business partners, as appropriate.

    d. Management has taken corrective actions to follow up on previously identified deficiencies.

    e. As applicable, testing includes risk-based samples covering product types and decision centers.

    f. There is an audit trail that supports the findings and conclusions of the work performed.

    g. Significant deficiencies and their causes are included in reports to management and/or to the Board of Directors or principal(s).

    h. The frequency of review is appropriate.

| [Click&type] |
| --- |

3. Through discussions with management and review of available information, determine whether the entity's internal controls are adequate to ensure compliance with respect to the Regulation E area under review. Consider among other things:

    a. Organizational charts,

    b. Process flowcharts,

    c. Policies and procedures,

    d. Account (if applicable) and transaction documentation,

    e. Checklists, and

    f. Computer program documentation.

| [Click&type] |
| --- |

4. Through a review of the entity's training materials and discussions with management, determine whether:

    a. The entity provides appropriate training to employees and other persons responsible for Regulation E compliance and operational procedures.

# Interagency
# Examination Procedures                                    EFTA

b. The training is comprehensive and covers the sections of Regulation E that apply to the individual entity's product offerings and operations including, to the extent appropriate, those functions carried out by third-party service providers or other business partners, such as agents and correspondent banks.

[Click&type]

## Section II – Subpart A

Based on the materials reviewed within Section I, complete Section II, as applicable, to determine the financial institution's compliance with Regulation E.

### Transaction-Related Examination Procedures

Conduct transaction testing, using the following examination procedures:

1. Obtain and review copies of the following:

   a. Disclosure forms,

   b. Advertising and scripts for overdraft opt-ins,

   c. Account agreements,

   d. Procedural manuals and written policies,

   e. Merchant agreements,

   f. Automated teller machine receipts and periodic statements,

   g. Error resolution statements/files,

   h. Form letters used in case of errors or questions concerning an account,

   i. Any agreements with third parties allocating compliance responsibilities, and

   j. Consumer complaint files.

[Click&type]

### Policies and Procedures

2. Determine the extent and adequacy of the financial institution's policies, procedures, and practices for ensuring compliance with the regulation. In particular, verify that:

   a. Access devices are issued in compliance with the regulation (12 CFR 1005.5(b)).

   b. Required disclosures are given at the time the account is opened or prior to the first electronic funds transfer ("EFT") (12 CFR 1005.4 and 1005.7(c)).

# Interagency
# Examination Procedures                                                    EFTA

    c.  Unauthorized transfer claims are processed in compliance with the regulation (12 CFR 1005.6 and 1005.11).

    d.  Liability for unauthorized transfer claims is assessed in compliance with the regulation (12 CFR 1005.6).

    e.  Negligence is not a factor in determining customer liability. The deposit agreement may not impose greater liability than Regulation E provides but may provide for less consumer liability (12 CFR 1005.6).

    f.  Preauthorized debits and credits comply with the regulation (12 CFR 1005.10).

| [Click&type] |
| --- |

## Disclosures, Notices, Receipts, Periodic Statements, and Preauthorized Transfers

3.  If the financial institution has changed the terms or conditions of initial disclosures for EFT services since the last examination that required a written notice to the customer, determine that the institution provided the proper notice in a timely manner (12 CFR 1005.8(a)).

| [Click&type] |
| --- |

4.  Review a sample of periodic statements for each type of account in which electronic fund transfers occur to determine that they contain sufficient information for the consumer to identify transactions adequately and that they otherwise comply with regulatory requirements (12 CFR 1005.9).

| [Click&type] |
| --- |

5.  Verify that the financial institution does not require compulsory use of EFTs, except as authorized (12 CFR 1005.10(e)).

| [Click&type] |
| --- |

6.  For unauthorized transfers, lost or stolen ATM cards, and EFT consumer complaints, and their respective periodic statements, determine whether:

    a.  The financial institution is in compliance with its error resolution procedures to isolate any apparent deficiencies in the financial institution's operations to ensure that the institution follows its policies for unauthorized transfers (12 CFR 1005.6 and 1005.11).

    b.  The financial institution investigates alleged errors and notifies consumers of the results within allotted time frames and, when appropriate, provisionally re-credits the account (12 CFR 1005.11(c)).

# Interagency
# Examination Procedures                                                    EFTA

c.   The financial institution  follows regulatory procedures after it completes its investigation and determines  either that an error occurred (12 CFR 1005.11(c)(1))  or that no error occurred (12 CFR 1005.11(d)).

| [Click&type] |
| --- |

7.   Review ATM and point-of-sale  transfer receipts to determine whether they provide  a clear description  of the transaction (12 CFR 1005.9(a)).

| [Click&type] |
| --- |

8.   Determine that the financial  institution  is maintaining  records of compliance  for a period of not less than two years from the date disclosures  are required to be made or action  is required to be taken (12 CFR 1005.13(b)).

| [Click&type] |
| --- |

9.   If the financial  institution  operates one or more ATMs for which it charges a fee for use, determine that the financial  institution  provides  notice of the fee and the amount of the fee on the screen of the ATM or on paper before the consumer is committed to paying the fee (12 CFR 1005.16).

| [Click&type] |
| --- |

## Overdrafts – 12 CFR 1005.17

10.   Determine that the financial  institution  holding  a consumer's account does not assess a fee or charge on a consumer's account for paying an ATM or one-time debit card transaction pursuant to the institution's  overdraft service,[1] unless the institution:

a.   Provides the consumer with a notice in writing (or if the consumer agrees, electronically), that is segregated from all other information and describes the institution's overdraft service;

b.   Provides a reasonable opportunity  for the consumer to affirmatively  consent, or opt in, to the service for ATM and one-time  debit card transactions;

c.   Obtains the consumer's affirmative  consent, or opt in, to the institution's  payment of ATM or one-time debit card transactions; and

---

[1] The term "overdraft service" means a service under which a financial institution assesses a fee or charge on a consumer's account held by the financial institution for paying a transaction (including a check or other item) when the consumer has insufficient or unavailable funds in the account (12 CFR 1005.17(a)). "Overdraft service" does not include any payment of overdrafts pursuant to: a line of credit subject to Regulation Z; a service that transfers funds from another account held by a consumer; a line of credit or other transaction exempt from Regulation Z pursuant to 12 CFR 1026.3(d); or a covered separate credit feature accessible  by a hybrid prepaid-credit card as defined in Regulation Z, 12 CFR 1026.61, or credit extended through a negative balance on the asset feature of the prepaid account that meets the conditions of 12 CFR 1026.61(a)(4).

# Interagency
# Examination Procedures                          EFTA

---

d.  Provides the consumer with confirmation of the consumer's consent in writing (or if the consumer agrees, electronically), which includes a statement informing the consumer of the right to revoke such consent.

(12 CFR 1005.17(b)(1))

*NOTE: An institution does not have to meet the notice requirements described above if it does not impose a fee or charge for paying an overdraft transaction for ATM and one-time debit card transactions. For example, an institution that has a policy and practice of declining to authorize and pay any ATM or one-time debit card transactions when it has a reasonable belief at the time of the authorization request that the consumer does not have sufficient funds available to cover the transaction may pay such an overdraft regardless of notice. However, it is still prohibited from charging fees for paying an ATM or one-time debit transaction overdraft (12 CFR 1005, and Comments 1005.17(b)-1(iv) and 17(b)-2).*

| [Click&type] |
| --- |

11. Determine that in assessing overdraft fees for consumers who have not opted in, the institution charges fees only for negative balances, daily, or sustained overdraft, or similar fees, when the negative balance is attributable in whole or in part to checks, automated clearing house (ACH) or other transactions not subject to the fee prohibition, and that the fee is assessed based on the date when the check is paid into overdraft, not the date of the ATM or one-time debit transaction (Comment 1005.17(b)-9).

| [Click&type] |
| --- |

12. Determine that the financial institution does not:

a.  Condition the payment of any overdrafts for checks, ACH transactions, and other types of transactions on the consumer affirmatively consenting to the institution's payment of ATM and one-time debit card transactions pursuant to the institution's overdraft service; or

b.  Decline to pay checks, ACH transactions, and other types of transactions that overdraw the consumer's account because the consumer has not affirmatively consented to the institution's overdraft service for ATM and one-time debit card transactions.

(12 CFR 1005.17(b)(2))

| [Click&type] |
| --- |

13. Determine that the financial institution provides to consumers who do not affirmatively consent to the institution's overdraft service for ATM and one-time debit card transactions the same account terms, conditions, and features that it provides to consumers who affirmatively consent, except for the overdraft service for ATM and one-time debit card transactions (12 CFR 1005.17(b)(3)).

---

# Interagency
# Examination Procedures                                EFTA

[Click&type]

14. Ensure that the notice required by 12 CFR 1005.17(b)(1)(i) is substantially similar to Model Form A–9 (Model Consent Form for Overdraft Services), includes all applicable items in the following list, and does not contain any additional information:

   a. *Overdraft service.* A brief description of the financial institution's overdraft service and the types of transactions for which a fee or charge for paying an overdraft may be imposed, including ATM and one-time debit card transactions.

   b. *Fees imposed.* The dollar amount of any fees or charges assessed by the financial institution for paying an ATM or one-time debit card transaction pursuant to the institution's overdraft service, including any daily or other overdraft fees. If the amount of the fee is determined on the basis of the number of times the consumer has overdrawn the account, the amount of the overdraft, or other factors, the institution must disclose the maximum fee that may be imposed.

   c. *Limits on fees charged.* The maximum number of overdraft fees or charges that may be assessed per day, or if applicable, that there is no limit.

   d. *Disclosure of opt-in right.* An explanation of the consumer's right to affirmatively consent to the financial institution's payment of overdrafts for ATM and one-time debit card transactions pursuant to the financial institution's overdraft service, including the methods by which the consumer may consent to the service; and

   e. *Alternative plans for covering overdrafts.* If the institution offers both a line of credit subject to Regulation Z (12 CFR Part 1026) and a service that transfers funds from another account of the consumer held at the institution to cover overdrafts, the institution must state in its opt-in notice that both alternative plans are offered. If the institution offers one, but not the other, it must state in its opt-in notice the alternative plan that it offers. If the institution does not offer either plan, it should omit the reference to the alternative plans. If the financial institution offers additional alternatives for paying overdrafts, it may (but is not required to) disclose those alternatives.

   (12 CFR 1005.17(d) and Comments 1005.17(d)-1 through 1005.17(d)-5).

   *NOTE: Permitted modifications and additional content. If applicable, the institution may modify the content required by 12 CFR 1005.17(d) to indicate that the consumer has the right to opt in to, or opt out of, the payment of overdrafts under the institution's overdraft service for other types of transactions, such as checks, ACH transactions, or automatic bill payments; to provide a means for the consumer to exercise this choice; and to disclose the associated returned item fee and that additional merchant fees may apply. The institution may also disclose the consumer's right to revoke consent. The response portion of Model Form A-9 may be tailored to the methods offered for opting in, and may include reasonable methods to identify the account, such as a bar code.*

# Interagency
# Examination Procedures                           EFTA

[Click&type]

15. Determine that, when two or more consumers jointly hold an account, the financial institution treats the affirmative consent of any of the joint consumers as affirmative consent for that account, and treats a revocation of affirmative consent by any of the joint consumers as revocation of consent for that account (12 CFR 1005.17(e)).

[Click&type]

16. Ensure that a consumer may affirmatively consent to the financial institution's overdraft service at any time in the manner described in the institution's (12 CFR 1005.17(b)(1)(i)) notice, and that a consumer may also revoke consent at any time in the manner made available to the consumer for providing consent (12 CFR 1005.17(f)).

[Click&type]

17. Determine that the financial institution implements a consumer's revocation of consent as soon as reasonably practicable (12 CFR 1005(17)(f)).

[Click&type]

18. Determine that a consumer's affirmative consent to the institution's overdraft service is effective until revoked by the consumer, or until the financial institution terminates the service (12 CFR 1005.17(g)).

[Click&type]

19. Determine that the financial institution's overdraft protection program incorporates the examiner's agency guidance as applicable.

[Click&type]

## Prepaid Accounts – 12 CFR 1005.18 and 1005.15

NOTE: Additional Regulation E procedures outside of the "Prepaid Accounts" section may also apply to prepaid accounts.

20. Verify that the institution meets all pre-acquisition prepaid account disclosure requirements, including the required timing, content, and formatting for short- and long-form disclosures (12 CFR 1005.18(b) and 1005.15(c)).

[Click&type]

21. If the financial institution does not provide periodic statements under 12 CFR 1005.9(b) for prepaid accounts, verify that the institution makes available the account balance by telephone, an electronic history of account transactions, and a written history of account

# Interagency
# Examination Procedures                                    **EFTA**

transactions upon request (except as not required per 12 CFR 1005.18(c)(2)) (12 CFR 1005.18(c)(1) and (2) and 1005.15(d)(1)).

If the financial institution provides an electronic history of account transactions and a written history of account transactions upon request, verify it includes the information set forth in 12 CFR 1005.9(b) (12 CFR 1005.18(c)(3); 12 CFR 1005.15(d)(2)).

| [Click&type] |
|---|

22. Verify that any periodic statements provided by the institution under 12 CFR 1005.9(b) and any history of account transactions provided or made available by the institution disclose the required fee information (12 CFR 1005.18(c)(4)-(5) and 1005.15(d)(2)).

| [Click&type] |
|---|

23. If the financial institution provides information under 12 CFR 1005.18(c)(1) rather than periodic statements under 12 CFR 1005.9(b), verify that the institution complies with the modified requirements with respect to the required initial disclosures, error resolution notices, limitations on liability, and error resolution procedures (12 CFR 1005.18(d) and 1005.18(e)(1) and (2) and 1005.15(e)).

| [Click&type] |
|---|

24. Verify that the initial disclosures provided by the institution under 12 CFR 1005.7 include all fees and other information required to be disclosed in its pre-acquisition long form disclosure as set forth in 12 CFR 1005.18(b)(4) (12 CFR 1005.18(f)(1) and 1005.15(f)).

| [Click&type] |
|---|

25. If the financial institution maintains prepaid accounts, verify that the institution provides notice for changes in terms and conditions when required (12 CFR 1005.18(f)(2) and 1005.15(f)).

| [Click&type] |
|---|

26. Verify that the institution discloses required information on its prepaid account access devices, or if the institution does not provide an access device, on the website, mobile application, or other entry point a consumer must visit to access the prepaid account electronically (12 CFR 1005.18(f)(3) and 1005.15(f)).

| [Click&type] |
|---|

27. Except in the case of higher fees and charges imposed on the asset feature of a prepaid account with a covered separate credit feature, as provided in 12 CFR 1005.18(g), if the financial institution maintains a prepaid account program where consumers may be offered a covered separate credit feature accessible by a hybrid prepaid-credit card as defined by Regulation Z, 12 CFR 1026.61, verify that the institution provides to any prepaid account

# Interagency
# Examination Procedures                                      EFTA

without a covered separate credit feature the same account terms, conditions, and features it provides on prepaid accounts in the same prepaid account program that have such a credit feature (12 CFR 1005.18(g) and 1005.15(g)).

[Click&type]

## Internet Posting of Prepaid Account Agreements – 12 CFR 1005.19

28. For prepaid account issuers that are subject to the requirement, verify that the issuer makes submissions of prepaid account agreements to the CFPB on a rolling basis, as applicable, in the form and manner specified by the Bureau (12 CFR 1005.19(b)).

[Click&type]

29. Verify that the issuer posts and maintains on its publicly available website any prepaid account agreements offered to the general public that the issuer is required to submit to the CFPB as frequently as the issuer is required to submit new or amended agreements to the Bureau and in conformance to the form and content requirements of 12 CFR 1005.19(b)(6). Also verify that agreements are placed in a location that is prominent and readily accessible to the public, and are accessible without the submission of personally identifiable information (12 CFR 1005.19(c)).

[Click&type]

30. Verify that for any open prepaid account, the issuer posts and maintains on its website the consumer's agreement or promptly provides a copy of the consumer's agreement to the consumer upon the consumer's request, in conformance with the form and content requirements of 12 CFR 1005.19(b)(6). If the agreement is posted on its website, verify that it is posted in any electronic format that is readily usable by the general public and placed in a location that is prominently and readily accessible to the consumer. If the agreement is provided upon request from a consumer, ensure the agreement is sent no later than five business days after the issuer receives the request (12 CFR 1005.19(d)).

[Click&type]

## Gift Card Disclosures – 12 CFR 1005.20

31. Determine that the disclosures required by the sections listed below are made on the certificate or card, or in the case of a loyalty, award, or promotional gift card, on the card, code, or other device:

   a. 12 CFR 1005.20(a)(4)(iii) (loyalty, award, or promotional gift card);

   b. 12 CFR 1005.20(d)(2) (dormancy, inactivity, or service fees);

   c. 12 CFR 1005.20(e)(3) (expiration date or phone and web regarding replacement); and

# Interagency
# Examination Procedures                                 EFTA

d.  12 CFR 1005.20(f)(2) (phone and web regarding fees).

*NOTE: A disclosure made in an accompanying terms-and-conditions document, on packaging surrounding a certificate or card, or on a sticker or other label affixed to the certificate or card does not constitute a disclosure on the certificate or card.*

*If the certificate or card is electronic, determine that disclosures are provided electronically on the certificate or card provided to the consumer.*

*If an issuer provides a code or confirmation to a consumer orally, determine that the issuer provides to the consumer a written or electronic copy of the code or confirmation promptly, and the applicable disclosures are provided on the written copy of the code or confirmation (12 CFR 1005.20(c)(4)).*

[Click&type]

32. Determine that the following are stated, as applicable, clearly and conspicuously on the gift certificate, store gift card, or general-use prepaid card:

1.  The amount of any dormancy, inactivity, or service fee that may be charged;

2.  How often such fee may be assessed; and

3.  That such fee may be assessed for inactivity.

(12 CFR 1005.20(d)(2))

[Click&type]

33. Determine that the following disclosures and information are provided in connection with a gift certificate, store gift card, or general-use prepaid card as applicable. For each type of fee that may be imposed in connection with the certificate or card (other than a dormancy, inactivity, or service fee, which are discussed above) the following information must be provided on or with the certificate or card:

a.  The type of fee;

b.  The amount of the fee (or an explanation of how the fee will be determined); and

c.  The conditions under which the fee may be imposed.

d.  A toll-free number, and if one is maintained, a website that a consumer may use to obtain information about the fees described in paragraphs 12 CFR 1005.20(d)(2) and 12 CFR 1005.20(f)(1) (described immediately above) of this section must be disclosed on the certificate or card.

(12 CFR 1005.20(f))

# Interagency
# Examination Procedures                          EFTA

[Click&type]

34. If an expiration date applies to a certificate or card, determine that the following disclosures are provided on the certificate or card, as applicable:

   a. The expiration date for the underlying funds or, if the underlying funds do not expire, that fact;

   b. A toll-free telephone number and, if one is maintained, a website that a consumer may use to obtain a replacement certificate or card after the certificate or card expires if the underlying funds may be available; and

   c. Except where a non-reloadable certificate or card bears an expiration date that is at least seven years from the date of manufacture, a statement, disclosed with equal prominence and in close proximity to the certificate or card expiration date, that:

      i. The certificate or card expires, but the underlying funds either do not expire or expire later than the certificate or card, and

      ii. The consumer may contact the issuer for a replacement card.

   (12 CFR 1005.20(e)(3))

[Click&type]

35. Determine that a loyalty, award, or promotional gift card sold or issued by the examined institution sets forth the following disclosures, as applicable:

   • A statement on the front of the card, code, or other device, indicating that the card, code, or other device is issued for loyalty, award, or promotional purposes;

   • The expiration date for the underlying funds on the front of the card, code, or other device;

   • The amount of any fees that may be imposed in connection with the card, code, or other device, and the conditions under which they may be imposed. This disclosure must be provided on or with the card, code, or other device; and

   • A toll-free telephone number and, if one is maintained, a website that a consumer may use to obtain fee information on the card, code, or other device.

   (12 CFR 1005.20(a)(4)(iii))

[Click&type]

36. Determine that a person (examined institution) that issues or sells a gift certificate, store gift card, or general-use prepaid card discloses to the consumer, prior to purchase, the information required by 12 CFR 1005.20(d)(2) (dormancy, inactivity, or service fees), 12

# Interagency
# Examination Procedures                                    EFTA

CFR 1005.20(e)(3) (expiration date or phone and web regarding replacement), and 12 CFR 1005.20(f)(1) (other fees) (12 CFR 1005.20(c)(3)).

[Click&type]

37. Determine that the fees, terms, and conditions of expiration that are required to be disclosed prior to purchase are not changed after purchase (12 CFR 1005.20(c)(3)).

[Click&type]

38. Determine that no person (examined institution) imposes a dormancy, inactivity, or service fee with respect to a gift certificate, store gift card, or general-use prepaid card, unless:

   a. There has been no activity with respect to the certificate or card, in the one year period ending on the date on which the fee is imposed;

   b. Required disclosures are provided; and

   c. Not more than one dormancy, inactivity, or service fee is imposed in any given calendar month.

   (12 CFR 1005.20(d))

[Click&type]

39. Determine that the person (examined institution) does not sell or issue a gift certificate, store gift card, or general-use prepaid card with an expiration date unless:

   a. Required expiration date disclosures are provided on the certificate or card, as applicable;

   b. It has established policies and procedures to provide consumers with a reasonable opportunity to purchase a certificate or card with at least five years remaining until the certificate or card expiration date;

   c. The expiration date for the underlying funds is at least the later of:

      i. Five years after the date the gift certificate was initially issued, or the date on which funds were last loaded to a store gift card or general-use prepaid card; or

      ii. The certificate or card expiration date, if any; and

   d. No fee or charge is imposed on the cardholder for replacing the gift certificate, store gift card, or general-use prepaid card or for providing the certificate or card holder with the remaining balance in some other manner prior to the funds expiration date, unless such certificate or card has been lost or stolen.

   (12 CFR 1005.20(e))

# Interagency
# Examination Procedures                                         EFTA

---

[Click&type]

---

## Section III—Subpart B—Requirements for Remittance Transfers

If an entity provides remittance transfers in its "normal course of business," it is a remittance transfer provider subject to the rule and should be examined based on the following procedures.[2]

## Transaction-Related Examination Procedures

As applicable, conduct transaction testing using the following examination procedures:

Obtain and review all available information as it relates to the provider's remittance program. Examples of this include but are not limited to:

a. List of divisions or departments involved in offering or providing remittance transfers (e.g., retail, high net worth, prepaid cards, bill payment, online or mobile banking, foreign exchange and/or treasury departments);

b. Remittance transfer products offered;

c. Disclosure forms in all languages (as applicable);

d. List of foreign countries to which the provider sends remittance transfers, if available[3];

e. List of all foreign currencies in which remittance transfers sent by the provider may be received where there are limitations on such currencies, and identification of the currencies in which the provider controls the exchange rate;

f. List of all third-party service providers or business partners involved in remittance transfers, including direct correspondent banks, payment networks, payment processors, software providers, foreign currency providers, agents in the United States or abroad, or similar entities;

g. Locations of U.S. and foreign agents;

h. Applicable documentation related to remittance transfer operations (e.g., transaction logs, agent/correspondent agreements, advertising and marketing material including any done in foreign languages, and documentation regarding calculation or estimates of fees, taxes, exchange rates, and dates included on disclosures);

---

[2] Subpart B provides for a 100-transfer "safe harbor." For an entity to qualify for this "safe harbor," it must have provided 100 or fewer remittance transfers in the current calendar year and the previous calendar year. If an entity crosses the 100-transfer threshold either in the previous calendar year or the current calendar year, it is deemed to be providing remittance transfers in its "normal course of business" and it must begin complying with the rule within a reasonable period of time (not to exceed six months) unless, under the facts and circumstances, it would not be deemed a provider. See Comment 30(f)-2.

[3] For transfers that are sent to a recipient's account, an account that is located on a U.S. military installation abroad is considered to be located in a State. See Comment 30(c)-2.ii.

---

# Interagency
# Examination Procedures                                    EFTA

    i.   Procedural manuals and written policies;

    j.   Error resolution files;

    k.  Form letters used in case of errors or questions concerning a remittance transfer (including any provided in foreign languages);

    l.   Any agreements with third parties allocating compliance responsibilities; and

    m. Consumer complaint files.

| [Click&type] |
| --- |

## General Form of Disclosures – 12 CFR 1005.31

1.  Obtain and review a sample of the provider's disclosure forms for the provider's various remittance transfer products. Include disclosures as provided for various products and through various channels (e.g., in person, through a website, by telephone, through a mobile phone application, text message, online bill pay). Verify that:

    a.  Disclosures are in the appropriate form, and are clear and conspicuous;

    b.  Written and electronic disclosures are in a retainable form (except where expressly permitted not to be retainable);

    c.  Pre-payment disclosures match figures disclosed on receipts and match those actually applied to the transfer.

    d.  The provider's policy for providing oral disclosures is appropriate for the related transactions;

    e.  Copies of scripts used for oral disclosures comply with the regulation;

    f.  Disclosures comply with the format requirements regarding grouping of like items, proximity, prominence and size, and segregation from other information; and

    g.  Disclosure of amounts required to be disclosed under 12 CFR 1005.31(b)(1), (2), and (3), use the appropriate terms (e.g., transfer amount, transfer taxes, currency) or substantially similar terms.

| [Click&type] |
| --- |

2.  If applicable, determine whether the provider complies with the foreign language disclosure requirements as outlined under 12 CFR 1005.31(g).

| [Click&type] |
| --- |

# Interagency
# Examination Procedures                                    EFTA

## Pre-Payment Disclosures – 12 CFR 1005.31(b)(1)

3. Based on a review of the provider's policies and, if appropriate, sampled transactions, determine whether it appropriately categorizes third-party fees as covered or non-covered.

| |
|---|
| [Click&type] |

4. Based on a review of the provider's policies on pre-payment disclosures and, if appropriate, sampled pre-payment disclosures and related documentation, determine whether the provider appropriately calculates and discloses:

   a. In the currency in which the remittance transfer is funded:

      i. The amount that will be transferred to the designated recipient, using the term, "Transfer Amount" or a substantially similar term;

      ii. Fees imposed and taxes collected on the remittance transfer by the provider, using the terms "Transfer Fees" and "Transfer Taxes" or substantially similar terms; and

      iii. The total amount of the transaction using the term "Total," or a substantially similar term;

   b. The exchange rate used by the provider for the remittance transfer using the term "Exchange Rate" or a substantially similar term;

   c. In the currency in which the funds will be received by the designated recipient:

      i. The transfer amount in the currency, but only if covered third-party fees are imposed using the term "Transfer Amount" or a substantially similar term;

      ii. Any covered third-party fees imposed on the remittance transfer using the term "Other Fees" or a substantially similar term;

      iii. The amount that will be received by the designated recipient (total amount of the transaction minus covered third-party fees) using the term "Total to Recipient," or a substantially similar term; and

   d. If applicable, a statement that non-covered third-party fees or taxes collected on the remittance transfer by a third person may apply to the remittance transfer and result in the designated recipient receiving less than the amount disclosed.

   e. If the provider includes in the statement under (c)(iii) above, the optional estimated disclosure of applicable non-covered third-party fees or taxes, determine if the estimates are based on reasonable sources, and are disclosed in the currency in which the transfer is to be received.

   *NOTE: The exchange rate used to calculate the amounts under (c) is prior to any rounding.*

# Interagency
# Examination Procedures                              EFTA

[Click&type]

## Receipt Disclosures – 12 CFR 1005.31(b)(2)

5.  Review policies on receipt disclosures, sample receipts, and related documentation to determine whether the provider appropriately calculates and discloses:

    a.  Information disclosed in the pre-payment disclosure:

    b.  The date in the foreign country on which funds will be available to the designated recipient, using the term "Date Available" or a substantially similar term;

    c.  The name and, if provided by the sender, the telephone number and/or address of the designated recipient, using the term "Recipient" or a substantially similar term;

    d.  A statement about the rights of the sender regarding the resolution of errors and cancellation;

    e.  The name, telephone number(s), and website of the remittance transfer provider; and

    f.  A statement that the sender can contact the Consumer Financial Protection Bureau (CFPB or Bureau) and if applicable, the state agency that licenses or charters the remittance transfer provider with respect to the remittance transfer and for questions or complaints about the remittance transfer provider, as well as their telephone number(s), and website addresses.

    *NOTE: For any remittance transfer scheduled by the sender at least three business days before the date of the transfer, the statement about the rights of the sender regarding cancellation must state that the sender must request the cancellation, at least three business days before the next scheduled transfer. The statement must also note that the request must enable the provider to identify the sender's contact information and the particular transfer to be cancelled.*

[Click&type]

## Combined Disclosures – 12 CFR 1005.31(b)(3)

*NOTE: Complete this section <u>only</u> if the provider provides combined disclosures as an alternative to the pre-payment and receipt disclosures.*

6.  Review policies on combined disclosures, sample disclosures and related documentation to:

    a.  Determine that they contain all the information required for the pre-payment disclosure and receipt disclosure as described above;

    b.  Determine that the provider provides a proof of payment after payment is made for each transaction; and

# Interagency
# Examination Procedures                                          EFTA

    c. Determine that the proof of payment is clear and conspicuous, provided in writing or electronically, and provided in a retainable form.

[Click&type]

## Accuracy and Timing – 12 CFR 1005.31(e) and (f)

7. Review, as appropriate, all available information including transactions or investigation/trace logs/records or similar documents to verify (subject to the disclaimer statement with respect to non-covered third-party fees and third-party taxes) the accuracy of disclosures provided to consumers.

    a. In instances in which pre-payment disclosures and receipts are provided that do not contain estimates, confirm with respect to any transaction for which payment was made, that the information on the most recent pre-payment disclosure for that transaction and the information on the receipt for that transaction are the same.

    b. For amounts that are not estimates, confirm that the disclosed amounts were accurate at the time that payment was made.

    c. For amounts that are estimates, determine whether the estimates were calculated correctly, in accordance with the applicable bases outlined in 12 CFR 1005.32.

    d. In the case of estimates pursuant to 1005.32(a), (b)(1) and (b)(2) that are based on an approach that is not one of the listed bases in 1005.32(c), determine that the recipient received the same, or greater, amount of funds than what was disclosed.

[Click&type]

8. Review processes and procedures or records, as appropriate, to determine whether the required disclosures are provided in accordance with the timing requirements in 12 CFR 1005.31(e).

    a. Determine whether pre-payment disclosures are provided when the sender requests the remittance transfer, but prior to payment.

    b. Determine whether receipts are provided when payment is made, or in accordance with 1005.31(e)(2) for transactions conducted by telephone.

[Click&type]

## Long Form Error Resolution and Cancellation Notice –
## 12 CFR 1005.31(b)(4)

9. Determine the provider's policy for providing long form error resolution and cancellation notices to senders upon request.

[Click&type]

# Interagency
# Examination Procedures                                      EFTA

10. Review the provider's records of senders' requests and determine that a long form error resolution and cancellation notice is promptly provided in response to each request.

> [Click&type]

11. Review sample notices to determine that they use language set forth in Model Form A-36 (Model Form for Error Resolution and Cancellation Disclosures (Long) of Appendix A to Subpart B) or substantially similar language.

> [Click&type]

## Estimates – 12 CFR 1005.32

### *Temporary Exception for Insured Institutions – 12 CFR 1005.32(a)*

12. Determine that the remittance transfer provider is an insured institution within the definition of the rule. If it is, review the appropriate information including transaction log/records, etc., to identify remittance transfer transactions that were sent from the sender's account with the institution. From the list, identify transactions for which estimates were used.

   *NOTE: An insured institution acting as an agent on behalf of another in connection with a remittance transfer is not a remittance transfer provider.*

> [Click&type]

13. Review transactions for which estimates were used, as well as related disclosures, and any other relevant procedures, processes and documentation of information included in disclosures, as appropriate, to:

   a. Assess the adequacy of the provider's policy and procedures for determining that a provider could not determine exact amounts for reasons beyond its control;

   b. Determine that estimates were used only in cases when the provider could not determine the exact amounts for reasons beyond its control;

   c. Determine the bases used for the estimates under 12 CFR 1005.32(c) and consider their appropriateness; and

      i. If estimates were provided in accordance with one of the bases listed in Regulation E (12 CFR 1005.32(c)), review documentation to confirm that inputs to estimates are appropriate.

      ii. If estimates are based on an approach that is not one of the listed bases, determine, as appropriate, that the designated recipient received the same, or greater, amount of funds than the remittance transfer provider disclosed.

# Interagency
# Examination Procedures                                    EFTA

---

d. Determine that the estimated amounts are appropriately labeled with the term "Estimated" or a substantially similar term, placed in close proximity to the term described.

e. Determine that related calculations were performed appropriately.

*NOTE: Unless extended, this exception will not apply after July 21, 2020.*

| [Click&type] |
|---|

## Permanent Exception for Transfers to Certain Countries –
## 12 CFR 1005.32(b)(1)

14. Review and assess the adequacy of the provider's policy for determining that:

a. The laws of the recipient country do not permit a determination of the exact amount; or

b. The methods by which transactions are made in the recipient country do not permit such determination.

| [Click&type] |
|---|

15. Review the provider's transaction log/records to identify remittance transactions that were sent to countries on the list provided by the BCFP for which estimates may be provided on remittance transfer-related disclosures to determine if the provider properly relied on the list in making estimates.

| [Click&type] |
|---|

16. Determine whether the provider gave estimates for transactions to a country that is not on the list provided by the BCFP. Review related documentation to confirm that the recipient country does not legally permit, or the method by which transactions are conducted in that country does not permit determination of exact amounts.

| [Click&type] |
|---|

17. Review records to determine:

a. The bases used for the estimates under 12 CFR 1005.32(c) and their appropriateness:

   i. If estimates were provided in accordance with one of the bases listed in 12 CFR 1005.32(c), review documentation to confirm that inputs to estimates are appropriate; or

   ii. If estimates are based on an approach that is not one of the listed bases, determine as appropriate, that the designated recipient received the same, or greater, amount of funds than the remittance transfer provider disclosed.

b. That the estimated amounts are appropriately labeled with the term "Estimated" or a substantially similar term, placed in close proximity to the term described.

---

# Interagency
# Examination Procedures                                    EFTA

| [Click&type] |
| --- |

## Permanent Exception for Transfers Scheduled Before the Date of Transfer – 12 CFR 1005.32(b)(2)

18. Review and assess the adequacy of the provider's policy and procedures for using estimates in the case of transfers scheduled five or more business days before the date of transfer.

| [Click&type] |
| --- |

19. Review and assess transactions for which estimates were used as well as related disclosures (required by 12 CFR 1005.36(a)), and any other relevant documentation, as appropriate, to determine compliance with 12 CFR 1005.32(b)(2).

| [Click&type] |
| --- |

## Procedures for Resolving Errors – 12 CFR 1005.33

20. Review the provider's policies and procedures on error resolution.

| [Click&type] |
| --- |

21. Review relevant error resolution statements/files, consumer complaints, form letters, etc., used in addressing errors or questions concerning remittance transfer transactions.

| [Click&type] |
| --- |

22. Assess the provider's compliance program to determine whether it has developed and maintains adequate written policies and procedures designed to ensure compliance with the error resolution requirements applicable to remittance transfers.

    Consider:

    a. The procedures for receiving complaints of error from branches, agents or other locations where a consumer may lodge a complaint;

    b. The procedures for identifying complaints alleging "errors" as identified in 12 CFR 1005.33(a); and

    c. The procedures for investigating, responding to, and resolving complaints.

| [Click&type] |
| --- |

23. Determine the extent of the provider's compliance with its policies and procedures on error resolution.

| [Click&type] |
| --- |

24. Determine the provider's compliance with the regulatory requirements regarding investigation of alleged errors, and notification of consumers within the allotted time frames.

# Interagency
# Examination Procedures                                      EFTA

---

[Click&type]

25. Determine the timeliness and adequacy of remedies the provider provides to address identified errors.

    a. For errors under 12 CFR 1005.33(a)(1)(iv) *other than* those that occurred because the sender provided incorrect or insufficient information, consider:

        i. If the provider provided the sender notice regarding the error investigation.

        ii. If the sender requested a remedy, determine whether the provider provides the remedy selected by the sender. If a default remedy is provided, determine whether the sender had a reasonable time to designate a remedy after receiving a report of the error.

        iii. If the remedy is delivery of the amount appropriate to correct the error, determine whether the provider corrects the error within one business day, or as soon as reasonably practicable, applying the same exchange rate, fees, and taxes stated in the disclosure provided in connection with the remittance transfer with respect to which the error was made;

        iv. If the remedy is a refund, determine whether the provider refunds the appropriate amount within one business day or as soon as reasonably practicable thereafter;

    b. If the provider determines that an error occurred that relates to:

        i. An incorrect amount paid by the sender;

        ii. A computational or bookkeeping error made by the remittance transfer provider; or

        iii. Failure to make the amount of currency stated in the disclosures available to the designated recipient.

---

[Click&type]

26. Determine whether the provider either:

    a. Refunds the amount of funds provided by the sender (in case of a transaction that was not properly transmitted), or the amount appropriate to resolve the error; or

    b. Makes available to the designated recipient the amount appropriate to resolve the error without additional cost to the sender or the designated recipient.

    c. If the error relates to the failure to make funds available to the designated recipient by the disclosed date of availability (other than an error resulting from incorrect or insufficient information provided by the sender), determine whether the provider:

        i. Either:

            1. Refunds the amount of funds that was not properly transmitted, or the amount appropriate to resolve the error to the sender; or

---

# Interagency
# Examination Procedures                                    EFTA

    2. Makes available to the designated recipient the amount appropriate to resolve the error; and

    ii. Refunds to the sender any fees and, to the extent not prohibited by law, taxes collected on the remittance transfer.

d. In the case of errors involving incorrect or insufficient information provided by the sender for the transfer:

    i. Determine whether the provider refunds to the sender the amount of funds that was not properly transmitted, or the amount appropriate to resolve the error, the fees and taxes paid by the sender in connection with the remittance transfer, and only deducts those fees actually deducted by a person other than the provider and (where not prohibited by law) taxes actually collected for the original unsuccessful transaction, within three business days of providing the written explanation of findings.

    ii. Alternatively, if the provider has not yet processed a refund and agrees to the sender's request to apply the funds towards a new remittance transfer, instead of a refund, determine whether the provider treats the request as a new remittance transfer, provides the appropriate disclosures, and only deducts those fees actually deducted by a person other than the provider and (where not prohibited by law) taxes actually collected for the original unsuccessful transaction.

27. Determine that the provider is maintaining records of compliance for a period of not less than two years from the date a notice of error was submitted to the provider or action was required to be taken by the provider.

| [Click&type] |
| --- |

## Procedures for Cancellation and Refund of Remittance Transfers – 12 CFR 1005.34 and 12 CFR 1005.36(c)

28. Review and assess the provider's policies and procedures regarding cancellation and refund of remittance transfer transactions, including:

a. The procedures for receiving requests of cancellation from branches, agents or other locations where a consumer may request cancellation.

b. The procedures for identifying which transactions are eligible for cancellation.

c. The procedures for issuing refunds.

| [Click&type] |
| --- |

29. Determine the extent of the provider's compliance with its own policies and procedures on cancellation and refund.

| [Click&type] |
| --- |

# Interagency
# Examination Procedures                                    EFTA

30. Determine the provider's compliance with the regulatory requirements regarding senders' request for cancellation and refund.

[Click&type]

31. Determine whether the provider complies with any oral or written request to cancel any remittance transfer scheduled by the sender at least three business days before the date of the remittance transfer.

[Click&type]

## Acts of Agents – 12 CFR 1005.35

*NOTE:  Complete this section if the provider uses agent(s) to conduct any element of remittance transfer transactions.*

32. Review the provider's agreements with agents used for remittance transfers to determine whether they are appropriate for the activities delegated.

[Click&type]

33. Determine whether the provider has established appropriate internal controls and review procedures in relation to the work done by agents on its behalf to ensure compliance with the regulatory requirements. Consider:

   a. The extent to which the provider has established and maintained policies or procedures for compliance, including policies, procedures, or other appropriate oversight measures designed to assure compliance by an agent or authorized delegate acting for such provider including:

      i. The degree of control the agent exercises over the remittance transfer activities performed on the provider's behalf;

      ii. The quality and frequency of training provided to ensure that agents are aware of the regulatory requirements and the provider's internal policy guidelines; and

      iii. The adequacy of the provider's oversight of agents' activities.

[Click&type]

34. Select a sample of agents used by the provider and review their records in addition to relevant records held by the provider directly to determine that the activities performed by the agent on the provider's behalf are in compliance with the regulatory requirements.

[Click&type]

# Interagency
# Examination Procedures

**EFTA**

## Transfers Scheduled Before the Date of Transfer – 12 CFR 1005.36

35. Review and assess the adequacy of the provider's policies and procedures regarding transfers scheduled before the date of transfer.

[Click&type]

36. As appropriate, select a sample of records of transfers scheduled before the date of transfer to determine whether the provider complies with the timing of disclosures, accuracy of disclosures (and estimates pursuant to 1005.32(b)(2)) and the sender's request for cancellation. Use the same methods identified in the sections above, regarding other disclosures. Consider the following:

a. For one-time transfers scheduled five or more business days before the date of transfer or for the first in a series of preauthorized remittance transfers, determine whether the provider provides either a pre-payment disclosure and a receipt or a combined disclosure at the time the sender requests the transfer but prior to payment.

   *NOTE: If any of the disclosures provided contain estimates as permitted by 12 CFR 1005.32(b)(2), the provider must mail or deliver an additional receipt no later than one business day after the date of the transfer. If the transfer involves the transfer of funds from the sender's account held by the provider, this additional receipt may be provided on or with the next periodic statement for that account, or within 30 days after the date of the transfer if a periodic statement is not provided.*

b. For each subsequent preauthorized remittance transfer, determine whether the provider provides an updated receipt if any of the information (other than temporal disclosures or disclosures that are permitted to be estimated) on the most recent receipt is no longer accurate.

   *NOTE: The receipt must clearly and conspicuously indicate that it contains updated disclosures and must be mailed or delivered to the sender within a reasonable time prior to the scheduled date of the next subsequent preauthorized remittance transfer. A disclosure that is mailed no later than ten business days or hand or electronically delivered no later than five business days is deemed to have been provided within a reasonable time.*

c. If there is no updated information and the remittance transfer does not involve the transfer of funds from the sender's account held by the provider, determine whether the provider mails or delivers a receipt to the sender no later than one business day after the date of the transfer for each subsequent preauthorized transfer;

d. If there is no updated information and the remittance transfer involves the transfer of funds from the sender's account held by the provider, determine whether the receipt is provided on or with the next periodic statement for that account, or within 30 days after the date of the transfer if a periodic statement is not provided;

# Interagency
# Examination Procedures                              **EFTA**

e.  For any subsequent transfer in a series of preauthorized remittance transfers, determine whether the provider discloses the information required by 12 CFR 1005.36(d)(1) no more than 12 months, and no less than five business days prior to, the date of the subsequent preauthorized remittance transfer.

*NOTE: While the rule generally provides flexibility as to when and where future transfer dates may be disclosed, for any subsequent preauthorized remittance transfer for which the date of transfer is four or fewer business days after the date payment is made, the disclosure must generally be provided on or with the receipt for the initial transfer in that series.*

[Click&type]

# Interagency
# Examination Procedures                     EFTA

## Examiner's Summary, Recommendations, and Comments

[Click&type]

# Interagency
# Examination Checklist                                    EFTA

## Electronic Fund Transfer
## Act (Regulation E)

| | |
|---|---|
| **Exam Date:** | [Click&type] |
| **Prepared By:** | [Click&type] |
| **Reviewer:** | [Click&type] |
| **Docket #:** | [Click&type] |
| **Entity Name:** | [Click&type] |

This questionnaire can be used to review audit workpapers, to evaluate financial institution policies, to perform transaction testing, and to train as appropriate. Complete only those aspects of the checklist that specifically relate to the issue being reviewed, evaluated, or tested, and retain those completed sections in the workpapers.

When reviewing audits, evaluating financial institution policies, or performing transaction testing, a "No" answer indicates a possible exception/deficiency, and you should explain it in the workpapers. If a line item is not applicable within the area you are reviewing, indicate by using "NA."

## Subpart A

|  | Yes | No | NA |
|---|---|---|---|

### Issuance of Access Devices – 12 CFR 1005.5

1.  Do the financial institution's policies, practices, and procedures allow that validated access devices are issued only:

    - In response to oral or written requests (12 CFR 1005.5(a)(1)) or  ☐ ☐ ☐

    - As a renewal or substitution for an accepted access device? (12 CFR 1005.5(a)(2))  ☐ ☐ ☐

2.  Do the financial institution's policies, practices, and procedures allow that unsolicited access devices are issued only when the devices are:

    - Not validated? (12 CFR 1005.5(b)(1))  ☐ ☐ ☐

    - Accompanied by a clear explanation that they are not validated and how they may be disposed of if validation is not desired? (12 CFR 1005.5(b)(2))  ☐ ☐ ☐

    - Accompanied by the initial disclosures required by 12 CFR 1005.7? (12 CFR 1005.5(b)(3))  ☐ ☐ ☐

    - Validated only in response to a consumer's request and after the financial institution has verified the consumer's identity by reasonable means (e.g., photograph, fingerprint, personal visit, and signature)? (12 CFR 1005.5(b)(4) and Staff Commentary)  ☐ ☐ ☐

# Interagency
# Examination Checklist                                        **EFTA**

|  | Yes | No | NA |
|---|---|---|---|

## Consumer Liability for Unauthorized Electronic Fund Transfers (EFTs) – 12 CFR 1005.6

NOTE: For prepaid accounts that are not payroll card accounts or government benefit accounts, a financial institution is not required to comply with the liability limits and error resolution requirements in 12 CFR 1005.6 and 1005.11 for any prepaid account for which it has not successfully completed its consumer identification and verification process. (12 CFR 1005.18(e)(3))

3.   Does the financial institution impose liability on the consumer for unauthorized transfers only if: (12 CFR 1005.6(a))

  • Any access device that was used was an accepted access device? ☐ ☐ ☐

  • The institution has provided a means to identify the consumer to whom it was issued? ☐ ☐ ☐

  • The institution has provided the disclosures required by 12 CFR 1005.7(b)(l), (2), and (3)? ☐ ☐ ☐

4.   Does the financial institution **not** rely on consumer negligence or the deposit agreement to impose greater consumer liability for unauthorized EFTs than is permitted under Regulation E? (12 CFR Part 1005, Supp. I, Comments 1005.6(b)-1 and -2) ☐ ☐ ☐

5.   If a consumer notifies the financial institution within two business days after learning of the loss or theft of an access device, does the financial institution limit the consumer's liability for unauthorized EFTs to the lesser of $50 or actual loss? (12 CFR 1005.6(b)(1)) ☐ ☐ ☐

6.   If a consumer does not notify the financial institution within two business days after learning of the loss or theft of an access device, does the institution limit the consumer's liability for unauthorized EFTs to the lesser of $500 or the sum of (12 CFR 1005.6(b)(2)):

  • $50 or the amount of unauthorized EFTs that occurred within the two business days, whichever is less; ☐ ☐ ☐

**Plus**

  • The amount of unauthorized EFTs that occurred after the close of two business days and before notice to the financial institution (provided the financial institution establishes that these transfers would not have occurred had the consumer notified the financial institution within that two-day period)? ☐ ☐ ☐

# Interagency
# Examination Checklist                                    EFTA

|  |  | Yes | No | NA |
|---|---|---|---|---|
| 7. | If a consumer notifies the financial institution of an unauthorized EFT within 60 days of transmittal of the periodic statement upon which the unauthorized EFT appears, does the financial institution not hold the consumer liable for the unauthorized transfers that occur after the 60-day period? (12 CFR 1005.6(b)(3)) | ☐ | ☐ | ☐ |
| 8. | If a consumer does not notify the financial institution of an unauthorized EFT within 60 days of transmittal of the periodic statement upon which the unauthorized EFT appears, does the financial institution ensure that the consumer's liability does not exceed the amount of the unauthorized transfers that occur after the close of the 60 days and before notice to the financial institution, if the financial institution establishes that the transfers would not have occurred had timely notice been given? (12 CFR 1005.6(b)(3)) | ☐ | ☐ | ☐ |
| 9. | If a consumer notifies the financial institution of an unauthorized EFT within the time frames discussed in questions 7 or 8 and the consumer's access device is involved in the unauthorized transfer, does the financial institution hold the consumer liable for amounts as set forth in 12 CFR 1005.6(b)(1) or (2) (discussed in questions 5 and 6)? (12 CFR 1005.6(b)(3)) | ☐ | ☐ | ☐ |
|  | NOTE: The first two tiers of liability (as set forth in 12 CFR 1005.6(b)(1) and (2) and discussed in questions 5 and 6) do not apply to unauthorized transfers from a consumer's account made without an access device. (Comment 1005.6(b)(3)-2) |  |  |  |
| 10. | Does the financial institution extend the 60-day time period by a reasonable amount, if the consumer's delay in notification was due to an extenuating circumstance? (12 CFR 1005.6(b)(4)) | ☐ | ☐ | ☐ |
| 11. | Does the financial institution consider notice to be made when the consumer takes steps reasonably necessary to provide the institution with pertinent information, whether or not a particular employee or agent of the institution actually received the information? (12 CFR 1005.6(b)(5)(i)) | ☐ | ☐ | ☐ |
| 12. | Does the financial institution allow the consumer to provide notice in person, by telephone, or in writing? (12 CFR 1005.6(b)(5)(ii)) | ☐ | ☐ | ☐ |
| 13. | Does the financial institution consider written notice to be given at the time the consumer mails or delivers the notice for transmission to the institution by any other usual means? (12 CFR 1005.6(b)(5)(iii)) | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    **EFTA**

|  |  | Yes | No | NA |
|---|---|---|---|---|
| 14. | Does the financial institution consider notice given when it becomes aware of circumstances leading to the reasonable belief that an unauthorized transfer to or from the consumer's account has been or may be made? (12 CFR 1005.6(b)(5)(iii)) | ☐ | ☐ | ☐ |
| 15. | Does the financial institution limit the consumer's liability to a lesser amount than provided by 12 CFR 1005.6, when state law or an agreement between the consumer and the financial institution provide for such an amount? (12 CFR 1005.6(b)(6)) | ☐ | ☐ | ☐ |

## Initial Disclosures – 12 CFR 1005.7

|  |  | Yes | No | NA |
|---|---|---|---|---|
| 16. | Does the financial institution provide the initial disclosures at the time a consumer contracts for an EFT service or before the first EFT is made involving the consumer's account? (12 CFR 1005.7(a)) | ☐ | ☐ | ☐ |
| 17. | Do the financial institution's initial disclosures provide the following information, as applicable: |  |  |  |
|  | • A summary of the consumer's liability for unauthorized transfers under 12 CFR 1005.6 or under state or other applicable law or agreement? (12 CFR 1005.7(b)(1)) | ☐ | ☐ | ☐ |
|  | • The telephone number and address of the person or office to be notified when the consumer believes that an unauthorized EFT has been or may be made? (12 CFR 1005.7(b)(2)) | ☐ | ☐ | ☐ |
|  | • The financial institution's business days? (12 CFR 1005.7(b)(3)) | ☐ | ☐ | ☐ |
|  | • The type of EFTs the consumer may make and any limits on the frequency and dollar amount of transfers? (If details on the limits on frequency and dollar amount are essential to maintain the security of the system, they need not be disclosed.) (12 CFR 1005.7(b)(4)) | ☐ | ☐ | ☐ |
|  | • Any fees imposed by the financial institution for EFTs or for the right to make transfers? (12 CFR 1005.7(b)(5)) | ☐ | ☐ | ☐ |
|  | • A summary of the consumer's right to receive receipts and periodic statements, as provided in 12 CFR 1005.9, and notices regarding preauthorized transfers as provided in 12 CFR 1005.10(a) and 1005.10(d)? (12 CFR 1005.7(b)(6)) | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    EFTA

|  |  | Yes | No | NA |
|---|---|:---:|:---:|:---:|
| | • A summary of the consumer's right to stop payment of a preauthorized EFT and the procedure for placing a stop payment order, as provided in 12 CFR 1005.10(c)? (12 CFR 1005.7(b)(7)) | ☐ | ☐ | ☐ |
| | • A summary of the financial institution's liability to the consumer for its failure to make or to stop certain transfers under the Electronic Fund Transfer Act? (12 CFR 1005.7(b)(8)) | ☐ | ☐ | ☐ |
| | • The circumstances under which the financial institution, in the ordinary course of business, may disclose information to third parties concerning the consumer's account? (12 CFR 1005.7(b)(9)) | ☐ | ☐ | ☐ |
| | • An error resolution notice that is substantially similar to the Model Form A-3 in appendix A? (12 CFR 1005.7(b)(10)) | ☐ | ☐ | ☐ |
| | • A notice that a fee may be imposed by an ATM operator (as defined in 12 CFR 1005.16(a)) when the consumer initiates an EFT or makes a balance inquiry and by any network used to complete the transaction? (12 CFR 1005.7(b)(11)) | ☐ | ☐ | ☐ |
| 18. | Does the financial institution provide disclosures at the time a new EFT service is added, if the terms and conditions of the service are different than those initially disclosed? (12 CFR 1005.7(c)) | ☐ | ☐ | ☐ |

## Change-in-Terms Notice;
## Error Resolution Notice – 12 CFR 1005.8

|  |  | Yes | No | NA |
|---|---|:---:|:---:|:---:|
| 19. | If the financial institution made any changes in terms or conditions required to be disclosed under 12 CFR 1005.7(b) that would result in increased fees, increased liability, fewer types of available EFTs, or stricter limits on the frequency or dollar amount of transfers, did the financial institution provide a written notice to consumers at least 21 days prior to the effective date of such change? (12 CFR 1005.8(a)) | ☐ | ☐ | ☐ |
| 20. | Does the financial institution provide either the long form error resolution notice at least once every calendar year or the short form error resolution notice on each periodic statement? (12 CFR 1005.8(b)) | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                   **EFTA**

|  | Yes | No | NA |
|---|---|---|---|

## Receipts at Electronic Terminals;
## Periodic Statements – 12 CFR 1005.9

21. Does the financial institution make receipts available to the consumer at the time the consumer initiates an EFT at an electronic terminal? The financial institution is exempt from this requirement for EFTs of $15 or less. (12 CFR 1005.9(a) and (e)) ☐ ☐ ☐

22. Do the receipts contain the following information, as applicable:

- The amount of the transfer? (12 CFR 1005.9(a)(1)) ☐ ☐ ☐
- The date the transfer was initiated? (12 CFR 1005.9(a)(2)) ☐ ☐ ☐
- The type of transfer and the type of account to or from which funds were transferred? (12 CFR 1005.9(a)(3)) ☐ ☐ ☐
- A number or code that identifies the consumer's account or the access device used to initiate the transfer? (12 CFR 1005.9(a)(4)) ☐ ☐ ☐
- The terminal location where the transfer is initiated? (12 CFR 1005.9(a)(5)) ☐ ☐ ☐
- The name or other identifying information of any third party to or from whom funds are transferred? (12 CFR 1005.9(a)(6)) ☐ ☐ ☐

23. Does the financial institution send a periodic statement for each monthly cycle in which an EFT has occurred? If no EFT occurred, does the financial institution send a periodic statement at least quarterly? (12 CFR 1005.9(b)) ☐ ☐ ☐

24. Does the periodic statement contain the following information, as applicable:

- Transaction information for each EFT occurring during the cycle, including the amount of transfer, date of transfer, type of transfer, terminal location, and name of any third-party transferor or transferee? (12 CFR 1005.9(b)(1)) ☐ ☐ ☐
- Account number? (12 CFR 1005.9(b)(2)) ☐ ☐ ☐
- Fees? (12 CFR 1005.9(b)(3)) ☐ ☐ ☐
- Account balances? (12 CFR 1005.9(b)(4)) ☐ ☐ ☐
- Address and telephone number for inquiries? (12 CFR 1005.9(b)(5)) ☐ ☐ ☐

# Interagency
# Examination Checklist                                    **EFTA**

| | Yes | No | NA |
|---|---|---|---|
| • Telephone number to ascertain preauthorized transfers, if the financial institution provides telephone notice under 12 CFR 1005.10(a)(1)(iii)? (12 CFR 1005.9(b)(6)) | ☐ | ☐ | ☐ |

## Preauthorized Transfers – 12 CFR 1005.10

25. If a consumer's account is to be credited by a preauthorized EFT from the same payor at least once every 60 days (and the payor does not already provide notice to the consumer that the transfer has been initiated) (12 CFR 1005.10(a)(2)), does the financial institution do one of the following:

| | Yes | No | NA |
|---|---|---|---|
| • Provide oral or written notice, within two business days, after the transfer occurs? (12 CFR 1005.10(a)(1)(i)) | ☐ | ☐ | ☐ |
| • Provide oral or written notice, within two business days after the transfer was scheduled to occur, that the transfer did or did not occur? (12 CFR 1005.10(a)(1)(ii)) | ☐ | ☐ | ☐ |
| • Provide a readily available telephone line that the consumer can call to determine if the transfer occurred and that telephone number is disclosed on the initial disclosure of account terms and on each periodic statement? (12 CFR 1005.10(a)(1)(iii)) | ☐ | ☐ | ☐ |
| 26. Does the financial institution credit the amount of a preauthorized transfer as of the date the funds for the transfer are received? (12 CFR 1005.10(a)(3)) | ☐ | ☐ | ☐ |
| 27. Does the financial institution ensure that an authorization is obtained for preauthorized transfers from a consumer's account by a written, signed or similarly authenticated authorization, and is a copy of the authorization provided to the consumer? (12 CFR 1005.10(b)) | ☐ | ☐ | ☐ |
| 28. Does the financial institution allow the consumer to stop payment on a preauthorized EFT by oral or written notice at least three business days before the scheduled date of the transfer? (12 CFR 1005.10(c)(1)) | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    EFTA

| | | Yes | No | NA |
|---|---|---|---|---|
| 29. | If the financial institution requires that the consumer give written confirmation of an oral stop-payment order within 14 days, does the financial institution inform the consumer, at the time they give oral notification, of the requirement and provide the address where they must send the written confirmation? | ☐ | ☐ | ☐ |
| | NOTE:  An oral stop-payment order ceases to be binding after 14 days if the consumer fails to provide the required written confirmation. (12 CFR 1005.10(c)(2)) | | | |
| 30. | Does the financial institution inform, or ensure that third-party payees inform, the consumer of the right to receive notice of all varying transfers? | ☐ | ☐ | ☐ |
| | **Or** | | | |
| | Does the financial institution give the consumer the option of receiving notice only when a transfer falls outside a specified range of amounts or differs from the most recent transfer by an agreed-upon amount? (12 CFR 1005.10(d)(2)) | ☐ | ☐ | ☐ |
| 31. | If the financial institution or third-party payee is obligated to send the consumer written notice of the EFT of a varying amount, does the financial institution ensure that: | | | |
| | • The notice contains the amount and date of transfer? | ☐ | ☐ | ☐ |
| | • The notice is sent at least 10 days before the scheduled date of transfer? (12 CFR 1005.10(d)(1)) | ☐ | ☐ | ☐ |
| 32. | Does the financial institution not condition an extension of credit to a consumer on the repayment of loans by preauthorized EFT, except for credit extended under an overdraft credit plan or extended to maintain a specified minimum balance in the consumer's account? (12 CFR 1005.10(e)(1)) | ☐ | ☐ | ☐ |
| | NOTE:  This exception for overdraft credit does not apply to a covered separate credit feature accessible by a hybrid-prepaid credit card as defined in Regulation Z, 12 CFR 1026.61. | | | |
| 33. | Does the financial institution not require a consumer to establish an account for EFTs with a particular institution as a condition of employment or receipt of government benefits? (12 CFR 1005.10(e)(2)) | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    **EFTA**

<table>
<tr><td></td><td></td><td>**Yes**</td><td>**No**</td><td>**NA**</td></tr>
</table>

## Procedures for Resolving Errors – 12 CFR 1005.11

NOTE: For prepaid accounts that are not payroll card accounts or government benefit accounts, a financial institution is not required to comply with the liability limits and error resolution requirements in 12 CFR 1005.6 and 1005.11 for any prepaid account for which it has not successfully completed its consumer identification and verification process. (12 CFR 1005.18(e)(3))

| | | Yes | No | NA |
|---|---|---|---|---|
| 34. | Does the financial institution have procedures to investigate and resolve all oral or written notices of error received no later than 60 days after the institution sends the periodic statement or provides passbook documentation? (12 CFR 1005.11(b)(1)) | ☐ | ☐ | ☐ |
| 35. | If the financial institution requires written confirmation of an error within 10 business days of an oral notice, does the financial institution inform the consumer of this requirement and provide the address where the written confirmation must be sent? (12 CFR 1005.11(b)(2)) | ☐ | ☐ | ☐ |
| 36. | Does the financial institution have procedures to investigate and resolve alleged errors within 10 business days, except as otherwise provided in 12 CFR 1005.11(c)? (12 CFR 1005.11(c)(1)) | ☐ | ☐ | ☐ |
| | NOTE: The time period is extended in certain circumstances. (12 CFR 1005.11(c)(3)) | | | |
| 37. | Does the financial institution report investigation results to the consumer within three business days after completing its investigation and correct any error within one business day after determining that an error occurred? (12 CFR 1005.11(c)(1)) | ☐ | ☐ | ☐ |
| 38. | If the financial institution is unable to complete its investigation within 10 business days, does the financial institution have procedures to investigate and resolve alleged errors within 45 days of receipt of a notice of error; and: | | | |
| | • Does the financial institution provisionally credit the consumer's account in the amount of the alleged error (including interest, if applicable) within 10 business days of receiving the error notice (however, if the financial institution requires, but does not receive, written confirmation within 10 business days or if the alleged error involves an account that is subject to Regulation T of the Board of Governors of the Federal Reserve System, the financial institution is not required to provisionally credit the consumer's account)? | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    EFTA

|  |  | Yes | No | NA |
|---|---|---|---|---|
| | • Within two business days after granting any provisional credit, does the financial institution inform the consumer of the amount and date of the provisional credit and gives the consumer full use of the funds during the investigation? | ☐ | ☐ | ☐ |
| | • Within one business day after determining that an error occurred, does the financial institution correct the error? | ☐ | ☐ | ☐ |
| | • Does the financial institution report the results to the consumer within three business days after completing its investigation including, if applicable, notice that provisional credit has been made final? (12 CFR 1005.11(c))<br><br>NOTE: The time period is extended in certain circumstances. (12 CFR 1005.11(c)(3)) | ☐ | ☐ | ☐ |
| 39. | If a billing error occurred, does the financial institution not impose a charge related to any aspect of the error-resolution process? (Comment 1005.11(c)-3) | ☐ | ☐ | ☐ |
| 40. | If the financial institution determines that no error occurred (or that an error occurred in a manner or amount different from that described by the consumer), does the financial institution send a written explanation of its findings to the consumer and note the consumer's right to request the documents the financial institution used in making its determination? (12 CFR 1005.11(d)(1)) | ☐ | ☐ | ☐ |
| 41. | When the financial institution determines that no error (or a different error) occurred, does the financial institution notify the consumer of the date and amount of the debiting of the provisionally credited amount and the fact that the financial institution will continue to honor checks and drafts to third parties and preauthorized transfers for five business days (to the extent that they would have been paid if the provisionally credited funds had not been debited)? (12 CFR 1005.11(d)(2)) | ☐ | ☐ | ☐ |

## Record Retention – 12 CFR 1005.13

|  |  | Yes | No | NA |
|---|---|---|---|---|
| 42. | Does the financial institution maintain evidence of compliance with the requirements of the Electronic Fund Transfer Act and Regulation E for a period of two years? (12 CFR 1005.13(b)) | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    EFTA

|  | Yes | No | NA |
|---|---|---|---|

## Disclosures at Automated Teller Machines (ATM) – 12 CFR 1005.16

43. If the financial institution operates an ATM and imposes a fee on a consumer for initiating an EFT or balance inquiry, does the financial institution provide notice that a fee will be imposed and disclose the amount of the fee? (12 CFR 1005.16(b))  ☐ ☐ ☐

44. Does the financial institution provide the notice required by 12 CFR 1005.16(b) either by showing it on the ATM screen or by providing it on paper before the consumer is committed to paying a fee? (12 CFR 1005.16(c))  ☐ ☐ ☐

## Requirements for Overdraft Services – 12 CFR 1005.17

45. Does the financial institution's Overdraft Protection Program incorporate any guidance issued by its federal regulator, as applicable?  ☐ ☐ ☐

46. Does the financial institution's Overdraft Protection Program provide "overdraft services," i.e., charge fees for paying ATM and one-time debit overdrafts? (12 CFR 1005.17(a)) <u>If no, do not complete this section.</u>  ☐ ☐ ☐

47. If the financial institution assesses a fee or charge (NOTE: fees or charges may generally be assessed only on transactions paid after the confirmation has been mailed or delivered) on the consumer's account for paying an ATM or one-time debit card transaction pursuant to the financial institutions overdraft service, does the financial institution first (12 CFR 1005.17(b)(1)):

   • Provide the consumer with a notice in writing, or if the consumer agrees, electronically, that is segregated from all other information and describes the institution's overdraft service; (12 CFR 1005.17(b)(1)(i))  ☐ ☐ ☐

   • Provide a reasonable opportunity for the consumer to affirmatively consent, or opt-in, to the institution's payment of ATM and one-time debit card transactions; (12 CFR 1005.17(b)(1)(ii))  ☐ ☐ ☐

   • Obtain the consumer's affirmative consent, or opt-in, to the institution's payment of ATM or one-time debit card transactions; (12 CFR 1005.17(b)(1)(iii)) and  ☐ ☐ ☐

# Interagency
# Examination Checklist                                        EFTA

|  |  | Yes | No | NA |
|---|---|---|---|---|
| | • Provide the consumer with confirmation of the consumer's consent in writing, or if the consumer agrees, electronically, which includes a statement informing the consumer of the right to revoke such consent? (12 CFR 1005.17(b)(1)(iv)) | ☐ | ☐ | ☐ |
| 48. | Does the financial institution ensure that it does not condition the payment of any overdrafts for checks, ACH transactions, and other types of transactions on the consumer affirmatively consenting to the institution's payment of ATM and one-time debit card transactions pursuant to the institution's "overdraft services"? (12 CFR 1005.17(b)(2)(i)) | ☐ | ☐ | ☐ |
| 49. | Does the financial institution pay checks, ACH transactions, and other types of transactions that overdraw the consumer's account regardless of whether the consumer has affirmatively consented to the institution's overdraft protection service for ATM and one-time debit card transactions? (12 CFR 1005.17(b)(2)(ii)) | ☐ | ☐ | ☐ |
| 50. | a. For consumers who have **not** opted in, and if an overdraft fee or charge is based on the amount of the outstanding negative balance, does the institution only assess fees where the negative balance is attributable in whole or in part to a check, ACH, or other type of transaction not subject to the prohibition on assessment of overdraft fees? | ☐ | ☐ | ☐ |
| | b. For consumers who have not opted in, does the financial institution only assess daily or sustained overdraft, negative balance, or similar fees or charges where the negative balance is attributable in whole or in part to a check, ACH, or other type of transaction not subject to the prohibition on assessment of overdraft fees? | ☐ | ☐ | ☐ |
| | c. Does the institution base the date on which such a daily or sustained overdraft, negative balance, or similar fee or charge is assessed on the date on which the check, ACH, or other type of transaction was paid into overdraft? (Comment 1005.17(b)-9) | ☐ | ☐ | ☐ |
| 51. | Does the financial institution provide consumers who do not affirmatively consent to the institution's overdraft service for ATM and one-time debit card transactions the same account terms, conditions, and features that it provides to consumers who affirmatively consent, except for the overdraft service for ATM and one-time debit card transactions? (12 CFR 1005.17(b)(3)) | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                   EFTA

|  | Yes | No | NA |
|---|---|---|---|
| 52. Is the notice required by (12 CFR 1005.17(b)(1)(i)) substantially similar to Model Form A-9 set forth in Appendix A of 12 CFR 1005.17, including applicable items from the list below, and does it not contain any additional information? (12 CFR 1005.17(d)) | ☐ | ☐ | ☐ |
| • Overdraft Service – Does the notice provide a brief description of the overdraft service and the types of transactions for which a fee or charge for paying an overdraft may be imposed, including ATM and one-time debit card transactions? (12 CFR 1005.17(d)(1)) | ☐ | ☐ | ☐ |
| • Fees imposed – Does the notice contain the dollar amount of any fees or charges assessed by the financial institution for paying an ATM or one-time debit card transaction pursuant to the financial institution's overdraft service, including any daily or other overdraft fees?  NOTE: If the amount of the fee is determined on the basis of the number of times the consumer has overdrawn the account, the amount of the overdraft, or other factors, the institution must disclose the maximum fee that may be imposed. (12 CFR 1005.17(d)(2)) | ☐ | ☐ | ☐ |
| • Limits on Fees Charged – Does the notice disclose the maximum number of overdraft fees or charges that may be assessed per day, or, if applicable, that there is no limit? (12 CFR 1005.17(d)(3)) | ☐ | ☐ | ☐ |
| • Disclosure of opt-in right – Does the notice explain the consumer's right to affirmatively consent to the financial institution's payment of overdrafts for ATM and one-time debit card transactions pursuant to the institution's overdraft service, including the methods by which the consumer may consent to the service? (12 CFR 1005.17(d)(4)) | ☐ | ☐ | ☐ |
| • Alternative Plans for Covering Overdrafts – As applicable, does the institution's opt-in notice appropriately address the alternative methods for covering overdrafts? | ☐ | ☐ | ☐ |
| • If the institution offers both a line of credit subject to Regulation Z (12 CFR Part 1026) and a service that transfers funds from another account of the consumer held at the institution to cover overdrafts, does the notice state that both alternative plans are offered? | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                          EFTA

|  |  | Yes | No | NA |
|---|---|---|---|---|
| | • If the institution offers one alternative plan, but not the other, does the notice state which alternative plan it offers? If the institution does not offer either a line of credit subject to Regulation Z (12 CFR Part 1026) or a service that transfers funds from another account of the consumer held at the institution to cover overdrafts plan, does the notice exclude information regarding either of these plans? | ☐ | ☐ | ☐ |
| | • If the financial institution offers additional alternatives for paying overdrafts, at its option the institution may (but is not required to) disclose those alternatives. Does its notice describe those alternatives? | ☐ | ☐ | ☐ |
| | • Permitted Modifications and Additional Content – If the institution modifies the notice, are the modifications permitted: to indicate that the consumer has the right to opt into, or out of, the payment of overdrafts under the institution's overdraft service for other types of transactions, such as checks, ACH transactions, or automatic bill payments; to provide a means for the consumer to exercise this choice; and to disclose the associated returned item fee and that additional merchant fees may apply? | ☐ | ☐ | ☐ |
| | NOTE: The institution may also disclose the consumer's right to revoke consent. The response portion of Model Form A-9 may be tailored to the methods offered for opting in, and may include reasonable methods to identify the account, such as a bar code. (12 CFR 1005.17(d)(6) and Comments 1005.17(d)-1 through -5) | | | |
| 53. | Joint Accounts – When two or more consumers jointly hold an account, does the financial institution treat the affirmative consent of any of the joint consumers as affirmative consent for that account, and treat the revocation of affirmative consent by any of the joint consumers as revocation of consent for that account? (12 CFR 1005.17(e)) | ☐ | ☐ | ☐ |
| 54. | Continuing Right to Opt-In or to Revoke Opt-In – Does the financial institution allow the consumer to affirmatively consent to the financial institution's overdraft service at any time in the manner described in the notice required under (12 CFR 1005.17(b)(1)(i)) and allow a consumer to revoke consent at any time in the manner made available to the consumer for providing consent? (12 CFR 1005.17(f)) | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    EFTA

|    |    | Yes | No | NA |
|----|----|-----|----|-----|
| 55. | Does the financial institution implement a consumer's revocation of consent as soon as reasonably practicable? (12 CFR 1005.17(f)) | ☐ | ☐ | ☐ |
| 56. | Is the consumer's affirmative consent to the overdraft service effective until revoked by the consumer, or unless the financial institution terminates the service? (12 CFR 1005.17(g)) | ☐ | ☐ | ☐ |

## Requirements for Financial Institutions Offering Prepaid Accounts and Electronic Fund Transfer of Government Benefits– 12 CFR 1005.18 and 1005.15

NOTE: This section is not exhaustive of the requirements for financial institutions offering prepaid accounts.  Please refer to other sections of the checklist, as applicable.

|    |    | Yes | No | NA |
|----|----|-----|----|-----|
| 57. | Does the institution offer prepaid accounts? <u>If no, do not complete this section.</u> | ☐ | ☐ | ☐ |
| 58. | Does the financial institution provide the pre-acquisition short and long form disclosures before a consumer acquires a prepaid account? (12 CFR 1005.18(b)(1)(i) and 1005.15(c)(1)) | ☐ | ☐ | ☐ |

NOTE: If the prepaid account is used for disbursing funds and the financial institution or third party does not offer any alternative means for the consumer to receive those funds in lieu of accepting the prepaid account, these disclosures may be provided at the time the consumer receives the prepaid account. (12 CFR 1005.18(b)(1)(i))

NOTE: When a consumer acquires a prepaid account in a retail location or orally by telephone, a financial institution is not required to provide the long form disclosure prior to acquisition if certain requirements are met. (12 CFR 1005.18(b)(1)(ii) and (iii))

59. Does the financial institution provide a short form disclosure for a prepaid account that discloses the following fees and information, as applicable? (12 CFR 1005.18(b)(2)(i) through (xiv) and 1005.15(c)(1) and (2))

|    |    | Yes | No | NA |
|----|----|-----|----|-----|
| • | The periodic fee, assessed on a monthly or other periodic basis, using the term "Monthly fee," "Annual fee," or a substantially similar term; (12 CFR 1005.18(b)(2)(i)) | ☐ | ☐ | ☐ |
| • | The per-purchase fee, using the term "Per purchase," or a substantially similar term; (12 CFR 1005.18(b)(2)(ii)) | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    EFTA

|  | Yes | No | NA |
|---|---|---|---|
| • The ATM withdrawal fees, for withdrawals in the United States both within and outside of the financial institution's network or an affiliated network, using the terms "ATM withdrawal" and "in-network" or "out-of-network," or substantially similar terms; (12 CFR 1005.18(b)(2)(iii)) | ☐ | ☐ | ☐ |
| • The cash reload fee (total of all charges from the financial institution and any third parties), using the term "Cash reload" or a substantially similar term; (12 CFR 1005.18(b)(2)(iv)) | ☐ | ☐ | ☐ |
| NOTE: Any third-party fee included in the cash reload fee disclosed in the short form must be the highest fee known by the financial institution at the time it prints, or otherwise prepares, the short form disclosure. (12 CFR 1005.18(b)(3)(v)) |  |  |  |
| • The ATM balance inquiry fees, for balance inquiries in the United States both within and outside of the financial institution's network or an affiliated network, using the terms "ATM balance inquiry" and "in-network" or "out-of-network," or substantially similar terms; (12 CFR 1005.18(b)(2)(v)) | ☐ | ☐ | ☐ |
| • Customer service fees, both for calling an interactive voice response system and a live customer service agent, using the terms (1) "Customer service," (2) "automated" or "live agent," and (3) "per call," or substantially similar terms; (12 CFR 1005.18(b)(2)(vi)) | ☐ | ☐ | ☐ |
| NOTE: If the short form disclosure is for multiple service plans, disclose only the fee for live agent customer service using the terms "Live customer service" and "per call" or substantially similar terms. |  |  |  |
| • The inactivity fee, using the term "Inactivity" or a substantially similar term, and the conditions that trigger the financial institution to impose the fee; (12 CFR 1005.18(b)(2)(vii)) | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    EFTA

|  | Yes | No | NA |
|---|---|---|---|
| • If the institution charges other fees beyond those listed on the short form as required to be disclosed per 12 CFR 1005.18(b)(2)(i)-(vii), a statement disclosing the number of "additional fee types" the financial institution may charge consumers with respect to the prepaid account, using the clause "We charge [x] other types of fees" or a substantially similar clause; (12 CFR 1005.18(b)(2)(viii)(A)) | ☐ | ☐ | ☐ |
| • If any "additional fee types" are on the short form pursuant to 12 CFR 1005.18(b)(2)(ix), a statement directing consumers to that disclosure, located after but on the same line of text as the statement regarding the number of additional fee types in 12 CFR 1005.18(b)(2)(viii)(A) using the clause "Here are some of them:" or a substantially similar clause; (12 CFR 1005.18(b)(2)(viii)(B)) | ☐ | ☐ | ☐ |
| • If applicable, disclosure of the two additional fee types that generated the highest revenue from consumers for the prepaid account program (or across programs that are the same fee schedule) during the required time period; (12 CFR 1005.18(b)(2)(ix)) | ☐ | ☐ | ☐ |
| • If applicable, a statement that overdraft/credit may be offered, the time period after which it may be offered, and that fees would apply, using the clause: "You may be offered overdraft/credit after [x] days. Fees would apply," or a substantially similar clause; (12 CFR 1005.18(b)(2)(x)) | ☐ | ☐ | ☐ |
| • If applicable, a statement that no overdraft credit feature is offered, using the clause "No overdraft/credit feature" or a substantially similar clause; (12 CFR 1005.18(b)(2)(x)) | ☐ | ☐ | ☐ |
| • A statement regarding the prepaid account program's eligibility for FDIC deposit insurance or NCUA share insurance and directing the consumer to register the prepaid account for insurance eligibility and other account protections, using substantially similar language to the clauses in 12 CFR 1005.18(b)(2)(xi); | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                      EFTA

|  |  | Yes | No | NA |
|---|---|---|---|---|
| | • A statement directing the consumer to the CFPB's website, using the clause "For general information about prepaid accounts, visit *cfpb.gov/prepaid*" or a substantially similar clause; (12 CFR 1005.18(b)(2)(xii)) | ☐ | ☐ | ☐ |
| | • A statement directing the consumer to the location of the long form disclosure required by 12 CFR 1005.18(b)(4), using the clause "Find details and conditions for all fees and services in [location]" or a substantially similar clause. (12 CFR 1005.18(b)(2)(xiii)) | ☐ | ☐ | ☐ |
| | NOTE: Additional requirements apply to prepaid accounts offered at a retail location pursuant to 12 CFR 1005.18(b)(1)(ii) and (b)(2)(xiii). | | | |
| 60. | If the prepaid account is a payroll card account (or a government benefit account), does the financial institution include a statement in the short form disclosure that the consumer does not have to accept the payroll card account (or the government benefit account) and directing the consumer to ask about other ways to receive wages or salary from the employer (benefit payments from the agency), using clauses with substantially similar language to those in 12 CFR 1005.18(b)(2)(xiv) and 1005.15(c)(2)(i)? | ☐ | ☐ | ☐ |
| 61. | If any fees required to be disclosed in the short form disclosure can vary, including the periodic fee, does the financial institution comply with additional variable fee and variable periodic disclosure requirements in 12 CFR 1005.18(b)(3)(i) and (ii)? | ☐ | ☐ | ☐ |
| 62. | Does the financial institution, in its short form disclosure, refrain from including the following fees: | | | |
| | NOTE: As an alternative to the two-tier fee disclosure, a financial institution may disclose a single fee amount when the amount is the same for both fees. | | | |
| | • Any third-party fees, other than third-party cash reload fees? (12 CFR 1005.18(b)(3)(iv) and (v)) | ☐ | ☐ | ☐ |
| | • Any finance charges as described in 12 CFR 1026.4(b)(11), imposed in connection with a covered separate credit feature accessible by a hybrid prepaid-credit card, as defined in 12 CFR 1026.61? (12 CFR 1005.18(b)(3)(vi)) | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    EFTA

|  | Yes | No | NA |
|---|---|---|---|

63.  Does the financial institution provide a long form disclosure for a
     prepaid account that lists the following fees and information, as
     applicable? (12 CFR 1005.18(b)(4))

- A heading stating the name of the prepaid account
  program and that the long form disclosure contains a list
  of all fees for that particular prepaid program; (12 CFR
  1005.18(b)(4)(i))    ☐ ☐ ☐

- All fees that may be imposed in connection with a prepaid
  account, and any conditions under which the fee may be
  imposed, waived, or reduced, as well as any third-party
  fees known to the institutions; (12 CFR 1005.18(b)(4)(ii))    ☐ ☐ ☐

- The statement regarding registration and FDIC or NCUA
  insurance required by 12 CFR 1005.18(b)(2)(xi), together
  with an explanation of FDIC or NCUA insurance coverage
  and the benefit of such coverage or the consequence of the
  lack of such coverage, as applicable; (12 CFR
  1005.18(b)(4)(iii))    ☐ ☐ ☐

- The statement regarding overdraft credit features, as
  required by 12 CFR 1005.18(b)(2)(x); (12 CFR
  1005.18(b)(4)(iv))    ☐ ☐ ☐

- A statement directing the consumer to a telephone number,
  mailing address, and website URL of the person or office
  that a consumer may contact to learn about the terms and
  conditions of the prepaid account, to obtain prepaid
  account balance information, to request a copy of
  transaction history if the financial institution does not
  provide periodic statements, or to notify the financial
  institution when the consumer believes that an
  unauthorized EFT occurred; (12 CFR 1005.18(b)(4)(v))    ☐ ☐ ☐

- A statement directing the consumer to a website URL of
  the CFPB for general information about prepaid accounts,
  and a statement directing the consumer to a CFPB
  telephone number and website URL to submit a complaint
  about a prepaid account, using a clause substantially
  similar to that found in 12 CFR 1005.18(b)(4)(vi);    ☐ ☐ ☐

# Interagency
# Examination Checklist                                    EFTA

|  | Yes | No | NA |
|---|---|---|---|
| • If, at any point, a covered separate credit feature accessible by a hybrid prepaid-credit card may be offered in connection with the prepaid account, the disclosures described in Regulation Z, 12 CFR 1026.60(e)(1). (12 CFR 1005.18(b)(4)(vii)) | ☐ | ☐ | ☐ |

64. At the time that the financial institution provides the short form disclosure, does it disclose the following outside of the short form (12 CFR 1005.18(b)(5)):

| | Yes | No | NA |
|---|---|---|---|
| • The name of the financial institution? | ☐ | ☐ | ☐ |
| • The name of the prepaid account program? | ☐ | ☐ | ☐ |
| • The purchase price for the prepaid account, if any? | ☐ | ☐ | ☐ |
| • The fee for activating the prepaid account, if any? | ☐ | ☐ | ☐ |

NOTE: This information must be disclosed in close proximity to the short form. However, if the prepaid account is acquired in a retail location, this information, other than the purchase price, must be disclosed on the exterior of the access device's packaging material, and the purchase price must be disclosed either on the exterior of or in close proximity to the access device's packaging material. Comment 18(b)(5)-2.

65. Are all required disclosures provided in writing? (12 CFR 1005.18(b)(6)(i)(A))     ☐  ☐  ☐

Exception: Unless provided in written form prior to acquisition, disclosures must be provided in electronic form (and viewable across all screen sizes) when a consumer acquires a prepaid account through electronic means or orally when a consumer acquires a prepaid account orally by telephone. (12 CFR 1005.18(b)(6)(i)(B) and (C))

NOTE: Other requirements apply for electronic disclosures. See 12 CFR 1005.18(b)(6)(i)(B).

66. Are all required disclosures made in a form the consumer can keep, unless an exception applies as provided in 12 CFR 1005.18(b)(6)(ii)?     ☐  ☐  ☐

# Interagency
# Examination Checklist                          EFTA

|  | | Yes | No | NA |
|---|---|---|---|---|
| 67. | When a short form disclosure is provided in writing or electronically, is the information required by 12 CFR 1005.18(b)(2)(i) through (b)(2)(ix) provided in the form of a table? (12 CFR 1005.18(b)(6)(iii)) | ☐ | ☐ | ☐ |
| | NOTE: The short form disclosure must also be substantially similar to Model Forms A-10(a) through (d), as applicable (or Model Form A-10(e) for multiple service plans that do not initially enroll the consumer in a default service plan). See 12 CFR 1005.18(b)(6)(iii)(B) for further information on multiple service plans for both the short form and long form disclosures. | | | |
| 68. | When a long form disclosure is provided in writing or electronically, is the information required by 12 CFR 1005.18(b)(4)(ii) provided in a form of a table? (12 CFR 1005.18(b)(6)(iii)) See Sample Form A-10(f). | ☐ | ☐ | ☐ |
| 69. | Do the short form and long form disclosures comply with specific formatting requirements, such as grouping and ordering of information; prominence and size of the text; and segregation of the disclosures from other information? (12 CFR 1005.18(b)(7)) | ☐ | ☐ | ☐ |
| 70. | Are fee names and other terms used consistently within and across the required disclosures? (12 CFR 1005.18(b)(8)) | ☐ | ☐ | ☐ |
| 71. | When a financial institution uses a foreign language in connection with the acquisition of a prepaid account, does it provide the pre-acquisition disclosures in that same foreign language? (12 CFR 1005.18(b)(9)) | ☐ | ☐ | ☐ |
| | NOTE: This requirement applies only when a financial institution principally uses a foreign language in connection with the acquisition of a prepaid account in certain circumstances. | | | |
| 72. | If the financial institution provides the pre-acquisition disclosures in a foreign language pursuant to 12 CFR 1005.18(b)(9), does it provide the long form disclosure in English upon request and on any part of the website where it discloses pre-acquisition disclosures in a foreign language? (12 CFR 1005.18(b)(9)(ii)) | ☐ | ☐ | ☐ |
| 73. | Does the financial institution issuing the prepaid account either: | | | |
| | • Provide periodic statements as required by 12 CFR 1005.9(b)? | ☐ | ☐ | ☐ |
| | **or** make available to the consumer: | | | |

# Interagency
# Examination Checklist                                    EFTA

|  | Yes | No | NA |
|---|---|---|---|
| • The account balance, through a readily available telephone line (and, for government benefit accounts, at a terminal), (12 CFR 1005.18(c)(1)(i) and 1005.15(d)(1)(i) **and** | ☐ | ☐ | ☐ |
| • An electronic history of the consumer's account transactions, such as through a website, that covers at least 12 months preceding the date the consumer electronically accesses the account, (12 CFR 1005.18(c)(1)(ii) and 1005.15(d)(1)(ii) **and** | ☐ | ☐ | ☐ |
| • A written history of the consumer's account transactions that is provided promptly in response to an oral or written request and that covers at least 24 months preceding the date the financial institution receives the consumer's request? (12 CFR 1005.18(c)(1)(iii) and (2) and 1005.15(d)(1)(iii)) | ☐ | ☐ | ☐ |

> • NOTE: For prepaid accounts that are not payroll card accounts or government benefit accounts, the financial institution is not required to provide a written history of account transactions for any prepaid account for which it has not yet completed its consumer identification and verification process.

NOTE: The electronic and written history of account transactions must include the information set forth in 12 CFR 1005.9(b). (12 CFR 1005.18(c)(3) and 1005.15(d)(2))

74. Do any periodic statement provided pursuant to 12 CFR 1005.9(b) and any history of account transactions provided or made available by the financial institution include:

|  | Yes | No | NA |
|---|---|---|---|
| • The amount of any fees assessed against the account, whether for EFTs or otherwise? (12 CFR 1005.18(c)(4) and 1005.15(d)(2)); and | ☐ | ☐ | ☐ |
| • A summary total of the amount of all fees assessed by the financial institution against the consumer's prepaid account for the prior calendar month and for the calendar year to date? (12 CFR 1005.18(c)(5) and 1005.15(d)(2)) | ☐ | ☐ | ☐ |

75. If the financial institution follows the periodic statement alternative in 12 CFR 1005.15(d)(1) (for government benefit accounts) or 12 CFR 1005.18(c)(1) (for prepaid accounts), does the institution modify its 12 CFR 1005.7(b) initial disclosures to provide:

# Interagency
# Examination Checklist                                    EFTA

|  |  | Yes | No | NA |
|---|---|---|---|---|
| | • A telephone number that the consumer may call to obtain the account balance, the means by which the consumer can obtain an electronic account transaction history, such as the address of a website, and a summary of the consumer's right to receive a written account transaction history upon request (in place of the summary of the right to receive a periodic statement required by 12 CFR 1005.7(b)(6)), including a telephone number to call to request a history (12 CFR 1005.18(d)(1)(i) and 1005.15(e)(1)(i)), **and** | ☐ | ☐ | ☐ |
| | • A notice concerning error resolution that is substantially similar to the notice in paragraph (b) of Appendix A-5 (for government benefit accounts) or A-7 (for prepaid accounts), in place of the notice required by 12 CFR 1005.7(b)(10) or, for prepaid account programs for which the financial institution does not have a consumer identification and verification process, either a description of the error resolution process and limitations on consumer's liability for unauthorized transfers or, if none, a statement that there are no such protections? (12 CFR 1005.18(d)(1)(ii) and 1005.15(e)(1)(ii)) | ☐ | ☐ | ☐ |
| 76. | If the financial institution follows the periodic statement alternative in 12 CFR 1005.15(d)(1) (for government benefit accounts) or 12 CFR 1005.18(c)(1) (for prepaid accounts), does it provide an appropriate annual notice concerning error resolution that is substantially similar to the notice in paragraph (b) of Appendix A-5 (for government benefit accounts) or A-7 (for prepaid accounts), in place of the notice required by 12 CFR 1005.8(b), or, alternatively, a notice on *or* with each electronic or written account transaction history (for government benefits account) and on or with each electronic *and* written account transaction history (for prepaid accounts) that are substantially similar to the abbreviated notice in paragraph (b) of Appendix A-3, modified as necessary to reflect the appropriate error resolution provisions? (12 CFR 1005.18(d)(2) and 1005.15(e)(2)) | ☐ | ☐ | ☐ |
| 77. | If the financial institution follows the periodic statement alternative in 12 CFR 1005.18(c)(1), does the institution: | | | |

# Interagency
# Examination Checklist                                    **EFTA**

|  |  | Yes | No | NA |
|---|---|:---:|:---:|:---:|
| | • Comply with the error resolution requirements of 12 CFR 1005.11 in response to an oral or written notice of an error from the consumer that is received by the earlier of: | ☐ | ☐ | ☐ |

○ 60 days after the date the consumer accesses the consumer's electronic account transaction history, provided that it reflects the alleged error; or

○ 60 days after the date the financial institution sends a written account transaction history (that is requested by the consumer) in which the alleged error is first reflected? (12 CFR 1005.18(e)(2) and 1005.15(e)(4)(i))

NOTE: In lieu of following the above, the financial institution complies with the requirements for resolving errors in 12 CFR 1005.11 if it investigates any oral or written notice of an error from the consumer that is received by the institution within 120 days after the transfer allegedly in error was credited or debited to the consumer's account. (12 CFR 1005.18(e)(2)(ii) and 1005.15(e)(4)(ii))  Also, for prepaid accounts that are not payroll card accounts or government benefit accounts, a financial institution is not required to comply with the liability limits and error resolution requirements in 12 CFR 1005.6 and 1005.11 for any prepaid account for which it has not successfully completed its consumer identification and verification process. (12 CFR 1005.18(e)(3)(i))

|  |  | Yes | No | NA |
|---|---|:---:|:---:|:---:|
| 78. | Does a financial institution, as part of its initial disclosures given pursuant to 12 CFR 1005.7, include all of the information required to be disclosed in its pre-acquisition long form disclosures pursuant to 12 CFR 1005.18(b)(4)? (12 CFR 1005.18(f)(1) and 1005.15(f)) | ☐ | ☐ | ☐ |
| 79. | Does a financial institution comply with the change-in-terms notice requirements in 12 CFR 1005.8(a) for any change in a term or condition that is required to be disclosed under 12 CFR 1005.7 or 1005.18(f)(1)? (12 CFR 1005.18(f)(2) and 1005.15(f)) | ☐ | ☐ | ☐ |

NOTE:  Under certain circumstances, the financial institution may not be required to provide a change-in-terms notice to reflect changes to third-party fee amounts or changes to the fees or other terms disclosed in the Regulation Z disclosures required by 12 CFR 1005.18(b)(4)(vii) for overdraft credit features.

# Interagency
# Examination Checklist                              EFTA

|  |  | Yes | No | NA |
|---|---|---|---|---|
| 80. | Does the financial institution disclose on the prepaid account access device the name of the financial institution and the website URL and a telephone number a consumer can use to contact the financial institution about the prepaid account? (12 CFR 1005.18(f)(3) and 1005.15(f)) | ☐ | ☐ | ☐ |
| 81. | If a financial institution does not provide a physical access device in connection with a prepaid account, does the financial institution disclose the name of the financial institution and the website URL and a telephone number a consumer can use to contact the financial institution about the prepaid account on the website, mobile application, or other entry point a consumer must visit to access the prepaid account electronically? (12 CFR 1005.18(f)(3) and 1005.15(f)) | ☐ | ☐ | ☐ |
| 82. | Does a financial institution provide to any prepaid account without a covered separate credit feature the same account terms, conditions, and features it provides on prepaid accounts in the same prepaid account program that have such a feature? (12 CFR 1005.18(g)(1)) | ☐ | ☐ | ☐ |
|  | NOTE: A financial institution is not prohibited from imposing a higher fee or charge on the asset feature of a prepaid account with a covered separate credit feature accessible by a hybrid prepaid-credit card than the amount of a comparable fee or charge that it imposes on any prepaid account in the same prepaid account program that does not have such a credit feature. (12 CFR 1005.18(g)(2)) | | | |

## Internet Posting of Agreements - 12 CFR 1005.19

| 83. | Does the institution offer prepaid accounts? <u>If no, do not complete this section.</u> | ☐ | ☐ | ☐ |
|---|---|---|---|---|
| 84. | Is the prepaid account issuer not required to submit any prepaid account agreements to the CFPB because one of the following applies: | | | |
|  | • The issuer has fewer than 3,000 open prepaid accounts? <u>If yes, do not complete this section.</u> (12 CFR 1005.19(b)(4)(i)) | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    **EFTA**

|  |  | Yes | No | NA |
|---|---|---|---|---|

- The agreement is offered as part of a product test offered to only a limited group of consumers for a limited period of time; is used for fewer than 3,000 open prepaid accounts; and is not offered other than in connection with the product test? <u>If yes, do not complete this section for that particular product.</u>  (12 CFR 1005.19(b)(5)(i)) ☐ ☐ ☐

NOTE: If an issuer or agreement that did not previously qualify for either exception subsequently qualifies, the issuer must continue to make submissions to the CFPB on a rolling basis until it notifies the Bureau it is withdrawing the agreement(s). (12 CFR 1005.19(4)(ii) and (5)(ii))

85. Does the prepaid account issuer make submissions of prepaid account agreements to the CFPB no later than 30 days after the issuer offers, amends, or ceases to offer a prepaid account agreement? (12 CFR 1005.19(b)(1))    ☐ ☐ ☐

86. Do the issuer's submissions of prepaid account agreements contain:

- Identifying information about the issuer and the agreements submitted, including: the issuer's name, address, and identifying number (such as an RSSD ID number or tax identification number); the effective date of the prepaid account agreement; the name of the program manager, if any; and the list of names of other relevant parties, if applicable (such as the employer for a payroll card program or the agency for a government benefit program)? (12 CFR 1005.19(b)(1)(i))    ☐ ☐ ☐

- Any prepaid account agreement offered by the issuer that has not been previously submitted to the CFPB? (12 CFR 1005.19(b)(1)(ii))    ☐ ☐ ☐

- Any prepaid account agreement previously submitted to the CFPB that has been amended? (12 CFR 1005.19(b)(1)(iii))    ☐ ☐ ☐

- Notification regarding any prepaid account agreement previously submitted to the CFPB that the issuer is withdrawing? (12 CFR 1005.19(b)(1)(iv))    ☐ ☐ ☐

87. If a prepaid account issuer amends a prepaid account agreement that was previously submitted to the CFPB, does the issuer submit the entire amended agreement to the Bureau no later than 30 days after the change becomes effective? (12 CFR 1005.19(b)(2)(i))    ☐ ☐ ☐

# Interagency
# Examination Checklist                                    EFTA

|  |  | Yes | No | NA |
|---|---|:---:|:---:|:---:|
| 88. | If a prepaid account issuer amends other identifying information about the issuer and its submitted agreements, does the issuer submit the updated information to the CFPB no later than 30 days after the change becomes effective? (12 CFR 1005.19(b)(2)(i)) | ☐ | ☐ | ☐ |
|  | NOTE: An issuer may delay submitting a change to the list of names of other relevant parties to a particular agreement until the earlier of: (1) such time as the issuer is otherwise submitting an amended agreement or changes to other identifying information about the issuer and its submitted agreements; or (2) May 1 of each year for any updates to the list of names of other relevant parties for that agreement that occurred between the last submission of relevant party information and April 1 of that year. |  |  |  |
| 89. | If a prepaid account issuer withdraws a prepaid account agreement that was previously submitted to the CFPB, does the issuer notify the Bureau, no later than 30 days after the issuer ceases to offer the agreement, that it is withdrawing the agreement? (12 CFR 1005.19(b)(3)) | ☐ | ☐ | ☐ |
| 90. | Does the issuer submit its prepaid account agreements to the CFPB in accordance with the following form and content requirements? |  |  |  |
|  | • Each agreement contains the provisions of the agreement and the fee information currently in effect. (12 CFR 1005.19(b)(6)(i)(A)) | ☐ | ☐ | ☐ |
|  | • Agreements do not include any personally identifiable information relating to any consumer, such as name, address, telephone number, or account number. (12 CFR 1005.19(b)(6)(i)(B)) | ☐ | ☐ | ☐ |
|  | • Agreements are presented in a clear and legible font. (12 CFR 1005.19(b)(6)(i)(D)) | ☐ | ☐ | ☐ |
|  | • All fee information, as defined in 12 CFR 1005.19(a)(3), is set forth either in the prepaid account agreement or in addenda to that agreement that attach either or both the short form disclosure under 12 CFR 1005.18(b)(2) and the fee information and statements required to be disclosed in the long form disclosure under 12 CFR 1005.18(b)(4). (12 CFR 1005.19(b)(6)(ii)) | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    **EFTA**

|  |  | Yes | No | NA |
|---|---|---|---|---|
| | • Provisions of the agreement and fee information are not provided to the CFPB in the form of change-in-terms notices or riders, other than the optional fee information addenda. Changes in provisions or fee information are integrated into the text of the agreement, or the optional fee addendum, as appropriate. (12 CFR 1005.19(b)(6)(iii)) | ☐ | ☐ | ☐ |
| 91. | Does the prepaid account issuer post and maintain on its publicly available website any prepaid account agreements offered to the general public that the issuer is required to submit to the CFPB? (12 CFR 1005.19(c)(1)) | ☐ | ☐ | ☐ |
| 92. | Do the posted agreements conform to the form and content requirements for agreements submitted to the CFPB as set forth in 12 CFR 1005.19(b)(6)? (12 CFR 1005.19(c)(2)) | ☐ | ☐ | ☐ |
| 93. | Does the prepaid account issuer post and update the agreements on its website as frequently as the issuer is required to submit new and amended agreements to the CFPB? (12 CFR 1005.19(c)(3)) | ☐ | ☐ | ☐ |
| 94. | Does the prepaid account issuer post the agreements: (12 CFR 1005.19(c)(4)) | | | |
| | • In an electronic format that is readily usable by the general public; | ☐ | ☐ | ☐ |
| | • In a location that is prominent and readily accessible to the public; and | ☐ | ☐ | ☐ |
| | • In a location that is accessible without submission of personally identifiable information? | ☐ | ☐ | ☐ |
| 95. | For any open prepaid account, does the prepaid account issuer post and maintain the consumer's agreement on its website or promptly provide a copy of the consumer's agreement to the consumer upon the consumer's request? (12 CFR 1005.19(d)(1)(i) and (ii)) | ☐ | ☐ | ☐ |
| 96. | If the issuer makes an agreement available upon request, does the issuer: (12 CFR 1005.19(d)(1)(ii)) | | | |
| | • Provide the consumer with the ability to request a copy of the agreement by telephone?; and | ☐ | ☐ | ☐ |
| | • Send the consumer a copy of the agreement no later than five business days after the issuer receives the consumer's request? | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    EFTA

|  |  | Yes | No | NA |
|---|---|---|---|---|
| 97. | Do the agreements posted on the issuer's website or sent to the consumer upon the consumer's request pursuant to 12 CFR 1005.19(d) conform to the form and content requirements for agreements submitted to the CFPB as set forth in 12 CFR 1005.19(b)(6)?  (12 CFR 1005.19(d)(2)(i)) | ☐ | ☐ | ☐ |
| 98. | If the issuer posts an agreement on its website pursuant to 12 CFR 1005.19(d)(1)(i), does the issuer post the agreements: (12 CFR 1005.19(d)(2)(ii)) |  |  |  |
|  | • In an electronic format that is readily usable by the general public; and | ☐ | ☐ | ☐ |
|  | • In a location that is prominent and readily accessible to the consumer? | ☐ | ☐ | ☐ |
| 99. | If agreements posted or otherwise provided to the consumer pursuant to 12 CFR 1005.19(d) contain personally identifiable information relating to the consumer, such as name, address, telephone number, or account number, does the issuer take appropriate measures to make the agreement accessible only to the consumer or other authorized persons? (12 CFR 1005.19(d)(2)(iii)) | ☐ | ☐ | ☐ |
| 100. | Do agreements posted or otherwise provided to the consumer pursuant to 12 CFR 1005.19(d) set forth the specific provisions and fee information applicable to the particular consumer? (12 CFR 1005.19(d)(2)(iv)) | ☐ | ☐ | ☐ |
| 101. | Does the issuer update agreements posted to its website pursuant to 12 CFR 1005.19(d) as frequently as the issuer is required to submit amended agreements to the CFPB pursuant to 12 CFR 1005.19(b)(2)? (12 CFR 1005.19(d)(2)(v)) | ☐ | ☐ | ☐ |
| 102. | Are agreements provided upon consumer request accurate as of the date the agreement is sent to the consumer? (12 CFR 1005.19(d)(2)(v)) | ☐ | ☐ | ☐ |
| 103. | For agreements provided upon consumer request, does the issuer provide the agreement in paper form unless the consumer agrees to receive the agreement electronically? (12 CFR 1005.19(d)(2)(vi)) | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                        EFTA

|  | Yes | No | NA |
|---|---|---|---|

## Requirements for Gift Cards and
## Gift Certificates – 12 CFR 1005.20

104.   Does the institution offer gift certificates, store gift cards, general-use prepaid cards, loyalty, award, or promotional gift cards? <u>If no, do not complete this section.</u>   ☐ ☐ ☐

105.   Determine if the institution offers consumers, primarily for personal, family, or household purposes, in a specified amount, a card, code, or other device on a prepaid basis, such as the following:

- Gift certificates – which may not be increased or reloaded in exchange for payment; and are redeemable upon presentation at a single merchant or an affiliated group of merchants for goods and services? (12 CFR 1005.20(a)(1))   ☐ ☐ ☐

- Store gift cards – which may be increased or reloaded, in exchange for payment; and are redeemable upon presentation at a single merchant or an affiliated group of merchants for goods and services? (12 CFR 1005.20(a)(2))   ☐ ☐ ☐

- General-use prepaid cards – which may be increased or reloaded, in exchange for payment; and are redeemable upon presentation at multiple, unaffiliated merchants for goods or services, or useable at automated teller machines? (12 CFR 1005.20(a)(3))   ☐ ☐ ☐

106.   Do loyalty, award, or promotional gift cards as defined by (12 CFR 1005.20(a)(4)) contain the following disclosures as applicable?

- A statement indicating that the card, code, or other device is issued for loyalty, award, or promotional purposes, which must be included on the front of the card, code, or other device; (12 CFR 1005.20(a)(4)(iii)(A))   ☐ ☐ ☐

- The expiration date for the underlying funds, which must be included on the front of the card, code, or other device; (12 CFR 1005.20(a)(4)(iii)(B))   ☐ ☐ ☐

- The amount of fees that may be imposed in connection with the card, code, or other device, and the conditions under which they may be imposed, which must be provided with the card, code, or other device; **and** (12 CFR 1005.20(a)(4)(iii)(C))   ☐ ☐ ☐

# Interagency
# Examination Checklist                                    **EFTA**

|  | Yes | No | NA |
|---|---|---|---|
| • A toll-free telephone number and, if one is maintained, a website, that a consumer may use to obtain fee information, which must be included on or with the card, code, or other device? (12 CFR 1005.20(a)(4)(iii)(D)) | ☐ | ☐ | ☐ |

107. If the terms of the gift certificate, store gift card, or general-use prepaid card impose a dormancy, inactivity, or service fee as defined under (12 CFR 1005.20(a)), determine the following:

| | Yes | No | NA |
|---|---|---|---|
| • Has there been activity with respect to the certificate or card, in the one-year period ending on the date on which the fee was imposed; (12 CFR 1005.20(d)(1)) | ☐ | ☐ | ☐ |
| • As applicable, are the following, clearly and conspicuously stated on the gift certificate, store gift card, or general-use prepaid card | ☐ | ☐ | ☐ |
| o The amount of any dormancy, inactivity, or service fee that may be charged; (12 CFR 1005.20(d)(2)(i)) | ☐ | ☐ | ☐ |
| o How often such a fee may be assessed; **and** (12 CFR 1005.20(d)(2)(ii)) | ☐ | ☐ | ☐ |
| o That such fee may be assessed for inactivity? (12 CFR 1005.20(d)(2)(iii)) | ☐ | ☐ | ☐ |
| • Is the dormancy, inactivity, or service fee imposed limited to one in any given calendar month? (12 CFR 1005.20(d)(3)) | ☐ | ☐ | ☐ |

108. If the financial institution sells or issues a gift certificate, store gift card, or general-use prepaid card with an expiration date, determine the following:

| | Yes | No | NA |
|---|---|---|---|
| • Has the financial institution established policies and procedures to provide consumers with a reasonable opportunity to purchase a certificate or card with at least five years remaining until the certificate or card expiration date? (12 CFR 1005.20(e)(1)) | ☐ | ☐ | ☐ |
| • Is the expiration date for the underlying funds is at least the later of five years after the date the gift certificate was initially issued, or the date on which funds were last loaded to a store gift card or general-use prepaid card; or the certificate or card expiration date, if any? (12 CFR 1005.20(e)(2)) | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    **EFTA**

|  | Yes | No | NA |
|---|---|---|---|

109.  If the financial institution sells or issues a gift certificate, store gift card, or general-use prepaid card with an expiration date, then are the following disclosures provided on the certificate or card, as applicable:

- The expiration date for the underlying funds, or if the underlying funds do not expire, the fact that the funds do not expire; (12 CFR 1005.20(e)(3)(i)) ☐ ☐ ☐

- A toll-free number and, if one is maintained, a website that a consumer may use to obtain a replacement certificate or card after the certificate or card expires if the underlying funds may be available; **and** (12 CFR 1005.20(e)(3)(ii)) ☐ ☐ ☐

- Except where a non-reloadable certificate or card bears an expiration date that is at least seven years from the date of manufacture, a statement, disclosed with equal prominence and in close proximity to the certificate or card expiration date, that: ☐ ☐ ☐

  o The certificate or card expires, but the underlying funds either do not expire or expire later than the certificate or card; (12 CFR 1005.20(e)(3)(iii)(A)) ☐ ☐ ☐

  o The consumer may contact the issuer for a replacement card; **and** (12 CFR 1005.20(e)(3)(iii)(B)) ☐ ☐ ☐

  o No fee or charge is imposed on the cardholder for replacing the gift certificate, store gift card, or general-use prepaid card or for providing the certificate or card holder with the remaining balance in some manner prior to the funds expiration date unless such certificate or card has been lost or stolen. (12 CFR 1005.20(e)(4)) ☐ ☐ ☐

110.  Are the following disclosures provided in connection with a gift certificate, store gift card, or general-use prepaid card, as applicable:

- For each type of fee that may be imposed in connection with the gift certificate or card (other than a dormancy, inactivity, or service fee subject to the disclosure requirements under (12 CFR 1005.20(d)(2)), the following information must be provided on or with the certificate or card:

  o The type of fee; (12 CFR 1005.20(f)(1)(i)) ☐ ☐ ☐

  o The amount of the fee (or an explanation of how the fee will be determined); **and** (12 CFR 1005.20(f)(1)(ii)) ☐ ☐ ☐

# Interagency
# Examination Checklist                                                    **EFTA**

|  |  | Yes | No | NA |
|---|---|---|---|---|
| o | The conditions under which the fee may be imposed. (12 CFR 1005.20(f)(1)(iii)) | ☐ | ☐ | ☐ |
| • | A toll-free telephone number and, if one is maintained, a website, that a consumer may use to obtain information about dormancy, inactivity, service, or each type of fee that may be imposed in connection with the certificate or card. (12 CFR 1005.20(f)(2)) | ☐ | ☐ | ☐ |

## Subpart B – Requirements for Remittance Transfers

|  |  | Yes | No | NA |
|---|---|---|---|---|
| 1. | Does the provider offer remittance transfers in the normal course of business? | ☐ | ☐ | ☐ |
|  | If the provider deems itself to not offer remittance transfers in the normal course of business as a result of the 100-transfer safe harbor, are the provider's method for counting transactions appropriate and properly documented? | ☐ | ☐ | ☐ |

*If the provider offers remittance transfers in the normal course of business and, therefore, is covered by the rule, complete the following checklist.*

|  |  | Yes | No | NA |
|---|---|---|---|---|
| 2. | Does the provider have written policies and procedures that govern its remittance transfer operations? | ☐ | ☐ | ☐ |
| 3. | Do these policies and procedures adequately address the requirements of Subpart B? | ☐ | ☐ | ☐ |
| 4. | Are the provider's personnel who are involved in remittance transfer operations knowledgeable about the requirements of Subpart B? | ☐ | ☐ | ☐ |

## Disclosures – 12 CFR 1005.31

(Unless otherwise indicated, the disclosure requirements apply to all remittance transfer transactions, including those scheduled before the date of transfer).

|  |  | Yes | No | NA |
|---|---|---|---|---|
| 5. | Does the provider provide pre-payment disclosures and receipts or combined disclosures to its remittance transfer customers? (12 CFR 1005.31(b)(1), (2), and (3)) | ☐ | ☐ | ☐ |
|  | NOTE: Specific content of disclosures is addressed below |  |  |  |
| 6. | Are written disclosures: |  |  |  |
|  | • In the appropriate form; (12 CFR 1005.31(c)) | ☐ | ☐ | ☐ |
|  | • Clear and conspicuous; (12 CFR 1005.31(a)(1)) and | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    EFTA

|  |  | Yes | No | NA |
|---|---|:---:|:---:|:---:|
| | • In retainable form? (12 CFR 1005.31(a)(2)) | ☐ | ☐ | ☐ |
| 7. | Are written and electronic disclosures provided in compliance with the foreign language requirements of 12 CFR 1005.31(g)? | ☐ | ☐ | ☐ |
| 8. | If the provider uses scripts to provide oral disclosures for remittance transfer transactions and error resolution procedures conducted over the telephone, do the contents of the scripts comply with the requirements of 12 CFR 1005.31(a)(3) and (a)(4)? | ☐ | ☐ | ☐ |
| 9. | Do disclosures related to telephone, mobile application, or text message transactions comply with the disclosure requirements with respect to foreign languages and notice of cancellation rights? (12 CFR 1005.31(g)(2) and 12 CFR 1005.31(b)(2)(iv)) | ☐ | ☐ | ☐ |
| 10. | Does information in written or electronic disclosures comply with the grouping requirements of 12 CFR 1005.31(c)(1)? | ☐ | ☐ | ☐ |
| 11. | Is the exchange rate used for the remittance transfer generally disclosed in close proximity to the other information in the pre-payment disclosures? (12 CFR 1005.31(c)(2)) | ☐ | ☐ | ☐ |
| 12 | In case of a disclosure that includes the disclaimer statement under 12 CFR 1005.31(b)(1)(viii), is the disclaimer in close proximity to the Total to Recipient? (12 CFR 1005.31(c)(2)) | ☐ | ☐ | ☐ |
| 13. | Are disclosures on error resolution and cancellation rights generally disclosed in close proximity to the other disclosures on the receipt? (12 CFR 1005.31(c)(2)) | ☐ | ☐ | ☐ |
| 14. | Are disclosures that are provided in writing or electronically provided in a minimum of eight point font, in equal prominence to each other, and on the front of the page on which the disclosures are printed? (12 CFR 1005.31(c)(3)) | ☐ | ☐ | ☐ |
| 15. | For disclosures that are provided in writing or electronically: | | | |
| | • Do they contain only information directly related to the disclosures, **and** | ☐ | ☐ | ☐ |
| | • Are they segregated from other items that may be disclosed? (12 CFR 1005.31(c)(4)) | ☐ | ☐ | ☐ |
| 16. | Are estimated amounts in the disclosures appropriately described using the term "estimated" or a substantially similar term in close proximity to the term described? (12 CFR 1005.31(d)) | ☐ | ☐ | ☐ |
| 17. | Are disclosures provided in compliance with the timing requirements of 12 CFR 1005.31(e)? | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    **EFTA**

|  |  | Yes | No | NA |
|---|---|---|---|---|
| 18. | Do disclosures comply with the accuracy requirements of 12 CFR 1005.31(f)? | ☐ | ☐ | ☐ |

NOTE: For a one-time transfer scheduled five or more business days in advance or for the first in a series of preauthorized remittance transfers, disclosures must be accurate when a sender makes payment except to the extent estimates are permitted. For any subsequent transfer in a series of preauthorized remittance transfers, disclosures must be accurate as of the date the preauthorized remittance transfer to which it pertains is made. (12 CFR 1005.36(b))

## Pre-payment disclosures - 12 CFR 1005.31(b)(1)

| | | Yes | No | NA |
|---|---|---|---|---|
| 19. | Does the provider appropriately distinguish between covered and non-covered third-party fees? | ☐ | ☐ | ☐ |
| 20. | Do the provider's pre-payment disclosures appropriately disclose to the recipient the following information as applicable, using the terms in quotes (or substantially similar terms) listed below: | | | |
| | • "Transfer Amount" both in the currency in which transaction is funded and in the currency in which the funds will be made available to the recipient; | ☐ | ☐ | ☐ |
| | • "Transfer Fees" and "Transfer Taxes"; | ☐ | ☐ | ☐ |
| | • "Other Fees"; | ☐ | ☐ | ☐ |
| | • "Exchange Rate"; | ☐ | ☐ | ☐ |
| | • "Total to Recipient"; and | ☐ | ☐ | ☐ |
| | • If applicable, a disclaimer statement that non-covered third-party fees or taxes collected on the remittance transfer by a third person may apply, resulting in the designated recipient receiving less than the amount disclosed? (12 CFR 1005.31(b)(1)) | ☐ | ☐ | ☐ |
| | • If the provider includes in the disclaimer statement required by 12 CFR 1005.31(b)(1)(viii), an optional estimated disclosure of applicable non-covered third-party fees or taxes, are the estimates based on reasonable sources of information? (12 CFR 1005.32(b)(3)) | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    **EFTA**

|  | Yes | No | NA |
|---|---|---|---|

### Receipt – 12 CFR 1005.31(b)(2)

21.   Do the provider's receipts appropriately calculate and disclose to the recipient the following information as applicable, using the terms in quotes (or substantially similar terms) listed below, as applicable:

- All the information required to be provided in the pre-payment disclosure;  ☐ ☐ ☐

- "Date Available";  ☐ ☐ ☐

- "Recipient";  ☐ ☐ ☐

- A statement about the sender's error resolution and cancellation rights, using language set forth in Model Form A-37 of Appendix A or substantially similar language;  ☐ ☐ ☐

  NOTE: If the transfer is scheduled at least three business days before the date of the transfer, the statement about the sender's cancellation rights should reflect the requirements of 12 CFR1005.36(c).

- Name, telephone number(s) and, if applicable, the website of the provider;  ☐ ☐ ☐

- A statement that the sender can contact the state agency that licenses or charters the remittance transfer provider with respect to the particular transfer (if applicable) and the CFPB, for questions or complaints about the remittance transfer provider using language set forth in Model Form A-37 of Appendix A or substantially similar language; and  ☐ ☐ ☐

  NOTE: The statement must include the name, telephone number(s) and website of the state agency, and the name, toll-free telephone number(s) and website of the CFPB.

- The transfer date (only for transfers scheduled at least three business days in advance, or the first transfer in a series of preauthorized remittance transfers)?  ☐ ☐ ☐

# Interagency
# Examination Checklist                                    EFTA

|  | Yes | No | NA |
|---|---|---|---|

## Combined disclosure – 12 CFR 1005.31(b)(3)

Complete this section only if the provider provides combined disclosures as an alternative to separate pre-payment disclosures and receipts.

| | | Yes | No | NA |
|---|---|---|---|---|
| 22. | Does the combined disclosure contain all the information required to be provided on the receipt? | ☐ | ☐ | ☐ |
| 23. | Does the provider provide the combined disclosure when the sender requests the remittance transfer, but prior to payment for the transfer; and provide a proof of payment when payment is made for the transfer? | ☐ | ☐ | ☐ |

NOTE #1: The proof of payment must be clear and conspicuous, provided in writing or electronically, and provided in a retainable form.

NOTE #2: For one-time transfers scheduled five or more business days in advance or for the first in a series of preauthorized transfers, the provider may provide confirmation that the transaction has been scheduled in lieu of the proof of payment if payment is not processed at the time the remittance transfer is scheduled. No further proof of payment is required when payment is later processed.

## Long form error resolution and cancellation notice – 12 CFR 1005.31(b)(4)

| | | Yes | No | NA |
|---|---|---|---|---|
| 24. | Does the provider promptly provide, at the sender's request, a notice describing the sender's error resolution and cancellation rights, using language set forth in Model Form A-36 of Appendix A or substantially similar language? (12 CFR 1005.31(b)(4)) | ☐ | ☐ | ☐ |

NOTE: For a remittance transfer scheduled at least three business days before the date of the transfer, the description of the rights of the sender regarding cancellation must instead reflect the requirements of 12 CFR 1005.36(c).

# Interagency
# Examination Checklist                                    **EFTA**

|  | Yes | No | NA |
|---|---|---|---|

## Estimates – 12 CFR 1005.32

### Temporary exception for insured institutions – 12 CFR 1005.32(a)

NOTE: This exception expires on July 21, 2020.

| | | Yes | No | NA |
|---|---|---|---|---|
| 25. | If the remittance transfer provider is an insured institution (as defined by 12 CFR 1005.32(a)(3)), does the institution use estimates in its disclosures for transactions sent from the sender's account (not including a prepaid account, unless the prepaid account is a payroll card account or government benefit account) with the institution? | ☐ | ☐ | ☐ |
| 26. | If so, is the provider only using the temporary exception in situations where it cannot determine the exact amounts for reasons beyond its control because a person other than the institution or with which the institution has no correspondent relationship sets the exchange rate required to be disclosed or imposes a fee required to be disclosed? (12 CFR 1005.32(a) and Comment 32(a)(1)-1) | ☐ | ☐ | ☐ |

### Permanent exception for transfers to certain countries – 12 CFR 1005.32(b)(1)

| | | Yes | No | NA |
|---|---|---|---|---|
| 27. | Does the provider appropriately rely on the most recent list provided by the CFPB when using estimates under the permanent exception set forth under 12 CFR 1005.32(b)(1) for transactions to those countries? | ☐ | ☐ | ☐ |
| 28. | If the provider provides estimates for transactions in a country that does not appear on the safe harbor list published by the CFPB, does the entity appropriately determine that the laws of or the method by which transactions are conducted in the recipient country do not permit the determination of exact amounts? (12 CFR 1005.32(b)(1)(ii) and Comment 32(b)-5) | ☐ | ☐ | ☐ |
| | NOTE: A provider cannot rely on the Bureau list if it has information that the laws of a country on the list permit exact disclosures. | | | |

# Interagency
# Examination Checklist                                    EFTA

|  | Yes | No | NA |
|---|---|---|---|

**Permanent exception for transfers scheduled before the date of transfer – 12 CFR 1005.32(b)(2)**

29.   For transfers scheduled five or more business days before the date of the transfer for which estimates may be provided, does the provider comply with the requirements of 12 CFR 1005.32(b)(2)?     ☐   ☐   ☐

**Bases for estimates – 12 CFR 1005.32(c)**

30.   Are the bases used to derive the estimates under 12 CFR 1005.32(a), (b)(1), and (b)(2) in compliance with the method for disclosing estimates set forth in 12 CFR 1005.32(c)?     ☐   ☐   ☐

NOTE: For transfers scheduled five or more business days before the date of the transfer for which estimates may be provided, the requirements of 12 CFR 1005.32(d) apply.

31.   Does the provider use the approaches listed in the rule to estimate:

- Exchange rate;     ☐   ☐   ☐
- Transfer amount in which funds will be received;     ☐   ☐   ☐
- Covered third-party fees; and     ☐   ☐   ☐
- The amount of currency that will be received by the designated recipient?     ☐   ☐   ☐

32.   If estimates are based on an approach that is not one of the listed bases, does the designated recipient receive the same, or greater, amount of funds than the remittance transfer provider disclosed?     ☐   ☐   ☐

# Procedures for resolving errors – 12 CFR 1005.33

33.   Does the provider have adequate policies and procedures to address the error resolution requirements applicable to remittance transfers? (12 CFR 1005.33(g))     ☐   ☐   ☐

34.   Do the policies and procedures adequately state what does and does not constitute an error as defined in 12 CFR 1005.33(a)?     ☐   ☐   ☐

35.   Do the policies and procedures specifically address:

- Timing and content of the sender's notice of error; (12 CFR 1005.33(b)(1))     ☐   ☐   ☐
- Provider's request for additional information or clarification; (12 CFR 1005.33(b)(2))     ☐   ☐   ☐

# Interagency
# Examination Checklist                                    EFTA

|  |  | Yes | No | NA |
|---|---|---|---|---|
| • | Time limits for investigation, reporting results, and correcting an error; (12 CFR 1005.33(c)) | ☐ | ☐ | ☐ |
| • | Sender's request for documentation that the provider relied on to make a decision; **and** (12 CFR 1005.33(d)) | ☐ | ☐ | ☐ |
| • | The retention of records related to error investigations? (12 CFR 1005.33(g)(2) and 12 CFR 1005.13)) | ☐ | ☐ | ☐ |
| 36. | Does the provider complete its investigation of alleged errors and determine whether an error occurred within 90 days of receiving notice of the error? (12 CFR 1005.33(c)) | ☐ | ☐ | ☐ |
| 37. | Does the provider report investigation results to the sender within three business days after completing its investigation and include notice of any remedies available for correcting any error determined to have occurred and provide remedy within one business day? (12 CFR 1005.33(c)) | ☐ | ☐ | ☐ |
| | NOTE: The provider can ask the sender to designate a preferred remedy at the time the sender provides notice of the error but must indicate that a resend remedy may be unavailable if the error occurred because the sender provided incorrect or insufficient information. | | | |
| 38. | If the sender provided an incorrect account number or recipient institution identifier, does the provider comply with the requirements of 12 CFR 1005.33(h) before determining that no error occurred? | ☐ | ☐ | ☐ |
| 39. | If the provider determines that no error or a different error occurred, does it provide a written explanation of the findings, and note the sender's right to request the documents upon which the provider relied in making its determination? (12 CFR 1005.33(d)) | ☐ | ☐ | ☐ |
| 40. | If the provider provides a default remedy, does it correct the error within one business day or as soon as reasonably practicable, after the reasonable time (deemed to be ten business days) or before the sender designates that the remedy has passed? | ☐ | ☐ | ☐ |
| | NOTE: A default remedy is not applicable where the sender provided incorrect or insufficient information. | | | |

# Interagency
# Examination Checklist                                                    EFTA

|  | | Yes | No | NA |
|---|---|:---:|:---:|:---:|
| 41. | If the sender requests a refund (for errors other than those related to failure to deliver by the disclosed date where the sender provided incorrect or insufficient information), does the provider refund, inclusive of fees, within one business day or as soon as reasonably practicable thereafter? (12 CFR 1005.33(c)(2)(A)) | ☐ | ☐ | ☐ |
|  | NOTE:  The provider may generally, at its discretion, issue a refund either in cash or in the same form of payment that was initially provided by the sender for the remittance transfer. | | | |
| 42. | If the sender requests delivery of the amount appropriate to correct the error and the error did not occur because the sender provided incorrect or insufficient information, does the provider correct the error within one business day, or as soon as reasonably practicable, applying the same exchange rate, fees, and taxes stated in the disclosure provided in connection with the unsuccessful remittance transfer attempt? (Comment 33(c)-3) | ☐ | ☐ | ☐ |
| 43. | In the case of errors involving incorrect or insufficient information provided by the sender for the transfer, does the provider comply with the requirements of 12 CFR 1005.33(c)(2)(iii)? | ☐ | ☐ | ☐ |
| 44. | If the provider determines that an error occurred that relates to: | ☐ | ☐ | ☐ |

44. (continued)

- An incorrect amount paid by the sender;

- A computational or bookkeeping error made by the remittance transfer provider; or

- Failure to make the amount of currency stated in the disclosures available to the designated recipient;

Does the provider either:

- Refund the amount of funds provided by the sender (in case of a transaction that was not properly transmitted);

- Refund the amount appropriate to resolve the error; or

- Make available to the designated recipient the amount appropriate to resolve the error without additional cost to the sender or the designated recipient? (12 CFR 1005.33(c)(2)(i)

# Interagency
# Examination Checklist                                    EFTA

|  | Yes | No | NA |
|---|---|---|---|
| 45. If the error relates to the failure to make funds available to the designated recipient by the disclosed date of availability (except in cases where the sender provided incorrect or insufficient information), does the provider: | ☐ | ☐ | ☐ |

- Either (i) refund the amount of funds that was not properly transmitted, or the amount appropriate to resolve the error to the sender; or (ii) make available to the designated recipient the amount appropriate to resolve the error;

  and

- Refund to the sender any fees and, to the extent not prohibited by law, taxes imposed for the remittance transfer? (12 CFR 1005.33(c)(2)(ii))

|  | Yes | No | NA |
|---|---|---|---|
| 46. If an error occurred, does the provider impose a charge related to any aspect of the error resolution process (including charges for documentation or investigation)? (Comment 33(c)-9) If so, is the provider in violation of 12 CFR 1005.33(c)? | ☐ | ☐ | ☐ |
| 47. Does the provider retain policies and procedures and documentation, including those related to error investigations, for a period of not less than two years from the date a notice of error was submitted to the provider or action was required to be taken by the provider? (12 CFR 1005.33(g) and 1005.13) | ☐ | ☐ | ☐ |

## Procedures for Cancellation and Refund of Remittance Transfers – 12 CFR 1005.34

|  | Yes | No | NA |
|---|---|---|---|
| 48. Does the provider comply with any oral or written request to cancel a remittance transfer (except for transfers scheduled three or more business days before the date of transfer) from the sender that is received no later than 30 minutes after the sender makes payment in connection with the remittance transfer? (12 CFR 1005.34(a)) | ☐ | ☐ | ☐ |

NOTE: The request to cancel must enable the provider to identify the sender's name and address or telephone number and the particular transfer to be cancelled, and the transferred funds must not have been picked up by the designated recipient or deposited into an account of the designated recipient. (12 CFR 1005.34(a)(1) and (2))

# Interagency
# Examination Checklist                                    EFTA

|  |  | Yes | No | NA |
|---|---|---|---|---|
| 49. | If a sender provides a timely request to cancel a remittance transfer, does the provider refund all funds provided by the sender in connection with the remittance transfer at no additional cost to the sender, within three business days of receiving the request? (12 CFR 1005.34(b)) | ☐ | ☐ | ☐ |

NOTE: The funds to be refunded include any fees and, to the extent not prohibited by law, taxes that have been imposed for the transfer, whether the fee or tax was assessed by the provider or a third party, such as an intermediary institution, the agent or bank in the recipient country, or a state or other governmental body. (12 CFR 1005.34(b))

## Acts of agents – 12 CFR 1005.35

|  |  | Yes | No | NA |
|---|---|---|---|---|
| 50. | Has the provider established and maintained policies or procedures, including policies, procedures for compliance, or other appropriate oversight measures designed to ensure compliance by an agent or authorized delegate acting for such provider? | ☐ | ☐ | ☐ |

Consider:

|  | Yes | No | NA |
|---|---|---|---|
| • The degree of control the agent exercises over the remittance transfer activities performed on the provider's behalf; | ☐ | ☐ | ☐ |
| • The quality and frequency of training provided to ensure that agents are aware of the regulatory requirements and the provider's internal policy guidelines; and | ☐ | ☐ | ☐ |
| • The adequacy of the provider's oversight of agents' activities. | ☐ | ☐ | ☐ |

# Interagency
# Examination Checklist                                    EFTA

|  | Yes | No | NA |
|---|---|---|---|

## Transfers Scheduled Before the Date of Transfer – 12 CFR 1005.36

51. For one-time transfers scheduled five or more business days in advance or for the first in a series of preauthorized remittance transfers, does the provider provide either a pre-payment disclosure and a receipt or a combined disclosure at the time the sender requests the transfer but prior to payment? (12 CFR 1005.36(a)(1)(i)) ☐ ☐ ☐

    NOTE: If any of the disclosures provided contain estimates, the provider must mail or deliver an additional receipt no later than one business day after the date of the transfer. If the transfer involves the transfer of funds from the sender's account held by the provider, this additional receipt may be provided on or with the next periodic statement for that account, or within 30 days after the date of the transfer if a periodic statement is not provided. (12 CFR 1005.36(a)(1)(ii))

52. For each subsequent preauthorized remittance transfer, does the provider provide an updated receipt if any of the information (other than temporal disclosures or disclosures that are permitted to be estimated) on the most recent receipt is no longer accurate? (12 CFR 1005.36(a)(2)(i)) ☐ ☐ ☐

    NOTE: The receipt must clearly and conspicuously indicate that it contains updated disclosures and must be mailed or delivered to the sender within a reasonable time prior to the scheduled date of the next subsequent preauthorized remittance transfer. A disclosure that is mailed no later than ten business days or hand or electronically delivered no later than five business days is deemed to have been provided within a reasonable time. (12 CFR 1005.36(a)(2)(i) and Comment 36(a)(2)-3)

53. If there is no updated information and the remittance transfer does not involve the transfer of funds from the sender's account held by the provider, does the provider mail or deliver to the sender a receipt no later than one business day after the date of the transfer for each subsequent preauthorized transfer? (12 CFR 1005.36(a)(2)(ii)) ☐ ☐ ☐

# Interagency
# Examination Checklist                                    EFTA

|  |  | Yes | No | NA |
|---|---|---|---|---|
| 54. | If there is no updated information and the remittance transfer involves the transfer of funds from the sender's account held by the provider, is the receipt provided on or with the next periodic statement for that account, or within 30 days after the date of the transfer if a periodic statement is not provided? (12 CFR 1005.36(a)(2)(ii)) | ☐ | ☐ | ☐ |
| 55. | For any subsequent transfer in a series of preauthorized remittance transfers, does the provider disclose the date of the subsequent transfer using the term "Future Transfer Date" or a substantially similar term, a statement of the sender's cancellation rights, and the name, telephone number(s), and website of the remittance transfer provider no more than 12 months, and no less than five business days prior to, the date of the subsequent preauthorized remittance transfer? (12 CFR 1005.36(d)) | ☐ | ☐ | ☐ |

NOTE: While the rule generally provides flexibility as to when and where future transfer dates may be disclosed, for any subsequent preauthorized remittance transfer for which the date of transfer is four or fewer business days after the date payment is made, the disclosure must generally be provided on or with the receipt for the initial transfer in that series. (12 CFR 1005.36(d)(2)(ii))

| 56. | Does the provider comply with any oral or written request to cancel any remittance transfer scheduled by the sender at least three business days before the date of the remittance transfer? (12 CFR 1005.36(c)) | ☐ | ☐ | ☐ |

NOTE: The request to cancel must:
- Enable the provider to identify the sender's name and address or telephone number and the particular transfer to be cancelled; **and**
- Be received by the provider at least three business days before the scheduled date of the remittance transfer. (12 CFR 1005.36(c))

## Examiner Conclusions

[Click&type]