# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,

                Plaintiff,

                v.

CITIBANK, N.A.,

                Defendant.

Case No. 24 Civ. 0659

## MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF DEFENDANT CITIBANK, N.A. TO CERTIFY THE COURT'S JANUARY 21, 2025 ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY

LETITIA JAMES
Attorney General of the
State of New York

Christopher L. Filburn
Assistant Attorney General
Bureau of Consumer Frauds & Protection
28 Liberty Street, 20th Floor
New York, New York 10005
212.416.8303

*Counsel for Plaintiff People of the State
of New York, by Letitia James, Attorney
General of the State of New York*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 3

LEGAL STANDARD......................................................................................................... 6

ARGUMENT ................................................................................................................... 7

I.    CITI HAS NOT SATISFIED THE STATUTORY REQUIREMENTS FOR
      CERTIFICATION NOR SHOWN EXCEPTIONAL CIRCUMSTANCES .................... 7

      A.    Citi's Requested Interlocutory Appeal Would Not Materially Advance But
            Rather Would Needlessly Hinder the Ultimate Termination of this Litigation...... 7

      B.    The Court's Application of the EFTA and Reg. E to the Alleged Facts Does
            Not Present a Controlling Question of Pure Law Justifying Certification ........... 11

            1.    The Ruling Citi Seeks to Appeal Is Not a Controlling One...................... 11

            2.    The Court's Motion to Dismiss Denial Involves Application of Law
                  to Alleged Facts and Is Not Well Suited for Interlocutory Certification.. 14

      C.    Citi's Disagreements with the Court's Resolution of an Issue of First
            Impression Does Not Create Substantial Doubt as to its Correctness ................. 15

II.   THE COURT SHOULD EXERCISE ITS UNFETTERED DISCRETION TO
      MOVE THIS MATTER TOWARDS RESOLUTION ON AN EXPEDITED BASIS.... 17

III.  IF CERTIFICATION IS GRANTED, NO STAY PENDING APPEAL SHOULD BE
      ENTERED AND THE ENTIRE ORDER SHOULD BE CERTIFIED ........................... 19

CONCLUSION.................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*800 Columbia Project Co. LLC v. CMB Wing Lung Bank Ltd.*,
    No. 21 Civ. 278, 2022 WL 17884221 (C.D. Cal. Sep. 19, 2022) ..................................... 9

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
    426 F. Supp. 2d 125 (S.D.N.Y. 2005) ........................................................................... 16

*ATX Debt Fund 1, LLC v. Paul*,
    No. 19 Civ. 8540, 2023 WL 6554363 (S.D.N.Y. Aug. 4, 2023) ..................................... 18

*Balintulo v. Daimler AG*,
    727 F.3d 174 (2d Cir. 2013) .......................................................................................... 15

*Cal. Pub. Employees' Ret. Sys. V. WorldCom, Inc.*,
    368 F.3d 86 (2d Cir. 2004) ............................................................................................ 12

*In re Celsius Network LLC*,
    No. 23 Civ. 523, 2023 WL 2648169 (S.D.N.Y. Mar. 27, 2023) ..................................... 11

*CFPB v. Chou Team Realty LLC*,
    No. 20 Civ. 43, 2020 WL 5540179 (C.D. Cal. Aug. 21, 2020) ...................................... 20

*City of New York v. A-1 Jewelry & Pawn, Inc.*,
    No. 06 Civ. 2233, 2008 WL 630483 (S.D.N.Y. Mar. 4, 2008) ...................................... 20

*In re Facebook, Inc. IPO*,
    986 F. Supp. 2d 524 (S.D.N.Y. 2014) ..................................................................... *passim*

*FHFA v. UBS Americas, Inc.*,
    858 F. Supp. 2d 306, 338 .............................................................................................. 10

*In re Flor*,
    79 F.3d 281 (2d Cir. 1996) ......................................................................................... 6, 15

*Frederick v. N.Y.C.*,
    No. 11 Civ. 469, 2013 WL 310441 (S.D.N.Y. Jan. 24, 2013) ........................... 7, 9, 12, 13

*Isra Fruit Ltd. v. Agrexco Agr. Export Co. Ltd.*,
    804 F.2d 24 (2d Cir. 1986) .............................................................................................. 8

*Japan Line, Ltd. v. Sabre Shipping Corp.*,
    407 F.2d 173 (2d Cir. 1968) .......................................................................................... 11

*Klinghoffer v. S.N.C. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990) ......................................................................................... 7, 11

*Koehler v. Bank of Bermuda Ltd.*,
    101 F.3d 863 (2d Cir. 1996)................................................................. 6, 11, 15

*Laurent v. PricewaterhouseCoopers LLP*,
    No. 06 Civ. 2280, 2014 WL 251986 (S.D.N.Y. Jan. 22, 2014)......................... 12, 12n, 18

*Lopez v. Overtime 1st Ave. Corp.*,
    252 F. Supp. 3d 268 (S.D.N.Y. 2017).............................................................. 18

*Mejia v. Time Warner Cable Inc.*,
    No. 15 Civ. 6445, 2017 WL 5513638 (S.D.N.Y. Nov. 17, 2017) ........................... *passim*

*People v. Gen. Elec. Co.*,
    302 A.D.2d 314 (1st Dep't 2003) ...................................................................... 6

*Peters v. Jinkosolar Holding Co., Ltd.*,
    No. 11 Civ. 7133, 2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) ...................... 6, 7, 11, 16

*Reich v. Lopez*,
    No. 13 Civ. 5307, 2015 WL 1632332 (S.D.N.Y. Apr. 13, 2015).................................... 14

*In re Scotts EZ Seed Litigation*,
    No. 12 Civ. 4727, 2017 WL 6398627 (S.D.N.Y. Aug. 31, 2017) ................................... 10

*S.E.C. v. Coinbase, Inc.*,
    No. 23 Civ. 4738, 2025 WL 40782 (S.D.N.Y. Jan. 7, 2025)................................... 12, 12n

*S.I.P.C. v. Bernard L. Madoff Inv. Secs. LLC*,
    22 Civ. 9597, 2024 WL 1119497 (Mar. 14, 2024) ......................................................... 14

*State v. Princess Prestige Co., Inc.*,
    42 N.Y.2d 104 (1977) ........................................................................................... 5, 6

*In re Subpoena Issued to Dennis Friedman*,
    350 F.3d 65 (2d Cir. 2004)........................................................................................ 19

*Sussman v. I.C. Sys., Inc.*,
    No. 12 Civ. 181, 2013 WL 5863664 (S.D.N.Y. Oct. 30, 2013) .............................. 10, 16

*Westwood Pharms., Inc. v. Nat'l Fule Gas Distr. Corp.*,
    964 F.2d 85 (2d Cir. 1992)........................................................................................ 9

*In re Worldcom, Inc. Secs. Litig.*,
    No. 02 Civ. 3288, 2003 WL 22533398 (S.D.N.Y. Nov. 7, 2003) ................................. 10

*Youngers v. Virtus Inv. Partners Inc.*,
    228 F. Supp. 3d 295 (S.D.N.Y. 2017)....................................................................... 11, 12

**STATUTES**

12 U.S.C. § 1292 ......................................................................................................... 6

15 U.S.C. § 6801 ......................................................................................................... 21

15 U.S.C. § 6807 ......................................................................................................... 21

N.Y. Exec. Law § 63(12) ............................................................................................. 5

N.Y. U.C.C. § 4A-108 ................................................................................................ 17

N.Y. U.C.C. § 4A-202 .................................................................................................. 9

N.Y. U.C.C. § 4A-204 .................................................................................................. 8

N.Y. U.C.C., art. 4A, Official Comment ................................................................... 17

S. Rep. 95-915 (May 26, 1978) .................................................................................. 17

**RULES & REGULATIONS**

12 C.F.R. § 210.25 ............................................................................................... 13, 17

12 C.F.R. Part 30, App. B .......................................................................................... 21

16 C.F.R. § 681.1 ....................................................................................................... 22

42 Fed. Reg. 31763 (Jun. 23, 1977) .......................................................................... 17

72 Fed. Reg. 63753 (Nov. 9, 2007) ........................................................................... 21

CPLR 213 ..................................................................................................................... 8

**OTHER AUTHORITIES**

The Clearing House, *CHIPS Rules and Administrative Procedure* (Mar. 1, 2024) ................... 13n

## **INTRODUCTION**

This case concerns consumers whose lives have been upended by their bank's failure to prevent enormous financial losses from fraudulent transactions that they did not make, did not authorize, and did not even know about. On January 21, 2025, the Court held that the Complaint filed by the New York State Office of the Attorney General (the "OAG") alleges repeated violations by Defendant Citibank, N.A. ("Citi") of the federal Electronic Fund Transfer Act, or EFTA, and its implementing Reg. E. The Court's ruling ends a multi-year effort by Citi to escape its own liability under federal law for countless consumer transactions by exploiting what Congress intended as a narrow clarification regarding bank-to-bank wire networks. As a result, this matter is primed for expedient resolution: The EFTA and Reg. E impose strict liability on banks such as Citi to provisionally credit and reimburse consumers for unauthorized electronic fund transfers, or EFTs, including EFTs made in connection with fraudulent wire transfers, as this Court held. Citi does not dispute that it provided no such credits or reimbursements for these unauthorized EFTs. And any remaining discovery will be targeted due to the strict liability imposed, while relief can be handled through a final order directing a post-judgment accounting and reimbursement.

Defendant Citi now seeks to disrupt this orderly process and any effort to achieve prompt resolution through its motion for certification of an interlocutory appeal—along with a motion to stay, the sole purpose of which will be to delay justice for suffering consumers. Remarkably, Citi seeks this extraordinary relief without ever grappling with what would occur were Citi to prevail on any appeal (which it would not): the scope of this action would not shrink; the issues before the Court would not become less complex; and discovery would in no way be narrowed.

That is because a ruling by the Second Circuit that the EFTA and Reg. E do not govern the unauthorized EFTs at issue would not end the OAG's action to hold Citi accountable for its failures to protect customers and safeguard their savings. Rather, such a ruling would reinstate the OAG's

claim that Citi has repeatedly violated Article 4A of the Uniform Commercial Code ("UCC")—a claim that was dismissed without prejudice and with leave to amend based solely on the Court's ruling that the EFTA and Reg. E, not the UCC, apply. The OAG's Article 4A claim concerns Citi's inept and ineffective security procedures to verify electronically initiated wire transfer activity and would produce a markedly different litigation than this one. No strict liability. No undisputed facts. And discovery that would involve, at minimum, a fact-intensive inquiry into Citi's security procedures, an examination of banking industry practices, a likely battle of the experts, and a review of unauthorized transactions to determine how scammers were able to circumvent the insufficient and ineffective attempts that Citi made to protect vulnerable consumers.

Set in this proper context, Citi's motion fails to satisfy even one—let alone all three—of the enumerated statutory factors required to justify certification of an interlocutory appeal:

*First*, Citi's requested relief would delay, not expedite, final termination. Either Citi would fail on appeal and this case would have languished needlessly, depriving consumers of relief to which they are legally entitled, or Citi would prevail and a year or more would elapse during which the parties could have been engaged in discovery that would indisputably remain relevant in all events. By contrast, proceeding expeditiously to final judgment on all claims will promote the orderly administration of justice. And even were the Second Circuit to hold after final judgment that the EFTA and Reg. E do not apply, there would be minimal loss of efficiency or resources because virtually all of the evidence that will be developed in this litigation or through a post-judgment accounting would be highly relevant and probative of the OAG's Article 4A claim.

*Second*, Citi's proposed appeal does not concern a controlling issue that is a pure question of law. A controlling issue for these purposes is one that terminates litigation, narrows disputes, or provides needed appellate guidance. The appeal Citi seeks would do no such thing. Moreover,

the Court's motion to dismiss denial was an application of law to complicated facts in which the Court relied on the Complaint's allegations as to how wire transfers work—allegations with which Citi has expressed disagreement. If Citi does not contest those allegations, it should state so plainly. If Citi does, any appellate review will be aided by full development of the factual record.

*Third*, while Citi (and its amici) continue to vigorously disagree with the Court's denial of the motion to dismiss, neither their disagreement nor their vigor are bases for the extraordinary relief Citi seeks. Any supposed novelty does not itself create an immediately appealable issue, nor should Citi benefit from having manufactured that novelty by misapplying the law for years rather than implementing key consumer protections. Here, the motion reiterates arguments that the Court already heard and rejected—it cannot show a substantial likelihood of error. And any hypothetical concerns regarding the effects of the Court's denial on the banking industry are dubious at best and lack support, particularly as Citi and other banks have maintained practices to comply with the EFTA and Reg. E for other EFTs, including certain wire transfers, for decades.

Citi's motion should be denied, and the Court should exercise its unfettered discretion to place this action on an expedited path through discovery to trial and judgment.

## BACKGROUND

Consumers who enroll in online or mobile banking with Citi agree to adhesive online terms and conditions. (Complaint ¶¶ 11, 56, 84, ECF No. 1 (Jan. 30, 2024) (cited as "¶ __").) Those terms and conditions state that EFTs will be verified through usernames and passwords, while Citi "may" in its sole discretion use other verification tools. (¶¶ 84–85, 88–89.) The Complaint alleges that Citi's discretionary tools are wholly inadequate due to many flaws, including that Citi does not use enhanced verification—such as calling consumers or requiring in-branch confirmation—in the face of significant red flags such as anomalous activity (¶¶ 105–06), consolidation of funds (¶ 103), or changes to passwords (¶¶ 101–02). The Complaint alleges that consumers have account

agreements with Citi that do not permit online wire transfers but that Citi allows scammers to alter those agreements and engage in such transfers. (¶¶ 92, 126–28, 145–46, 171–72, 199–202.) The Complaint alleges that Citi fails to prevent fraudulent activity even after consumers raise the alarm. (¶¶ 139–44, 182–87, 253–57.) And the Complaint alleges that, following consumers' losses of significant sums, Citi neither provisionally credits nor reimburses accounts. (¶¶ 267–71.)

The results for consumers are devastating. Consumers face a myriad of complex threats, from sophisticated phishing scams to malware attacks to SIM swaps through which scammers gain access to online or mobile banking. (¶¶ 29–32.) Though consumers may at times be deceived into sharing certain information—though not in all cases (¶¶ 123–38, 168–81, 217–31)—at no time do harmed consumers know about or authorize these transactions (¶¶ 268–70). For example:

- Consumer A maintained an account with Citi that did not permit online wire transfers but, after clicking on a phishing link, lost $40,000 in a fraudulent transaction *after* a scammer altered her password, executed a new account agreement, and attempted but failed a $39,999 transfer. (¶¶ 123–38.)

- Consumer E maintained an account with Citi that did not permit online wire transfers but, following an illegal SIM swap, lost $50,000 in a fraudulent transaction that left her account at a near $0 balance *after* a scammer altered her password and executed a new account agreement. (¶¶ 168–81.)

- Consumer H had never sent a wire in over 30 years of banking with Citi but, after sharing codes with a scammer pretending to be Citi, lost $35,000 in a fraudulent transaction *after* the scammer altered her password and emptied her three savings accounts and *after* Citi attempted to contact Consumer H on the phone but she did not answer while at work. (¶¶ 217–31.)

These and countless other consumers who banked with Citi have been without these stolen funds, which in many cases amounted to consumers' life savings at the time, for several years.

The OAG filed this action in response to complaints by these and other consumers. The Complaint alleges that Citi does not provisionally credit or reimburse harmed consumers (¶¶ 267–71)—facts that Citi has not disputed. Based on these allegations, the OAG brings claims under New York's Executive Law § 63(12) for repeated and persistent violations of the EFTA and Reg.

4

E. The Complaint also alleges facts establishing that Citi's security procedures are deeply flawed because Citi permits scammers to execute large-dollar, fraudulent transactions that are entirely out of line with consumers' banking history and with insufficient effort to directly verify with consumers—facts that Citi has disputed. Based on these facts, the OAG brings an Executive Law § 63(12) claim for repeated and persistent violations of Article 4A of the UCC.

On January 21, 2025, the Court denied Citi's motion to dismiss the OAG's claims for violations of the EFTA and Reg. E. (Opinion and Order at 8–36, ECF No. 49 (Jan. 21, 2025) (cited as "Op. __").) With respect to the OAG's Article 4A claim, the Court granted the motion to dismiss solely on the ground that the EFTs "at issue in this case are governed by the EFTA because they do not occur on the wire network" and thus that the UCC was inapplicable (*id*. at 48), but did so without prejudice and while granting leave to amend the Complaint (*id*. at 49).

The path to resolution of the OAG's claims is straightforward. New York's Executive Law requires that the OAG establish that Citi's violations of law were "repeated," meaning that they "affect[ed] more than one person," and "persistent," meaning there was a "continuance or carrying on" of the illegal activity. N.Y. Exec. Law § 63(12). For the former, there is no specific numerical threshold, *State v. Princess Prestige Co., Inc.*, 42 N.Y.2d 104, 107 (1977), while for the latter Citi admits that it did not adhere to the EFTA or Reg. E. The Complaint identifies ten consumers whose facts plainly demonstrate EFTA and Reg. E violations (*see* ¶¶ 123–262), while the OAG is prepared to submit evidence concerning dozens of additional violations. Thus, contrary to Citi's assertions in its motion to certify (*see* Mem. of Law 9–11, ECF No. 55 (Feb. 18, 2025) (cited as "Mot. __")), this matter is primed for expedient resolution of the merits.

Moreover, New York's Executive Law is equitable and authorizes the Court to "award the relief applied for or so much thereof as it may deem proper." N.Y. Exec. Law § 63(12); *see*

*Princess Prestige*, 42 N.Y.2d at 108 ("remedial orders" under Section 63(12) are "addressed to the sound judicial discretion of the court"). Here, because damages are straightforward and require no complex calculations, the Court can readily enter a final (and appealable) judgment requiring an independent audit of Citi's banking records to identify all affected consumers and directing Citi to pay restitution. *People v. Gen. Elec. Co.*, 302 A.D.2d 314, 316 (1st Dep't 2003).

## LEGAL STANDARD

Motions to certify for interlocutory appeal must demonstrate (i) that the order "involves a controlling question of law" (ii) "as to which there is substantial ground for difference of opinion" and (iii) "that an immediate appeal" will "materially advance the ultimate termination of the litigation." 12 U.S.C. § 1292(b). As the movant, Citi has "the burden of showing that all three of the substantive criteria of § 1292(b) are met." *Mejia v. Time Warner Cable Inc.*, No. 15 Civ. 6445, 2017 WL 5513638, at *2 (S.D.N.Y. Nov. 17, 2017) (Oetken, J.). The Court "cannot certify a decision if the requirements of Section 1292(b) are not met." *Peters v. Jinkosolar Holding Co., Ltd.*, No. 11 Civ. 7133, 2012 WL 946875, at *15 (S.D.N.Y. Mar. 19, 2012) (Oetken, J).

Beyond the three statutory mandated showings set forth in Section 1292(b), the Second Circuit has "repeatedly cautioned" that "use of this certification procedure should be strictly limited because only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (quotations omitted). Consistent with the "basic tenet of federal law to delay appellate review until a final judgment has been entered," certification of interlocutory appeal thus remains "a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). Applying these principles, this Court has held that certification "is limited to extraordinary cases where appellate review might avoid protracted and expensive litigation." *Mejia*, 2017 WL 5513638 at *2.

6

Finally, "even when the elements of Section 1292(b) are satisfied, the district court retains unfettered discretion to deny certification." *Id*. (quotations omitted). "Such unfettered discretion can be for 'any reason, including docket congestion' and 'the system-wide costs and benefits of allowing the appeal.'" *In re Facebook, Inc. IPO*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)).

## ARGUMENT

## I. CITI HAS NOT SATISFIED THE STATUTORY REQUIREMENTS FOR CERTIFICATION NOR SHOWN EXCEPTIONAL CIRCUMSTANCES

As detailed below, Citi has not satisfied its burden to establish that any of the Section 1292(b) factors are met, let alone all three, nor has it shown extraordinary circumstances.

### A. Citi's Requested Interlocutory Appeal Would Not Materially Advance But Rather Would Needlessly Hinder the Ultimate Termination of this Litigation

Though appearing as the final factor in Section 1292(b), courts "place particular weight on whether immediate appeal will materially advance the ultimate termination of the litigation." *In re Facebook*, 986 F. Supp. 2d at 531. This is because "the use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation." *Frederick v. N.Y.C.*, No. 11 Civ. 469, 2013 WL 310441, at *5 (S.D.N.Y. Jan. 24, 2013) (Oetken, J.; quotations omitted).

At the outset, the fact that the proposed appeal might, if Citi were to prevail, result in the dismissal of certain claims "is not an exceptional circumstance" in itself because "reversal of an opinion denying a motion to dismiss will always contain the possibility of a dismissal." *In re Facebook*, 986 F. Supp. 2d at 531. Instead, to satisfy the material advancement prong, Citi must show that its appeal would "advance the time for trial or to shorten the time required for trial." *Peters*, 2012 WL 946875 at *13. The motion makes no such showing, nor could it.

The end result Citi might obtain through certification is reinstatement of the OAG's claim that Citi repeatedly and persistently violated Article 4A of the UCC (¶¶ 288–97)—as Citi itself

briefly concedes (*see* Mot. 10 ("Under Article 4A, discovery would instead focus on whether Citibank employed 'commercially reasonable' antifraud procedures."). But Citi's motion entirely fails to grapple with the implications that follow; namely, renewed litigation over the ***exact same factual issues***, plus other significant, disputed facts ***that are not currently in this case***.

For one, the OAG's claim based on Citi's violations of Article 4A involves the same consumers, the same unauthorized transactions, and the same proposed relief as the OAG's claims premised on the EFTA and Reg. E. (¶ 14(a).) Citi's motion expresses concern that the Complaint seeks to hold Citi liable "for six years of alleged fraud" (Mot. 10), but that is true under either the EFTA and Reg. E or under Article 4A, as both are subject to the six-year statute of limitations governing the OAG's Executive Law § 63(12) claims. CPLR 213(9). Given these "closely related" claims, it is "quite unlikely" that appeal would materially advance this litigation: trial would not "be concluded with any appreciable saving of time" and discovery would "overlap." *Isra Fruit Ltd. v. Agrexco Agr. Export Co. Ltd.*, 804 F.2d 24, 25–26 (2d Cir. 1986); *see In re Facebook*, 986 F. Supp. 2d at 532 (no certification if appeal would "not dispose of all issues" and "not streamline discovery" because remaining claims are based on "same underlying factual events").

The discovery in this action to substantiate the OAG's surviving claims, moreover, will cover the very same ground that would need to be covered through the substantially broader discovery that would be required under Article 4A. Citi's motion specifically identifies: (i) whether each transaction was unauthorized, (ii) the relief for each, (iii) whether affidavits were required, and (iv) whether Citi made false statements to consumers. (Mot. 9–11.) But whether EFTs were unauthorized also would be central to determining Article 4A liability, N.Y. U.C.C. § 4A-204(1), while the relief—restitution—would be transaction-specific and identical. Consumer affidavits, if they exist, would be relevant evidence of what happened and what security procedures Citi may

have employed. And Citi's communications with consumers would be even more relevant under Article 4A, which concerns what security procedures Citi in fact used, whether Citi in fact acted in good faith, and whether Citi in fact adhered to consumers' instructions. *Id.* § 4A-202(2). In these circumstances, Citi cannot establish that an appeal would materially advance the finality of this litigation. *See Westwood Pharms., Inc. v. Nat'l Fule Gas Distr. Corp.*, 964 F.2d 85, 88–89 (2d Cir. 1992) (urging "district courts to exercise great care in making a § 1292(b) certification" where "many of the same factual issues" will "still have to be litigated" for other claims).

To the contrary, any successful appeal by Citi would delay termination of this litigation by introducing new factual issues and fact disputes, increasing the discovery that would be needed. A "certified question must substantially reduce the amount of litigation left in the case." *Frederick*, 2013 WL 310441 at \*6 (quotations omitted). But under Article 4A, Citi, to avoid liability, would for each transaction at issue have to prove ***what*** security procedure it applied, whether it did so ***in good faith***, and whether it acted ***in compliance with any instruction***, N.Y. U.C.C. § 4A-202(2)—factual issues that are entirely irrelevant here.[1] Moreover, litigating the question of commercial reasonableness would require extensive discovery that is utterly unnecessary to demonstrate liability in this litigation. This would include discovery into consumers' banking history to determine "the circumstances of the customer known to" Citi and discovery into the security protocols and processes of third-party banks that are "similarly situated" to Citi, *id.* § 4A-202(3), likely culminating in dueling experts to aid the Court, *see, e.g.*, *800 Columbia Project Co. LLC v. CMB Wing Lung Bank Ltd.*, No. 21 Civ. 278, 2022 WL 17884221, at \*13 (C.D. Cal. Sep. 19, 2022) (expert testimony on "industry standards will be particularly instructive" on the question of whether security procedures were commercially reasonable). Citi's requested appeal "would not

---

[1]    For these same reasons, Citi's suggestion that an appeal would avoid "a long trial" (Mot. 23) is meritless.

significantly reduce the issues remaining in the case" and its motion should be denied. *Sussman v. I.C. Sys., Inc.*, No. 12 Civ. 181, 2013 WL 5863664, at *3 (S.D.N.Y. Oct. 30, 2013).

Beyond Article 4A, litigation of the OAG's remaining fraud and deception claims that are unrelated to the EFTA also favors denial of the motion. These claims will be unaffected by any interlocutory appeal, as Citi concedes (Mot. 9). As with the OAG's claims premised on the EFTA and Reg. E, these claims also will require targeted discovery to identify affected consumers and to examine the parties' communications for deceptive statements. "Given the similarity of issues between the claims" that Citi seeks "to have certified and those" that "will remain in this litigation, an appeal on these issues is unlikely to advance the termination of the litigation." *In re Worldcom, Inc. Secs. Litig.*, No. 02 Civ. 3288, 2003 WL 22533398, at *8 (S.D.N.Y. Nov. 7, 2003).

Citi's passing suggestion that it has shown material advancement because its appeal would increase the likelihood of settlement (Mot. 22) is entirely unpersuasive. This case is not at all like *FHFA v. UBS Americas, Inc.*, one of seventeen actions related to packaging and selling subprime mortgages in which the district court granted certification to "remove a cloud of legal uncertainty that hangs over the other 17 actions" and "facilitate and streamline motion practice." 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012). Nor is the OAG comparable to the plaintiffs in *In re Scotts EZ Seed Litigation*, where the certified question was whether statutory damages were available, resolution of which could "dramatically" decrease "the value of the litigation." No. 12 Civ. 4727, 2017 WL 6398627, at *2 (S.D.N.Y. Aug. 31, 2017). Here, the OAG remains capable of pursuing remedies on behalf of the same consumers for Article 4A violations. If anything, the maximum opportunity for settlement is now, when the case involves strict liability and undisputed facts.

In sum, Citi does not seek to materially advance this litigation but to delay judgment as to its own liability for the harms suffered by countless consumers—whether under the EFTA and

Reg. E or under the UCC—a fact evinced most clearly by its motion to stay. *See Japan Line, Ltd. v. Sabre Shipping Corp.*, 407 F.2d 173, 176 (2d Cir. 1968) ("It is difficult to perceive how a stay of this litigation would materially advance the ultimate termination of the litigation.") (Moore, J., concurring). But even in the absence of any stay, Citi's burden is to establish material ***advancement***—as this Court has held: "simply failing to delay the litigation is insufficient." *Peters*, 2012 WL 946875 at *13. Here, proceeding expeditiously to trial, rather than to a disruptive interlocutory appeal, will further Congress's goal in enacting Section 1292(b) in the first place, which was "saving trial court time by avoiding fruitless litigation." *Koehler*, 101 F.3d at 866. Citi, if it still desires, can vindicate its right to appeal after judgment, and if it then prevails, none of the work in this litigation—identifying affected consumers and determining restitution in a post-judgment accounting—will be fruitless, as it would all be probative of the OAG's Article 4A claim. Citi's motion should be denied. *See In re Celsius Network LLC*, No. 23 Civ. 523, 2023 WL 2648169, at *2 (S.D.N.Y. Mar. 27, 2023) ("Because the [material advancement] factor of the § 1292(b) test is not met, the Court need not address the other factors.") (Oetken, J.).

**B.    The Court's Application of the EFTA and Reg. E to the Alleged Facts Does Not Present a Controlling Question of Pure Law Justifying Certification**

Citi's motion also fails to establish that the Court's denial of the motion to dismiss presents either a controlling question or a question of pure law, both of which are required.

### 1.    The Ruling Citi Seeks to Appeal Is Not a Controlling One

Citi's requested appeal does not concern a "controlling" question in this litigation:

***First***, a "question of law is controlling if reversal . . . would terminate the action." *Youngers v. Virtus Inv. Partners Inc.*, 228 F. Supp. 3d 295, 298 (S.D.N.Y. 2017) (quotations omitted; citing *Klinghoffer*, 921 F. 2d at 24). Here, Citi concedes that even were it to prevail on appeal the OAG will remain able to pursue its Executive Law § 63(12) claims based on violations of Article 4A

(Mot. 10), and portions of its fraud and deception claims (*id.* at 9). This alone is fatal. *See Frederick*, 2013 WL 310441 at *6 (denying certification where claims "would survive" and thus "it cannot even be said that reversal" would "terminate the action") (quotations omitted).

**Second**, a question of law is controlling if it would "significantly affect the conduct of" the litigation, which means, according to Citi's authority, that reversal would "dramatically **reduce the scope** of" the case. *S.E.C. v. Coinbase, Inc.*, No. 23 Civ. 4738, 2025 WL 40782, at *8 (S.D.N.Y. Jan. 7, 2025) (emphasis added; quotations omitted). But as set forth above, reversal would not reduce the scope of this action, as the OAG has pled a viable alternative claim that concerns the same consumers, same timeframe, and same transactions.[2] Indeed, this Court has held that "questions **are not controlling** if Plaintiffs have independent and alternative grounds for pursuing their claims." *Laurent v. PricewaterhouseCoopers LLP*, No. 06 Civ. 2280, 2014 WL 251986, at *1 (S.D.N.Y. Jan. 22, 2014) (Oetken, J.; emphasis added; citing *Cal. Pub. Employees' Ret. Sys. V. WorldCom, Inc.*, 368 F.3d 86, 95–96 (2d Cir. 2004))[3]; *see also Youngers*, 228 F. Supp. 3d at 298 (question of law is not controlling where "an alternative theory" of liability exists).

**Finally**, Citi's contention that the Court's denial presents a controlling question because appellate guidance is necessary (Mot. 11) is entirely unsubstantiated. The Court rightly observed that the question of whether the EFTA and Reg. E apply to the EFTs alleged here is one "of first impression." (Op. 10.) But the interlocutory procedure "was not intended as a vehicle to provide

---

[2]   The grant of certification in *Coinbase* is distinguishable on additional grounds, including "conflicting authority" in the form of "differing rulings by district court judges within this Circuit," *Coinbase*, 2025 WL 40782 at *9, which do not exist here, and that reversal would eliminate "three quarters of the SEC's allegations," *id.* at *12.

[3]   This Court's grant of certification in *Laurent* is readily distinguishable on other grounds, including that: (i) in that case reversal "would terminate this action," 2014 WL 251986 at *1; (ii) the challenged order expressly disagreed with a separate Circuit decision that "adopts a different interpretation of the relevant" statutory language, *id.* at *2, in contrast to this Court ruling here on "a question of first impression," (Op. 10); and (iii) resolution would require "a complex accounting of 'whipsaw' damages," *Laurent*, 2014 WL 251986 at *2, whereas restitution in this action is straightforward and based on the amount of each fraudulent transaction, plus interest.

early review of difficult rulings in hard cases." *Frederick*, 2013 WL 310441 at *5 (quotations omitted). Citi obliquely references the opening of "floodgates for future litigation" but it cites no examples at all. (Mot. 11). And a search of state and federal cases for "commercially reasonable" and "security procedure" produces a total of 150 opinions over nearly forty years, the vast majority of which involve commercial parties and will not implicate the EFTA or Reg. E at all.

Moreover, while Citi protests that the Court's ruling will mark a sea change in the banking industry, it fails to articulate any actual effects. This is unsurprising: Citi and other major banks have decades of experience with online and mobile EFTs subject to the EFTA and Reg. E, such as bill payments and peer-to-peer transfers over Zelle or other platforms. The banks also have applied the EFTA and Reg. E to wire transfers that qualify as remittance transfers since at least 2010, as Citi concedes (*see* Mot. 16.)  Redeploying the tools Citi uses in these transactions to all wire transfers electronically initiated by consumers should not be a significant burden.

Similarly, with twenty-five pages to advise the Court on behalf of the banking industry, Citi's amici provide no concrete examples and offer merely a few pages of theorizing about the supposedly "dramatic" consequences of this Court's denial of the motion to dismiss. (Brief of Amici Curiae at 18–20, ECF No. 60-1 (Feb. 25, 2025).) And even that theorizing—which focuses on the supposed loss of Article 4A coverage for banks that participate in the wire networks—is wrong. For Fedwire, Reg. J preempts Section 4A-108 of the UCC for banks involved in Fedwire transfers, 12 C.F.R. § 210.25(a)–(b), meaning that the Court's holding has no effect on the banks at all. CHIPS rules, meanwhile, provide that Article 4A governs the participating banks "regardless of whether the payment message is part of a funds transfer that is" subject to the EFTA.[4]

---

[4]    The Clearing House, *CHIPS Rules and Administrative Procedures* § 3 (Mar. 1, 2024), *available at* https://www.theclearinghouse.org/payment-systems/CHIPS/CHIPS-Resources (last accessed Feb. 28, 2025).

In contrast to theoretical harms, Citi's suggestion that its appeal would cause "no harm" but merely maintain the status quo (Mot. 2) is absurd. Consumers remain in serious financial distress, working longer hours or additional jobs, and relying on high-cost credit, merely to get by. Citi, meanwhile, continues to deny reimbursement, even in the wake of the Court's ruling. This case should proceed expeditiously to the merits; it should not remain indefinitely stayed.

**2.    The Court's Motion to Dismiss Denial Involves Application of Law to Alleged Facts and Is Not Well Suited for Interlocutory Certification**

Citi likewise fails to establish a controlling question because it cannot show that the issue is one of pure law, as it must (*see* Mot. 7). Questions "regarding application of the appropriate law to the relevant facts are generally not suitable for certification." *In re Facebook*, 986 F. Supp. 2d at 536. Here, while the Court engaged in statutory interpretation, it did so in the context of specific allegations about the transactions. And because Citi appears to dispute those allegations, the Second Circuit would benefit from full development of the factual record before appeal.

In denying Citi's motion to dismiss, the Court did not interpret the EFTA in a vacuum—it applied the EFTA to transactions alleged through a "chart included in the complaint" that the Court set forth again in the Opinion. (Op. 9.) The Court further relied on the OAG's allegations "that consumers requesting wire transfers may pay their banks" through "electronic requests." (*Id*. 18.) For these reasons, on any appeal the Second Circuit likewise "would be required to review" this same "application of the law to the allegations" in the Complaint, which is "not an appropriate issue for interlocutory review." *Reich v. Lopez*, No. 13 Civ. 5307, 2015 WL 1632332, at *4 (S.D.N.Y. Apr. 13, 2015). At bottom, how the flows of funds at issue are related and interact is a question of fact, and the question of which laws apply to which flows of funds thus is a classic mixed question of law and fact. *See S.I.P.C. v. Bernard L. Madoff Inv. Secs. LLC*, 22 Civ. 9597,

2024 WL 1119497, at *7 (S.D.N.Y. Mar. 14, 2024) (denying certification because "determination of whether certain transactions are 'interrelated' requires a fact-bound analysis").

Even were the question as to whether the EFTA and Reg. E or Article 4A apply considered a purely legal one, the Court should exercise its unfettered discretion to deny interlocutory review. Citi has indicated, both in motion to dismiss briefing and in moving for interlocutory appeal, that it disputes the OAG's allegations as to how the electronic wire transactions at issue work. (*See* Mot. 4 ("The NYAG's lawsuit is premised on a novel theory that a wire transfer is actually at least three separate transfers . . ."); *see also* Mem. of Law at 13, ECF No. 12 (Apr. 2, 2024) (describing chart as an "artificial deconstruction of a wire transfer").) Citi presumably will attempt to show otherwise as a factual matter at trial. Under such circumstances, appellate review is most suitable upon development of the full factual record. *See Koehler*, 101 F.3d at 866 (observing that where the question at issue "turns on a thorough examination of the facts" interlocutory appeal in inadvisable where taken "on what may turn out to be an incomplete record").

### C.    Citi's Disagreements with the Court's Resolution of an Issue of First Impression Does Not Create Substantial Doubt as to its Correctness

The Second Circuit has held that the "mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient" to satisfy Section 1292(b). *Mejia*, 2017 WL 5513638 at *3 (citing *In re Flor*, 79 F.3d at 284). Citi argues that district courts "should not hesitate to certify an interlocutory appeal" when a decision "involves a new legal question," (Mot. 6), but the Second Circuit opinion on which Citi relies made equally clear that this may be the case ***only*** where a decision also satisfies the statutory criteria. *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013). Citi's motion does not establish either material advancement or the presence of a controlling question. *See supra*. Nor does Citi establish the final element of Section 1292(b), which

requires "substantial doubt that the district court's decision was correct." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 426 F. Supp. 2d 125, 129 (S.D.N.Y. 2005).

Citi's motion repackages the same textual, legal, and historical arguments advanced by Citi and its amici on the motion to dismiss, all of which were discussed in substantial detail and rejected by the Court in over twenty-eight pages the first time around. (*See generally* Op. 8–36.) But "a party that offers only arguments rejected on the initial motion does not meet the second requirement of § 1292(b)." *Sussman*, 2013 WL 5863664 at *3. While it is obvious that Citi and its amici disagree with the Court's holding, interlocutory review is warranted solely in exceptional circumstances and should not be certified "simply to accommodate requests of counsel who are dissatisfied with or inconvenienced by a ruling." *Peters*, 2012 WL 946875 at *15.

For example, Citi argues that the Court erred in focusing on the statutory term "transfer" rather than phrases such as "electronic fund transfer" and "transfer of funds." (Mot. 13.) But this is precisely the statutory interpretation Citi advanced in moving to dismiss (Reply Mem. 5–9, ECF No. 33 (Jun. 25, 2024)), which the Court declined to adopt. Nor, tellingly, has Citi moved for reconsideration of the Court's denial, which would be the appropriate vehicle if Citi genuinely believed that the Court had overlooked a relevant legal or factual matter.

Citi also refers again to court decisions declining to apply the EFTA and Reg. E to wire transfers in some instances. (Mot. 19–20.) But as the Court correctly observed, "none" of the cases concerned "the precise statutory interpretation question at issue," which is "the scope of a 'transfer' that is excluded from the EFTA because it occurs by means of a wire network." (Op. 29.) Citi thus fails to establish "evidence of judicial disagreement." *Mejia*, 2017 WL 5513638 at *4.

Finally, Citi and its amici spill substantial ink reiterating a selective and incomplete history of the EFTA, Article 4A, and various regulatory developments. The OAG will not rehash these

issues in full here and refers the Court to relevant prior briefing on the matter. (*See* Mem. in Opp. 24–27, ECF No. 25 (May 17, 2024); Stmt. of Int. 12–15, ECF No. 28-1 (May 28, 2024).) Rather, the OAG highlights a few key points that Citi and its amici gloss over or get wrong:

- Citi reiterates a point raised at oral argument that Reg. J was adopted before the EFTA and so "Congress had no need to subject wire transfers to EFTA's requirements." (Mot. 13.) But Reg. J at the time ***said nothing whatsoever*** about unauthorized transactions or reimbursement. *See* 42 Fed. Reg. 31763, 31763–66 (Jun. 23, 1977). The reason that Article 4A was adopted a decade ***after*** the EFTA was because businesses still lacked any "comprehensive body of law that defines the rights and obligations that arise from wire transfers." N.Y. U.C.C. art. 4A, Official Comment, Prefatory Note.

- Congress stated—twice—that the clarification at issue here was to exclude from the EFTA "traditional 'wire' transfers ***between banks***." (S. Rep. 95-915, at 4 (May 26, 2978)); *see* Filburn Decl. Ex. C at 37233, ECF No. 26-3 (May 17, 2024) ("would not apply to ***purely*** inter-institutional networks such as the Bank Wire or Fed Wire") (emphasis added throughout).)

- Article 4A's express provision that the UCC "does not apply to a funds transfer any part of which is governed" by the EFTA and Reg. E, N.Y. U.C.C. § 4A-108, makes no sense at all if Citi is correct, as it again argues, that the phrase "transfer of funds" connotes "a complete transaction from one customer to another" (Mot. 14). Nor can Citi explain why Reg. J was subsequently amended to preempt Section 4A-108 and ensure that Reg. J would continue to apply to the banks themselves, 12 C.F.R. § 210.25(a)–(b), if the "complete transaction" is already removed from the EFTA.

For these and other reasons, the Court correctly held that "none of the extrinsic evidence" Citi cites "manifests reliable evidence of the meaning" of the wire clarification while "some of it" in fact "contemplated transfers that would be regulated only in part by the EFTA." (Op. 29).

## II.    THE COURT SHOULD EXERCISE ITS UNFETTERED DISCRETION TO MOVE THIS MATTER TOWARDS RESOLUTION ON AN EXPEDITED BASIS

Even had Citi carried its burden to satisfy all three Section 1292(b) factors and demonstrate extraordinary circumstances warranting immediate appeal—which it has not—the Court "retains unfettered discretion to deny certification." *Mejia*, 2017 WL 5513638. Here, where the litigation can proceed "efficiently to resolution" and "further delay is unwarranted," the Court should

exercise its discretion to move expeditiously towards final judgment. *ATX Debt Fund 1, LLC v. Paul*, No. 19 Civ. 8540, 2023 WL 6554363, at *2 (S.D.N.Y. Aug. 4, 2023).

As detailed above and in the Complaint, countless consumers have lost tens of thousands of dollars or more, often representing their life savings, college funds, or the like, in fraudulent transactions that they did not authorize and were not aware of. (¶¶ 120–262.) Harmed consumers have been forced to find new jobs, rely on high-interest credit, take out student loans, or turn to friends or family to make up these losses—often several times since their losses. In denying the motion to dismiss, the Court has now held that Citi should have reimbursed these consumers under the EFTA and Reg. E, in many cases years ago. There is no ground for needlessly prolonging financial hardship and emotional distress so that a financial institution with more than a trillion dollars in assets can seek an immediate appeal of a straightforward motion to dismiss denial with which it is unhappy. *See Lopez v. Overtime 1st Ave. Corp.*, 252 F. Supp. 3d 268, 273 (S.D.N.Y. 2017) (substantial delay in litigation warrants denial of interlocutory appeal that "will only further delay" recovery and undermine federal statute's "remedial and humanitarian goals").

The purportedly exceptional circumstances the motion lists (Mot. 22–23) do not justify an immediate appeal. Citi predicts a lengthy trial, but as shown above a successful appeal would increase, not decrease, complexity. Citi warns of dire market consequences but offers only vague and hypothetical effects. And Citi refers to "a lengthy accounting of damages" (Mot. 23) but omits the rest of the phrase from this Court's opinion—"upon finding liability **under a contract**," *Laurent*, 2014 WL 251986 at *2 (emphasis added)—that identifies circumstances, inapplicable here, where the need for complex damages calculations flowing from breaches of commercial agreements may be obviated entirely by a finding on appeal that no breach occurred.

### III.    IF CERTIFICATION IS GRANTED, NO STAY PENDING APPEAL SHOULD BE ENTERED AND THE ENTIRE ORDER SHOULD BE CERTIFIED

Were the Court to conclude that its opinion denying Citi's motion to dismiss warrants certification, the OAG respectfully submits that the Court should endeavor to ensure expeditious movement towards final resolution of this action. To this end, the OAG respectfully requests that the Court: (i) deny Citi's motion to stay and (ii) certify the entire order for appeal.

Motion to Stay. With respect to Citi's stay motion, the key factor—judicial economy, as Citi argues as well (Mot. 24)—warrants denial. As detailed above, the OAG's current surviving claims and those that would survive were Citi to prevail on appeal involve the same consumers, transactions, and conduct. There will be no waste by proceeding with the more limited discovery needed to establish repeated and persistent violations of the EFTA and Reg. E, all of which would be relevant to establishing repeated and persistent violations of Article 4A. And to the extent Citi believes that any discovery is burdensome, the Court is capable of resolving such matters in the normal course. *See In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2004) (district courts have "broad discretion to manage the manner in which discovery proceeds").

The remaining factors that courts evaluate when contemplating a stay of proceedings pending appeal likewise weigh against, rather than in support of, Citi's motion:

*First*, the Court already thoroughly considered and found unpersuasive Citi's arguments in denying the motion to dismiss in the first place. (*See* Op. 8–36.) Citi therefore has not made the requisite "strong showing" that it "is likely to succeed" on appeal. (Mot. 24.)

*Second*, for the same reasons that judicial economy disfavors any stay, Citi faces no genuine risk of irreparable harm: discovery of the underlying events will occur whether or not Citi is permitted to appeal now, and whether or not a stay is granted. Nor, for the same reasons noted above, will there be any waste of judicial resources. Citi merely faces the risks any litigant faces,

and "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity." *CFPB v. Chou Team Realty LLC*, No. 20 Civ. 43, 2020 WL 5540179, at *3 (C.D. Cal. Aug. 21, 2020). This is particularly true when the litigation being pursued is in the public interest and endeavors to prevent future harm. *See City of New York v. A-1 Jewelry & Pawn, Inc.*, No. 06 Civ. 2233, 2008 WL 630483, at *2 (S.D.N.Y. Mar. 4, 2008) (denying stay where "danger to the public is alleged" because "the public interest would be served by a prompt trial").

*Third*, Citi's insinuation that the OAG and consumers have long "tolerated" Citi's conduct (Mot. 24–25) is meritless. The OAG flagged these matters promptly in 2023 upon consumers first raising them and conducted its own investigation (in which Citi declined to fully participate) that resulted in this suit less than a year later. And consumers themselves have submitted hundreds of complaints both directly to Citi and to the OAG about Citi's denial of reimbursement in the face of this fraudulent activity. Some consumers also have either attempted or successfully pursued relief based on violations of the EFTA and Reg. E, contrary to Citi's claim (Mot. 25).

Scope of Certification. With respect to certification, the OAG requests—as does Citi (Mot. 23 n.3)—that the Court, should it grant certification, certify the entirety of its order. The OAG is not moving for interlocutory review for many of the same reasons that Citi's motion should be denied. However, were the Court nevertheless to grant certification, the OAG should be permitted to avoid further piecemeal litigation by pursuing now any appeal that otherwise might be taken after judgment. On the merits of the appeal, the OAG respectfully submits that the Court erred in dismissing claims under New York's SHIELD Act (Op. 49–55), as briefly follows:

Scammers' identify thefts involve distinct but equally necessary acts: (i) misappropriation of personal or financial data through penetration of data security safeguards and (ii) misuse of stolen data to engage in unauthorized account activity that evades protocols designed to stop it.

For this reason, the OAG asserts independent claims based on Citi's violations of data security laws and violations of obligations to identify and respond to red flags. *Data-Security*: The Complaint alleges violations of New York's SHIELD Act based on Citi's failure to maintain effective data security safeguards to protect consumers from vulnerabilities that scammers exploit to illicitly access personal and financial data. (¶¶ 303–05.) This claim is based on, among other allegations, repeat infiltration of consumers' accounts without any information being provided (*e.g.*, ¶¶ 124, 169, 198), Citi's failures to address vulnerabilities in its online systems, (*e.g.*, ¶¶ 29–32, 140, 170–72, 199–205, 236, 249), and Citi's poor training of first-line representatives to secure consumers' accounts (*e.g.*, ¶¶ 108–10, 125, 239–40). *Identity-Theft*: The Complaint separately alleges violations of the federal Red Flag Rule based on Citi's failures to develop systems that identify large-dollar transfers executed in conjunction with anomalous account activity as "red flags" of likely identity theft and respond appropriately to mitigate harm. (¶¶ 313–15.)

This distinction is enshrined in federal law. Congress enacted the Gramm-Leach-Bliley Act ("GLBA") both to impose upon banks such as Citi minimum standards for their "affirmative and continuing obligation" to "protect the security and confidentiality of those customers' nonpublic personal information," 15 U.S.C. § 6801, and to permit state laws that provide "greater than the protection provided" by the GLBA's minimum standards without risk of preemption, *id.* § 6807(b). The federal agencies implementing the GLBA promulgated Interagency Guidelines Establishing Information Security Standards (the "Security Standards") to "address standards for developing and implementing administrative, technical, and physical safeguards to protect the security, confidentiality, and integrity of customer information." *E. g.*, 12 C.F.R. Part 30, App. B.

A few years later, Congress amended the Fair Credit Reporting Act ("FCRA") to require federal agencies to jointly adopt the Red Flags Rule. 72 Fed. Reg. 63753 (Nov. 9, 2007). In contrast

to the Security Standards, which concern obligations to implement security practices to protect against breaches and preserve confidentiality, the Red Flags Rule requires adoption of a reactive program to identify when identity thieves may be misusing stolen consumer data and to prevent or mitigate any harm that may flow from such activity. 16 C.F.R. § 681.1(d)(2)(iii).

The granting of Citi's motion to dismiss the OAG's SHIELD Act claim as preempted by the FCRA collapses the established distinction between data security safeguards and Red Flag procedures, treating both as falling under a more generalized rubric of "identity theft" prevention. This is error that warrants an appeal, for at least three reasons: ***First***, the dismissal over-extends preemption beyond what Congress intended by conflating financial institutions' data-security and identity-theft-mitigation obligations, which are distinct. In particular, Congress expressly intended to set minimum federal data security standards while encouraging states to adopt more protective data security protections. ***Second***, dismissal overlooks allegations of Citi's failure to maintain data security safeguards, such as Citi's ineffective responses to vulnerabilities that were subject to repeat exploitation. These independent factual allegations have nothing whatsoever to do with the OAG's claims under the Red Flags Rule based on Citi's inadequate mitigation efforts. ***Finally***, the potential effects of dismissal are not limited to the OAG's claims in this litigation but imperil longstanding consumer protections in the form of data security laws enacted by dozens of states and enforcement of those laws by state attorneys general and financial regulators.

## **CONCLUSION**

The OAG respectfully submits that certification of an interlocutory appeal should be denied. In the alternative, the OAG respectfully requests that, if certification is granted, it should be granted as to the entirety of the Court's January 21, 2025 order and without any stay.

Dated: March 4, 2025

Respectfully submitted,

LETITIA JAMES
Attorney General of the State of New York

By: */s/ Christopher L. Filburn*
Christopher L. Filburn
*Assistant Attorney General*
Bureau of Consumer Frauds & Protection
28 Liberty Street, 20th Floor
New York, New York 10005
Tel.: 212.416.8303
Email: christopher.filburn@ag.ny.gov

Of counsel:

Jane M. Azia
*Bureau Chief*

Laura J. Levine
*Deputy Bureau Chief*

**CERTIFICATION**

CHRISTOPHER L. FILBURN, an attorney duly admitted in the State of New York and authorized to practice before this Court, certifies under Local Civil Rule 7.1(c) as follows:

1.      I am an Assistant Attorney General assigned to the New York State Office of the Attorney General's Bureau of Consumer Frauds and Protection.

2.      The foregoing Memorandum of Law complies with the word count limit set forth in Local Civil Rule 7.1(c) in that it contains, exclusive of caption, index, and signature blocks, 8,018 words, according to the word count function of the word-processing program used to prepare the Memorandum.

Dated: March 4, 2025                          */s/ Christopher L. Filburn*
       New York, New York                     Christopher L. Filburn