UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE PEOPLE OF THE STATE OF NEW
YORK, BY LETITIA JAMES, *Attorney
General of the State of New York*,
                            Plaintiff,

                 -v-

CITIBANK, N.A.,
                            Defendant.

24-CV-659 (JPO)

MEMORANDUM
AND ORDER

---

J. PAUL OETKEN, District Judge:

In this case, brought by the People of the State of New York, by Letitia James, Attorney General of the State of New York ("NYAG"), against Citibank, N.A. ("Citibank"), Citibank moves to certify this Court's Opinion and Order issued on January 21, 2025 for interlocutory appeal to the Court of Appeals for the Second Circuit and to stay the action in the interim. For the reasons that follow, the motion is granted.

**I.    Background**

The Court assumes familiarity with the factual and procedural background of this case. (*See* ECF No. 49 ("January 2025 Order") at 1-7.) NYAG commenced this action on January 30, 2024, asserting claims against Citibank arising from allegedly fraudulent wire transfers executed by third-party scammers from consumer accounts. (*See* ECF No. 1 ("Compl.") ¶¶ 263-325.) In particular, the first cause of action asserted a violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693a *et seq.*, and its implementing regulation, Regulation E, 12 C.F.R. §§ 1005.1 *et seq.* (*Id.* ¶¶ 263-72.) Citibank moved to dismiss the entire complaint—including the first cause of action, on the theory that one provision of the EFTA, 15 U.S.C. § 1693a(7)(B), precludes liability for fraudulent debits (or "Payment Orders") made from a consumer's account

1

to their financial institution in satisfaction of a wire transfer made on the consumer's behalf. (*See* ECF No. 12 at 24-34.)  The Court, though granting the motion to dismiss in other respects, denied it as to the first cause of action, holding that "15 U.S.C. § 1693a(7)(B) does not preclude EFTA liability for a fraudulent Payment Order resulting in a debit from a consumer account in connection with a wire transfer."  (January 25 Order at 34.)

On February 18, 2025, Citibank moved the Court to certify the January 25 Order under 28 U.S.C. § 1292(b) so that it may seek leave from the Second Circuit to file an interlocutory appeal, and for the Court to stay this proceeding in the interim.  (*See* ECF Nos. 54; 55 ("Mem.").)  A group of amici representing banks and other financial institutions sought and was granted leave to file an amicus brief in support of Citibank's motion.  (ECF Nos. 60-1 ("Amicus Br."); 61.)  On March 4, 2025, NYAG opposed the motion.  (ECF No. 64 ("Opp.").)  On March 11, 2025, Citibank replied in further support of the motion.  (ECF No. 66 ("Reply").)

**II.     Discussion**

NYAG moves both for certification of the January 2025 Order for interlocutory appeal and for a stay pending that appeal.  Applying the relevant standards in turn, the Court concludes both certification and a stay pending appeal are warranted in this case.

**A.     Interlocutory Appeal**

Ordinarily, only the final judgment of a district court may be appealed.  *See* 28 U.S.C. § 1291.  However, there exist a few narrow exceptions to that rule, including when a district court certifies that an order "involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  When a district court certifies an order under subsection 1292(b), the court of appeals may grant leave to appeal the order.  *See Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996) ("To

comply with [subsection 1292(b)] requires two steps: first, a trial judge's certification; and, second, an appellate court's grant of leave to appeal the district court's certification.").

To certify an order under subsection 1292(b), a district court must find "(1) that such order involves a controlling question of law (2) as to which there is [] substantial ground for difference of opinion and (3) that an immediate appeal from that order may materially advance the ultimate termination of the litigation." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 529 (S.D.N.Y. 2014). The movant bears the burden of establishing that all three requirements are met. *Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020). Moreover, "even where the three legislative criteria . . . appear to be met, district courts have 'unfettered discretion to deny certification' if other factors counsel against it.'" *Transp. Workers Union of Am., Local 100, AFL-CIO v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 351 (S.D.N.Y. 2005) (citing *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 162-63 (E.D.N.Y. 1999)); *see also Laurent v. PricewaterhouseCoopers LLP*, No. 06-CV-2280, 2014 WL 251986, at *1 (S.D.N.Y. Jan. 22, 2014) (noting that "district courts have broad discretion to determine whether to certify an order for interlocutory review" notwithstanding the satisfaction of the statutory criteria). Only "exceptional circumstances" warrant certification under subsection 1292(b), which in all cases is "a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990)). The provision is not to be used "as a vehicle to provide early review even of difficult rulings in hard cases," and accordingly, district courts must "exercise great care in making a § 1292(b) certification." *Facebook*, 986 F. Supp. 2d at 530 (cleaned up).

The parties focus their arguments regarding certification on one issue in the January 2025 Order: the Court's holding that "15 U.S.C. § 1693a(7)(B) does not preclude EFTA liability for a fraudulent Payment Order resulting in a debit from a consumer account in connection with a wire transfer." (January 2025 Order at 34.)  The Court considers each statutory criterion for certification in turn.

### 1. Controlling Question of Law

"To be ripe for interlocutory appeal, the controlling question of law must 'refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.'" *B & R Supermarket, Inc. v. Visa Inc.*, No. 17-CV-2738, 2025 WL 845109, at *3 (E.D.N.Y. Mar. 18, 2025) (brackets omitted) (quoting *Sec. & Exch. Comm'n v. Coinbase, Inc.*, No. 23-CV-4738, 2025 WL 40782, at *6 (S.D.N.Y. Jan. 7, 2025)).  "A question of law is controlling where [i] reversal of the district court's opinion could result in dismissal of the action, [ii] reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action, or [iii] the certified issue has precedential value for a large number of cases." *Coinbase*, 2025 WL 40782, at *6 (cleaned up).

First, whether 15 U.S.C. § 1693a(7)(B) extends to Payment Orders between a consumer and their financial institution in satisfaction of a wire transfer made on the consumer's behalf is a pure question of law.  "[M]atters of statutory interpretation, divorced as they are from the factual record, are typically considered appropriate for certification." *Id.* at *7 (collecting cases). NYAG is correct to observe that the Court's holding depended, in part, on NYAG's factual allegation that such a transfer indeed occurs when a consumer requests a wire transfer.  (*See* January 2025 Order at 4, 12, 18.)  But at this stage, the Second Circuit will be able—assuming NYAG's allegations are true—to decide the statutory interpretation question without further study of the record.  *Cf. Teta v. Go N.Y. Tours, Inc.*, No. 24-CV-1614, 2024 WL 4850844, at *3

4

(S.D.N.Y. Nov. 21, 2024) ("Here, the question that Plaintiffs present in their petition . . . involves primarily a question of fact, which would warrant a thorough study of the record upon review by the appeals court."). Naturally, determining whether that legal question is relevant requires taking a cursory glance at the factual allegations, namely, whether a transfer occurs between a consumer and their financial institution in the first place (although Citibank appears to concede that fact in briefing (*see* Reply at 7 ("Citibank does not dispute the core factual allegation that a wire transfer contains multiple segments; it disputes whether the NYAG can isolate some of those segments and bring EFTA claims about them."))). But that is true of all legal questions, which to be relevant must be raised by particular—and often contested—factual circumstances. *See, e.g.*, *In re Actos End-Payor Antitrust Litig.*, No. 13-CV-9244, 2020 WL 433710, at *2 (S.D.N.Y. Jan. 28, 2020). And this legal question is far cleaner than most, requiring only that the Second Circuit assume the truth of an apparently uncontroversial factual allegation regarding the existence of a transfer between a consumer and their financial institution before proceeding to interpret 15 U.S.C. § 1693a(7)(B). In other words, the "issue can be decided with minimal, if any, reference to the record." *Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 313 (S.D.N.Y. 2007).

Not only is the question presented for certification "pure," but it "has precedential value for a large number of cases," and reversal "could significantly affect the conduct of the action." *Cf. Coinbase*, 2025 WL 40782, at *6. NYAG argues that "reversal would not reduce the scope of this action, as the [NYAG] has pled a viable alternative claim that concerns the same consumers, same timeframe, and same transactions." (Opp. at 17.) But while reversal would neither terminate the entire action nor necessarily end litigation on Citibank's liability for allegedly fraudulent Payment Orders, it would "determine the scope of [NYAG's] claims at trial

5

and the burden the parties must carry to prevail." *Cf. B & R Supermarket*, 2025 WL 845109, at *5 (holding that appellate determination of whether the antitrust *per se* rule or rule of reason applied would "significantly affect the conduct of the action"). Specifically, discovery and trial over NYAG's alternative N.Y. UCC § 4-A-204 ("Article 4A") claim would center largely on Citibank's security protocols, while discovery and trial over an EFTA claim would center around whether individual transfers constituted unauthorized electronic fund transfers and whether Citibank provisionally credited and ultimately reimbursed consumers. (*See* Mem. at 8-16; Opp. at 14.) Moreover, were the Second Circuit to reverse the January 2025 Order's holding regarding 15 U.S.C. § 1693a(7)(B), that would permit the Court to reach Citibank's arguments for dismissing the Article 4A claim (on which the Court intimates no current view), which would "significantly affect the conduct of the action," even without terminating the litigation. *See New York v. Arm or Ally, LLC*, No. 22-CV-6124, 2024 WL 2270351, at *3 (S.D.N.Y. May 20, 2024).

The Court is likewise persuaded that an appellate decision on the scope of 15 U.S.C. § 1693a(7)(B) would have precedential value. As alleged in the complaint, fraudulent Payment Orders ancillary to wire transfers account for at least millions of dollars in consumer losses, at Citibank and other financial institutions. (*See* ECF No. 1 ¶¶ 4, 34, 51, 121.) Litigation of this nature is common. (*See* January 2025 Order at 29-34 & nn.10-12 (discussing similar cases).) At least one other decision already cites the January 2025 Order, albeit on the distinct-but-related issue of the EFTA's coverage of intrabank consolidation transfers. *See Wingard v. TBK Bank, SSB*, No. 23-CV-2116, 2025 WL 605265, at *3-4 (D. Colo. Feb. 25, 2025). And it is reasonable to expect many more such cases if the January 2025 Order is affirmed.

Because reversal of the January 2025 Order's holding regarding 15 U.S.C. § 1693a(7)(B) would significantly affect the conduct of the litigation, and any appellate guidance on that

question would have precedential value, the Court concludes Citibank has identified a pure and controlling question of law for the purposes of subsection 1292(b) certification.

### 2. Substantial Ground for Difference of Opinion

"To demonstrate a 'substantial ground for difference of opinion,' a party may show that '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'" *Pen Am. Ctr., Inc. v. Trump*, No. 18-CV-9433, 2020 WL 5836419, at *2 (S.D.N.Y. Oct. 1, 2020) (citation omitted) (quoting *Whyte v. WeWork Cos., Inc.*, No. 20-CV-1800, 2020 WL 4383506, at *2 (S.D.N.Y. July 31, 2020)). Mere difficult issues of are insufficient to warrant certification. *B & R Supermarket*, 2025 WL 845109, at *6. Instead, "it is the duty of the district judge to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *Flor*, 79 F.3d at 284 (cleaned up). Still, when an order "involves a new legal question or is of special consequence, then the district court should not hesitate to certify an interlocutory appeal." *Tantaros*, 465 F. Supp. 3d at 391 (cleaned up).

To begin, Citibank is correct to point to decisions in other courts declining to extend 15 U.S.C. § 1693a(7)(B) to Payment Orders ancillary to wire transfers as evidence of substantial disagreement. (*See* Mem. at 25-26.) Though the Court found ultimately that those cases did not consider NYAG's particular arguments regarding the text and application of 15 U.S.C. § 1693a(7)(B), they nevertheless represent a contrary view of the scope of that provision. *See, e.g.*, *Wright v. Citizen's Bank of E. Tenn.*, 640 F. App'x 401, 404 (6th Cir. 2016); *Trivedi v. Wells Fargo Bank, N.A.*, 609 F. Supp. 3d 628, 633 (N.D. Ill. 2022); *Fischer & Mandell LLP v. Citibank, N.A.*, No. 09-CV-1160, 2009 WL 1767621, at *4 (S.D.N.Y. 2009).

Moreover, the question of the scope of 15 U.S.C. § 1693a(7)(B) is "difficult," in that it requires the application of several canons of interpretation to intricate statutory text (*see* January

25 Order at 10-21), as well as, potentially, consideration of decades of legislative and regulatory history (*see id.* at 21-29). Nor has the question been considered by the Second Circuit. Accordingly, the Court finds that there is substantial ground for difference of opinion.

### 3. Material Advancement of the Ultimate Termination of the Litigation

"A party may show that an interlocutory appeal would 'materially advance' the litigation by demonstrating that the appeal 'promises to advance the time for trial or to shorten the time required for trial.'" *B & R Supermarket*, 2025 WL 845109, at *9 (quoting *Coinbase*, 2025 WL 40782, at *12). This factor is "given more weight by the courts" than the other two, and is to be applied in consideration of "the institutional efficiency of both the district court and the appellate court." *Sec. & Exch. Comm'n v. Rio Tinto PLC*, No. 17-CV-7994, 2021 WL 1893165, at *2 (S.D.N.Y. May 11, 2021) (quoting *Tocco v. Real Time Resols., Inc.*, No. 14-CV-810, 2015 WL 5086390, at *2 (S.D.N.Y. Mar. 4, 2015)).

NYAG stresses that an interlocutory appeal on the question of the scope of 15 U.S.C. § 1693a(7)(B) would not advance termination of this litigation, because if the Second Circuit reverses, it would result in the "reinstatement of [NYAG's] claim that [Citibank] repeatedly and persistently violated Article 4A." (Opp. at 12.) It is true that the Court's only basis for dismissing the Article 4A claim was its holding that the EFTA, rather than Article 4A, provided the exclusive right of action to remedy NYAG's allegations of fraudulent Payment Orders made from consumer accounts in satisfaction of wire transfers. (*See* January 25 Order at 48-49.) It is also true that the Second Circuit has admonished against certifying for interlocutory appeal orders that, if reversed, would permit a plaintiff to proceed to discovery on trial on "closely related" claims without "any appreciable saving of time." *See Isra Fruit Ltd. v. Agrexco Agr. Export Co.*, 804 F.2d 24, 25-26 (2d Cir. 1986). But ultimately, this case is distinct, because NYAG does not seek to proceed on *parallel* claims, but on *alternative* claims that involve

8

substantially different standards and distinct areas of discovery and trial—security protocols, for an Article 4A claim; and consumer authorization, provisional credit, and reimbursement, for an EFTA/Regulation E claim.  (*See* Reply at 10-11.)  Moreover, also unlike in *Isra Fruit*, here Citibank maintains arguments to dismiss the alternative claim (*see id.* at 8) that the Court would be able to reach if the January 2025 Order's EFTA holding is reversed.

In other words, "immediate interlocutory appeal will 'remove a cloud of legal uncertainty' over these proceedings and may 'significantly affect the parties' bargaining positions and may hasten the termination of this litigation through settlement.'"  *Rio Tinto*, 2021 WL 1893165, at *3 (quoting *Fed. Hous. Agency v. UBS Arms., Inc.*, 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012)); *see also B & R Supermarket*, 2025 WL 845109, at *11 ("[I]nterlocutory appeal . . . on the applicable antitrust standard of review would materially advance the litigation [because] . . . the *per se* and rule of reason standards have different burdens of proof and would require the parties to produce different types of evidence at trial.").  Beyond resolving uncertainty about whether Article 4A or EFTA governs the conduct at issue, reversal would also permit the Court to consider arguments to dismiss the Article 4A claim, greatly reducing the scope of the matter and materially advancing termination of the litigation.

Accordingly, the Court concludes that permitting an interlocutory appeal of the January 2025 Order would materially advance the ultimate termination of the litigation.  Moreover, exceptional circumstances justify that result, as this case concerns highly impactful and novel questions of statutory interpretation affecting the day-to-day operations of major financial institutions and the finances of millions of Americans.

### 4. Certification of the Entire January 2025 Order

Finally, NYAG's request that the Court certify the entire January 2025 Order for interlocutory appeal is unnecessary because subsection 1292(b) permits certification of orders,

9

rather than claims or issues.  *See City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 391-92 (2d Cir. 2008) (citing *United States v. Stanley*, 483 U.S. 669, 676-77 (1987)).

### B.  Stay Pending Appeal

Citibank moves also for the Court to stay this action pending any interlocutory appeal. (*See* Mem. at 29-31.)  "A district court's authority to stay a pending action is an aspect of its broad and inherent power over its own process, to prevent abuses, oppressions and injustice, so as not to produce hardship, and to do substantial justice." *Coinbase*, 2025 WL 40782, at *13 (quoting *Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, No. 13-CV-5784, 2015 WL 585641, at *4 (S.D.N.Y. Feb. 10, 2015)).  "The four factors to be considered in issuing a stay pending appeal are well known: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (alteration omitted).  "[T]he degree to which a factor must be present varies with the strength of the other factors, meaning that more of one factor excuses less of the other." *Id.* (quoting *Thapa v. Gonzalez*, 460 F.3d 323, 334 (2d Cir. 2006) (cleaned up).

Here, it should come as no surprise that the Court does not think it likely that Citibank will prevail on appeal.  But its arguments—mustering decades of legislative and regulatory history, precise application of interpretive canons, and application of persuasive authority—merit serious consideration.  Similarly, Citibank and its amici argue persuasively that the determination of whether Article 4A or the EFTA governs the Payment Orders at issue in this case will have immediate and consequential impacts on the banking and financial services industries.  (*See* Amicus Br. at 9, 23-25.)  That, too, weighs in favor of staying the action.  A stay will also allow the parties and the Court to conserve time and energy that would otherwise be spent on

potentially irrelevant discovery. *See Flo & Eddie*, 2015 WL 585641, at 4. That is particularly so in a case where, based on the briefing of the present motion, the parties apparently do not yet agree on the scope of discovery under either Article 4A or EFTA. *Cf. Pen Am.*, 2020 WL 5836419, at *4 ("Defendant has shown good cause [for a stay pending interlocutory appeal], where discovery sought will raise significant . . . issues and may very well be narrowed or unnecessary.").

Meanwhile, NYAG's arguments that consumers will be prejudiced in the meantime (*see* Opp. at 25) is offset by Citibank's on-the-record commitment to adopt "forward-looking interim measures" to mitigate financial harm to consumers who are defrauded during the pendency of the litigation (*see* Reply at 14). Finally, the public interest will be served by a more binding statement on the appropriate legal standard to govern fraudulent Payment Orders ancillary to wire transfers. Other banks are not bound by this Court's decision, in any event, and Citibank's commitment to mitigate short-term harm will likely reduce prejudice from staying the action pending the Second Circuit's potential resolution of the difficult and consequential questions raised by this litigation. Accordingly, the motion to stay pending interlocutory appeal is granted.

### III. Conclusion

Citibank's motion to certify the January 2025 Order (ECF No. 49) pursuant to 28 U.S.C. § 1292(b), and to stay the action pending appeal, is GRANTED.

The Clerk is directed to mark this case as stayed and to close the motion at ECF No. 54.

SO ORDERED.

Dated: April 22, 2025
    New York, New York

_____
J. PAUL OETKEN
United States District Judge